IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PJM-16-403 |
| | * | |
| TIBA SAKURI CONLEY | * | |
| | * | |
| | * | |
| ******* | | |

**GOVERNMENT'S RESPONSIVE SENTENCING MEMORANDUM**

The Government requests that the Court sentence the Defendant to 120 months for Count One, 120 months for Count Three (concurrent to Count One), and 60 months consecutive on Count Two. The Government also requests that the Court sentence the Defendant to 5 years of supervised release (5 years for each of Counts One and Two, 3 years for Count Three, all concurrent). No fine is necessary or appropriate in this case. Finally, the Government requests that the Court include the forfeiture reflected in the Amended Preliminary Order of Forfeiture (ECF 215) in its oral pronouncement of sentence, and that the forfeiture be incorporated into the Judgment.

**I.        Presentencing Report**

The Government objects to the Guidelines calculations in the Presentencing Report (PSR). In particular, the Government submits that the PSR incorrectly calculates the Guidelines for Count Three as 4 levels too high. When the four levels are removed, the offense level calculated for Count One is higher and therefore controls under the grouping rules. In addition, the Government opposes a reduction of offense level for acceptance of responsibility.

**A. Calculation of Adjusted Offense Level for Counts One and Three.**

*Count Three.* The PSR calculates the offense level for Count Three to be 28, in part due to the addition of the specific offense characteristic at § 2K2.1(b)(6)(B).[1] However, an application note in the relevant guideline for Count Two instructs that "If a sentence under this guideline is imposed with a sentence for an underlying offense, do not apply any specific offense characteristic for possession . . . [of a] firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4, App. Note 4. Even more particularly, the application note specifically instructs that where possession of a weapon in the course of an underlying offense would subject a defendant to enhancement under § 2K2.1(b)(6)(B), then "do not apply that enhancement." Accordingly, the enhancement under § 2K2.1(b)(6)(B) should not apply and the offense level calculated for Count three should be 24 not 28 as calculated in the PSR.

*Count One.* The base offense level as to Count One is **24**, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(8), because the quantity of controlled substances involved in the offense (specifically, 69.4 grams of cocaine base—equivalent to 247.83 kilograms of Converted Drug Weight, and 72.9 grams of cocaine—equivalent to 14.58 kilograms of Converted Drug Weight), was equivalent to at least 100 kilograms of Converted Drug Weight, but less than 400 kilograms of Converted Drug Weight (after application of the Drug Equivalency Tables at U.S.S.G. § 2D1.1, Application Notes 8(B) and (D)). Furthermore, a **2**-level increase is added, pursuant to U.S.S.G. § 2D1.1(b)(12), because the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance. The result is an adjusted offense level of **26** for Count One.

---

[1] Counts One and Three Group and therefore the highest offense level as calculated for those two offense will control. As will be shown, when the adjusted offense level for Count Three is properly reduced, the properly calculated adjusted offense level for Count One is greater and should control

Pursuant to U.S.S.G. § 3D1.2, Counts One and Three group.  Pursuant to U.S.S.G. § 3D1.3, the offense level applicable to a Group is the highest offense level of the counts in the Group.  In this case, the combined offense level for the Group of Counts One and Three is **26**, based on Count One.

Accordingly, the adjusted offense level for Counts One and Three would be 26 with a criminal history category of III.  (*See* PSR at ¶ 38.)  The resulting sentencing range for Counts One and Three would be 78 to 97 months.

The PSR correctly identifies the 60-month consecutive sentence arising from conviction on Count Two.

**B.  The Defendant Should Not Receive a Reduction for Acceptance of Responsibility.**

The Defendant challenges the PSR guidelines calculations and seeks a 2-level decrease in the offense level for supposed acceptance of responsibility.  While it is true that the Defendant has complained mightily that certain controlled buys did not occur (without any grounds for doing so and after numerous hearings with the indulgence of the Court) and that, therefore, there was no probable cause for the warrant to search his residence, the fact of his intransigence on those controlled buys is not an argument *for* acceptance of responsibility, but rather an argument *against* acceptance of responsibility.  Conley's stubborn and infirm argument that the search warrant was improperly issued is not supported by an assertion or contest over the law or a good-faith based argument over the application of the law to the facts, but rather a denial that particular drug transactions—drug transactions monitored by the police and established by a sworn search warrant—even took place at all.

Conley's silence on being caught red-handed with a gun next to him and cocaine and cocaine based surrounding him (and in his sock) is hardly acceptance of responsibility.  If he was

truly focused on the facts supporting the search warrant, and not seeking to contest the evidence gathered upon execution of the search warrant, he could have done many things to signal that. For example, Conley could have stipulated to the results of DNA testing, and he could have stipulated to the testing of the cocaine and crack recovered from his house—something done even in trials where defendants are not merely preserving appellate issues. He did not. Instead, he put the Government to its proof. To do so was his right. But it shouldn't be entertained as an acceptance of responsibility.

Moreover, even the Defendant in his sentencing papers asserts that whether "a sufficient connection between the drugs and firearms" existed "to obtain a 924(c) conviction" was "seriously contested" at trial. The "connection" referred to goes directly to the nature of the crime and is its distinguishing characteristic as opposed to simple possession of a firearm, i.e. possessing a firearm *in furtherance of* the charged drug offense. Nor was this contested issue trivial: it adds five years to the sentence. Furthermore, as a factual matter, disputing the "connection" between the firearm and the drug trafficking is on its face not accepting responsibility in a case where a man is armed with a loaded firearm (next to him on the counter) and surrounded by thousands of dollars of cocaine and cocaine base in his own kitchen—indeed with cocaine base in his sock.

## II.     The Nature of the Offense.

The following are some of the facts presented at trial:

On April 21, 2016, law enforcement officers executed a search warrant at the residence of Conley, located at 3016 Oak Green Court, Apartment C, Ellicott City, Maryland (the "Residence"). Conley was the only individual listed as a tenant on the lease of the apartment, a lease that had begun in February 2016.

The initial police officer who entered the residence saw Conley dropping to the floor in the kitchen. On the counter behind where Conley had been standing was a loaded, .45 caliber semi-automatic pistol. Exhibits P12, P38. Bags of cocaine and cocaine base were seized from the kitchen counter and the kitchen drawer adjacent to where Conley had been standing. Exhibits P44, P46. Also recovered from the kitchen was a Pyrex jar with white residue of the type used in the process of "cooking" powder cocaine into cocaine base. Exhibit P44. Baking powder, used in the process of "cooking" powder cocaine into cocaine base, was also found on the kitchen counter. *Id.* Inositol powder, used to mix with cocaine to increase the amount for sale, was found in the only bedroom of the apartment. In total, the search of the Residence uncovered approximately 69.4 grams of cocaine base ("crack") (a portion of which was recovered from Conley's person, *see* Exhibit P15); 72.9 grams of powder cocaine; three digital scales; and $9,495 United States currency ($495 of which was recovered from Conley's person). Exhibit P26.

The search of the Residence led to the recovery of the following firearms and ammunition:

(1) a Springfield Armory, Model XD-45ACP, .45 caliber semi-automatic pistol, bearing serial number XD676779;
(2) a Masterpiece Arms, Model 10, .45 caliber semi-automatic pistol, bearing serial number A12487;
(3) a Del-Ton Inc., Model DTI-15, 5.56x45 millimeter semi-automatic rifle, bearing serial number DTI-S030977;
(4) a Yugoslavia, Model 59/66, 7.62x39 millimeter semiautomatic rifle, bearing serial number 0604530;
(5) 50 rounds of PMC Bronze .223 caliber ammunition;
(6) 39 rounds of PMC .45 caliber ammunition;
(7) 30 rounds of Winchester .45 caliber ammunition;
(8) 14 rounds of Wolf 7.62x39 ammunition;
(9) 11 rounds of JSC Barnaul 7.62x39 ammunition; and
(10) four rounds of Remington .45 caliber ammunition.

An agent from the Bureau of Alcohol, Tobacco, and Firearms testified that all of the firearms and all the ammunition recovered from the Residence were manufactured either in states other than Maryland or in other countries and therefore crossed state lines before being recovered

in Maryland. During the search of the residence, large capacity magazines capable of holding more than 15 rounds, were found loaded with ammunition in close proximity to the Del-Ton rifle and the Yugoslavia, Model 59/66 rifle, respectively. Exhibits P18, P28, P39.

A Forensic Examiner for the Federal Bureau of Investigation determined that Conley was the source of the major contributor of DNA found on three of the firearms recovered from his Residence when compared to DNA from a reference sample from Conley. The three firearms were the Springfield pistol, the Masterpiece Arms pistol, and the Model 59/66 rifle. Exhibits P27, P38. Declaring an individual is "the source" of DNA is the highest qualitative assessment made by the FBI laboratory when comparing DNA from evidence to DNA from a reference sample.

A federal Task Force Officer, who is also a Detective with the Montgomery County Police Department with 15 years of experience in narcotics investigations, testified that drug trafficking is a cash business, and that firearms are kept by drug traffickers for various reasons, including to protect themselves, their drugs, and their money. Drug traffickers keep firearms with them for protection both on the street and in their Residences. The Detective also testified that the amounts of cocaine base recovered from the Residence were consistent with amounts that would be distributed and then further redistributed, rather than for personal use.

In recordings of Conley made at the Howard County Detention Center and played at trial, Conley admits that law enforcement took his guns and his money from his apartment. Conley also acknowledged that he was "cooking" when law enforcement entered his apartment, that "it was sitting on the counter," and that "they caught me."

By Stipulation entered as evidence at trial, Conley, through counsel, acknowledged that he had previously been convicted of a "crime punishable by imprisonment for a term exceeding one year," that he knew he had been convicted of a crime punishable by imprisonment for a term

exceeding one year, and that his civil rights following that conviction—including his right to possess a firearm or ammunition—had not and have not been restored.

### III. The History and Characteristics of the Defendant.

The nature and circumstances of the offense must be considered in the context of this unique defendant's history and characteristics.

*First*, this Court should consider that criminal history points are awarded regardless of the nature of the prior crime, but rather based on the length of the prior sentence and how long ago it occurred. Similarly, two additional points are added to the criminal history computation if an individual is on probation for another crime when they commit the instant offense—regardless of the nature of the prior crime and regardless whether they are on probation for more than one offense.

Here, of course, the Defendant was on probation for ***two*** crimes. Moreover, the two crimes for which he was on probation were 1) Armed Robbery and 2) CDS Possession with Intent to Distribute Cocaine. *See* Govt. Exhibits 1A/1B & 2A/2B (Sentencing Transcripts and Judgments). Not only had he been previously convicted for guns and drugs offenses, but he was on active probation for guns and drugs offenses at the time he committed the instant guns and drugs offenses. In short, the Defendant has demonstrated an unwillingness to respect the law, even when under the threat of back-up time for violation of probation.

*Second*, it is not at all clear that the Defendant will attempt to seek legal employment when he ultimately is released from imprisonment. By his own admission he has never held a job (PSR ¶ 55) and apparently is not interested in learning any type of vocation (PSR ¶ 54).[2] It is hard to

---

[2] Nevertheless, despite not having a job, the Defendant had sufficient money to acquire four powerful weapons, and of course had altogether $9495 in a shoe box in his bedroom and on his person.

7

read this other than as an intention to continue his present and past criminal endeavors. While the possibility of rehabilitation can never be ruled out, the improbability of rehabilitation under these circumstances supports a longer rather than shorter sentence.

## IV.     Recommendation.

The Government recommends that the Court sentence the Defendant to ten years imprisonment for each of Counts One and Three, concurrent, and a consecutive five year term for Count Two. This is an upward variance from the guidelines as calculated by the Government, but within the guidelines range as calculated by Probation.

An upward variance is wholly appropriate in this case. The Defendant has previously been convicted of Armed Robbery (D.C.) and Possession with Intent to Distribute cocaine base (Maryland). The first case involved a spree of armed robberies on the day the Defendant turned 18—three separate victims were held at gunpoint at three separate locations. When located by the police, the Defendant fled on foot but was ultimately apprehended. *See* PSR ¶ 34. Four years later, and less than 8 months after being released to probation, the Defendant crashed his car, fled from police, and was found to be in possession of a distribution amount of crack cocaine, $1,050 in cash, and two cellular phones. Exhibit 2A at 8-9. Because of the Maryland offense, his supervision in D.C. was revoked and the Defendant was sentenced to an additional 30 months imprisonment on the Armed Robbery conviction. He served the revocation sentence and was released to be sentenced in Maryland. In Maryland, in April 2014, he was sentenced to 10 years incarceration all suspended (with 30 months credit given) and, importantly, 5 years of supervised probation. *See* PSR, ¶ 35; Exhibit 2B. A little over two years later, in April 2016, the Defendant was arrested on the current charges.

The Defendant's present offenses are extremely serious, even considered in isolation. Drug trafficking is a dangerous business, and conducting that business armed to the teeth makes it even more dangerous. The Defendant did not just illegal possess a firearm, he illegally possessed a firearm four times over. He possessed loaded magazines storing dozens of bullets. Moreover, two of the weapons were military style semi-automatic rifles. What does that mean? Rifles use ammunition cartridges that contain significantly more powder that can propel a projectile faster and farther than a pistol. The pistols seized from the Defendant—one from within inches of where he had been standing—were both .45 caliber. The Defendant possessed this arsenal to protect his drugs and his cash, cash derived from (as the jury found for purposes of forfeiture) his drug business.

And all of this is in the context of an individual who had already spent *six of the nine years of his adult life* to that point in custody for armed robbery, with another ten years or so hanging over his head for Possession with Intent to Distribute Cocaine. At the time of his offenses, he was on probation and court supervision by two separate courts.

One can only conclude that Conley simply does not respect the law and is heedless of its demands on his conduct. Such conduct by others similarly situated must be deterred with a significant sentence. Such conduct by Conley himself can only be deterred by a lengthy term of imprisonment reflective of not only his repeated recidivism, but his repeated recidivism with gun offenses and with drug offenses. A total term of imprisonment for 15 years followed by 5 years of supervised release is sufficient but not greater than necessary to achieve these goals.

Moreover, a combined 15-year sentence followed by 5 years of supervised release protects the public and is just. The Defendant's response to release from a revocation sentence for Armed Robbery and suspended sentence for PWID cocaine base was to acquire an arsenal and to

manufacture and sell mandatory minimum amounts of cocaine base. His conduct was egregious and he has given the Court no reason to think he will not return to the same conduct when ultimately released from imprisonment. The public needs to be protected from such behavior. Such a sentence is just in that it is proportional to both the nature of the crime considered in isolation, and the nature of the crime as repeat offenses *of the same type* (something the guidelines do not quite capture).

Neither the Defendant's personal history nor his intellectual functioning detract or mitigate the fact that when arrested he was a high-functioning drug dealer who had already had a chance to turn things around following earlier convictions. The Defendant understands the charges against him, and the stakes, and has in fact focused on a strategy of attacking the validity of the search warrant. His intransigence should not be confused with inability. Other courts have given the Defendant apparent leniency by suspending sentences, the logic of such leniency has dissipated with the Defendant's repeated crimes. Similarly, as to issues using drugs, the Defendant was evaluated for potential drug problems in the months prior to his present arrest (see PSR, ¶ 53), but not found to be using. The Defendant himself denies the need for drug treatment.

## V.     Conclusion.

For the foregoing reasons, the Government requests that the Court sentence the Defendant to 120 months for each Counts One and Three, to run concurrent to each other, and to 60 months for Count Two, to run consecutive to the other sentences. Five years of supervised release should

be ordered. The Government requests that the order of forfeiture be announced in the oral pronouncement of sentence and incorporated in the written judgment.

        Respectfully submitted,

        Jonathan Lenzner
        United States Attorney

        /s/ Joseph R. Baldwin
        Joseph R. Baldwin
        Assistant United States Attorney