<pre>
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF MARYLAND

 3                        SOUTHERN DIVISION

 4

 5  UNITED STATES OF AMERICA,      ) CRIMINAL
                                   ) NO. PJM-16-403
 6            Plaintiff,           )
                                   )
 7  v.                             )
                                   )
 8  TIBA SAKURI CONLEY,            )
                                   )
 9            Defendant.           )

10           TRANSCRIPT OF JURY TRIAL PROCEEDINGS - DAY 4
                 BEFORE THE HONORABLE PETER J. MESSITTE
11               UNITED STATES DISTRICT JUDGE, AND A JURY
                 THURSDAY, SEPTEMBER 24, 2020; 10:36 A.M.
12                        GREENBELT, MARYLAND

13  FOR THE PLAINTIFF:

14            OFFICE OF THE UNITED STATES ATTORNEY
              BY:  JOSEPH R. BALDWIN, ESQUIRE
15            BY:  DWIGHT J. DRAUGHON, JR., ESQUIRE
              6406 Ivy Lane
16            Suite 800
              Greenbelt, Maryland  20770
17            (301) 344-4433

18  FOR THE DEFENDANT:

19            BURNHAM & GOROKHOV, PLLC
              BY:  CHARLES BURNHAM, ESQUIRE
20            1424 K Street NW
              Washington, DC  20005
21            (202) 386-6920

22

23

    OFFICIAL COURT REPORTER:
24  Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

25    ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
</pre>

1              THE COURT:  Have a seat, please.

2         All right.  The government, did you formally rest in

3    front of the jury?

4              MR. BALDWIN:  I did, Your Honor, when we closed our

5    evidence yesterday.

6              THE COURT:  Right.  And then we had the Rule 29

7    motion that was taken care of.  So we are at the point --

8    sorry, again, Madam Clerk -- we are at the point that the

9    defendant may put on evidence.

10        Mr. Burnham, what do you propose to do?

11             MR. BURNHAM:  Mr. Conley would like to testify.

12   That's my only witness.

13             THE COURT:  All right.  All right.  Mr. Conley, I

14   need to repeat for the record what I said yesterday because

15   this is an important decision that you are going to make.

16   Number one, if you choose not to testify, and you have an

17   absolute right not to testify, you are entitled to an

18   instruction from me to the jury that they may not consider in

19   any way the fact that you have chosen not to testify since you

20   are not obliged to put on any evidence at all in the case, and

21   that's an important rule.

22        If you choose to testify, just to go on, you are going to

23   be treated like any other witness.  You may be cross-examined,

24   you may be impeached, meaning inconsistencies or other

25   irregularities in your past might be brought up by the

1   government on cross-examination just as any other witness would
2   be.  So you need to understand that you run a risk when you do
3   testify.
4        But in any event, I understand that you have talked to
5   Mr. Burnham about that and you have told him more than once you
6   want to testify, so I will accept that that's what you want to
7   do, but you need to keep in mind you have to testify according
8   to orderly procedure in the Court, so that, for example, you
9   have to testify to things that are relevant and material.  You
10  can't go into matters that you'd like to talk about that are
11  not relevant.
12       Example:  Not before this Court today is what happened in
13  connection with the search and seizure warrant, that is the
14  application for the warrant.  You have raised several times
15  your view that you think there wasn't a controlled buy on the
16  day that the applicant for the warrants said that, but that's
17  not before the Court -- before the jury.  I decided that twice
18  at least, gave you two hearings on the same issue, and decided
19  that you were not entitled to go forward on that.
20       If you want to appeal this case in the event that you are
21  found guilty, that issue can then be challenged, but it isn't
22  for this jury at this point to hear about or talk about what
23  happened in connection with the application for the warrant.
24       If you step outside the bounds, I am going to warn you,
25  Mr. Conley, you are not to talk about that, and I will say to

1    the jury, Ladies and gentlemen, this is not an issue for you to

2    consider.  But I am not going to continuously warn you --

3              THE DEFENDANT:  I have not --

4              THE COURT:  You need to stop talking now and just

5    listen to me.

6              THE DEFENDANT:  But it's trial though.

7              THE COURT:  This is -- the kind of thing that you are

8    doing right now, which is talking over the Court, that also is

9    going to jeopardize where you are.  I will not permit you to be

10   in court and constantly contradict or talk over what I do.

11       I am going to make rulings on the case.  If you speak --

12   if you go out of bounds, I will let you know, with fair

13   warning, and then if it gets to a point where you are not

14   paying attention, I am going to remove you from the courtroom,

15   and you can follow the proceedings on closed-circuit.

16             THE DEFENDANT:  I am not even trying to proceed in

17   this courtroom.  The other day, you misled me.  I put a motion

18   in for transfer.  You can't decide on the motion.  How are you

19   going to decide on the motion that I had -- that it's

20   prejudiced that you show against me?  You can't decide on that

21   motion.  That's not what the rule book say.

22             THE COURT:  What are you talking about, the Rule 29

23   motion?

24             THE DEFENDANT:  No, Rule 21.  You can't decide on

25   that.  It's a grievance against you.  You can't decide on that.

1          THE COURT:  Okay.  I am not sure what Rule 21 you are

2   talking about.

3          THE DEFENDANT:  That's not nothing for you to decide.

4   I am trying to get out of this court.  There's not nothing for

5   you to decide.  The motion is right here.

6          THE COURT:  Stop talking for a minute.  Rule 21, you

7   say that I can't decide something?  Let me see what you are

8   referring to.  You are talking about transferring the case to

9   another court?

10          THE DEFENDANT:  Yes.

11          THE COURT:  I have already decided we are not going

12   to do that.

13          THE DEFENDANT:  How are you deciding on this?

14          THE COURT:  I have decided it, and I am not -- I

15   don't want to debate it with you.

16          THE DEFENDANT:  You can't decide on it.  It says it.

17          THE COURT:  Mr. Conley, I have decided -- that issue

18   has been decided.  We are not going to go into it again.

19          THE DEFENDANT:  How did you decide when it says -- it

20   says right here the other court --

21          THE COURT:  If you are going to continue in the

22   fashion that you are now, I am going to remove you from the

23   courtroom.  That's it.

24          THE DEFENDANT:  You might as well because you are

25   railroading me.

1          THE COURT:  That's the decision.

2          THE DEFENDANT:  This trial, I am supposed to present

3  evidence to the jury.

4          THE COURT:  You have got to stop talking over me.

5          THE DEFENDANT:  What's point of the trial if you are

6  not going to show the search warrants or the controlled buy?

7          THE COURT:  You have got to stop talking.  I am

8  applying the law as I know it.  If you disagree with --

9          THE DEFENDANT:  You are setting me up.

10          THE COURT:  Right now, you need to stop talking.

11          THE DEFENDANT:  I am not trying to proceed in front

12  of you.  You are setting me up.  You know what you are doing.

13          THE COURT:  Okay.  Mr. Burnham, I say this to you

14  now, it does look like we may have an issue with Mr. --

15          THE DEFENDANT:  I don't even give a fuck.  Get me out

16  of here.

17          THE COURT:  Wait a minute.  Wait a minute.

18          THE DEFENDANT:  Get me out of here.

19          THE COURT:  Let the record reflect the defendant is

20  standing up and is saying something to the marshals.  What is

21  he saying?

22          THE DEFENDANT:  Take me back.  I don't give a fuck

23  what he do.  I don't care about -- fuck this trial.  He

24  railroading me.  Send me back to the jail.  I don't care.  I am

25  going back to the jail.

1          THE COURT:  Mr. Conley -- Mr. Conley, listen for a

2   moment.  You are entitled to talk about what happened -- what

3   happened during the search.

4          THE DEFENDANT:  I am gone.  I am out of here.  I am

5   done.  I am not sitting down.  I am going back.  Take me to

6   jail.  I been locked up 54 months.

7          THE COURT:  You are talking to the marshal.  They

8   don't have any decision to make here.  They are going to follow

9   my direction.

10          THE DEFENDANT:  I am not going to trial in front of

11   you.  You are not even being fair.  You are not even letting me

12   present the search warrant.  That's a part of my case.

13          THE COURT:  You will have a chance to appeal that.

14          THE DEFENDANT:  They doing a search warrant on two

15   controlled buys.  So, basically, you are railroading me.  That

16   was all y'all reason for coming in my house.

17          THE COURT:  No, it isn't.  You are wrong about that

18   and I have made my decision.

19          THE DEFENDANT:  You can say I can get kidnapped out

20   of my house --

21          THE COURT:  Now, look.  Here is your choice.  If you

22   are going to continue this way when the jury comes --

23          THE DEFENDANT:  You all misled.  You know it.

24          THE COURT:  Listen to me.  If you are going to

25   continue this way when the jury comes in, I am going to remove

1  you.  If you want to be removed now, I will remove you now.  It

2  may be better for you to do that.

3          THE DEFENDANT:  I don't care.  Do what you want.

4          THE COURT:  You are walking toward the door.  Do you

5  want to stay and start to testify and let me determine whether

6  your testimony is allowable or not?

7          Marshals, I am not sure what he's telling you.

8          THE DEFENDANT:  He don't even like black people.

9          THE COURT:  There is nothing you should talk to him

10  about about the case, gentlemen.

11      Mr. Conley, I need you to at least hear me.  Mr. Conley,

12  please turn around and listen to what I am saying.  I need to

13  make a record in this case.

14          THE DEFENDANT:  I am not sitting down.  I am trying

15  to go.  You all can't force me to sit down.

16          THE COURT:  Are you prepared -- are you prepared to

17  take the witness stand and testify?

18          THE DEFENDANT:  I am not about to let you railroad

19  me.

20          THE COURT:  Madam reporter, I am not sure whether you

21  can hear the things he is saying, but I need the record to be

22  clear that he's not listening to me.  He is talking over me.

23  He is now standing with his papers in hands talking to the

24  marshals, apparently trying to tell them why he should not --

25  why the Court should not go forward with the case, why the

1   Court should transfer the case to another judge, why the Court

2   should let him testify -- not let him testify about what -- how

3   the search warrant was obtained, and those are matters the

4   Court has rejected already more than once.

5        So, again, one last opportunity, Mr. Conley.  I am not

6   going to have you standing up talking to the marshals when the

7   jury comes in, so you need to decide whether you are going to

8   sit down, whether you are going to sit down and --

9             THE DEFENDANT:  I just put the Rule 21 and --

10            THE COURT:  I have ruled on that already.

11            THE DEFENDANT:  You can't rule on this.  This is for

12  the transferring district.

13            THE COURT:  Mr. Burnham, I --

14            THE DEFENDANT:  You cannot rule on this.  That's a

15  rule, Rule 21.  You can't rule on this.

16            THE COURT:  Stop talking.

17            THE DEFENDANT:  You can't rule on it.

18            THE COURT:  Mr. Burnham, under the circumstances, it

19  seems to me appropriate and perhaps in your client's best

20  interest to simply have him step out now.

21            MR. BURNHAM:  I am having trouble hearing the Court.

22            THE COURT:  It seems to me that under the

23  circumstances, the option is going to be that he will be acting

24  in similar fashion once the jury is here, at which point, I am

25  going to have to remove him.  It may well be that it's

1    appropriate right now to simply have him removed from court and

2    arrange for him to view the television.

3           Are you prepared to sit here, Mr. Conley?  You need to

4    answer.

5                 THE DEFENDANT:  I said no.

6                 THE COURT:  Are you prepared to sit here?

7                 THE DEFENDANT:  I ain't going let you railroad me.

8                 THE COURT:  And you can't use words to the jury like

9    "railroad."

10                THE DEFENDANT:  I am out of here.  I am not

11   proceeding with you.  This is my motion right here.  I am

12   leaving it.  I already got my copy.  That's for the clerk.

13                THE COURT:  Do you want to sit here --

14                THE DEFENDANT:  You can't rule on this.

15                THE COURT:  You are talking over me.  Do you want to

16   sit here --

17                THE DEFENDANT:  Can I read this rule out to you

18   because you must got a different book?  I am going to read it

19   to you.

20                THE COURT:  Mr. Burnham, I go back to you.  I think,

21   under the circumstances, because he's not even listening to me

22   now and insisting on points that are decided or were not

23   relevant --

24           (Whereupon the defendant continued to speak over the

25   judge at the same time as the judge was speaking.)

1          THE COURT:  But rather than embarrass him in front of

2    the jury, being pulled out in their view, it will be better for

3    him to be put outside now.  I don't know whether you want to

4    say anything one way or another about that.

5          MR. BURNHAM:  Just a couple things, Your Honor.  I

6    think I heard Mr. Conley say he no longer wanted to testify

7    just then, which I think is well taken, so perhaps we could

8    take a brief recess and bring him back in and proceed to

9    instructions and closing arguments.

10          THE COURT:  Well, as long as he understands that if

11   he doesn't testify as well, he is still not entitled to disrupt

12   the courtroom.

13       Mr. Conley, do you hear that?

14          THE DEFENDANT:  That is not what I said.  He don't do

15   shit for me.  You can't force me --

16          THE COURT:  You are not listening to me.  Nobody is

17   forcing you to testify.

18          THE DEFENDANT:  I was representing myself the whole

19   time.

20          THE COURT:  Let's take him out of the courtroom,

21   marshal.  Take him downstairs.  Let's arrange for the I.T.

22   hookup.

23       We will take a short recess, Mr. Burnham.  Perhaps it may

24   be appropriate now for you to go down, Mr. Baldwin.  We will

25   take a longer recess, try and get those instructions in order.

1   It may take us 20 minutes to get organized here, and if he

2   still hasn't cooled down in that time, we will go forward

3   without him and we will get right into our instructions.  Okay?

4   So let's take perhaps as much as a 20-minute recess on that and

5   go forward.

6          Theresa, would you see that he gets access to the TV?

7                  THE DEPUTY CLERK:  Yes, Your Honor.

8                  THE COURT:  Marshals, I need to know, as far as his

9   access to the TV, is he, in fact, watching?  He may decide he

10  doesn't even want to see that, but I need you to tell me what

11  he's doing once we are hooked up.

12                  MARSHAL:  Copy that.

13                  THE COURT:  Anything else?

14          MR. BALDWIN:  Your Honor, so you are asking that we

15  have the two versions -- you are asking for the version --

16                  THE COURT:  Well, I want -- right now, I am not sure

17  where we are.  We need the two versions, but we don't need all

18  the copies yet.

19          MR. BALDWIN:  Yes, Your Honor.  It's going to take --

20  it would take 20 minutes for the first version and probably

21  some additional time for the second version.  I mean --

22                  THE COURT:  Let's assume that he's not going to

23  testify at this point.

24          MR. BALDWIN:  Yes, Your Honor.

25                  THE COURT:  And I don't think you need to worry about

1    things like Table of Contents.  I can handle that as far as

2    what we are going to say to the jury.

3              MR. BALDWIN:  Yes, Your Honor.

4              THE COURT:  Mr. Burnham, I suggest you go down and

5    try and talk to him one more time and see whether we can make

6    some headway on this.  But I do need the record to reflect that

7    he just continuously talked over me.  If you got that, Madam

8    Reporter, that's important because I am trying to understand

9    whether he is or is not going to testify.  But, as well, if he

10   testifies, that he's subject to cross-examination, which could

11   impeach him in ways that would go into his criminal history,

12   among other things.

13        And, further, that if he does testify, he has to testify

14   in bounds about relevant matters, and I won't permit him to go

15   out of bounds and I will warn him that he can't do that, and if

16   he persists in doing it, he would be removed from the courtroom

17   even after he has begun to testify.  So, again, please

18   reiterate that to him, but we are going to get this case tried

19   one way or another.

20        All right.  We will be in recess pending further order of

21   the Court.

22        (Recess taken from 10:49 a.m. until 12:04 p.m.)

23              THE COURT:  Please be seated, ladies and gentlemen.

24   All right.  Well, we are just about at noon this morning.  A

25   good part of the day to go forward.

1          Mr. Burnham, can you give me the latest report on

2   Mr. Conley, who is not present in the courtroom?

3          MR. BURNHAM:  Yes, Your Honor.  Mr. Conley does not

4   wish to come back to court for the remainder of the trial.  He

5   told me that personally after we were just in court just this

6   morning, and the marshals reported he made that clear to them

7   multiple times.

8          THE COURT:  All right.  Did he also say he wanted to

9   be taken back to the detention center?

10          MR. BURHNAM:  Yes, he did.

11          THE COURT:  Well, I don't want that to be.  I think I

12   want him to be held here.  In the event he changes his mind and

13   wants to come in, I want him to be able to do that.  What about

14   access -- has the TV link been made, Theresa?  It has been

15   made?

16          THE DEPUTY CLERK:  Yes, Your Honor.

17          THE COURT:  Does he indicate that he doesn't wish to

18   attend that either?

19          MR. BURNHAM:  He wants to go back to jail, so he

20   didn't specifically say he didn't want to watch the video but

21   he wanted to go back to the jail, and I inferred it from that,

22   but I agree with the Court that he should at least have the

23   opportunity, if he wants, to watch it on video.

24          THE COURT:  Can we communicate that to him?

25          MR. BURNHAM:  I have discussed that with him before.

1    I don't think I have done it today because it was a little

2    difficult given the nature of this morning's proceedings and

3    how heated it got, but we have discussed that on prior

4    occasions.  I can discuss it with him again today.

5             THE COURT:  Well, I don't know that anything more

6    needs to be done.  There is no marshal up at this point.  All

7    right.

8         Theresa, can you be -- call the marshals and be sure that

9    he understands, Mr. Conley, that the TV is available for him to

10   watch?  We need to -- can you let them know that?

11            THE DEPUTY CLERK:  I am calling, Your Honor.

12            THE COURT:  All right.  Now, that said, let's have a

13   look at the instructions that have come down.  And I take it,

14   now we are going with the instruction packet, Mr. Burnham, that

15   assumes that the defendant is not testifying and they are not

16   to make any inference one way -- in any fashion.

17        Correct?

18            MR. BURNHAM:  Yes.

19            THE COURT:  So have you had a look -- I was handed a

20   packet of the jury instructions with the general verdict form,

21   but have you had a chance to look over those?

22            MR. BURNHAM:  Mr. Baldwin provided me a copy here.

23            THE COURT:  I am asking on -- I am ready to instruct

24   unless you have, excuse me, any issues here?

25            MR. BURNHAM:  I don't, Your Honor, other than just

1    what I need to put on the record from our charge conference.

2               THE COURT:  Okay.  Well, that's what you will do

3    after I instruct the jury.  So we will bring them in, I will

4    instruct them, and then you can take your exceptions on the

5    record after we dismiss the jury, and if I have any further

6    corrections to make, I will let the jury be further instructed

7    after lunch.

8          Now, it's shortly after 12.  And, Theresa, I know the

9    lunch is usually around -- around one, but it's going to take

10   me more than an hour to instruct now, and so I think we will

11   just have to wait on the lunch if that's doable.  Is that --

12              THE DEPUTY CLERK:  Sure, Your Honor.

13              THE COURT:  It's likely to take me an hour 15, 20

14   minutes for this length, but we will see.

15         All right.  Ready to bring them in then?

16              THE DEPUTY CLERK:  Your Honor, I am still waiting to

17   hear back from the marshal.

18              THE COURT:  All right.  Do we know, though, that the

19   TV is linked up?

20              I.T. TECHNICIAN:  Yes.

21              THE COURT:  It is available.

22              I.T. TECHNICIAN:  Would you like me to display it on

23   the screen or not?

24              THE COURT:  Sorry.  What?

25              I.T. TECHNICIAN:  Would you like me to display the

1   cell block on the screen or no?

2             THE COURT:  No, not for the jury, no.  As long as you

3   see that it's open and he's -- is he there?  Do you see him in

4   there?  Don't do it now while the jury is coming in.

5             MR. BURNHAM:  I should have brought this up.  Would

6   Your Honor like to make a brief acknowledgment to the jury?

7             THE COURT:  I don't know how much more you want me to

8   say?  That he's chosen not to be here and they are not to draw

9   any inference from that one way or another?

10            MR. BURNHAM:  Precisely.

11            I.T. TECHNICIAN:  I just checked and it is connected.

12            THE COURT:  Is he there?  Can you see?

13            I.T. TECHNICIAN:  Yes.

14            THE COURT:  He is where the TV screen is?

15            I.T. TECHNICIAN:  Yes.  He is there.  He is on the

16  screen if you look at it.

17            THE COURT:  Okay.  And that's -- where is the TV

18  monitor?

19            I.T. TECHNICIAN:  It's -- where he can look at is

20  right in front of him.

21            THE COURT:  Is it in the upper left here?

22            I.T. TECHNICIAN:  It should be right in front of him,

23  above him.  It's kind of like an iPad setup, so it has, like, a

24  web CAM.

25            THE COURT:  Is he able to hear us?

1              I.T. TECHNICIAN:  Yes.  He is able hear us.

2              THE COURT:  Mr. Conley, can you hear us?  No

3      response.  All right.

4              I.T. TECHNICIAN:  I can go and verify if you'd like.

5      I will turn the video off now and then I will go and verify.

6              THE COURT:  Turn it off.  Turn it off.

7              THE DEPUTY CLERK:  Your Honor, are you ready for the

8      jury?

9              THE COURT:  Yes.

10          (The jury panel enter the courtroom at 12:10 p.m.)

11             THE COURT:  All right.  Good afternoon already,

12     ladies and gentlemen.  We are about to go forward with the

13     proceedings.

14             You will note that the defendant, Mr. Conley, is not

15     present in the courtroom.  He has declined to be present;

16     however, he does have available a closed-circuit TV observation

17     of the court proceedings, including audio, and that is how he

18     will participate this afternoon.

19             So we are now ready to proceed with the -- if there is

20     nothing further, Counsel, with the instructions in the case.

21     Ready for the government?

22             MR. BALDWIN:  Yes, Your Honor.

23             THE COURT:  And Mr. Burnham?

24             MR. BURNHAM:  Yes, Your Honor.  And I believe was

25     there another part to the admonishment about Mr. --

1          THE COURT:  I'm sorry.

2          MR. BURNHAM:  Was there an additional part that Your

3   Honor wanted to mention to the admonishment about Mr. Conley on

4   whether any significance should be attached to his --

5          THE COURT:  That's true.  I should mention that you

6   should not attach any significance to the fact that Mr. Conley

7   is not present.  That will not be part of your considerations.

8          MR. BURNHAM:  Thank you, Your Honor.

9          THE COURT:  All right.  Ladies and gentlemen, you are

10  about to enter your final duty, which is to decide the facts

11  and issue in the case, and I am going to instruct you on the

12  law at this point.  Please pay close attention.

13      I told you at the start of the trial that your principal

14  function during the taking of testimony would be to listen

15  carefully to each witness who testified, and, obviously, you

16  have done that carefully.  So please pay attention as we go

17  forward.

18      You have heard all the evidence at this point.  You will

19  hear -- it says, "as well as the final arguments."  You will

20  hear final arguments actually after I finish my instructions.

21  But my plan, as I say, is to instruct you on the law.  Your

22  duty is to accept the instructions that I give you, apply them

23  to the facts that you determine, and it's been my duty to

24  preside over the trial as you can see.

25          MR. BURNHAM:  Your Honor, I beg your pardon.  Could

1  we have a quick bench conference?  I believe Your Honor's clerk

2  may be raising the same issue that I am.

3           THE COURT:  I'm sorry.  You have something now you

4  want to raise?

5           MR. BURNHAM:  I do via bench conference.

6           THE COURT:  I wish you would have done that -- I hope

7  you would have done that before we got to this stage in the

8  proceedings, Mr. Burnham.

9           MR. BURNHAM:  I think it will be apparent why I

10  didn't once we get started here.

11           THE COURT:  All right.

12           THE DEPUTY CLERK:  Just a moment, Your Honor.

13       (Whereupon the following took place at sidebar; all

14  counsel present.)

15           THE COURT:  All right.  Can you hear me, Counsel?  I

16  am not -- Counsel, can you hear me?  Raise your hand if you

17  can.

18           MR. BURNHAM:  I can hear you, Your Honor.

19           THE COURT:  Mr. Burnham, do you want to speak?

20           MR. BURNHAM:  Yes.  I just --

21           THE COURT:  I am not hearing him.

22           MR. BURNHAM:  Can everybody hear me?

23           THE COURT:  I'm sorry.  I am not hearing him.

24           MR. BURNHAM:  How about now?  Is that --

25           THE COURT:  I can't hear what he's saying.

1          MR. BURNHAM:  Okay.

2          THE COURT:  Mr. Burnham, I cannot hear you.

3          MR. BURNHAM:  I understand.  I am trying to -- is

4    that better?  Okay.

5          THE COURT:  I am not hearing anything he is saying.

6          MR. BURNHAM:  Do you want me to approach?

7          THE COURT:  Go ahead.  Start again.

8          MR. BURNHAM:  Okay.  Is that -- am I coming through

9    now?

10         THE COURT:  I can hear you.

11         MR. BURNHAM:  The reason -- I apologize for

12   interrupting the Court during instructions.  The reason I did

13   so is Ms. Derro just this minute informed me orally that

14   Mr. Conley had communicated by some means that he wished to

15   testify via video conference, and so I didn't think I could

16   just let that go by without mentioning something, so I brought

17   that to the Court's attention.

18         What my request would be, having put that on the record,

19   is that we go ahead and proceed because I regard myself as

20   having already rested, so I am not requesting the Court do

21   that, but I at least wanted to communicate the request.

22         THE COURT:  Do you want to say anything, Mr. Baldwin?

23         MR. BALDWIN:  Your Honor, I believe the defense has

24   rested its case and we have already moved past that point.

25         THE COURT:  All right.  Well, candidly, it's this

1    sort of on again/off again behavior which is potentially

2    complicating the trial, so I am not going to permit him, now

3    that we have moved to the instruction phase of the case and I

4    actually started my instructions, for him now to come up and

5    testify at all, certainly not by video.  He is not entitled to

6    special treatment.

7              MR. BURNHAM:  Thank you.

8              THE COURT:  Your request is noted, but that -- to the

9    extent that it's a motion, it's denied.

10             MR. BURNHAM:  Thank you.

11             MR. BALDWIN:  Your Honor, I don't know if we formally

12   said that the defense rests its case.  You might just want to

13   note that in the -- in the instruction phase or --

14             THE COURT:  Well, I assumed that you had rested when

15   I began my instructions.

16             MR. BURNHAM:  I regarded myself as having rested.  I

17   guess Mr. Baldwin is pointing out I didn't state that before

18   the jury, but I think it's apparent.  Your Honor could note it

19   if the Court would like.

20             THE COURT:  All right.

21         (End of sidebar discussion.)

22             THE COURT:  Do we turn this off, the husher?  All

23   right.  Bear with me.

24        You have to follow the instructions that I give you as to

25   the law.  If the attorney states a legal principle different

1    from what I say, it's my instructions that control.

2        You should not single out any one instruction as stating

3    the law alone.  You should consider my instructions as a whole.

4        You shouldn't be concerned about the wisdom of any rule

5    regardless of any opinion you might have about what the law is

6    or should be.  You have to follow my instructions in terms of

7    reaching your verdict in this case.

8        Now, you determine the factual issues in the case.  You

9    are the sole and exclusive judges of the facts.  You pass upon

10   the weight of the evidence, you determine the credibility of

11   the witnesses, and you resolve conflicts as there may be in the

12   testimony.  You also may draw reasonable inferences that you

13   decide to draw from the facts that you have determined.

14       I will talk to you momentarily about judging the

15   credibility or believability of witnesses.

16       In determining the facts, you should rely on your own

17   recollection of the evidence.  What the lawyers may have said

18   in their opening or what they may tell you in their closing

19   statements, in their objections or questions, that's not

20   evidence.  A question put to a witness is not evidence.  It's

21   only the answer that is evidence.  Nothing that I say during

22   the trial, nothing that I may say during these instructions is

23   in any way bearing upon the factual matters that you have to

24   decide.  You are to use your own independent recollection, and,

25   of course, the exhibits that were received in evidence.  Again,

1   evidence does not include questions.  Only answers.

2        There were no answers I think I directed you to disregard

3   so that that may go forward.

4        There is a stipulation in the case, and you will hear

5   more about that from counsel.  Since you are the sole and

6   exclusive judges of the facts, I don't mean to indicate any

7   opinion of my own as to what the facts are or what your verdict

8   should be.  The rulings I made during the trial are not any

9   indication of my views as to what your decision should be as to

10   whether or not the defendant has been proven guilty beyond a

11   reasonable doubt.

12        You are the exclusive judges as to the facts, and, of

13   course, you should perform your duty of finding the facts

14   without prejudice to any party.

15        Now, in determining the facts, you are reminded that

16   before you were accepted and sworn as jurors, you were asked

17   questions concerning your competency, qualifications, and your

18   fairness and freedom from prejudice and bias and you were

19   accepted on the faith of those answers, and those answers

20   remain binding on you as they were when we asked at the

21   beginning.  They should remain so until you are discharged,

22   until after you have finished your deliberations in the case.

23        You should perform the duty of finding the facts without

24   bias or prejudice to any party.  You should perform your final

25   duty with an attitude of complete fairness and impartiality.

1          The case is important for the government because the

2    enforcement of criminal laws is a matter of prime concern to

3    the community, but, equally, it is important to the defendant

4    who is charged with serious crimes.

5          The fact that the prosecution is brought in the name of

6    the United States of America entitles the government to no

7    greater consideration than that accorded to any other party to

8    a litigation.  And, by the same token, the government is

9    entitled to no less consideration.  All parties, whether the

10   government or individuals, stand as equals at the bar of

11   justice.

12         Now, it is the duty of the attorney for each side of the

13   case to object when the other side offers testimony or evidence

14   that the attorney believes is not proper.  The Court has the

15   obligation to rule upon those objections and may even request

16   conferences out of your hearing as we have done a few times.

17         I decide the questions of law.  You should not show any

18   prejudice against an attorney or the client because the

19   attorney may have objected to admissibility of evidence or

20   asked for a conference out of the hearing of you, the jurors.

21         I have indicated my rulings on the admissibility of the

22   evidence do not indicate any opinion on my part about the

23   weight or the effect of the evidence.  Again, you are the sole

24   judges of the credibility of the witnesses and the weight and

25   effect of all the evidence.

1          Now, your verdict has to be based on evidence developed

2     at the trial or any lack evidence, and it would be improper for

3     you in reaching your decisions as to whether the government has

4     sustained its burden of proof to allow any personal feelings

5     you may have about the defendant's race, religion, national

6     origin, sex, or age to enter into your considerations.  All

7     persons are entitled to the presumption of innocence.  The

8     government has the burden of proof, and I will talk more about

9     that momentarily.

10         It is equally improper for you to allow any feelings that

11    you may have about the nature of the crime to interfere with

12    your decision-making process.

13         Again, your verdict has to be based exclusively on the

14    evidence or lack of evidence in the case.

15         Under your oath as jurors, you are not to be swayed by

16    sympathy.  You are supposed to be guided solely by the evidence

17    in the case, and the crucial, hard-core question you have to

18    ask yourselves as you sift through the evidence is whether the

19    government has proven the guilt of this defendant beyond a

20    reasonable doubt.

21         And it's up to you to decide alone whether the government

22    has proven the defendant guilty of the crimes charged on the

23    basis of the evidence solely, and, again, subject to the law

24    that I am giving to you.  And it should be clear to you that if

25    you let fear or prejudice or bias or sympathy interfere with

1  your thinking, then there is a risk that you will not arrive at

2  a true and just verdict.

3      If you have a reasonable doubt as to the defendant's

4  guilt, then you should not hesitate for any reason to find a

5  verdict of acquittal, that is, not guilty.  On the other hand,

6  if you should find that the government has met its burden of

7  proving the defendant's guilt beyond a reasonable doubt, you

8  should not hesitate because of sympathy or any other reason to

9  render a verdict of guilty.

10      And, of course, you are asked to decide whether or not

11  the defendant -- sorry, whether or not the government has

12  proven beyond a reasonable doubt the guilt of the defendant who

13  is before you.  You are not asked whether any other person has

14  been proven guilty.  Your verdict should be based solely on the

15  evidence or lack of evidence as to this defendant in this case

16  in accordance with my instructions and without regard to

17  whether the guilt of other persons has or has not been

18  established.

19      Now, during your deliberations, you should not discuss or

20  provide information about the case with anyone except, of

21  course, with your fellow jurors while deliberating.  And this

22  means discussing the case in person, in writing, by phone, by

23  electronic means, text messaging, email, Facebook, LinkedIn,

24  Twitter, blogging, Internet chat room, website, or any other

25  feature.  In other words, do not talk to anyone by any means,

1    correspond with them by any means, or communicate by electronic

2    means or otherwise with anybody in the case except, of course,

3    you may talk with your fellow jurors during the period that you

4    are in the jury room.

5         If you are asked or approached in any way about your jury

6    service or anything about the case, you should respond that you

7    have been ordered by the judge not to discuss the case, and you

8    should report the contact to the Court as soon as possible.

9         Along the same lines, you should not try to access any

10   information about the case or do any research on any issue that

11   arose during the trial from any outside source, dictionaries,

12   reference books, or anything on the Internet.  You should not

13   access them.

14        Information that you find on the Internet or printed

15   reference might be incorrect or incomplete.  In our court

16   system, it's important that you not be influenced by anyone or

17   anything outside the courtroom.  Your sworn duty is to decide

18   this case solely and wholly on the evidence presented to you in

19   the courtroom.

20        Now, although the defendant has been indicted, that is,

21   charged with a superseding indictment, you must remember that

22   an indictment is only an accusation.  It's not evidence.  The

23   defendant has pled not guilty to the indictment.

24        And as a result of his plea of not guilty, the burden is

25   on the prosecution, the government to prove his guilt beyond a

1  reasonable doubt.  This burden never shifts to a defendant for

2  the simple reason that the law does not impose upon a defendant

3  in a criminal case the burden or duty of calling any witnesses

4  or producing any evidence.

5       The law presumes a defendant to be innocent of all the

6  charges against him or her, and I instruct you that this

7  defendant is presumed by you to be innocent throughout your

8  deliberations until such time, if ever, you, as a jury, are

9  satisfied that the government has proven the defendant's guilt

10  beyond a reasonable doubt.

11       The defendant begins the trial here with a clean slate.

12  The presumption of innocence alone is sufficient to acquit a

13  defendant unless you, as jurors, unanimously are convinced

14  beyond a reasonable doubt of the defendant's guilt, and this

15  would be after a careful and impartial consideration of all the

16  evidence in the case.  If the government fails to sustain its

17  burden as to the defendant, you must find the defendant not

18  guilty.

19       This presumption of innocence was with the defendant when

20  the trial began.  It remains with him even now as I speak.  It

21  will continue with him into your deliberations unless and until

22  you are convinced that the government has proven the

23  defendant's guilt beyond a reasonable doubt.

24       Now let's talk about some of the different kinds of

25  evidence.  In deciding whether or not the government has met

1    its burden of proof, you may consider both direct evidence in

2    the case and what we call circumstantial evidence.  Direct

3    evidence is evidence that proves a disputed fact directly.  For

4    example, a witness says this is what I saw, this is what I

5    smelled, this is what I heard, et cetera.  That's direct

6    evidence.

7         Circumstantial evidence tends to prove a disputed fact by

8    proof of other facts.  An example is if when you came into the

9    courtroom today, it was sunny outside, and then, during the

10   course of the proceedings, somebody comes in with a wet

11   umbrella, you can say that, based on the facts, you didn't see

12   it raining, but you might reasonably infer that it was raining

13   outside from the wet umbrella.  And that's really what

14   circumstantial evidence is.

15        Using your reason and experience, you infer from

16   established facts the existence or non-existence of some other

17   fact.  And note this is not a matter of speculation or guess;

18   it's a matter of logical inference.

19        The law makes no distinction between direct and

20   circumstantial evidence.  Circumstantial evidence is of no less

21   value than the direct evidence.  The fact is you may consider

22   either or both and may give them such weight as you conclude is

23   warranted.

24        But whatever evidence the government presents, of course,

25   it still must prove each element of a particular offense beyond

1    a reasonable doubt.

2        I used the word "inference," so let me say a word about

3    that.  You will hear the attorneys use the word "inference,"

4    and they may say so in their arguments, and on the basis of

5    your reason and experience, you may, from one established or

6    more established facts, infer the existence of another fact.

7        An inference is not a suspicion or guess.  It's a

8    reasoned, logical decision to conclude that a disputed fact

9    exists on the basis of some other fact that you know exists.

10   And there are times when different inferences may be drawn from

11   facts whether proved by direct or circumstantial evidence.  The

12   government may ask you to draw certain inferences, while the

13   defense may ask you to draw other inferences, and you and you

14   alone have to decide what inferences, if any, you will draw.

15       Again, the process of drawing inferences from facts in

16   evidence is not a matter of guesswork or speculation.  An

17   inference is a deduction or conclusion that you, the jury, are

18   permitted to draw, you are not required to draw, from the facts

19   that have been established either by direct or circumstantial

20   evidence.  Of course, in drawing inferences, you should

21   exercise your common sense.

22       So, while you are considering the evidence presented to

23   you, again, you are permitted to draw, from facts that you find

24   to be proven, such reasonable inferences as would be justified

25   in light of your experience.

1          And, again, whether we are talking about direct or

2     circumstantial evidence or the logical, reasonable inferences

3     that would be based on such evidence, you would have to be

4     satisfied of the guilt of the defendant beyond a reasonable

5     doubt before you may convict.

6          Now, the evidence in the case consists of the sworn

7     testimony of witnesses and the exhibits received in evidence

8     and stipulations.

9          There have been no exhibits, as I recall, Mr. Baldwin,

10    that were simply marked and not offered.  Is that correct?

11               MR. BALDWIN:  Again, Your Honor.

12               THE COURT:  There were no exhibits that were marked

13    and not entered into evidence?

14               MR. BALDWIN:  All the exhibits were entered into

15    evidence.

16               THE COURT:  All right.  And I don't know that I told

17    you to disregard any testimony either.  To the extent that you

18    recall that I did, you should disregard it.

19          In any event, consider the evidence in light of your

20    common sense and experience and draw reasonable inferences as

21    may be appropriate from the evidence.

22          And, again, anything you may have seen or heard about the

23    case outside the courtroom is not evidence and it must be

24    entirely disregarded.

25          And the fact that one party called more witnesses or

1   introduced more evidence from the other does not mean you

2   should necessarily find the facts on the side of the party

3   offering the most witnesses or more witnesses.  By the same

4   token, you don't have to accept the testimony of any witness

5   who has testified who has not been contradicted or impeached if

6   you find the person is not credible.

7          You also have to decide which witnesses to believe and

8   which facts are true.  You do -- to do this, you look at all

9   the evidence, draw on your common sense and personal

10  experience, and after examining all the evidence, you may

11  decide that the party calling most of the witnesses has not

12  persuaded you because you don't believe the witnesses or

13  because you believe fewer witnesses.

14         In a moment, I will talk to you about the criteria for

15  evaluating -- evaluating credibility, but keep in mind the

16  burden of proof is always on the government.  The defendant is

17  not required to call any witnesses or offer any evidence since

18  he is presumed to be innocent.

19              MR. BALDWIN:  Your Honor, if I may?  You asked me a

20  question about exhibits marked for identification but not

21  accepted.  We did refer to two exhibits, R1 and R2, that were

22  identified.

23              THE COURT:  Well, if there were exhibits that were

24  not received in evidence, then they are not to be considered by

25  you and they won't be sent back for your consideration.

1           MR. BALDWIN:   Thank you, Your Honor.

2           THE COURT:   Now, again, I need to restate that

3    questions that a lawyer asks are not evidence.  The lawyer may,

4    on cross-examination, have said, Do you know thus and so and

5    thus and so?, assuming certain facts to be true in the

6    question, and asked the witness if it was true.  If the witness

7    denies the truth of the statement and there is no other

8    evidence proving that point, then you may not consider the fact

9    to be true simply because the lawyer asked it in his question.

10   But, of course, if the answer is yes, then you may accept that

11   as evidence.

12          Questions are not evidence.  Answers are.

13          Now, a stipulation is an agreement among the parties,

14   between the parties that a certain fact is true.  You should

15   regard such agreed facts as true.  And there is a stipulation

16   in the case, which you will hear more about from counsel.

17          Now, you have also heard testimony in the case regarding

18   evidence seized by the government during the search of a

19   residence.  You are instructed that it is the responsibility of

20   the Court, that is me, the Court alone to decide the validity

21   and legality of those searches and seizures, and the Court has

22   already determined that the searches and seizures of evidence

23   in this case were valid and legal, so it's up to you to decide

24   what significance, if any, the evidence that was actually

25   seized may have in the case, but not the fact that whether the

1   seizure was lawful or not.

2        During the trial, you have heard testimony of witnesses

3   and argument -- you will hear argument by counsel that the

4   government may not have utilized certain specific investigative

5   techniques; for example, chemical analysis may not have been

6   done on every item seized, and you may consider these facts in

7   deciding whether the government has met its burden because, as

8   I told you, you should look at all the evidence or lack of

9   evidence in determining whether the defendant is guilty or not

10  guilty.  But you are also instructed that there is no legal

11  requirement that the government use any of these specific

12  investigative techniques to prove its case.  For example, there

13  is no attempt to take fingerprints here.  I think, actually,

14  there was some DNA evidence, though, that was put in, but, for

15  example, if fingerprint evidence was not taken, there would be

16  no legal requirement to have done so.

17       The law does not require the prosecution to call as

18  witnesses all persons who have been -- may have been present at

19  any time or at a place involved in the case or who may appear

20  to have some knowledge of matters at issue in the trial.  Nor

21  does the law require the prosecution to produce as exhibits all

22  papers and all things that may have been mentioned in evidence.

23       Now, the government has presented an exhibit in the form

24  of a summary which has been admitted as evidence, and you

25  should consider the summary as you would any other evidence in

1    the case.

2         The government has also offered in the form of --

3    evidence in the form of recordings of conversations with the

4    defendant.

5         A government witness stated his understanding of who the

6    speaker was and what was said; however, you will have the disk

7    to listen to the recording yourself to make your own

8    determination.  You should alone make your own determination of

9    what appears on the recording based on what you heard.  And if

10   you think you heard something different than what -- than was

11   the subject of the testimony by the witness, then it's what you

12   heard that is controlling.

13        And, again, you are, as the jury, the judges of the facts

14   in this case.

15        Now, there has been evidence that the defendant made

16   certain statements in which the government claims he admitted

17   certain facts charged in the indictment.  In deciding what

18   weight, if any, to give to the defendant's statements, you

19   should first examine with great care whether the statement was,

20   in fact, made and whether, in fact, it was voluntarily and

21   understandingly made.  And I instruct you that you are to give

22   the statements such weight as you feel they deserve in light of

23   all the evidence.

24        Now let's talk a little bit about witness credibility,

25   believability.  You have had an opportunity to observe all the

witnesses, and your job now is to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and the importance of that witness' testimony.

It should be clear to you by now that you are being called to resolve various factual issues under the superseding indictment in the face of what will be pointed out to you as very different pictures by the government, by defense counsel, and may not be reconcilable.  But you have to decide where the truth lies, and an important part of that decision will involve making judgments about the testimony of the witnesses that you have listened to and observed.  In making these judgments, you should carefully scrutinize all the testimony of each witness, the circumstances under which each witness has testified, and any other matter in evidence that may help you decide the truth and the importance of each witness' testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you.  Was the witness candid, frank, and forthright?  Or did the witness seem as if he or she was hiding something, being evasive, or suspect in some way?  How did the way the witness testified on direct examination compare with the way the witness testified on cross-examination?  Was the witness consistent in his or her testimony or did he or she contradict himself or herself?  Did the witness appear to know what he or she was talking about and

Case 8:16-cr-00403-PJM Document 244 Filed 08/13/21 Page 38 of 145

1 did the witness strike you as someone who was trying to report
2 his or her knowledge accurately?
3        How much you choose to believe a witness may be
4 influenced by the witness' bias.  Does the witness have a
5 relationship with the government or the defendant which may
6 affect how he or she testified?  Does the witness have some
7 incentive, loyalty, or motive that might cause him or her to
8 shade the truth?  Does the witness has some bias, prejudice, or
9 hostility that may have caused the witness, consciously or not,
10 to give you something other than a completely accurate account
11 of the facts testified to?
12        And even if the witness was impartial, you should
13 consider whether the witness had an opportunity to observe the
14 facts that he or she testified about.  You should consider the
15 witness' ability to express himself or herself.  And ask
16 yourselves whether the witness' recollection of the facts
17 stands up in light of all the evidence.  In other words, what
18 you have to do in deciding credibility in witnesses is to size
19 the person up in light of his or her demeanor, the explanations
20 given, in light of all the evidence in the case, just as you
21 would in any important matter where you are trying to decide
22 whether a person is truthful, straightforward, and accurate in
23 his or her recollections.  And in deciding the question of
24 credibility, remember to use your common sense, your good
25 judgment, and your experience.

1          Inconsistencies or discrepancies in the testimony of a

2    witness or between the testimony of different witnesses may or

3    may not cause you to discredit that testimony.  Two or more

4    persons witnessing an incident or transaction may see or hear

5    it differently.  An innocent misrecollection, like a failure of

6    recollection, is not an uncommon experience.  In weighing the

7    effect of a discrepancy, always ask yourself whether it

8    pertains to a matter of importance or an unimportant detail and

9    whether that discrepancy results from an innocent error or

10   intentional falsehood.

11         Throughout the trial, you heard witnesses testify to

12   facts that they may have failed to mention earlier or omitted

13   prior statements, and you may consider any prior omission as

14   inconsistent statements when deciding the credibility of the

15   witness.  In deciding what effect to give to such an omission,

16   you should consider whether the omitted facts or fact is

17   important or unimportant as to detail and whether it is of the

18   type that one would normally expect someone to remember when

19   asked about it.

20         You should consider any explanation by the witness to

21   explain any omission and consider the explanation as you would

22   in any other aspect of a witness' testimony.  And you should

23   also consider whether the witness had a full and complete

24   opportunity to explain everything on an earlier occasion.  An

25   omission from a statement, like any inconsistency in testimony,

1   may result from an innocent failure of recollection or it may

2   result from a deliberate falsehood.

3       If you find that a witness has testified willfully and

4   falsely with respect to any matter of the trial, you may choose

5   to reject any part or all of that witness' testimony.

6       After making your judgment, you should give the testimony

7   of each witness such credibility as you think is fairly -- it

8   is fairly entitled to.

9       Now, still staying on the issue of evaluating the

10  credibility of witnesses, you should take into account any

11  evidence that the witness who testified may benefit in some way

12  from the outcome of the case.  Such an interest in the outcome

13  creates a motive to testify falsely and may sway the witness to

14  testify in a way that advances his or her own interests.  And,

15  therefore, if you find that any witness whose testimony you are

16  considering may have an interest in the outcome of the trial,

17  you should bear that factor in mind when evaluating the

18  credibility of that witness' testimony.  You should accept it

19  with great care.

20      This is not to suggest that every witness who has an

21  interest in the outcome of a case will testify falsely.  You

22  have to decide to what extent, if at all, the witness' interest

23  may have affected or colored his or her testimony.

24      Now, the defendant did not testify in this case.  And

25  under our Constitution, the defendant has no obligation to

1  testify or to present any other evidence because it is the

2  government's burden to prove a defendant guilty beyond a

3  reasonable doubt.  This burden remains with the prosecution

4  throughout the trial.  It never shifts to the defendant.  The

5  defendant is never required to prove that he or she is

6  innocent.

7       You may not attach any significance to the fact that the

8  defendant did not testify.  No adverse inference against him

9  may be drawn by you because he did not take the witness stand.

10  You may not consider this in any way in your deliberations

11  during -- in the jury room.

12       Now, in this case, I have permitted certain witnesses to

13  express their opinions about matters that are in issue.  A

14  witness may be permitted to express an opinion on matters about

15  which the witness has special knowledge, skill, and experience

16  and training.  This testimony is presented to you on the theory

17  that someone experienced and knowledgeable in the field can

18  assist you in understanding the evidence or in reaching an

19  independent decision on the fact.

20       But in weighing this opinion testimony, you should

21  consider the witness' qualifications, his or her opinions, the

22  reasons for testifying, as well as all other conversations that

23  ordinarily apply when you are deciding whether or not to

24  believe a witness.  You may give the opinion testimony whatever

25  weight, if any, you find it deserves in light of all the

1   evidence in the case, but you should not accept opinion

2   testimony merely because I allowed the witness to testify

3   concerning his or her opinion.  Nor should you substitute it

4   for your own reason, judgment, and common sense.  As I have

5   said several times, the determination of the facts in the case

6   rests solely with you.

7         You have heard testimony of law enforcement officials.

8   And the fact that a witness may be employed by the state or by

9   the federal government as a law enforcement official does not

10  mean that the testimony is necessarily deserving of more or

11  less consideration or greater or lesser weight than the

12  testimony of an ordinary witness.

13        At the same time, it's quite legitimate for defense

14  counsel to attack credibility of a law enforcement witness on

15  the grounds that the testimony may be colored by a personal or

16  professional interest in the outcome of the case.

17        It's your decision, after reviewing all the evidence,

18  whether to accept the testimony of the law enforcement witness,

19  and you give it whatever weight you think it deserves.

20        Give me a moment to re-fuel here.

21        The defendant, Tiba Sakuri Conley, is charged with crimes

22  that I will tell you about shortly.  Each charge is called a

23  "count," and I will refer to each count by number, the one

24  assigned to it in the charging instrument, which we call the

25  superseding indictment.  A superseding indictment is merely a

1    statement of charges.  It is not itself evidence.  It merely

2    describes the charges made against the defendant.  It is an

3    accusation.  It may not be considered by you as any evidence of

4    the guilt of the defendant.

5         In reaching your determination about whether the

6    government has proven the defendant guilty beyond a reasonable

7    doubt, you may consider only the evidence introduced or lack of

8    evidence in the case.

9         Now, the superseding indictment contains a total of three

10   counts.  Each count charges the defendant with a different

11   crime.  You must consider each count separately and return a

12   separate verdict of guilty or not guilty as to each.  Whether

13   you find the defendant guilty or not guilty as to one offense

14   should not affect your verdict as to any other offense charged.

15        The defendant is not charged with any other crimes other

16   than the offenses that are contained in the superseding

17   indictment.

18        Now, while we are on the subject of the elements of the

19   offenses, which I will get to in a second, I draw your

20   attention to the fact that it doesn't matter if the superseding

21   indictment charges that a specific act occurred on or about a

22   certain date, and the evidence may, in fact, indicate that it

23   was another date.  The law only requires a substantial

24   similarity between the dates alleged in the superseding

25   indictment and the date or dates established by the testimony

1    or exhibits.

2          And, again, you may not draw any inference, favorable or

3    unfavorable, towards the government or defendant on trial from

4    the fact that certain persons were not named as defendants in

5    the superseding indictment.  The circumstances that these

6    persons are not in trial must play no part in your

7    deliberations.  And whether a person should be named as a

8    coconspirator or indicted as a defendant is a matter solely

9    within the discretion of the U.S. Attorney and the Grand Jury.

10   So you may not consider the fact that no other persons have

11   been charged in the superseding indictment.  You may not in any

12   way consider that in reaching your verdict as to the defendant

13   who is on trial.

14         Now let me introduce you to the charges in the case.  We

15   are going to consider the charges with -- that the defendant

16   faces.  Let's say, generally first, a crime consists of two

17   principal parts: a criminal intent and a criminal act.

18         So let me just talk about intent generally for a moment.

19   Generally, the intent to do something means that someone knows

20   what he's doing and it does it on purpose.  And for each of the

21   crimes charged in this case, the government must show, beyond a

22   reasonable doubt, that with regard to the criminal act charged,

23   the defendant knowingly sought to do the illegal act charged,

24   and I am going to tell you what I mean by "knowingly" now.

25         In order to sustain its burden of proof, the government

has to prove that the defendant acted knowingly.  A person acts knowingly if he acts intentionally and voluntarily, not because of ignorance, mistake, accident, or carelessness.  Whether a defendant acted knowingly may be proven by the defendant's conduct and by all the facts and circumstances surrounding the case.

Now, knowledge and intent involve the state of a person's mind.  And it's often been said to juries that the state of one's mind is a fact in the case as much as the state of someone's digestion.  Accordingly, this is a fact that you need to decide upon.

Medical science has not yet devised an instrument that tells us what was in a person's mind in the distant past. Rarely is direct proof available to establish the state of mind of a person.  But the state of mind of a person may be inferred from what the person says or does by words, actions, or conduct as of the time of the occurrence of certain events.

The intent with which an act is done is often more clearly and conclusively shown by the act itself, or by a series of acts, rather than by words or explanations to the act uttered long after its occurrence.  Accordingly, intent and knowledge are usually established by surrounding facts and circumstances as of the time the acts in question occurred or the events took place, and, of course, any reasonable inferences that you may draw from that.

1          All right.  Let's turn to the first charge.  The

2     defendant has charged the -- sorry.  The government has charged

3     the defendant in Count One with possession with intent to

4     distribute controlled substances.  This is what Count One of

5     the superseding indictment reads:  The Grand Jury for the

6     District of Maryland charges that on or about April 21, 2016,

7     in the District of Maryland, the defendant, Tiba Sakuri Conley,

8     knowingly possessed with intent to distribute, one, 28 grams or

9     more of a mixture and substance containing a detectable amount

10    of cocaine base, a Schedule II controlled substance; and, two,

11    that he knowingly possessed with intent to distribute a

12    quantity of a mixture and substance containing a detectable

13    amount of cocaine, a Schedule II controlled substance.

14         These charges are brought under Title 21, U.S. Code,

15    Section 841(a), which makes it a crime for, quote, any person

16    knowingly or intentionally to possess with intent to distribute

17    a controlled substance.

18         I might say I see a few of you taking profuse notes.  You

19    are each going to have a copy of these instructions in writing,

20    so don't worry about getting all the specific notations.  And I

21    am speaking them a little more casually than the formal written

22    form but the substance of each of the instructions, which will

23    be in writing, and each of you will have a copy so you don't

24    have to pass it around, and you can consult them as you need

25    to.

1         So that was the first element with regard to the first

2    crime of possession with intent to distribute.

3         Sorry.  That is the -- the crime itself.

4         Here are the elements that has -- that have to be proven

5    in regard to possession with intent to distribute the

6    controlled substance.  The government must prove each of the

7    following elements beyond a reasonable doubt in order to prove

8    that the defendant is guilty of Count One:  first, that he

9    possessed a controlled substance; second, that he knew that he

10   possessed a controlled substance; and, third, that the

11   defendant intended to distribute the controlled substance.

12   Both cocaine base and cocaine, you are advised, are controlled

13   substances.

14        So the first element, then, is possession of the drugs.

15   The first item for you to consider, then, is whether the

16   defendant possessed cocaine base or cocaine or both of these

17   controlled substances.  That is, the government must prove that

18   the defendant -- the materials charged, that the defendant

19   possessed them, and that they were, in fact, cocaine base or

20   cocaine.

21        The government may prove this through direct or

22   circumstantial evidence.  An example of direct evidence is the

23   testimony of a chemist who has done a chemical analysis of the

24   material.  Circumstantial evidence would be evidence from which

25   you can infer that the material was a particular drug, such as

1   testimony concerning the names used by buyers or sellers to
2   refer to the material or testimony about the material's
3   appearance.  Whether the government relies on direct or
4   circumstantial evidence to prove that the material was either
5   cocaine base or cocaine or both, it must prove it beyond a
6   reasonable doubt.
7        Now a few more words about possession.  To convict
8   someone of possession with intent to distribute controlled
9   substances, you must find the defendant possessed the drugs.
10  The legal concept of possession differs in some respects from
11  everyday usage of the term, so let me explain.
12       Actual possession is what most people think about as
13  possession; that is having physical custody or control over an
14  object.  For example, if you find a defendant had drugs on his
15  person, you might find that he had it in his possession.  But a
16  person need not have actual physical custody of the object in
17  order to be in legal possession of it.  If an individual has
18  the ability and intent to exercise substantial control over an
19  object that he doesn't have in his physical custody, then he is
20  in legal possession of that item.
21       And an example from everyday experience would be a
22  person's possession of items that he keeps in a safe deposit
23  box in the bank.  Although the person doesn't have physical
24  custody of those items, he does exercise substantial control
25  over them, so he has legal possession of them.

1        And it may be that possession is sole or joint.  If one

2   person alone possesses something, that's sole possession.  It

3   is possible that more than one person may have power and intent

4   to exercise control over drugs, and that would be called joint

5   possession.  And if you find that the defendant had such power

6   and intention, then he possessed the drugs under this element

7   even though it was possessed jointly with some other person.

8        A defendant may own or have control over the place where

9   the narcotics are found, such as an apartment or a vehicle.

10  And when the defendant is the sole person having ownership or

11  control, this control is significant evidence of the

12  defendant's control over the drugs themselves and the

13  possession of the drugs.  And you should note, however, that

14  the defendant's sole ownership of a residence or vehicle or --

15  does not necessarily mean that the defendant had control or

16  possession of the drugs found within it.

17       Possession of the drugs cannot be found solely on the

18  ground that the defendant was near or close to the drugs.  Nor

19  can it be found simply because the defendant was present at a

20  scene where drugs were involved or solely because the defendant

21  associated with someone who did control the drugs or the

22  property where they were found.  But these factors may be

23  considered by you in connection with all other evidence in the

24  case in making your decision as to whether the defendant

25  possessed drugs.

1          The second element of this first count is that the

2     defendant knew that the drugs were narcotics.  The government

3     has to prove this beyond a reasonable doubt.  If you find that

4     the defendant possessed drugs, then you must determine whether

5     he knew that he possessed illegal drugs.

6          And to establish this element, the government must prove

7     that the defendant knew that the possessed illegal drugs --

8     that he possessed illegal drugs, that his possession was not

9     due to carelessness, mistake, or negligence.  And if you find

10    that the defendant did not know that what he possessed was

11    drugs, then you would have to find him not guilty.

12         Although the government must prove that the defendant

13    knew that he possessed a controlled substance, the government

14    does not have to prove that the defendant knew the exact nature

15    of the drugs in his possession.  It is enough that the

16    government proves that the defendant knew that he possessed

17    some kind of illegal drug.

18         Let me say something about a method of proving knowledge.

19    Your decision about whether the defendant knew the materials he

20    possessed were controlled substances involves the decision

21    again about his state of mind.  Obviously, it is impossible to

22    prove directly the operation of the defendant's mind.  But a

23    wise and intelligent consideration of all the facts and

24    circumstances shown by the evidence may enable you to infer

25    what a defendant's state of mind was.

1    In our everyday affairs, we continuously are called upon
2    to decide upon the actions of others based on what their state
3    of mind is.  Experience has taught that, frequently, actions
4    speak louder and more clearly than spoken words or written
5    words, and, therefore, you may well rely in part on
6    circumstantial evidence to determine the defendant's state of
7    mind.

8    For example, if a defendant was the sole occupant of a
9    residence or vehicle, it's reasonable to conclude that the
10   defendant knew about the items in the residence or vehicle.

11   A defendant's behavior may also indicate knowledge.
12   Nervousness in the presence of drugs or flight from the sight
13   at which authorities have identified drugs may indicate that a
14   defendant knew that the materials in question were controlled
15   substances.  And, also, the possession of a large quantity of
16   drugs may indicate that a defendant knew what he had in his
17   possession.  These are only illustrative.  They are not
18   exhaustive examples.  It's up to you, based on all the
19   evidence, to determine whether the defendant knew that he
20   possessed controlled substances.

21   The third element on this count is the intent to
22   distribute.  And if you find that a defendant knowingly
23   possessed illegal drugs, then you have to decide whether the
24   defendant intended to distribute them.  And to prove this third
25   element, the government must prove, beyond a reasonable doubt,

1      that the defendant had control over the drugs with the state of

2      mind or purpose to transfer them to another person.

3             And since, again, you can't see within the defendant's

4      mind, you may make inferences from his behavior, but you may

5      not convict the defendant unless the inferences convince you

6      beyond a reasonable doubt that the defendant intended to

7      distribute the drugs.  And the same considerations that apply

8      to your determination as to whether the defendant knew he

9      possessed the drugs would apply to your decision concerning his

10     intention to distribute them.

11            And when I say you must find the defendant intended to

12     distribute the drugs, this doesn't mean you must find that a

13     defendant intended personally to distribute or deliver the

14     drugs.  It's sufficient that you find that the defendant

15     intended to cause or assist in the distribution of the drugs.

16            The word "distribute" means to deliver a controlled

17     substance.  "Deliver" is defined as the actual, constructive,

18     or attempted transfer of a controlled substance.  Simply

19     stated, the words distribute and deliver mean to pass on, to

20     hand over to another, to cause to be passed on or handed over

21     to another, to try to pass on or hand over to another, in this

22     case, narcotics.

23            If A tells B to hand over the drugs to C, then A caused

24     the drugs to be handed over, he has distributed them.

25            Distribution does not require a sale.  Any activities in

1   furtherance of the ultimate sale, such as vouching for the

2   quality of the drugs, negotiating for or receiving the price,

3   and supplying or delivering the drugs may constitute

4   distribution.  In short, distribution requires a concrete

5   involvement in the transfer of drugs.

6        Basically, what you are determining is whether the drugs

7   that were in the defendant's possession were for his personal

8   use or for the purpose of distribution.  And often it's

9   possible to make this determination based on the quality of the

10  drugs found in the defendant's possession.

11       The possession of a large quantity of drugs does not

12  necessarily mean a defendant intended to distribute them.  And,

13  on the other hand, the defendant may have intended to

14  distribute drugs even if he did not possess a large quantity of

15  them.  Other physical evidence, such as paraphernalia for

16  packaging or processing drugs, may show an intent.  And,

17  therefore, there might also be evidence of a plan to

18  distribute.  You should make your decision whether defendant

19  intended to distribute the drugs in his possession from all the

20  evidence presented.

21       Let's move to Count Two, which is possession of a firearm

22  in furtherance of a drug trafficking offense.  Count Two of the

23  superseding indictment charges the defendant with a firearm in

24  furtherance of a drug trafficking offense.  This is what Count

25  Two reads in the superseding indictment:  On or about April 21,

2016, in the District of Maryland and elsewhere, the defendant, Tiba Sakuri Conley, knowingly possessed firearms, that is, one, a Springfield Armory Model XD-45ACP, .45 caliber semiautomatic pistol bearing Serial Number XD676779; second, a Masterpiece Arms, Model 10, .45 caliber semiautomatic pistol bearing Serial Number A12487; three, a Del-Ton Inc, Model DTI-15, 5.56 x 45 millimeter semiautomatic rifle bearing Serial Number DTI-S030977; four, a Yugoslavia, Model 59/66, 7.62 x 39 millimeter semiautomatic rifle bearing Serial Number 0604530, and that these items were possessed in furtherance of the drug trafficking crime for which he may be prosecuted in a court of the United States, that is, possession with intent to distribute controlled substances in violation of 21, United States Code, Section 841(a)(1), as charged in Count One of the superseding indictment and incorporated in that count of the superseding indictment.

This is Title 18, U.S, Code, Section 924(c) which provides that any person who in furtherance of any drug trafficking crime for which the person may be prosecuted in a court of the United States possesses a firearm shall be guilty of a crime.

Now, there is a limiting instruction that I give you at this point.  Under Count Two, the defendant is charged with possessing a firearm in furtherance of a -- of the drug trafficking crime that was charged in Count One.

1      And if, upon all the evidence, you find that the

2  government has failed to prove Count One beyond a reasonable

3  doubt, then you should proceed no further in considering Count

4  Two.  Count Two should be considered only if you find the

5  defendant guilty under Count One as charged.

6      In reaching your verdict on Count Two, you should not

7  conclude that merely because you have determined the defendant

8  is guilty of Count One, that he is automatically guilty of

9  Count Two.  You must consider all the elements of Count Two.

10 And so what are they?

11     The government, as to Count Two, has to prove each of the

12 following elements beyond a reasonable doubt: first, that the

13 defendant committed the drug trafficking crime charged in Count

14 One, which is a crime for which he may be prosecuted in a court

15 of the United States; and, second, that the defendant knowingly

16 possessed a firearm or firearms in furtherance of the drug

17 trafficking crime charged in Count One.

18     And you are instructed that a firearm is any weapon which

19 will, or is designed to, or may be readily converted to expel a

20 projectile by the action of an explosive.

21     The first element then.  The first element the government

22 must prove beyond a reasonable doubt is that the defendant

23 committed a drug trafficking crime for which he might be

24 prosecuted in a court of the United States.

25     The defendant is charged in Count One, as you heard, with

1    possession of cocaine base and cocaine with intent to

2    distribute.  Now, I instruct you that the crime charged in

3    Count One is a drug trafficking crime.  It is for you to

4    determine whether the government has proven beyond a reasonable

5    doubt that the defendant committed the crime charged in Count

6    One of the superseding indictment.

7         The second element is that there was possession of the

8    firearm in furtherance of a drug trafficking crime, and that is

9    the second element that the government must prove beyond a

10   reasonable doubt.

11        I have defined "knowing possession" for you.  To satisfy

12   this element, you need to find that the defendant possessed the

13   firearm knowingly, which means he possessed the firearm

14   purposely and voluntarily and not by accident or mistake.  It

15   also means that he knew that the weapon was a firearm as we

16   commonly use the word.

17        To possess a firearm in furtherance of the drug

18   trafficking offense simply means that the firearm helped

19   forward, facilitate, or advance the commission of the crime of

20   drug trafficking in Count One.  The mere possession of the

21   firearm at the scene of the crime is not sufficient under this

22   definition, that is, the presence of the firearm cannot be

23   merely coincidental to the drug trafficking crime.

24        Possessing a gun, quote, in furtherance, end quote, of a

25   drug trafficking offense includes, but is not limited to,

having the firearm to defend against someone trying to steal drugs or profits, defending drug turf, or serving as protection in the event that a drug deal goes sour.

In determining whether the defendant possessed a firearm in furtherance of the drug trafficking offense, you may consider all the facts received in evidence, including, but not limited to, the nature of the underlying drug trafficking alleged, the accessibility of the firearm, the proximity of the firearm -- of the defendant to the firearm in question, the proximity of drugs or drug proceeds to the firearm or firearms in question, the usefulness of the firearm in furthering the crime alleged, the types and number of firearms used, whether the gun was legitimately owned or registered to the defendant, whether the gun was loaded, and the time and circumstances under which the gun was found.

The government is not required that the defendant -- show that the defendant actually displayed or fired any weapon.  The government is required, however, to prove beyond a reasonable doubt that a firearm was in the defendant's possession or under the defendant's control at the time that the drug trafficking crime was committed, and that the possession of the gun was not merely coincidental to a drug trafficking crime.

Now we are on to Count Three, and if you are still awake, stay with me and see if we can get this done.

Count Three of the superseding indictment charges that

1   the defendant possessed firearms and ammunition after having

2   been convicted of a crime punishable by imprisonment for a term

3   exceeding one year.

4        Count Three of the superseding indictment reads as

5   follows:  On or about -- the Grand Jury for the District of

6   Maryland heard the charges that on or about April 21, 2016, in

7   the District of Maryland, the defendant, Tiba Sakuri Conley,

8   knowing he had previously been convicted of a crime punishable

9   by imprisonment for a term exceeding one year knowingly

10  possessed firearms and ammunition, that is, a Springfield

11  Armory, Model XD-45ACP, .45 caliber semiautomatic pistol

12  bearing Serial Number XD676779; second, a Masterpiece Arms,

13  Model 10, .45 caliber semiautomatic pistol bearing Serial

14  Number A12487; third, a Del-Ton Inc, Model DTI-15, a 5.56 x 45

15  millimeter semiautomatic rifle bearing Serial Number

16  DTI-S030977; fourth, a Yugoslav, Model 59/66, 7.62 x 39

17  millimeter semiautomatic rifle bearing Serial Number 0604530;

18  five, 50 rounds of PMC Bronze .223 caliber ammunition; six, 39

19  rounds of PMC .45 caliber ammunition; seven, 30 rounds of

20  Winchester .45 caliber ammunition; eight, 14 rounds of Wolf

21  7.62 x 39 -- times 39 ammunition; nine, 11 rounds of JSC

22  Barnaul 7.62 x 39 ammunition; and, ten, four rounds of

23  Remington .45 caliber ammunition, and that both the firearms

24  and ammunitions I described were in and affecting commerce.

25       The relevant statute on this subject is 922(g) of Title

1   18 of the U.S. Code, which provides:  It shall be unlawful for

2   any person who has been convicted in any court of a crime

3   punishable by imprisonment for a term exceeding one year to

4   possess in or affecting commerce any firearm or ammunition.

5       Now, the elements of the offense of this particular crime

6   that the government must prove beyond a reasonable doubt are,

7   first, the defendant was convicted in any court of a crime

8   punishable by imprisonment for a term exceeding one year as

9   charged and that the state has not restored the defendant's

10  civil rights to possess a firearm following that conviction;

11  second, that as of the time of the charge -- the act charged in

12  this case, the defendant knew that he had previously been

13  convicted in court of a crime punishable by imprisonment for a

14  term exceeding a year; third element is that the defendant

15  knowingly possessed any firearm or any of the ammunition, or

16  any combination thereof, as charged; and, fourth, that the

17  possession was in or affecting interstate or foreign commerce.

18      So the first element is the prior conviction.  Now, the

19  first element that the government must prove beyond a

20  reasonable doubt is that prior to the date the defendant was

21  charged with possessing a firearm, he had been convicted of a

22  crime punishable by imprisonment for a term exceeding one year

23  and that the state had not restored his civil rights following

24  that conviction.

25      And the parties now have stipulated that, indeed, the

1  defendant was convicted of a crime punishable by imprisonment

2  for a term exceeding one year, that the conviction occurred

3  before the time he's charged to have been -- to have possessed

4  the firearm charged in the superseding indictment, and that his

5  civil rights were not restored.

6      To satisfy this element, you need only find beyond a

7  reasonable doubt that the defendant was, in fact, convicted of

8  a crime punishable by a term of imprisonment exceeding one year

9  and that the conviction was before the possession of any of the

10 firearms or any ammunition as charged in the indictment.  It's

11 not necessary for you -- for the defendant to have actually

12 been sentenced to imprisonment for more than one year, only

13 that the crime was punishable for more than one year.

14     I instruct you, in this connection, that the prior

15 conviction that is an element of the charge here is only to be

16 considered by you for the fact that it exists, for nothing

17 else.  You are not to consider it for any other purpose.  You

18 may not consider the prior conviction in deciding whether it is

19 more likely than not that the defendant was in knowing

20 possession of the firearms and ammunition charged.

21     The second element of the offense of felon in possession

22 is that the government has to prove beyond a reasonable doubt

23 that at the time of the charged act, he knew that he had been

24 convicted of a crime punishable by imprisonment for a term

25 exceeding one year.  And the parties, again, have stipulated

1   that, at the time of the charged act, the defendant knew that

2   he had previously been convicted of a crime punishable by

3   imprisonment for more than one year.

4           And the third element has to do with possession of the

5   firearm or ammunition which the government has to prove beyond

6   a reasonable doubt.

7           And a "firearm" is any weapon which will or is designed

8   to or may be readily converted to expel a projectile by the

9   action of an explosive.

10          "Ammunition" means ammunition or cartridges cases,

11  primers, bullets, or propellant powder designed for use in any

12  firearm.

13          Possession may be established with proof of either actual

14  or constructive possession.  Again, "possess" means something

15  within the person's control.  It may be actual possession,

16  having a physical control.  But constructive possession occurs

17  when the person exercises, or has the power to exercise,

18  dominion or control over an object.  And as long as the firearm

19  or ammunition is within the defendant's control, he is said to

20  possess it.

21          If you find that the defendant either had actual

22  possession of a firearm or ammunition or constructive

23  possession in that he exercised or had the power or intention

24  to exercise control, even though it was not in his physical

25  possession, you may find that the government has proven

1  possession.  Facts such as whether a residence or vehicle in

2  which a firearm or ammunition was found may be relevant to

3  whether the premises was occupied by the defendant, what was

4  the proximity of the firearm or ammunition to the defendant?,

5  those are among factors you may consider.  And, again, proof of

6  the possession may be either by direct or circumstantial

7  evidence.

8      The law also recognizes, as I discussed earlier, the

9  concept of sole or joint possession.  Even if the defendant was

10  not the sole possessor, if he possessed jointly with someone

11  else, then he is still deemed to have possessed.

12      To satisfy this element, as I say, you have to find the

13  defendant knowingly possessed one of the firearms or any item

14  of ammunition as charged.  So I previously instructed you this

15  means he possessed the firearm purposely and voluntarily, not

16  by accident or mistake, and it means that he knew that the

17  firearm was a firearm.  He knew that the ammunition was

18  ammunition.  It also means that he knew that the -- that there

19  was a firearm and that it was ammunition.  The government isn't

20  required to prove the defendant knew he was breaking the law

21  and is not required to prove that he knew the firearm travelled

22  or otherwise affected interstate or foreign commerce.

23      The fourth element, though, is that the firearm was in or

24  affecting commerce.  The government must prove this beyond a

25  reasonable doubt.

1          It must prove that at some time prior to the defendant's

2    possession, any firearm or ammunition that he knowingly

3    possessed had travelled in interstate or foreign commerce.  It

4    is sufficient for the government to satisfy this element by

5    proving that at any time prior to the date charged in the

6    superseding indictment, the firearm or ammunition crossed a

7    state line or the U.S. Border.  It's not necessary that the

8    government prove that the defendant himself carried it across a

9    state line, nor must the government prove who carried it across

10   the state line or how it was transported.  It's not necessary

11   for the government to prove the defendant knew that the firearm

12   or ammunition had previously travelled in interstate commerce.

13         In this regard, there has been evidence in the case that

14   the firearms and ammunition in question were all manufactured

15   outside the state of Maryland.  You are permitted to infer from

16   this fact that the firearm and ammunition travelled in

17   interstate commerce or foreign commerce, i.e., that it was in

18   or affecting interstate or foreign commerce; however, you are

19   not required to do so.

20         Now a few words as we end the finish line here.  The

21   question of possible punishment of the defendant is of no

22   concern to you, should not, in any sense, enter into your

23   deliberations or influence them.  The duty of imposing sentence

24   is exclusively upon me, upon the Court.  Your function is to

25   weigh the evidence in the case and to determine whether or not

1   the defendant is guilty beyond a reasonable doubt solely upon

2   the basis of such evidence.  And under your oath as jurors, you

3   can't allow consideration of punishment that might be imposed

4   on the defendant if he's convicted to influence your verdict in

5   any way or in any way to enter into your deliberations.

6       Now, you have a duty in the case to consider, as I say,

7   all of the evidence in the case, and if you determine that the

8   government has proved the essential elements required by the

9   requisite degree of proof, you should return the verdict of

10  guilty, and if the government has failed to do so, your verdict

11  should be not guilty.  But in any event, your verdict must be

12  unanimous, that is, all 12 of you who consult -- deliberate

13  must agree.

14      Your function is to weigh the evidence in the case,

15  determine whether or not the defendant is guilty solely on the

16  basis of the evidence.

17      Each juror is entitled to his or her opinion.  Each

18  should, however, exchange views with his or her fellow

19  jurors -- that's the purpose of juror deliberation -- discuss

20  and consider the evidence, listen to the arguments of your

21  fellow jurors, present your individual views, consult with one

22  another, and reach an agreement based solely and wholly on the

23  evidence if you can do so without violence to your individual

24  judgment.

25      Each of you has to decide the case for yourself after

1    consideration with your fellow jurors of the evidence.

2          But you should not hesitate to change an opinion, which,

3    after discussion with your fellow jurors, appears erroneous.

4          However, if, after carefully considering all the evidence

5    and the arguments of your fellow jurors, you entertain a

6    conscientious view that differs from the others, you should not

7    yield your conviction simply because you are outnumbered.

8          Your final vote must reflect your conscientious

9    conviction as to how the issues should be decided.  Your

10   verdict, whether guilty or not, must be unanimous.

11         Now, I am not sure -- are we out of sequence here?

12   Sorry, folks.  I think we were.  I think -- I regret that there

13   are some numbers that came at the back of my instruction.  I

14   have got No. 61 through -- I thought we had missed something --

15   61 through 70 were at the end of my pile.  Let me go back to

16   that.  I apologize, ladies and gentlemen.  We got this at the

17   last minute.  Let me have those, please.  Let's go back to that

18   statute.  Go back to No. 48.

19         MR. BALDWIN:  Your Honor, if I may, I think that

20   those copies should have been with another set that's over

21   here.

22         THE COURT:  Well, let's go back and get sequence here

23   now so that we are correct because -- this was, I think, Count

24   Three, if I am not mistaken.  No.  This was Count Two.  After

25   we were speaking of possession of firearm in furtherance of a

1    drug trafficking crime, and I got through 48 and did indicate

2    what the -- what the -- all right.  The omitted pages or the

3    out of sequence pages dealt with Count Three, possession of a

4    firearm and ammunition after having been convicted of a crime

5    punishable by imprisonment for a term exceeding one year.

6         What I propose to do, Counsel, is to go back and give

7    that instruction again with the pages inserted in proper

8    sequence.  Is that acceptable to the government?

9              MR. BALDWIN:  Your Honor, I believe we covered those

10   pages, Your Honor, previously.

11             THE COURT:  Well, let me be clear, though.  The part

12   that I have not given was Jury Instruction 49, Jury Instruction

13   50, I believe, or did we -- are they simply duplicative?

14             MR. BURNHAM:  Your Honor, I think the Court did skip

15   49, that, I have in my notes, too, but I believe the Court did

16   read No. 50.

17             THE COURT:  Mr. Baldwin, where are you on that?  I

18   read 49.  I think the only one that I am missing out of

19   sequence was 49.  I went from 48 to 50.  Do you follow that?

20             MR. BALDWIN:  Yes, Your Honor.

21             THE COURT:  Do you want me to read 49 at this point,

22   just that by itself, or do you want to go through the whole

23   instruction?  Is it acceptable just to recite the purpose of

24   the felon in possession?

25             MR. BALDWIN:  Yes, Your Honor.  Jury Instruction 49,

1  the purpose of the statute, yes.

2          THE COURT:  Just that one?

3          MR. BALDWIN:  Yes, Your Honor.

4          THE COURT:  That's what I propose to do, Mr. Burnham.

5          MR. BURNHAM:  Very well.

6          THE COURT:  I omitted the third count, ladies and

7  gentlemen, is the count of felon in possession of a firearm,

8  and the omitted instruction, which I give you now, has to do

9  with the purpose of the statute.  And it is as follows:

10 Congress was of the view that the ease with which persons,

11 including criminals, were able to acquire firearms was a

12 significant factor in the prevalence of violent crime in the

13 country, and that federal control over gun dealers and

14 restriction of the distribution of firearms would be helpful to

15 state and local authorities in meeting this problem.  So,

16 accordingly, Congress passed a series of laws designed to give

17 support to federal, state, and local enforcement officials in

18 combatting crime and violence.  In your role as jurors, you are

19 not to be concerned with the wisdom or policy of those laws.

20 If, in fact, a violation has occurred, then the law should be

21 enforced.

22     In general, these laws include provisions which prohibit

23 certain categories of persons from possessing or receiving

24 firearms shipped in interstate commerce, and requires any

25 person in the business of dealing in firearms to be licensed.

1          The government contends that the defendant was within a

2    class of persons prohibited from possessing firearms shipped in

3    interstate commerce because he had been convicted of a crime

4    punishable by more than one year in jail.

5          Now, that, I think, are the full instructions as we

6    agreed upon.  Am I correct, Counsel, subject to comments by

7    Mr. Burnham?

8                MR. BALDWIN:  Your Honor, there are additional -- I

9    don't believe you read page 70 and 71.

10               THE COURT:  Are they in here, 70 and 71?  Did you put

11   them in the packet, Mr. Baldwin?

12               MR. BALDWIN:  They should be in there, Your Honor.

13               THE COURT:  The packet that I have, I am not finding

14   70 and 71.  Do you have them?  Do you want to hand them up?

15   They will be in your packets, ladies and gentlemen.  You should

16   have a full packet.  We made some changes at the last minute

17   and apparently did not get everything in sequence.

18               MR. BURNHAM:  Your Honor, can I approach the clerk?

19               THE COURT:  Sorry.

20               MR. BALDWIN:  Mr. Burnham has them, Your Honor.  He's

21   approaching.

22               THE DEPUTY CLERK:  Thank you.

23               THE COURT:  All right, folks.  These are additional

24   instructions that I give to you, and you should consider them

25   along with the other instructions that --

1        MR. BALDWIN:  Your Honor, one moment.

2        Your Honor, I just ask a question:  Was the last

3   instruction you gave No. 56, the duty to consult and need for

4   unanimity?

5        THE COURT:  I'm sorry.  No.  Counsel, what I think we

6   will do is we will take this up in the absence of the jury and

7   talk about any corrections or objections at that point rather

8   than do it now.

9        MR. BALDWIN:  Yes, Your Honor.

10       THE COURT:  All right?  There are, first of all, a

11  couple more things that I want to say to you, folks, that are

12  going to be part of my instructions, and then I will let you go

13  to lunch.  And during the break, I will work with counsel on

14  any further amendments that we need to make.  You will get a

15  clean package at the end.

16       Let me give you these further instructions now.  This is

17  Jury Instruction No. 57, General Verdict Form.  And you will

18  get a general verdict form in this case, and I would like to

19  find that if I may.  Do we have that?

20       It's sort of a score card for you to have, and it

21  indicates your findings with regard to each of the crimes

22  charged, guilty or not guilty.  And then you will see that you

23  take the form with you into the jury room, and when you reach a

24  unanimous verdict, you fill out the form.  The forelady will

25  sign the form and date it and return it, and she will return it

1   to the bailiff, and then we will read it.

2        So you will have to determine on the form first one

3   through three, is he guilty or not guilty of each counts, one

4   through three, and then there are questions that follow each,

5   not merely guilty or not guilty as to Count One, but, in

6   particular, the amount of drugs, less than 28 grams or more of

7   cocaine base or cocaine, and more -- more than 28 or less than

8   28 grams.  And Count Two, then, you will be asked to

9   specifically make a finding as to one of the particular

10  weapons, one or more of the particular weapons that you find

11  the defendant possessed in furtherance of a drug crime if you

12  find him guilty.

13        And, likewise, if you find him a felon in possession, you

14  will have a list of the weapons that you would consider, and

15  you would indicate by checkmark whether the defendant possessed

16  more than one of those weapons.

17        That's the general verdict form.  And you will see, as

18  you read it, this gives you enough to answer yes or no or

19  simply putting a yes or no is I think an adequate answer.  And

20  then when you reach your general verdict unanimously, you

21  should return -- advise the court security officer, and we will

22  call you in a take a verdict.  I will say more about taking the

23  verdict after the government and defendant argue.

24        Again, to the extent that you will need to communicate

25  with me during the trial, you would do so by sending it through

1    the court security officer.  Your foreperson should sign the

2    note.  And one or more members of the jury could ask the

3    questions, but the note should come from the foreman.  And you

4    should not communicate with me or anyone else by any other

5    means other than this signed writing.  I won't communicate with

6    you except in writing or orally here in open court.

7            And I think that's essentially where we are.

8            And not to say anything about where the jury happens to

9    stand at any time in the case except after you had reached a

10   unanimous verdict, and you are then, perhaps pursuant to court

11   instruction, able to -- able to discuss the case.

12           Now, I think the better thing to do now is to let you go

13   for lunch because it's running pretty late, and then, Counsel,

14   you remain and we will go through the various items that we

15   need to correct, and my corrections to the instructions will be

16   made when the jury reconvenes.

17           So have them step down now, Theresa.

18           THE DEPUTY CLERK:  Yes, Your Honor.  You can leave

19   your materials on your chairs.

20           (The jury panel exit the courtroom at 1:32 p.m.)

21           THE COURT:  All right, folks.  I apologize for the

22   screw up.  I had those same in my pile, the same with the one

23   exception instructions at the back of my pile.

24           MR. BALDWIN:  Those are supposed to be in the back of

25   my pile, Your Honor.

1          THE COURT:  That's why I went into one and thought,

2  Woe, maybe I haven't given them, but there was one that I did

3  not have.  I think we are okay and they will have the actual

4  written instructions, so I don't see any problem with that.

5  But let us first, let me stay with you, Mr. Baldwin, first

6  because you said there was some incorrect statement or further

7  statement?  What?  You said No. 56, did you say?

8          MR. BALDWIN:  No, Your Honor.  You did read that.

9  You read out the unanimity instruction.

10          THE COURT:  So we don't need to do it again?

11          MR. BALDWIN:  No, Your Honor.

12          THE COURT:  So there is no correction from your

13  standpoint.

14      Do you, first of all, Mr. Burnham, have any objection to

15  the instructions the Court gave based on what it said it was

16  going to give, that is, that I gave an instruction other than

17  what I said I would do?

18          MR. BURNHAM:  No, Your Honor.  I think your

19  instructions were consistent with our charge conference.

20          THE COURT:  So you are in a position to take your

21  exceptions based on instructions that I gave or did not give

22  and whatever, so, please, let's go through it.

23      The format, if you haven't done it, is the defendant take

24  exception to jury instruction number blank in so far as the

25  Court gave it or did not say A, B, and C, and then the Court

1  takes exception to Court's failure to give proposed instruction

2  number whatever yours was.  Okay?  So go ahead.

3          MR. BURNHAM:  I only have two exceptions, one for an

4  instruction that was given and one for one that was refused.  I

5  object to Instruction No. 49 --

6          THE COURT:  All right.

7          MR. BURNHAM: -- the purpose of the felon in

8  possession statute on the basis that the purpose of any given

9  statute is not relevant to the jury's consideration and will

10  encourage them to speculate about the relevant factors.

11          THE COURT:  All right.  Well, my answer, as I gave to

12  you yesterday in our informal charge conference, was that I

13  think this is an instruction that is typically given and

14  explains to a jury what it means to be a felon in possession.

15  Why should -- the fact that someone is a felon is one fact.

16  The fact that they have a gun is another fact.  What's the law?

17  What's the crime?  And the crime is set forth in the purpose of

18  the explanation, that people who have been convicted of crimes

19  tend to be particularly dangerous.  And, so, I think it does

20  add an element of explanation.  So your objection is noted and

21  overruled.

22          MR. BURNHAM:  I also object to the Court's failure to

23  give an instruction defining reasonable doubt as noted in our

24  proposed instruction discussed yesterday and also included in

25  Docket 127 on page 78 based on United States against Taylor,

1    997 F.2d 1551 from the D.C. Circuit Court of Appeals.

2           THE COURT:  All right.  Well, no need to respond on

3    that.  I think the Supreme Court and certainly the Fourth

4    Circuit has made clear that an elaborate reasonable doubt

5    instruction is not appropriate under the circumstances.  And

6    that, of course, extends to using inappropriate metaphors when

7    you argue.  But, simply, the Court, in short, would deny your

8    request to give that instruction.  Exception noted.  Overruled.

9           MR. BURNHAM:  Thank you.  That's all I have.

10          THE COURT:  Anything further from the government?

11          MR. BALDWIN:  No, Your Honor.  I noticed that you

12   made some changes where it said --

13          THE COURT:  All right.  Let's see now.  Can you make

14   sure that our packet is together in sequence, no extra pages?

15          MR. BALDWIN:  Yes, Your Honor.  I have my paralegal

16   outside.  I am going to page check what we have right now.

17          THE COURT:  All right.  It's now 20 of -- 25 of two.

18   Let's make it 2:20.  Does that work?  Back by 2:20.

19          MR. BALDWIN:  Yes, Your Honor.

20          MR. BURNHAM:  Yes, Your Honor.

21          THE COURT:  Let me ask you how much time for closing,

22   then, for the government?

23          MR. DRAUGHON:  Anywhere from 30 to 45 minutes.

24          THE COURT:  And how much for rebuttal?

25          MR. BURHNAM:  Sorry.  20 minutes, no more than 30.

1          THE COURT:  Okay.  And likewise for rebuttal for the
2    government?
3          MR. BALDWIN:  Your Honor, I don't imagine I will be
4    more than ten minutes.
5          THE COURT:  We should get the jury out and at least
6    beginning deliberation today, and we will see where we are.
7    All right.  We are in recess until 2:20.
8          (Recess taken from 1:37 p.m. until 2:26 p.m.)
9          THE COURT:  Please be seated, folks.
10      Is Mr. Conley still here, Mr. Burnham?  Do you know?
11          MR. BURNHAM:  I'm sorry.  I didn't hear you.
12          THE DEPUTY CLERK:  Your Honor, hold on just a moment.
13    Sorry.  I was listening to part of the proceeding I missed.
14          THE COURT:  Are we on?
15          THE DEPUTY CLERK:  Yes.
16          THE COURT:  Is Mr. Conley still here, do you know?
17          MR. BURNHAM:  Is Mr. Conley still --
18          THE COURT: -- in the courthouse?
19          MR. BURNHAM:  Yes.  To my knowledge.  He's
20    downstairs.
21          THE COURT:  Do you know whether he is attending the
22    TV?
23          MR. BURNHAM:  I don't know he's actually looking at
24    it.  My understanding is it was available.  I was not down
25    there myself over the break.

1          THE COURT:  Ready to go?  Mr. Draughon, are you

2  arguing first?

3          MR. DRAUGHON:  Yes, Your Honor.

4          THE COURT:  All right.  Bring them in.  Bring them

5  in.

6      Did we sort out our instructions?

7          MR. BALDWIN:  Yes, Your Honor.  We have a bunch of

8  copies of jury instructions right back here.

9      (The jury panel enter the courtroom at 2:28 p.m.)

10         THE COURT:  All right, folks.  Ready to go,

11 Mr. Draughon?

12         MR. BALDWIN:  Yes, Your Honor.

13         THE COURT:  All right.

14         MR. DRAUGHON:  Good afternoon, everyone.

15     (The jury panel reply, "Good afternoon.")

16         MR. DRAUGHON:  Can you hear me fine in the back?

17     (The jury panel reply, "Yes.")

18         MR. DRAUGHON:  The defendant, Tiba Conley, was in an

19 apartment by himself with guns and drugs.  On April 21st, 2016,

20 the defendant, Tiba Conley, was in a residence.  He was the

21 sole leaseholder of that apartment.

22     When law enforcement executed their search warrant inside

23 the residence, along with Mr. Conley was four firearms, several

24 magazines, several rounds of ammunition, over 69 grams of

25 cocaine base, over 72 grams of cocaine powder, and cash.  In

1    addition to that, there were indications of drug paraphernalia,

2    including a Pyrex with a fork and white powder substance and

3    baking soda and some cutting agent.

4         That's the case.  This is not a who done it.  This is not

5    a situation in which we are trying to figure out if a crime was

6    committed.  Mr. Conley knowingly possessed controlled

7    substances with the intent to distribute them.  The defendant

8    knowingly possessed a firearm that he was prohibited from

9    possessing, and the defendant had those firearms in furtherance

10   of his drug trafficking crime.

11        My job this afternoon is to go through the evidence that

12   you were presented these last few days and also to go over some

13   of the laws that I think should stand out for you.

14        Now, I encourage you to take notes on some of the things

15   I will highlight, whether it be facts or law, but keep in mind

16   that the jury instructions presented by the Court is the

17   controlling law, and the exhibits and testimony you heard over

18   the last few days are the controlling facts.

19        It is the government's burden to prove this case beyond a

20   reasonable doubt.  We embrace that burden.  At the end of our

21   presentation today, we will ask that you find the only

22   reasonable verdict, which is guilty beyond a reasonable doubt.

23        As you see on the screen, there are three counts for you

24   to consider.  The first is possession with intent to distribute

25   controlled substances.  The second is possession of a firearm

1    in furtherance of a drug trafficking crime.  And the third is

2    possession of a firearm and ammunition by a prohibited person.

3         When I overview what we saw these last few days, I am

4    going to start with Count One to discuss the possession of the

5    controlled substances.  Then I am going to jump to Count Three.

6    And the reason why I am doing that is because Count Two

7    incorporates facts that you are going to hear in Count One and

8    Count Three, so we will wrap it up with Count Two.

9         When discussing Count One, you are going to hear a few

10   facts.  I am going to remind you of the testimony you heard and

11   the exhibits you were presented that indicated that this was

12   Conley's apartment.  I am also going to remind you of some of

13   the testimony you heard from law enforcement witnesses.  You

14   are going to hear about the location of the drugs that were

15   recovered from the apartment.  You are going to hear about the

16   drug paraphernalia.  And we are also going to remind you of the

17   drug examination reports that confirmed that those substances

18   were, indeed, controlled substances.

19        The elements that you need to consider for Count One,

20   that the defendant possessed a controlled substance, is the

21   defendant knew that he possessed a controlled substance and

22   that the defendant intended to distribute the controlled

23   substance.  As the Court noted, both cocaine base and cocaine

24   powder are controlled substances.

25        Let's start with the fact that you heard that Conley was

using the apartment.  You have heard that when law enforcement came in, he was in the kitchen.  He was the only person present in the apartment.  Inside of that wallet that you see on the bottom right in Exhibit P12 were the identification cards from Conley that you see on the bottom left of your screen for Exhibit 36.

So not only was Conley in the apartment, Conley was the leaseholder for the apartment.  You were presented with an exhibit showing that there was a lease contract with Tiba Conley's name on it, so you will note on Exhibit 1 Tiba Conley's name and the address for 3016 Oak Green Court in Ellicott City.

You were also presented, through law enforcement, one of the pictures that indicates that Conley received a Comcast bill with his name and that address on the bill.

Conley was present at the apartment, he leased the apartment, and he was actively residing in the apartment.

Now, that's notable because when the defendant is the sole person having control over a place where narcotics are found, such as an apartment, this control is significant evidence of the defendant's control over the drugs themselves, and, thus, of his possession of the drugs.  So this is not a case in which drugs were recovered from a storage locker room somewhere.  This is a case in which the defendant was present in the residence when the drugs were recovered by law

enforcement, including the cocaine that was recovered from the defendant.

On the screen now, we are getting into the DEA reports that confirmed that the substances recovered were, indeed, cocaine base and cocaine hydrochloride, which I will refer to as cocaine powder.

As you can tell, when looking at DEA 16, there were 209.8 grams in that one container of cocaine base.  You had another cocaine base of 3.9 grams.  And I point that out because part of your duty will be to assess whether or not the government has satisfied its burden that the defendant had in his possession a certain amount of cocaine base, and I am submitting to you that the evidence shows that it is very clear that he exceeded that amount.

You also see that there was cocaine powder.  Now, I have this picture beneath those reports because that is where those four substances were found.  I want to remind you that that is the kitchen drawer.  And the defendant, as explained by Agent Mike Nolan, was right next to that area when law enforcement came in.

You will see inside the drawer, in addition to the cocaine base and cocaine powder, there are scales.  And you heard from Fernando Jaramillo that it's not common for users to have scales.  Users don't have the need for scales.  It's distributors that he typically sees as having scales in

1    addition to their controlled substances.  And these are two of

2    the four scales that were recovered from Conley's apartment.

3         We have two more DEA reports once again confirming that

4    the substances examined were actually controlled substances.

5    We have 29.9 grams of cocaine base, and this is in addition to

6    the amount that we saw in the previous slide.  We also have

7    62.1 grams of cocaine powder.

8         Now, I want you to note when we are trying to assess the

9    intent to distribute, keep in mind that these narcotics are not

10   found in his bedroom.  They are not found in a bathroom.  They

11   are found in a kitchen where he is seen cooking.  I submit to

12   you that that is an indication that he doesn't have these

13   narcotics for the purpose of consumption.  He had them for the

14   purposes of preparation to distribute.

15        We also have the report confirming that there were 5.8

16   grams of cocaine base.  And the product that you see on the

17   table, I want to remind you that you heard testimony from

18   Christopher Stavrou and James Capone that that was recovered

19   from the defendant's sock.  So not only do we have controlled

20   substances in the kitchen area, we actually have it on his

21   person, indicating that he was well aware that he was in

22   possession of these narcotics.

23        This is a summary chart that was presented to you during

24   the trial.  I point this out just so you can get a sense of the

25   quantities involved.  As I stated a while ago, there are over

69 grams of cocaine base and there are over 72 grams of cocaine powder, and, as a reminder, the cocaine hydrochloride is what I am referring to as cocaine powder.

You heard the expert, Tiffany Van De Mark, confirm these amounts and explain that these were the net weights, which is to say after the product was taken out of the packaging, this is how much the product weighed.

And as you recall the Court explaining to you, the possession of a large quantity of drugs may indicate that a defendant knew what he had in his possession.  I also want to remind you what Fernando Jaramillo explained to you: that quantities this large would be for distribution purposes and not for personal consumption.

What you see on your screen now is the money that was seized from the defendant's apartment.  The left picture is about $9,000 in cash.  The picture on the right, which was seized from the defendant's person, is about $495 in cash.

Fernando Jaramillo explained to you that in the drug trafficking business, the transactions are typically conducted with cash as opposed to Venmo or some other way to electronically have those exchanges, and to admit to you that such a large amount of cash is indicative of Conley engaging in drug trafficking.

Some other indications that you have of Conley's drug trafficking activity.  On the left, P11 and P35, you see the

1   Pyrex container with the fork with the white substance,

2   residue, and you had officers explaining that, from their

3   experience, that is an indication that someone was in the

4   process of preparing cocaine base.

5           You also have the Inositol powder which was explained to

6   be a cutting agent that is used by distributors to add to the

7   cocaine powder.

8           To the right, you have two cell phones on one side of the

9   stove and another cell phone actually on the stove, and it was

10  explained to you that drug traffickers tend to have multiple

11  cell phones.  So, in this situation, we have Conley with three

12  cell phones, which I submit to you is another indication that

13  he actually intended to distribute the narcotics that were

14  seized.

15          In addition to all of the evidence that was offered from

16  the scene, you heard Conley, himself, when talking to a friend,

17  answer in the affirmative when the friend asked him if he was

18  cooking at the time law enforcement came in.  And I am going to

19  play that for you now so you can listen.

20          (Audiotape was played to the jury. )

21              MR. DRAUGHON:  So you hear a female voice inquire as

22  to whether or not he was in the kitchen cooking, and he says,

23  "Yep, I was in the kitchen."  He laughed about it, and said, "I

24  was in the kitchen when they came in."  And then you have him

25  explain at the end of the audio that you just heard that they

1    saw it on the counter.  We submit to you that he's referring to

2    the narcotics that law enforcement saw immediately upon

3    entering his apartment.

4        So you have Mr. Conley in possession of the narcotics in

5    his kitchen drawer, on his person, on the kitchen counter while

6    he's in the kitchen himself.

7        You have large quantities indicating his intent to

8    distribute that.  You also have paraphernalia, scales, cutting

9    agent, baking soda, Pyrex of someone who would actually be in

10   the business of trafficking narcotics.

11       So we submit to you, based off all that evidence, that

12   Mr. Conley is guilty of Count One beyond a reasonable doubt.

13       So now I want to go to Count Three, and as a reminder, we

14   will get to Count Two after we discuss Count Three.

15       So Count Three is the prohibited person in possession of

16   a firearm and ammunition.  I want to give you a reminder as to

17   the stipulation that the parties entered into, the interstate

18   nexus examination results.  I want to remind you about

19   Mr. Conley's sole use of the apartment, the law enforcement

20   witnesses that you heard about, the DEA matches that were

21   described to you, in addition to Conley's statement himself

22   about the firearms.

23       And before we discuss the facts that were presented to

24   you, I want to remind you of the elements that the Court

25   outlined:  First, that the defendant was convicted in any court

of a crime punishable by imprisonment for a term exceeding one year, and that the defendant -- that the defendant had not restored the defendant's civil rights to possess a firearm following that conviction; second, at the time of the charged act, that is, on April 21st, 2016, the defendant knew that he had been previously convicted in court of a crime punishable by imprisonment for a term exceeding one year; third, that the defendant knowingly possessed any of the firearms or any of the ammunition, or any combination thereof, as charged; and, finally, that the possession charged was in or affecting interstate or foreign commerce.

What that last point means is that the firearms in this case and the ammunition would have crossed state lines or country lines before being recovered from Conley in the state of Maryland.

I also want to remind you about the Court's instruction about what possession means. So there is actual possession, that is someone is physically holding something, and that's what most people think of when we are discussing someone being in possession of something.

There is also constructive possession. And constructive possession can be if the individual has the ability and intent to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item constructively. So I may not currently be physically

1  holding the papers that I have on my table, but I

2  constructively possess them because I intend to use them, and I

3  can exercise that right if I want.  So I can exercise control.

4  And you will hear and you have heard so far that Conley was

5  exercising control of the items in his residence even if he

6  wasn't actively holding any of them at the time.  And I am

7  referring to the firearms because you know at this point that

8  he was in possession of the cocaine found in his sock.

9       So first let's talk about the stipulation regarding prior

10  convictions.  So it is agreed and stipulated between the

11  parties that Conley knew that he had been convicted of a crime

12  punishable by imprisonment for a term exceeding one year and

13  that his civil rights following that conviction had not been

14  restored.

15       What you see on that screen is Stip. 1.  You will have

16  that document along with the other exhibits with you when you

17  go back to talk about the case and reach a verdict.

18       Now I want to get into the firearms and ammunition that

19  were recovered from Conley's apartment.  So, as you see here,

20  this screen shows you the Springfield, Model XD, which is Gun

21  1, in addition to 14 rounds, and you can see where those items

22  were actually manufactured showing that they crossed state and

23  country lines before being recovered in Maryland.  I just want

24  to remind you of what Gun 1 is.  This is Gun 1 (indicating).

25  This is the Springfield that was presented to you during the

1  trial that was manufactured in the country of Croatia.

2          THE DEPUTY CLERK:  Mr. Draughon, I'm sorry.  Would

3  you walk that around?

4          MR. DRAUGHON:  Yes.

5          THE DEPUTY CLERK:  Thank you.

6          MR. DRAUGHON:  Once again, this is the Springfield,

7  Gun 1, that was manufactured in Croatia.  I also want to remind

8  you that this Springfield is what you saw in the picture that

9  was on the counter in the kitchen in close proximity to Conley.

10  You heard from Michael Nolan that when he went into the

11  apartment, he immediately saw the defendant in the kitchen, and

12  that Springfield was recovered from the kitchen.

13          Next we have the SKS-type rifle, which is Gun 2, in

14  addition to 25 rounds of 7.62 by 39 millimeter caliber

15  ammunition.  I am going to show you Gun 2 to remind you of

16  which one it is.  This is Gun 2 (indicating).

17          Now, what you will see in a bit when we go over some more

18  of the photos recovered that were taken of Mr. Conley's

19  apartment, this gun was at the foot of Mr. Conley's bed in his

20  room.  This gun was made in the country of Yugoslavia.

21          I want you to also take note of the rounds of ammunition

22  that's highlighted because one of the questions you will have

23  to answer is whether we have proven to you that Mr. Conley was

24  in possession of the rounds of ammunition outlined in the

25  superseding indictment.

1    Next we have Gun 3, which is the Del-Ton, Model DTI-15.

2    Similar to Gun 2 that I just presented to you, Gun 3 was at the

3    foot of Mr. Conley's bed, right in front of his closet at the

4    foot of Mr. Conley's bed.  And as you heard from Special Agent

5    Matthew Leonard and as you see on your screen, this is

6    manufactured in the state of Ohio.

7    You will also note the rounds of ammunition that were

8    made in Korea or Nevada.

9    And, finally, as far as firearms, we have the Masterpiece

10   Arms, Model 10, which is manufactured in the state of Georgia.

11   This firearm was recovered from Conley's closet.  This is the

12   Masterpiece Arms 10 recovered from his closet in his

13   one-bedroom apartment.

14   Now, we are about to discuss these photos, but before we

15   do, I want to submit to you that when you add up all of the

16   rounds, you will see that Mr. Conley had 50 rounds of .223

17   caliber ammunition, 74 rounds of .45 caliber ammunition, and 25

18   rounds of 7.62 by 39 caliber ammunition.

19   Now we are going to talk about his possession of these

20   firearms.  What you see on your screen is the Springfield that

21   was located on the kitchen counter, as I indicated a few

22   moments ago, reminding you that Mr. Conley was in close

23   proximity to that as he stood in the kitchen.  You see that it

24   is out in the open.  It's not hidden under some drawer.  It's

25   not in the closet somewhere.  It's out in the open on the

89

counter.  And the magazine and the ammunition on P28 was in one of his drawers in his bedroom.

Now I want to remind you that Mr. Conley leased the apartment, Mr. Conley used the apartment, and he was present at the time that these firearms were seized.  We submit to you that all of that indicates that he very much knew that these firearms were present.

Now, on your left, P17, and you will have a printout of this picture, that shows you Gun 2 and Gun 3 next to Mr. Conley's bed in front of the closet.  You will note how large those rifles are.  You will note how close they are to his bed.  And we submit to you that that is an indication that he knowingly possessed these firearms.  They were obviously out in the open in his bedroom.

And to the right in Government Exhibit P27, you have the Masterpiece Arms 10 that I just showed you.  This was in one of the drawers in the closet that you see in P17 in his bedroom.

You heard from the FBI DNA expert who went over his results from analyzing DNA swabs recovered from some of the firearms and magazines.  He heard and explained that Gun 1, which is the Springfield, Conley was the source of the major contributor.  Gun 4, which is the Masterpiece Arms, Conley was the source of the major contributor.  Gun 2, which is the rifle, the SKS-type rifle, Conley was, once again, the source of the major contributor.  And Gun 1A, now that is the magazine

1   that was inside of the Springfield pistol, Conley was, once

2   again, the source of the major contributor.  And the magazine

3   inside of the Masterpiece Arms, there was extremely strong

4   support that Conley was a contributor to the DNA swabs from

5   that.

6        Now, when looking at the DNA, I want to remind you that

7   you can look at these novels that were presented to Andrew

8   Grill to get a sense of how to match up Brandon McCollum's DNA

9   report and the DNA swabs from the items.  So you will see

10  towards the left where it says, From No. 21, Springfield XD

11  handgun, so this would have contained the DNA swab that was

12  used to determine that Conley's DNA was on the Springfield

13  pistol.

14       Same thing goes for the Item 27, which is the Masterpiece

15  Arms handgun.

16       You will also see it for Item 29, which is the rifle, Gun

17  2.

18       You can find the same thing on the envelope for Item 32,

19  which is the .45 caliber magazine, and that is associated with

20  the Springfield.

21       And then, finally, from Item 35, you have the MAC 10

22  magazine, and that's associated with Gun 4.

23       So you will have these envelopes to reference when you

24  are analyzing the DNA results.

25       In addition to the DNA results, Conley's control of the

1  apartment, the location of the firearms in the apartment in the

2  kitchen and in his bedroom, you heard Conley himself explain to

3  someone that law enforcement were posing with all his guns.

4        (Audiotape was played to the jury. )

5           MR. DRAUGHON:  I submit to you that when you listen

6  to the recording on your own, you will hear what I interpret as

7  Conley saying they were posing with all my guns.

8           Now we are going to talk about Count Two, which is

9  possession of a firearm in furtherance of a drug trafficking

10  crime.  So you have heard the evidence in Counts One and Three.

11  We have talked about the apartment use, and I want to remind

12  you of that here.  We talked about some of the things.  You

13  heard from law enforcement witnesses, and we have also

14  discussed the firearms and we have discussed the drugs, so now

15  we are just going put that together and discuss the location of

16  the firearms in relation to the drugs, and I will also note the

17  cash.

18           The elements for Count Two, first, the defendant

19  committed the drug trafficking crime charged in Count One,

20  which is a crime for which he might be prosecuted in a court of

21  the United States; and the defendant knowingly possessed a

22  firearm or firearms in furtherance of the drug trafficking

23  crime charged in Count One.

24           Now, I want to highlight something that the Court read to

25  you in this jury instructions, that is, in determining whether

the defendant possessed a firearm in furtherance of the drug trafficking offense, you may consider all of the facts received in evidence in the case, including, but not limited to, the nature of the underlying drug trafficking alleged, the accessibility of the firearm, the proximity of the defendant to the firearm in question, the proximity of drugs or drug proceeds to the firearm in question, the usefulness of the firearm in furthering the crime alleged, the types and number of firearms found, whether the gun was legitimately owned or registered to the defendant, whether the gun was loaded, and the time and circumstances under which the gun was found.  And you can find that in Jury Instruction No. 47.

Now I want to take a moment to go through some of the considerations that the Court outlined when it comes to you finding beyond a reasonable doubt Conley was guilty of this offense.  First, the accessibility of the firearm.  The rifles, as you saw, were out in the open in his bedroom at the foot of his bed.  The MAC 10 -- the Masterpiece Arms 10 was in the drawer next to those two rifles.  But even more so than Guns 2, 3, and 4, Gun 1 was immediately next to the defendant.  This is not a situation in which the gun was locked away in a safe.

You have heard defense counsel inquire several times as to whether law enforcement saw a safe.  They did not.  The guns were not in a safe.  They were not stored between a mattress.  They were not hidden somewhere in the house.  They were out in

1  the open easily accessible to the defendant.

2        And we discussed the proximity of the defendant to the

3  firearms in question.  Now, constructively, that's all of these

4  firearms which you have heard through the testimony that Conley

5  was right next to the Springfield, Gun 1, and he was in close

6  proximity to the Springfield, which, by the way, was in close

7  proximity to the controlled substances.

8        Now, the proximity of drugs and drug proceeds to the

9  firearm in question, I just alluded to that.  The firearm was

10  right next to the drugs in question.  In addition to that, I

11  want you to note that you heard from Sharri Jastrzebski that

12  the box of cash, $9,000, was in the closet in his bedroom.

13  Right in front of that closet were the two rifles.  Inside of

14  that closet was the Masterpiece Arms 10.  So you have a

15  situation in which there are three guns immediately next to the

16  $9,000 in cash that we submit to you are the proceeds from drug

17  trafficking, and you have Gun 1 in close proximity in the

18  kitchen to the drugs that Conley was cooking at the time law

19  enforcement came in.

20        With regards to the usefulness of the firearm in

21  furthering the crime alleged, you heard from Fernando Jaramillo

22  how drug traffickers will often possess firearms to protect

23  themselves and their controlled substances to make sure they

24  are not robbed.  He explained that you don't have to use the

25  guns.  Just showing it will be enough to ensure that deals go

1    the way that you want them to.  So there is certainly

2    usefulness of a firearm in drug trafficking.

3         The type and number of firearms found.  We have a variety

4    of types.  We have two .45 caliber pistols and we have two

5    rifles.  And in total, we have four firearms in a one-bedroom

6    apartment with one person on the lease.

7         I submit to you that there is no evidence that the guns

8    were legitimately owned or registered to the defendant, and

9    that is bolstered by what we know, that the defendant was

10   prohibited from possessing firearms, and we know that through

11   the stipulation explaining that he was prohibited because of a

12   prior offense.  You heard testimony that at least one of the

13   firearms was actually loaded.

14        And, finally, the time and circumstances under which the

15   gun was found.  The guns were found with the defendant inside

16   of the residence with the guns out in the open.

17        There are some pictures showing you what I just

18   described, that you have one firearm, the Springfield, that is

19   in the kitchen, the kitchen that Conley was found in, and you

20   will see inside the drawer the controlled substances that were

21   in close proximity to that firearm, and that's all in P12.

22        When looking at Government Exhibit P18, you see the two

23   rifles that I referred to.  I submit to you that the

24   Masterpiece Arms is in one of the drawers highlighted in the

25   photo, and the box of cash is up to the left of those firearms.

1       As I said, that's really all there is.  But there was one

2   man, Tiba Conley, inside of a one-bedroom apartment that he

3   leased by himself.  No one else lived there.  He used the

4   apartment.  You saw the Comcast bill.  He was present in the

5   apartment.  With him, four guns, ammunition, magazines, grams

6   of cocaine base, grams of cocaine hydrochloride, paraphernalia.

7   That's what you have in this case.

8       The government submits that it has shown you in the

9   evidence presented over these last few days that Conley is

10  guilty beyond a reasonable doubt, and we implore you to go

11  deliberate and find the only verdict that makes sense, that is,

12  that he is indeed guilty beyond a reasonable doubt.

13      Thank you for your time.

14          THE COURT:  Mr. Burnham.

15          MR. BURNHAM:  Thank you, Your Honor.

16      Good afternoon, everybody.

17      (The jury panel reply, "Good afternoon.")

18          MR. BURNHAM:  Can everybody hear me okay?  It looks

19  like it.

20      Members of the jury, thank you for your attention in this

21  case this past week.  As I said to you on Monday when we

22  started, this, my closing argument, is my opportunity now to

23  address you for the second and final time now with the benefit

24  of all the evidence submitted and the detailed instructions

25  given to you by the judge.

1        And I will start with the two fundamental principles of

2    law that I mentioned to you in my opening statement, which

3    should continue to guide your deliberations even after my role

4    in this case concludes, and those are the presumption of

5    innocence and the burden on the government to prove

6    Mr. Conley's guilt as to each and every charge, as to each and

7    every element before any convictions can be imposed.

8        His Honor explained that to you in detail.  Remember it.

9    It should guide your deliberations, particularly the beyond a

10   reasonable doubt standard.

11       In our normal lives, in our interactions, our

12   conversations with one another outside of the courtroom about

13   current events or work gossip, we tend to talk in terms of

14   probabilities.  Oh, I think this probably happened.  You think

15   that probably happened.  What do you think is more likely?

16       In considering a criminal case, especially a serious

17   criminal case, you sort of have to reprogram your habits a

18   little bit to look at all the facts and evidence through the

19   lens of that all important beyond a reasonable doubt standard

20   and hold the government to their burden, including with respect

21   to the fact that Mr. Conley did not take the stand or indeed

22   put on any witnesses, as was his absolute right not to do.

23       At some point in your deliberations, one of you, as human

24   nature, may forget that and say, Wait a minute.  Why didn't

25   Mr. Conley explain where that gun in his bedroom came from?,

or it really would have been nice to hear his side of the story.  And I need to count on each and every one of you to remember your oath to follow the instructions and to speak up if your deliberations take that wrong turn, and remind everybody our job here is to follow the law, including keeping the burden of proof where it deserves to stay, with the government.

Now, with those principles firmly in mind, let's take a look at some of the evidence the government presented, and I will start at the highest level of viewpoint and then proceed to some of the specific facts that I submit are important to your decision in this case.

So what did the government's case consist of?  It consisted almost entirely of law enforcement testimony from officers or folks that worked as experts or technicians for law enforcement, and in almost every case that I can recall, the witness testimony started with whoever was testifying giving you, the jury, a little bit of background about who they were and what their career has been like.  And by hearing that testimony, you all have now learned quite a bit about the different kinds of law enforcement techniques that can be used to investigate the illegal drug industry, so to speak.

You heard about controlled buys where a cooperating individual, non-law enforcement, does a buy from the target of an investigation.  You heard about undercover buys.  That's

1    where a member of law enforcement pretends to be a drug dealer

2    and gathers evidence that way.  You heard about debrief of

3    witnesses who happened to know something about drug activity.

4    You heard about Title III wiretaps and possibly some others I

5    am neglecting.  And what all of these law enforcement

6    techniques have in common is that absolutely none of them were

7    used in this case, at least insofar as the evidence we heard.

8         The government's prosecution of Tiba Conley consists

9    almost entirely, with two small exceptions that I will get to,

10   of a single search warrant executed at a single apartment, and

11   that snapshot of a moment in time four years ago is the

12   government's case in chief.  There is no background.  There is

13   no context.  There is no answers to questions such as what

14   happened leading up to that?  Where did the alleged controlled

15   substances come from?  I am sure you all have other questions

16   that occurred to you as well over the course of the past few

17   days.

18        That's it.  That's the government's case.  And the two

19   exceptions I alluded to earlier are the following:  There was a

20   little bit of surveillance and then there was some

21   after-the-fact forensic analysis, most notably, DNA, and I will

22   talk about both of those.

23        The surveillance came from at least two or three

24   witnesses who stated that they, as suggested by the term

25   "surveillance," they watched where Mr. Conley was going.  That

1  evidence turned out to be exculpatory, meaning a lawyer term

2  for tending to prove his innocence for Mr. Conley.

3       Now, why do I say that?  The government's theory in this

4  case is that Mr. Conley was a drug dealer.  If that were true,

5  you'd naturally expect to see him coming and going from where

6  he lives to go meet customers, buy drugs, and do that sort of

7  thing.  You didn't hear any of that from the two or three

8  officers directing a team of, I don't know, maybe over a dozen

9  that could have surveilled Mr. Conley.  None.  All you heard

10 was that Mr. Conley, on certain occasions, was seen going in

11 and out of Apartment 3016.  That's it.

12      What about the DNA?  The DNA cuts against the

13 government's case in important ways as well.  Why do I say

14 that?  Well, let's talk a little bit about what we learned

15 about DNA in this case.

16      You heard from the government's DNA expert, that's

17 Mr. McCollum, that part -- his testimony was not intended --

18 didn't purport to tell you who had touched given objects, guns.

19 All he could tell you was whose DNA was on those objects.  And

20 that's important because as he told you as well, DNA can be

21 transferred from one object to another.  That's called

22 transference.  The example being if myself and one of you all

23 shook hands, I know we are not supposed to shake hands anymore,

24 but let's say we did, we shake hands, and then I went and took

25 a drink of a cup and coffee.  Whoever's hands I shook would

1    have their DNA on that cup of coffee, and we could think of

2    many other examples of how that could unfold.

3         That's extremely important in Mr. Grill, the government's

4    technician who examined the firearms, told you exactly why it

5    was important because he relies -- these are his words -- he

6    relies on law enforcement not being in some cases, including

7    this one, at the crime scene himself there to supervise the

8    collection of evidence.  He relies on them.  If they don't do

9    their job to deliver uncontaminated samples, his job and the

10   job of experts like Mr. McCollum is totally rendered

11   ineffective.

12        The government could bring in Watson and Crick themselves

13   to testify about Mr. Conley's DNA.  If the officers hadn't

14   provided Dr. Watson and Dr. Crick with samples, it would be

15   totally irrelevant, and we know that's the case here because

16   the officers themselves who executed the search warrant told us

17   that.  They did not change gloves in between touching one

18   officer to the next to the next as Mr. Grill explicitly said

19   you need to do to avoid contaminating them, and this includes

20   who else but the seizing agent himself, the young lady with the

21   charming Polish last name that I am not going to try to

22   pronounce, the seizing agent, who, by definition, handled each

23   and every item, the guns, the drugs, everything else taken from

24   the apartment told you she did not change gloves in between

25   handling one item to the next, or she couldn't be sure she did.

1   And so that means those samples are completely contaminated.

2       Now, that reflects not only on the value of the DNA

3   evidence itself but the integrity and reliability of the

4   government's investigation as a whole because the DNA analysis

5   was so botched.

6       And that's important particularly -- particularly

7   because, as I alluded to you -- I have alluded -- as I have

8   stated in my opening statement and has now been made clear by

9   Mr. Draughon's closing, is this is not simply a case of alleged

10  drug dealing and alleged illegal firearms possession.  The

11  government has added another charge that I emphasized in my

12  opening and I intend to emphasize now, and that's use of a

13  firearm in connection with a drug trafficking offense, 924(c),

14  that's Count Two.

15      Now, the government's witness that sort of tied all the

16  various evidence relevant to that charge that you heard

17  together was TFO Jaramillo who was the last witness, the

18  clean-up hitter, the grand finale.  What's the most important

19  takeaway in my view from that witness' testimony?

20      I submit it's as follows:  He told you himself, upon

21  questioning from Mr. Baldwin, I think it was, that he knew

22  absolutely nothing about United States against Tiba Conley,

23  against this case.  He offered background testimony from his

24  long experience about drug dealers tend to do this, they tend

25  to do that in most cases, which I am sure he's seen a lot of

1  things in his career, but he offered you absolutely nothing

2  that's of specific relevance to this case, the one you all will

3  shortly go and decide there in that deliberation room.  Each

4  and every one of you is far and away possessing of greater

5  expertise than TFO Jaramillo about the case of *United States*

6  *vs. Tiba Conley*.

7       Why is that important?  Because the law says it's

8  important.  And I refer you here specifically to Instruction

9  47, which I will read a portion of it to you to make sure I get

10 it exactly right.  Mr. Draughon referred to it as well.  And as

11 you saw, it sets forth a number of factors relevant to deciding

12 if a given firearm was indeed used in furtherance of a drug

13 trafficking offense.

14      Mr. Draughon, on behalf of the government, had the slide

15 we just saw a few minutes ago with the bullet points with six

16 or seven factors that he went through and analyzed:  Were the

17 guns loaded?  Where were they?  Were they registered?  And so

18 on.  But he skipped one.  He skipped one.  Which one did he

19 skip?  Maybe some of you caught it.  He skipped the first one,

20 the very first one, which I submit is the most important.

21 Quote, this is page 57 of the jury instructions, The nature of

22 the underlying drug -- The nature of the underlying drug

23 trafficking alleged.  That is the all important factor that

24 gives the rest of these factors context that the drug expert

25 couldn't testify to at all because he wasn't familiar with this

1   case and that the government neglected to mention in their

2   closing, which I intend to take a look at now because it's just

3   so critical.

4        What is the nature of the drug trafficking activity

5   alleged in this case?  Well, let's start with the charge

6   itself.

7        Mr. Conley is not charged by the government with

8   distribution -- distributing drugs or conspiracy to distribute

9   drugs or RICO or being part of a drug cartel.  He's charged,

10  very simply, with possession with intent to distribute

11  controlled substances.  That's it.

12       And so ask yourself two questions at the beginning of our

13  analysis:  How does possessing firearms aid either of the

14  elements of that charge?  If you are possessing -- part of the

15  charge was to possess controlled substances.  You possessed

16  them just as much if you are holding a pistol as if you are

17  not.  And if your intentions are to distribute those drugs

18  either by selling them or sharing them at a party or whatever

19  it is the intention is, the presence or absence of a firearm

20  adds not one wit to that intention, or lack thereof depending

21  on how strong the evidence is.  That's particularly true in a

22  case like this one where the government's case in chief and

23  their whole case, in fact, is so very limited to that one

24  snapshot you received from the search warrant executed on April

25  21st, 2016.

1        There is no evidence of threats to Mr. Conley.  There is

2   no evidence that he had to travel to bad neighborhoods or deal

3   with shady people to do whatever it was he was doing.  There is

4   no evidence that he procured those guns because he was scared

5   of people he was dealing with or scared of whoever he bought

6   the drugs from or had to secure territory or collect a debt.

7   All of that was absent from this case.  The government didn't

8   even attempt to present evidence of it.  And what evidence

9   relevant to that question that did sort of slip out tends to

10  prove those guns were not, in fact, related to whatever drug

11  trafficking activity you all conclude in your wisdom took

12  place.

13        The evidence was that the apartment was a nice apartment.

14  You saw that in the pictures.  The very case agent who

15  supervised this investigation testified it was not in a high

16  crime area, either the apartment itself or the surrounding

17  community there in Ellicott City.  And the one circumstance you

18  saw where Mr. Conley might have been expected to use the guns,

19  had he been so inclined, was the raid itself.

20        If the purpose of those guns, as the government alleges,

21  is to protect the $9,000, however many grams that you all find

22  existed, you might expect that he'd at least make some gesture

23  towards the guns when people are breaking into his house even

24  before he might have realized they were law enforcement

25  officers, and that didn't happen.

1          So there is no specific evidence tending to show that

2     Mr. Conley possessed those guns for any reason related to the

3     drugs, and the very evidence that might have suggested he did

4     so points in the other direction.  That's important.

5          The government, if I could summarize their case, and I

6     would try to put the most fair face on it, is, as a general

7     matter, guns and drugs go together.  That's what TFO Jaramillo

8     told you.  And so you can infer, from the presence of the guns

9     and drugs in the same location, that, beyond a reasonable

10    doubt, the two were connected.

11         I submit to you that that chain of reasoning is exactly

12    the type of speculation prohibited by the instructions Judge

13    Messitte just gave you, specifically Instructions 12 and 13.

14    Go back and take a look at those instructions.  They set forth

15    the difference between a logical inference, which is perfectly

16    permissible, and speculation.

17         The government's case against Tiba Conley as to use of a

18    firearm in connection with a drug trafficking offense rests on

19    speculation for all the reasons I said.

20         I am now coming to the end of my remarks here for you

21    this afternoon.  In a moment, the government, I believe

22    Mr. Baldwin, will get up to make their rebuttal argument.  They

23    have the privilege to speak last because the burden of proof,

24    as I never tire repeating, is on them.  They get the last word.

25    They are good lawyers.  I am sure their argument will be very

1    compelling.

2          The last thing I will ask is that you remember your oaths

3    as jurors more so than what any lawyer says, remember the

4    evidence in this case, and the instructions from the Court.  As

5    I said to you in opening statement, each and every one of you,

6    in light of your education, background, experience, life

7    experience, has something important to contribute to the

8    deliberation in this case.  Rely on your fellow jurors.  Speak

9    up if you have something to offer.  Consult your notes.  And we

10   have every confidence that you will come to a fair and just

11   verdict in this case, which we submit is a verdict of not

12   guilty.

13         Thank you for your service.

14              THE COURT:  Mr. Baldwin.

15              MR. BALDWIN:  Thank you, Your Honor.

16         Good afternoon.

17         (The jury panel reply, "Good afternoon.")

18              MR. BALDWIN:  Let's talk about inferences.  You know

19   nothing else except you walk into an apartment, look to the

20   left, walk a little closer, see someone diving on the ground,

21   and you see this.  You look at those materials -- one moment.

22              THE DEPUTY CLERK:  I am changing it to document

23   camera.

24              MR. BALDWIN:  Thank you.

25              THE DEPUTY CLERK:  You're welcome.

1          MR. BALDWIN:  This is what you see.  You look in that

2    drawer and you take those items out and they get sent off to

3    the lab.  It comes back that there is near 30 grams of crack

4    cocaine in there, and, additionally, powder cocaine, and then

5    you find out that the individual, when he came in the door, was

6    standing there, dove to the ground, had previously been

7    convicted of a crime, wasn't supposed to have that handgun, and

8    that on the counter just next to that there is even more drugs.

9    There is no speculation in this case.  This is the very

10   definition of catching someone red handed.

11         Then that's not all.  You see those things in the

12   kitchen, I ask that this is a reasonable inference for you,

13   then the individual is searched, and on his person, in one of

14   his socks, we hear at the top of his sock, there is another 5.8

15   grams of crack cocaine, and in the pocket is $495.  That

16   individual had entered that building not 15 minutes before.

17   You heard that from many witnesses.

18         We submit to you Mr. Conley came back that night from

19   selling some product, and I am talking about drugs, and he was

20   in the kitchen.  They surprised him, the search warrant team

21   when they came in the door.  He put his gun on the ground -- on

22   the counter and jumped down on the ground because he heard the

23   police coming in, and that was very wise.  He didn't try to

24   pull a gun on the police.

25         And that is a fact, I submit to you.  It's your judgment

1  from what the witnesses heard, but there was the gun right

2  there on the counter.  He had come in 15 minutes before.  They

3  found crack in his sock and $495.  How much money do you get

4  from 5.8 grams of crack?  Let's do the math.

5       You remember DEA TFO Jaramillo said that you can get

6  anywhere from -- for $20 to $30 for a tenth of a gram of crack

7  cocaine, $20 to $30 for a tenth of a gram of crack cocaine.

8  5.8 grams, that's 58 tenths.  You multiply that by 20, and

9  just, you can do it on paper yourself back in the jury room,

10  that's over $1,000.

11       From that amount, from one of the smaller amounts that

12  were found there in the apartment, not even talking about the

13  close to 30-gram amount and the total crack cocaine which was

14  around 60 grams, that amount of crack cocaine and powder

15  cocaine, once it's turned into crack, remember, there is

16  another 60 grams of powder cocaine, generate lots of cash.  And

17  if you have cash and you have drugs and you are in an illicit

18  business, what do you want to do?  You want to protect your

19  cash and protect your drugs because TFO Jaramillo, who you

20  heard about and who spoke here, he has 15 years of experience

21  as a narcotics detective, 15 years, and he told you that the

22  drug trafficking business is a violent business.

23       If you are distributing cocaine in this amount, there is

24  money involved and there is a substance involved that can then

25  be distributed to others that's also worth money, and so you

1    protect your product.

2        That's what Tiba Conley had those guns for.  He had his

3    personal firearm near his person.  He had the drugs in his sock

4    and he had cash money in his pocket from just coming back.

5    That, by itself, is enough to convict Mr. Conley of Count Two.

6    Possession of that one firearm that was on the counter right

7    next to him and the crack cocaine that was in his sock, that is

8    enough to convict him.

9        But that isn't all you have.  You have all the other

10   drugs that are on those counters.  You have the very large

11   powerful firearms that are back in the bedroom.

12       What is a reasonable inference for someone who has

13   thousands of dollars worth of crack cocaine and cocaine powder

14   sitting in their kitchen and that they have loaded -- and lots

15   of money in their bedroom, $9,000 in a shoebox, and they have

16   firearms with loaded magazines?  And you heard from -- you can

17   see that this one is loaded and you also heard from Special

18   Agent Rothman that this other magazine was also loaded.  The

19   one on the left is the .223 and the one on the right is the

20   7.62.  The reasonable inference those guns are there to protect

21   something.

22       Mr. Conley, by stipulation, is a prohibited person.  He

23   has no business having a firearm.  Just having that firearm is

24   going to get him in trouble.  It's a crime.  Why you look past

25   that?  That's because you are in business and you are

1  protecting something, and that's what was going on here.

2  That's the reasonable inference.  That is what you heard

3  supported by a 15-year veteran of drug trafficking

4  investigations who told you that it is a violent business.

5        And Mr. Burnham noted that we are going to say, Well, you

6  know, guns and drugs are tied together, and that is absolutely

7  true.  That's what Detective Jaramillo said.  And I want you to

8  think about it this way:  Possession of a gun shows that you

9  intend to distribute drugs.  And how is that?  Because you need

10  that gun when you are going out to distribute those drugs.  You

11  are trying to protect them.  The possession of a gun itself

12  indicates and helps support the notion that you are intending

13  to distribute drugs.  Furthermore, if you have drugs, it also

14  shows that you intended to have that firearm.

15        You didn't hear any argument from Mr. Burnham that --

16  about that intent or the knowledge of the firearms.  I didn't

17  hear him claim that he didn't know the firearms were there.

18  And that's because, oh, he knew that the firearms were there

19  and he knew the firearms were there because he needed them to

20  protect the drugs.  He knew he had those guns.

21        Just a couple of other items.  DNA cuts against the

22  government.  I would grant you that one of our witnesses,

23  Christopher Stavrou, who searched Mr. Conley, searched his sock

24  and found a bag of crack cocaine you heard them speaking about

25  and you heard evidence about, and then he went and cleared the

1    Springfield XD pistol next to him.

2         Is there potential for transference?  Yes.  Witnesses

3    were very straightforward about that.  Did they remember

4    whether they had changed gloves?  They didn't know in some

5    cases.  Your memory controls.

6         The bottom line is, is that how is it that -- let's

7    assume there was transference.  If there was transference, how

8    -- how was that able to happen?  It's because there were drugs

9    right next to the defendant and next to a gun -- there were

10   drugs on the defendant and there was a gun next to the

11   defendant, and so the same person who was searching both was

12   able to transfer one to another.  That's the proximity notion.

13   So that's one reason why there is drugs -- there is -- the DNA

14   issue is not a cut against the government.

15        And certainly the other guns back in the back bedroom,

16   there was no direct evidence that some -- that while the

17   seizing agent did have gloves and there is the argument that,

18   therefore, she touched all the evidence and she transferred

19   things from one thing to another, but there is no evidence that

20   she touched Mr. Conley.  There is no evidence she touched

21   Mr. Conley.  She touched items of evidence.  And you heard from

22   the DNA expert that transference is a very complicated thing

23   having to do with which fabric you are touching, if it's steel,

24   if it's plastic, how those things are.

25        I mean, Mr. Burnham tries to wave away all the DNA

1  evidence by saying that this transference happened over and

2  over and over again.  There is no basis for assuming that.

3  And, in fact, there were lots of items there and a lot of

4  touching of different things going on, but there is no evidence

5  that there was a direct transference by the -- by the seizing

6  agents of all of those things that had the DNA samples come

7  back positive.

8        I grant you Christopher Stavrou, yes, he was very direct

9  about that, and said, Yes, I touched one; I don't think I

10 changed my gloves.

11       I would ask you to remember that in term of the DNA, the

12 DNA was touched -- the DNA was also on a couple of magazines in

13 addition to the three firearms where it was found.

14       I do want to get to the firearms, some of the things that

15 were in the bedroom.

16       It was a nice apartment.  Mr. Burnham argues it was a

17 nice apartment.  He elicited that from one of the -- one of the

18 witnesses.  I don't understand what that has to do with someone

19 doing a drug trafficking crime.  Drug traffickers can be in a

20 nice apartment just like anyone else.

21       I ask you -- this is a sock drawer in this picture we

22 have in P27.  That's a Masterpiece Arms .45 caliber

23 semiautomatic pistol with two clips in a sock drawer.

24       Here is another nice, very nice wall unit in the closet.

25 That's a 7.62 millimeter times 39 semiautomatic rifle banana

1   clip in a sock drawer.  But not only that, there is nine rounds

2   of .45 caliber ammunition and another box of ammunition in

3   there in a sock drawer.  That is the definition of having

4   materials ready at hand available.  You have loaded firearms

5   with drugs in that residence.  You may infer, based on the

6   proximity, what the defendant was doing.

7        All the elements around there, and I will cut this short,

8   the baking powder, the Pyrex glass that was sitting on the

9   counter, the drug residue on the scales, the white powder that

10  was on the scales, the two scales that were on the counter, and

11  then there was two more scales in the kitchen drawer, all those

12  scales were for what?  Using them to weigh cocaine and cocaine

13  base.  And why do you weigh things?  Not if you are a user and

14  not for those amounts.  You weigh them so you can distribute

15  them in the proper amount and sell your product in the proper

16  amount.

17        Those are facts.  Those are the cold facts.  Those are

18  the facts that lead you to conclude that there was drug

19  trafficking here, there was possession with intent to traffic

20  in these drugs, to distribute these drugs.  You can see it from

21  the facts of what was found in the kitchen.  You can see that

22  the guns were possessed in furtherance of the drug trafficking

23  crime if, for nothing else, to protect the drugs and the money

24  and the defendant's person.

25        And, finally, there was no argument that I heard that

1   there wasn't possession of all those firearms and ammunition in

2   that apartment where he was the sole resident and was on the

3   lease.

4          We ask that you return the only reasonable verdict here

5   based on the facts, not speculation, of what you can see, what

6   common sense tells you.

7          And that's what I want to end on, the most important tool

8   that you bring with you into the jury deliberation room is

9   common sense.  Imagine walking into that apartment and seeing

10  what was seen in there.  What does your common sense tell you?

11  And we ask that you return a verdict of guilty on all three

12  counts.

13         Thank you.

14         THE COURT:  Counsel, are the copies of the

15  instructions and the verdict sheets available now?

16         MR. BALDWIN:  Yes, Your Honor.

17         THE COURT:  All right.  Have a seat if you would.

18         All right, ladies and gentlemen.  You are now ready to

19  retire and consider your verdict.  It's now about 20 of four.

20  I don't intend to hold you here much later than 5:00 today but

21  I want you to get started on your deliberations.  And then

22  tomorrow coming in, you can come right back to your jury

23  deliberation area and pick up your deliberations once you are

24  all here, and Theresa will let you know when you are all in

25  place.

1    Now, we proceed -- I am going to repeat for you what I
2  think I may have said to you earlier -- maybe I am remembering
3  what I told counsel -- but the procedure at this point forward
4  is that you can go to the jury deliberation area, take your
5  notes, which you will have with you during the deliberations.
6  You will each have a copy in writing of the instructions that I
7  gave.  They were a little more formally written than I actually
8  delivered them.  And you will each have a copy of the proposed
9  verdict sheet, and you deliberate however you care to with
10  regard to the deliberations.
11    Madam Forelady, typically, the foreperson chairs the
12  meeting, but you proceed in any manner that you think may be
13  appropriate.
14    When you reach a verdict, you should knock on the door
15  and advise the court security officer, the bailiff, that you
16  have reached a verdict, and we will then be advised and we will
17  assemble in here, and you will then be brought back into the
18  courtroom.  And the clerk, Theresa, will ask you, or I will ask
19  you, "Ladies and gentlemen of the jury, have you agreed upon
20  your verdict?"  And you indicate.  "Who shall say for you?"
21  Either I or Theresa will ask that.
22    And then, Madam Forelady, you will be asked to stand
23  after, by the way, we have taken the roll so we make sure that
24  all 12 of you deliberating will be here.  What is your verdict
25  with regard to Count One, Count Two, Count Three?  And then

1    there is some further questions I think I indicated to you with

2    regard to the verdict sheet about the quality of both crack and

3    cocaine and also about the particular arms that were found

4    there.  You have to indicate whether those were the arms that

5    were found in the possession of the defendant if, in fact,

6    that's your conclusion.

7           And you will respond to each of the questions as she goes

8    down, yes, no, and so on, as appropriate, and then you will be

9    asked, "And Madam Forelady, is that your verdict?"  And you

10   should answer, "Yes."  Remember it has to be unanimous.  And

11   then, quite likely, counsel will ask that we poll the jury,

12   meaning that each of you will then be asked, "Juror No. 2, is

13   the forelady's verdict your verdict?"  Answer affirmatively,

14   and so on through the 12 of you who deliberate.  And then once

15   you have done that, your verdict will be recorded as returned.

16   Now -- and, again, you have to decide each count separately.

17          As I indicated to you earlier, if you need to communicate

18   with me during the course of the proceedings, you do so by

19   written note.  The forelady presents the note with the

20   signature, and it can be a question asked by any of you.  And I

21   will then convene with counsel and we will determine what an

22   appropriate response should be, and, in most cases, just write

23   a response to you, and you will take it back in and continue to

24   deliberate.  And that, I think, is the way we will proceed.

25          If you are deliberating through lunch tomorrow, I suspect

1    that we will still arrange for you to have lunch as before.  I

2    think lunch, though, would be brought up to the jury

3    deliberation area.

4         Are they eating there now or somewhere else?

5              THE DEPUTY CLERK:  They are eating there now.

6              THE COURT:  Well, that's where you will have your

7    lunch then if you are here by that time, and so we will

8    proceed.

9         So I think you have the basic forum as to how the verdict

10   will be taken.  And so what I'd like to do is have you go back

11   to the jury deliberation area now and we will begin to

12   aggregate our exhibits and the instructions and verdict sheets

13   for you to work with.

14        So if you will follow Theresa now, she will take you into

15   the jury room next door.

16             THE DEPUTY CLERK:  Counsel, just a moment -- I mean

17   jurors, just a moment.  Please be seated.

18             THE COURT:  Bailiff, if you will step forward,

19   please.

20             THE DEPUTY CLERK:  Thank you.

21        (Court security officer sworn.)

22             THE DEPUTY CLERK:  Please state your name for the

23   record.

24             COURT SECURITY OFFICER:  CSO Todd Miceli,

25   M-I-C-E-L-I.

1              THE DEPUTY CLERK:  Thank you.

2              THE COURT:  Ready to go?  Please follow Theresa,

3    folks.  Take your materials with you to your seats in the other

4    room.

5          (The jury panel exit the courtroom at 3:44 p.m.)

6              THE COURT:  Now, we will make sure that everything

7    that's supposed to go back goes back.  I did not say anything

8    about the guns and drugs not going back, but Theresa can

9    mention that to them, that we don't send them back.  If they

10   need to view them again, they will have to come back to the

11   courtroom and do that.

12         But I will ask:  There are pictures of both drugs and

13   guns, are there not, in the record that does go back?

14             MR. BALDWIN:  Yes, Your Honor.

15             THE COURT:  If they need to view them, they will.

16   Theresa, tell them, when you go back, that we do not actually

17   send the actual guns or drugs back.  They have pictures.  If

18   they do need to see them personally, we will have to reconvene

19   in the courtroom to do that.

20             THE DEPUTY CLERK:  Yes, Your Honor.  What about the

21   alternates?

22             THE COURT:  Sorry?

23             THE DEPUTY CLERK:  What about the alternates?

24             THE COURT:  I'm mistaken.  Ask them to step back out.

25   Sure.  The alternates are excused.  I am not paying attention.

1          Agent, step back and ask her to have the alternates come

2    back into the courtroom, the three alternates to come back this

3    way with their materials.

4          (Whereupon the alternate jurors came back into the

5    courtroom at 3:47 p.m.)

6          THE COURT:  You can hold up right there.  Just face

7    me.  I want to thank you for your time and attention to the

8    Court.  We appreciate it.  We have our 12 and they are ready to

9    deliberate.  You were available in case somebody dropped off in

10   the course of things.

11         As far as your talking about the case, generally, our

12   rule is you are not to talk to anybody associated with the

13   case, for example, the government or the defendant or anybody

14   associated with them.  You are free to talk to anybody else

15   about it at this point, though.  You are not bound forever by

16   your silence about it.  Again, thank you very much.

17         Do they get certificates from you?

18         THE DEPUTY CLERK:  Yes, they do, Your Honor.

19         THE COURT:  All right.  Again, you are excused.  Do

20   you have all your materials with you or are they in the other

21   room?

22         THE DEPUTY CLERK:  They are in the other room, Your

23   Honor.  I will escort them out the front door of the other

24   room.

25         THE COURT:  If you will go with her now, thanks

1  again.

2          (Whereupon the alternate jurors exit the courtroom at

3  3:48 p.m.)

4          THE COURT:  All right.  If you will work with Theresa

5  and get together whatever needs to get in there, if you will,

6  and we will -- we don't need to convene tomorrow morning.  The

7  jurors can come right in.  I think my sense is, though, at

8  5:00, calling them back in, I will tell them that they are to

9  come directly to the jury deliberation area and commence their

10 deliberations once Theresa certifies that they are all there.

11 We don't need to hear from me.

12         Counsel need to be obviously available in case we get a

13 note of any kind from the jury.  Be available for that.  Let's

14 see how we go with regard to the general verdict and we will

15 get to the next item if at all.

16         Is there anything else then?  I know Dillon points out

17 that you didn't make a Rule 29 motion at the end of your case,

18 but, on the other hand, you don't have to.  You have 14 days, I

19 think, to do it afterwards if I am not mistaken.  Yeah.

20         All right.  Thank you very much.  We will be in touch

21 with you then.  I will check in by 5:00.  If you will be here

22 shortly before five as we excuse the jury for the day.  Thank

23 you.

24         (Recess taken from 3:50 p.m. until 5:02 p.m.)

25             THE COURT:  Have a seat.

1          All right, Counsel.  It's 5:00 or shortly after.  The

2     defendant, again, not here.

3          The Court indicated that we would have the jury sit until

4     about five, not keep them late, and then just arrange for them

5     to come back tomorrow morning and get started right away with

6     their deliberations so that we don't even really need to

7     convene in the morning.  Once they are there, Theresa can tell

8     them, All right, get going.  And then just be available for a

9     check along the way.  And certainly, I guess, just to be safe,

10    even if we haven't heard anything by about 11:30, just check by

11    and let's see how we are doing.

12             MR. BALDWIN:  Your Honor, what time did you say --

13             THE COURT:  Well, we can ask the jury to be back at

14    ten, and then we don't have to call them into court.  They go

15    right next door and start deliberating once they are all here.

16             MR. BALDWIN:  Yes, Your Honor.

17             THE COURT:  That's the point of sending them out this

18    afternoon, that we don't have to re-charge them in any way, and

19    they will get started.

20         And then just if you folks will come by about 11:30 for

21    just a reality check to see how we are doing, we won't know

22    whether they are going fast or slow, but hopefully we will get

23    them going, and if they come back with a guilty verdict we can

24    get in round two.

25         I don't know that we need to bring them in today.  Let's

1    see.  Let's do that.  Just bring them in for the day and I will

2    bid them farewell.  Bring them in now.

3              THE DEPUTY CLERK:  Yes, Your Honor.  I just wanted to

4    let you know that I have offered to email everyone a status

5    when they reconvene when they have started -- resume their

6    deliberations.  I can let you all know when they have ordered

7    lunch just to give --

8              THE COURT:  I agree.  But let me dismiss them this

9    afternoon, and then tomorrow, they can start.

10             MR. BALDWIN:  I just wanted to remind you that the

11   agents will be here with the exhibits should the -- should they

12   want to see the exhibits.

13             THE COURT:  Are all the exhibits in now?  I don't

14   know.  Did you check with Theresa?

15             MR. BALDWIN:  Yes.  We sent back a binder, and all

16   the physical exhibits are out here.

17             THE COURT:  As well as the instructions and such?

18             MR. BALDWIN:  The instructions are in there, Your

19   Honor, so is the binder.  If they want to see the physical

20   exhibits, the agents will be here tomorrow in the courthouse,

21   so that's why I was asking for the time so they know when they

22   can be here.

23             THE COURT:  Mr. Burnham, again, the defendant is, you

24   know, can come back if he wants to come back when the jury

25   returns a verdict, whatever.  We are not going to wait for him

1    to get over here if he's not here.  I am expecting he will be

2    brought here tomorrow morning, too, and be available if he

3    wants to come up at the time that the verdict is submitted.  If

4    he doesn't want to come up, then we will continue as we have.

5              MR. BURNHAM:  I understand.

6              THE COURT:  All right.

7         (The jury panel enter the courtroom at 5:06 p.m.) all

8    right, folks.  I am just going to hold you for a minute.  I

9    know that Theresa has told you this already, but I want to

10   repeat, tomorrow morning, be here by ten and come right to the

11   jury deliberation area.  When all of you are here, just pick up

12   your deliberations and continue from where you are today.  You

13   should have everything that you need now as far as the exhibits

14   and the instructions and verdict sheet, and you will have lunch

15   arranged for you if you are here by that time.  And I don't

16   want you to go slow or fast, you go according to your pace, but

17   just to let you know that lunch would be available should you

18   be here at that point in time.

19             So, with that, please follow Theresa out.  Go home for

20   the evening.  Don't discuss the case in any fashion.  You can

21   leave your materials I think in the other room on your seats,

22   not here, but in the other room where your seats are.

23             So, Theresa, if you are ready to take them back?  All

24   right, folks.

25             THE DEPUTY CLERK:  Yes, Your Honor.

1           (The jury panel exit the courtroom at 5:08 p.m.)

2               THE COURT:  All right.  Counsel, check in by 11:30 if

3      there isn't a note sooner to make sure Theresa knows how to

4      contact you if we get something sooner.  Okay.  See you then

5      tomorrow.

6           (The proceedings were concluded at 5:08 p.m.)

1                    C E R T I F I C A T E

2

3          I, Renee A. Ewing, an Official Court Reporter for

4   the United States District Court for the District of Maryland,

5   do hereby certify that the foregoing is a true and correct

6   transcript of the stenographically reported proceedings taken

7   on the date and time previously stated in the above matter;

8   that the testimony of witnesses and statements of the parties

9   were correctly recorded in machine shorthand by me and

10  thereafter transcribed under my supervision with computer-aided

11  transcription to the best of my ability; and that I am neither

12  of counsel nor kin to any party in said action, nor interested

13  in the outcome thereof.

14

15                    Renee A  Ewing

16

17                    Renee A. Ewing, RPR, RMR, CRR
                      Official Court Reporter
18                    August 10, 2021

19

20

21

22

23

24

25

## $

**$1,000** [1] - 108:10
**$20** [2] - 108:6, 108:7
**$30** [2] - 108:6, 108:7
**$495** [3] - 82:17, 107:15, 108:3
**$9,000** [5] - 82:16, 93:12, 93:16, 104:21, 109:15

## 0

**0604530** [2] - 54:9, 58:17

## 1

**1** [10] - 79:10, 86:15, 86:21, 86:24, 87:7, 89:20, 92:20, 93:5, 93:17
**10** [10] - 54:5, 58:13, 88:10, 88:12, 89:16, 90:21, 92:18, 93:14, 125:17
**10:36** [1] - 1:11
**10:49** [1] - 13:22
**11** [1] - 58:21
**11:30** [3] - 121:10, 121:20, 124:2
**12** [6] - 16:8, 64:12, 105:13, 115:24, 116:14, 119:8
**127** [1] - 73:25
**12:04** [1] - 13:22
**12:10** [1] - 18:10
**13** [1] - 105:13
**14** [3] - 58:20, 86:21, 120:18
**1424** [1] - 1:20
**15** [5] - 16:13, 107:16, 108:2, 108:20, 108:21
**15-year** [1] - 110:3
**1551** [1] - 74:1
**16** [1] - 80:7
**18** [2] - 54:17, 59:1
**1:32** [1] - 71:20
**1:37** [1] - 75:8
**1A** [1] - 89:25

## 2

**2** [9] - 87:13, 87:15, 87:16, 88:2, 89:9, 89:23, 90:17, 92:19, 116:12
**20** [7] - 12:1, 12:20, 16:13, 74:17, 74:25,

108:8, 114:19
**20-minute** [1] - 12:4
**20005** [1] - 1:20
**2016** [6] - 46:6, 54:1, 58:6, 76:19, 85:5, 103:25
**202** [1] - 1:21
**2020** [1] - 1:11
**2021** [1] - 125:17
**20770** [1] - 1:16
**209.8** [1] - 80:7
**21** [11] - 4:24, 5:1, 5:6, 9:9, 9:15, 46:6, 46:14, 53:25, 54:13, 58:6, 90:10
**21st** [3] - 76:19, 85:5, 103:25
**223** [3] - 58:18, 88:16, 109:19
**24** [1] - 1:11
**25** [3] - 74:17, 87:14, 88:17
**27** [1] - 90:14
**28** [4] - 46:8, 70:6, 70:7, 70:8
**29** [4] - 2:6, 4:22, 90:16, 120:17
**29.9** [1] - 81:5
**2:20** [3] - 74:18, 75:7
**2:26** [1] - 75:8
**2:28** [1] - 76:9

## 3

**3** [4] - 88:1, 88:2, 89:9, 92:20
**3.9** [1] - 80:9
**30** [4] - 58:19, 74:23, 74:25, 107:3
**30-gram** [1] - 108:13
**301** [2] - 1:17, 1:24
**3016** [2] - 79:11, 99:11
**32** [1] - 90:18
**344-3227** [1] - 1:24
**344-4433** [1] - 1:17
**35** [1] - 90:21
**36** [1] - 79:6
**386-6920** [1] - 1:21
**39** [5] - 54:8, 58:16, 58:18, 58:21, 58:22, 87:14, 88:18, 112:25
**3:44** [1] - 118:5
**3:47** [1] - 119:5
**3:48** [1] - 120:3
**3:50** [1] - 120:24

## 4

**4** [4] - 1:10, 89:22, 90:22, 92:20

**45** [15] - 54:3, 54:5, 54:6, 58:11, 58:13, 58:14, 58:19, 58:20, 58:23, 74:23, 88:17, 90:19, 94:4, 112:22, 113:2
**47** [2] - 92:12, 102:9
**48** [3] - 65:18, 66:1, 66:19
**49** [7] - 66:12, 66:15, 66:18, 66:19, 66:21, 66:25, 73:5

## 5

**5.56** [2] - 54:6, 58:14
**5.8** [4] - 81:15, 107:14, 108:4, 108:8
**50** [5] - 58:18, 66:13, 66:16, 66:19, 88:16
**54** [1] - 7:6
**56** [2] - 69:3, 72:7
**57** [2] - 69:17, 102:21
**58** [1] - 108:8
**59/66** [2] - 54:8, 58:16
**5:00** [4] - 114:20, 120:8, 120:21, 121:1
**5:02** [1] - 120:24
**5:06** [1] - 123:7
**5:08** [2] - 124:1, 124:6

## 6

**60** [2] - 108:14, 108:16
**61** [2] - 65:14, 65:15
**62.1** [1] - 81:7
**6406** [1] - 1:15
**69** [2] - 76:24, 82:1

## 7

**7.62** [8] - 54:8, 58:16, 58:21, 58:22, 87:14, 88:18, 109:20, 112:25
**70** [4] - 65:15, 68:9, 68:10, 68:14
**71** [3] - 68:9, 68:10, 68:14
**72** [2] - 76:25, 82:1
**74** [1] - 88:17
**78** [1] - 73:25

## 8

**800** [1] - 1:16
**841(a** [1] - 46:15
**841(a)(1** [1] - 54:14

## 9

**922(g** [1] - 58:25
**924(c** [2] - 54:17, 101:13
**997** [1] - 74:1

## A

**a.m** [1] - 13:22
**A.M** [1] - 1:11
**A12487** [2] - 54:6, 58:14
**ability** [4] - 38:15, 48:18, 85:22, 125:11
**able** [8] - 14:13, 17:25, 18:1, 67:11, 71:11, 111:8, 111:12
**absence** [2] - 69:6, 103:19
**absent** [1] - 104:7
**absolute** [2] - 2:17, 96:22
**absolutely** [4] - 98:6, 101:22, 102:1, 110:6
**accept** [7] - 3:6, 19:22, 33:4, 34:10, 40:18, 42:1, 42:18
**acceptable** [2] - 66:8, 66:23
**accepted** [3] - 24:16, 24:19, 33:21
**access** [5] - 12:6, 12:9, 14:14, 28:9, 28:13
**accessibility** [3] - 57:8, 92:5, 92:16
**accessible** [1] - 93:1
**accident** [3] - 45:3, 56:14, 62:16
**accordance** [1] - 27:16
**accorded** [1] - 25:7
**according** [2] - 3:7, 123:16
**accordingly** [3] - 45:10, 45:21, 67:16
**account** [2] - 38:10, 40:10
**accurate** [2] - 38:10, 38:22
**accurately** [1] - 38:2
**accusation** [2] - 28:22, 43:3
**acknowledgment** [1] - 17:6
**acquire** [1] - 67:11
**acquit** [1] - 29:12
**acquittal** [1] - 27:5
**act** [11] - 43:21, 44:17,

44:22, 44:23, 45:18, 45:19, 45:20, 59:11, 60:23, 61:1, 85:5
**acted** [2] - 45:1, 45:4
**acting** [1] - 9:23
**action** [3] - 55:20, 61:9, 125:12
**actions** [3] - 45:16, 51:2, 51:3
**actively** [2] - 79:17, 86:6
**activities** [1] - 52:25
**activity** [4] - 82:25, 98:3, 103:4, 104:11
**acts** [4] - 45:1, 45:2, 45:20, 45:23
**actual** [9] - 48:12, 48:16, 52:17, 61:13, 61:15, 61:21, 72:3, 85:17, 118:17
**add** [3] - 73:20, 83:6, 88:15
**added** [1] - 101:11
**addition** [4] - 77:1, 80:21, 81:1, 81:5, 83:15, 84:21, 86:21, 87:14, 90:25, 93:10, 112:13
**additional** [4] - 12:21, 19:2, 68:8, 68:23
**additionally** [1] - 107:4
**address** [3] - 79:11, 79:15, 95:23
**adds** [1] - 103:20
**adequate** [1] - 70:19
**admissibility** [2] - 25:19, 25:21
**admit** [1] - 82:21
**admitted** [2] - 35:24, 36:16
**admonishment** [2] - 18:25, 19:3
**advance** [1] - 56:19
**advances** [1] - 40:14
**adverse** [1] - 41:8
**advise** [2] - 70:21, 115:15
**advised** [2] - 47:12, 115:16
**affairs** [1] - 51:1
**affect** [2] - 38:6, 43:14
**affected** [2] - 40:23, 62:22
**affecting** [6] - 58:24, 59:4, 59:17, 62:24, 63:18, 85:10
**affirmatively** [1] - 116:13
**after-the-fact** [1] -

98:21
**afternoon** [12] - 18:11, 18:18, 76:14, 76:15, 77:11, 95:16, 95:17, 105:21, 106:16, 106:17, 121:18, 122:9
**afterwards** [1] - 120:19
**again/off** [1] - 22:1
**age** [1] - 26:6
**agent** [8] - 77:3, 83:6, 84:9, 100:20, 100:22, 104:14, 111:17, 119:1
**Agent** [3] - 80:18, 88:4, 109:18
**agents** [3] - 112:6, 122:11, 122:20
**aggregate** [1] - 117:12
**ago** [4] - 81:25, 88:22, 98:11, 102:15
**agree** [3] - 14:22, 64:13, 122:8
**agreed** [4] - 34:15, 68:6, 86:10, 115:19
**agreement** [2] - 34:13, 64:22
**ahead** [3] - 21:7, 21:19, 73:2
**aid** [1] - 103:13
**aided** [1] - 125:10
**AIDED** [1] - 1:25
**ain't** [1] - 10:7
**alleged** [11] - 43:24, 57:8, 57:12, 92:4, 92:8, 93:21, 98:14, 101:9, 101:10, 102:23, 103:5
**alleges** [1] - 104:20
**allow** [3] - 26:4, 26:10, 64:3
**allowable** [1] - 8:6
**allowed** [1] - 42:2
**alluded** [4] - 93:9, 98:19, 101:7
**almost** [3] - 97:14, 97:16, 98:9
**alone** [7] - 23:3, 26:21, 29:12, 31:14, 34:20, 36:8, 49:2
**alternate** [2] - 119:4, 120:2
**alternates** [5] - 118:21, 118:23, 118:25, 119:1, 119:2
**amendments** [1] - 69:14
**America** [1] - 25:6
**AMERICA** [1] - 1:5

**ammunition** [47] - 58:1, 58:10, 58:18, 58:19, 58:20, 58:21, 58:22, 58:23, 59:4, 59:15, 60:10, 60:20, 61:5, 61:10, 61:19, 61:22, 62:2, 62:4, 62:14, 62:17, 62:18, 62:19, 63:2, 63:6, 63:12, 63:14, 63:16, 64:4, 76:24, 78:2, 84:16, 85:9, 85:13, 86:18, 87:15, 87:21, 87:24, 88:7, 88:17, 88:18, 89:1, 95:5, 113:2, 114:1
**ammunitions** [1] - 58:24
**amount** [13] - 46:9, 46:13, 70:6, 80:12, 80:14, 81:6, 82:22, 108:11, 108:13, 108:14, 108:23, 113:15, 113:16
**amounts** [3] - 82:5, 108:11, 113:14
**analysis** [5] - 35:5, 47:23, 98:21, 101:4, 103:13
**analyzed** [1] - 102:16
**analyzing** [2] - 89:19, 90:24
**AND** [1] - 1:11
**Andrew** [1] - 90:7
**answer** [10] - 10:4, 23:21, 34:10, 70:18, 70:19, 73:11, 83:17, 87:23, 116:10, 116:13
**answers** [6] - 24:1, 24:2, 24:19, 34:12, 98:13
**Apartment** [1] - 99:11
**apartment** [42] - 49:9, 76:19, 76:21, 78:12, 78:15, 79:1, 79:3, 79:7, 79:8, 79:16, 79:17, 79:20, 81:2, 82:15, 84:3, 84:19, 86:19, 87:11, 87:19, 88:13, 89:4, 91:1, 91:11, 94:6, 95:2, 95:4, 95:5, 98:10, 100:24, 104:13, 104:16, 106:19, 108:12, 112:16, 112:17, 112:20, 114:2, 114:9
**apologize** [3] - 21:11, 65:16, 71:21

**apparent** [2] - 20:9, 22:18
**appeal** [2] - 3:20, 7:13
**Appeals** [1] - 74:1
**appear** [2] - 35:19, 37:25
**appearance** [1] - 48:3
**applicant** [1] - 3:16
**application** [2] - 3:14, 3:23
**apply** [4] - 19:22, 41:23, 52:7, 52:9
**applying** [1] - 6:8
**appreciate** [1] - 119:8
**approach** [2] - 21:6, 68:18
**approached** [1] - 28:5
**approaching** [1] - 68:21
**appropriate** [8] - 9:19, 10:1, 11:24, 32:21, 74:5, 115:13, 116:8, 116:22
**April** [6] - 46:6, 53:25, 58:6, 76:19, 85:5, 103:24
**area** [9] - 80:19, 81:20, 104:16, 114:23, 115:4, 117:3, 117:11, 120:9, 123:11
**argue** [2] - 70:23, 74:7
**argues** [1] - 112:16
**arguing** [1] - 76:2
**argument** [8] - 35:3, 95:22, 105:22, 105:25, 110:15, 111:17, 113:25
**arguments** [6] - 11:9, 19:19, 19:20, 31:4, 64:20, 65:5
**Armory** [1] - 54:3, 58:11
**arms** [2] - 116:3, 116:4
**Arms** [12] - 54:5, 58:12, 88:10, 88:12, 89:16, 89:22, 90:3, 90:15, 92:18, 93:14, 94:24, 112:22
**arose** [1] - 28:11
**arrange** [4] - 10:2, 11:21, 117:1, 121:4
**arranged** [1] - 123:15
**arrive** [1] - 27:1
**aspect** [1] - 39:22
**assemble** [1] - 115:17
**assess** [2] - 80:10, 81:8
**assigned** [1] - 42:24
**assist** [2] - 41:18,

52:15
**associated** [5] - 49:21, 90:19, 90:22, 119:12, 119:14
**assume** [2] - 12:22, 111:7
**assumed** [1] - 22:14
**assumes** [1] - 15:15
**assuming** [2] - 34:5, 112:2
**attach** [2] - 19:6, 41:7
**attached** [1] - 19:4
**attack** [1] - 42:14
**attempt** [2] - 35:13, 104:8
**attempted** [1] - 52:18
**attend** [1] - 14:18
**attending** [1] - 75:21
**attention** [8] - 4:14, 19:12, 19:16, 21:17, 43:20, 95:20, 118:25, 119:7
**attitude** [1] - 24:25
**Attorney** [1] - 44:9
**attorney** [5] - 22:25, 25:12, 25:14, 25:18, 25:19
**ATTORNEY** [1] - 1:14
**attorneys** [1] - 31:3
**audio** [2] - 18:17, 83:25
**audiotape** [2] - 83:20, 91:4
**August** [1] - 125:17
**authorities** [2] - 51:13, 67:15
**automatically** [1] - 55:8
**available** [13] - 15:9, 16:21, 18:16, 45:14, 75:24, 113:4, 114:15, 119:9, 120:12, 120:13, 121:8, 123:2, 123:17
**avoid** [1] - 100:19
**awake** [1] - 57:23
**aware** [1] - 81:21

---

# B

**background** [4] - 97:18, 98:12, 101:23, 106:6
**bad** [1] - 104:2
**bag** [1] - 110:24
**bailiff** [3] - 70:1, 115:15, 117:18
**baking** [3] - 77:3, 84:9, 113:8
**Baldwin** [11] - 11:24,

15:22, 21:22, 22:17, 32:9, 66:17, 68:11, 72:5, 101:21, 105:22, 106:14
**BALDWIN** [43] - 1:14, 2:4, 12:14, 12:19, 12:24, 13:3, 18:22, 21:23, 22:11, 32:11, 32:14, 33:19, 34:1, 65:19, 66:9, 66:20, 66:25, 67:3, 68:8, 68:12, 68:20, 69:1, 69:9, 71:24, 72:8, 72:11, 74:11, 74:15, 74:19, 75:3, 76:7, 76:12, 106:15, 106:18, 106:24, 107:1, 114:16, 118:14, 121:12, 121:16, 122:10, 122:15, 122:18
**banana** [1] - 112:25
**bank** [1] - 48:23
**bar** [1] - 25:10
**Barnaul** [1] - 58:22
**base** [20] - 46:10, 47:12, 47:16, 47:19, 48:5, 56:1, 70:7, 76:25, 78:23, 80:5, 80:8, 80:9, 80:12, 80:22, 81:5, 81:16, 82:1, 83:4, 95:6, 113:13
**based** [16] - 26:1, 26:13, 27:14, 30:11, 32:3, 36:9, 51:2, 51:18, 53:9, 64:22, 72:15, 72:21, 73:25, 84:11, 113:5, 114:5
**basic** [1] - 117:9
**basis** [7] - 26:23, 31:4, 31:9, 64:2, 64:16, 73:8, 112:2
**bathroom** [1] - 81:10
**bear** [2] - 22:23, 40:17
**bearing** [9] - 23:23, 54:4, 54:5, 54:7, 54:9, 58:12, 58:13, 58:15, 58:17
**bed** [6] - 87:19, 88:3, 88:4, 89:10, 89:12, 92:18
**bedroom** [15] - 81:10, 88:13, 89:2, 89:14, 89:17, 91:2, 92:17, 93:12, 94:5, 95:2, 96:25, 109:11, 109:15, 111:15, 112:15
**BEFORE** [1] - 1:10

**beg** [1] - 19:25
**began** [2] - 22:15, 29:20
**begin** [1] - 117:11
**beginning** [3] - 24:21, 75:6, 103:12
**begins** [1] - 29:11
**begun** [1] - 13:17
**behalf** [1] - 102:14
**behavior** [3] - 22:1, 51:11, 52:4
**believability** [2] - 23:15, 36:25
**believable** [1] - 37:1
**believes** [1] - 25:14
**bench** [2] - 20:1, 20:5
**beneath** [1] - 80:16
**benefit** [2] - 40:11, 95:23
**best** [2] - 9:19, 125:11
**better** [4] - 8:2, 11:2, 21:4, 71:12
**between** [9] - 30:19, 34:14, 39:2, 43:24, 86:10, 92:24, 100:17, 100:24, 105:15
**beyond** [40] - 24:10, 26:19, 27:7, 27:12, 28:25, 29:10, 29:14, 29:23, 30:25, 32:4, 41:2, 43:6, 44:21, 47:7, 48:5, 50:3, 51:25, 52:6, 55:2, 55:12, 55:22, 56:4, 56:9, 57:18, 59:6, 59:19, 60:6, 60:22, 61:5, 62:24, 64:1, 77:19, 77:22, 84:12, 92:15, 95:10, 95:12, 96:9, 96:19, 105:9
**bias** [5] - 24:18, 24:24, 26:25, 38:4, 38:8
**bid** [1] - 122:2
**bill** [3] - 79:14, 79:15, 95:4
**binder** [2] - 122:15, 122:19
**binding** [1] - 24:20
**bit** [7] - 36:24, 87:17, 96:18, 97:18, 97:20, 98:20, 99:14
**black** [1] - 8:8
**blank** [1] - 72:24
**block** [1] - 17:1
**blogging** [1] - 27:24
**bolstered** [1] - 94:9
**book** [2] - 4:21, 10:18
**books** [1] - 28:12
**Border** [1] - 63:7

**botched** [1] - 101:5
**bottom** [3] - 79:4, 79:5, 111:6
**bought** [1] - 104:5
**bound** [1] - 119:15
**bounds** [4] - 3:24, 4:12, 13:14, 13:15
**box** [4] - 48:23, 93:12, 94:25, 113:2
**Brandon** [1] - 90:8
**break** [2] - 69:13, 75:25
**breaking** [2] - 62:20, 104:23
**brief** [2] - 11:8, 17:6
**bring** [10] - 11:8, 16:3, 16:15, 76:4, 100:12, 114:8, 121:25, 122:1, 122:2
**Bronze** [1] - 58:18
**brought** [8] - 2:25, 17:5, 21:16, 25:5, 46:14, 115:17, 117:2, 123:2
**building** [1] - 107:16
**bullet** [1] - 102:15
**bullets** [2] - 61:11
**bunch** [1] - 76:7
**burden** [20] - 26:4, 26:8, 27:6, 28:24, 29:1, 29:3, 29:17, 30:1, 33:16, 35:7, 41:2, 41:3, 44:25, 77:19, 77:20, 80:11, 96:5, 96:20, 97:6, 105:23
**BURNHAM** [2] - 14:10, 74:25
**BURNHAM** [47] - 1:19, 1:19, 2:11, 9:21, 11:5, 14:3, 14:19, 14:25, 15:18, 15:22, 15:25, 17:5, 17:10, 18:24, 19:2, 19:8, 19:25, 20:5, 20:9, 20:18, 20:20, 20:22, 20:24, 21:1, 21:3, 21:6, 21:8, 21:11, 22:7, 22:10, 22:16, 66:14, 67:5, 68:18, 72:18, 73:3, 73:7, 73:22, 74:9, 74:20, 75:11, 75:17, 75:19, 75:23, 95:15, 95:18, 123:5
**Burnham** [25] - 2:10, 3:5, 6:13, 9:13, 9:18, 10:20, 11:23, 13:4, 14:1, 15:14, 18:23, 20:8, 20:19, 21:2,

67:4, 68:7, 68:20, 72:14, 75:10, 95:14, 110:5, 110:15, 111:25, 112:16, 122:23
**business** [9] - 67:25, 82:19, 84:10, 108:18, 108:22, 109:23, 109:25, 110:4
**buy** [4] - 3:15, 6:6, 97:24, 99:6
**buyers** [1] - 48:1
**buys** [3] - 7:15, 97:23, 97:25
**BY** [3] - 1:14, 1:15, 1:19

## C

**caliber** [16] - 54:3, 54:5, 58:11, 58:13, 58:18, 58:19, 58:20, 58:23, 87:14, 88:17, 88:18, 90:19, 94:4, 112:22, 113:2
**CAM** [1] - 17:24
**camera** [1] - 106:23
**candid** [1] - 37:19
**candidly** [1] - 21:25
**cannot** [4] - 9:14, 21:2, 49:17, 56:22
**Capone** [1] - 81:18
**card** [1] - 69:20
**cards** [1] - 79:4
**care** [7] - 2:7, 6:23, 6:24, 8:3, 36:19, 40:19, 115:9
**career** [2] - 97:19, 102:1
**careful** [1] - 29:15
**carefully** [4] - 19:15, 19:16, 37:13, 65:4
**carelessness** [2] - 45:3, 50:9
**carried** [2] - 63:8, 63:9
**cartel** [1] - 103:9
**cartridges** [1] - 61:10
**case** [114] - 2:20, 3:20, 4:11, 5:8, 7:12, 8:10, 8:13, 8:25, 9:1, 13:18, 18:20, 19:11, 21:24, 22:3, 22:12, 23:7, 23:8, 24:4, 24:22, 25:1, 25:13, 26:14, 26:17, 27:15, 27:20, 27:22, 28:2, 28:6, 28:7, 28:10, 28:18, 29:3, 29:16, 30:2, 32:6, 32:23,

34:16, 34:17, 34:23, 34:25, 35:12, 35:19, 36:1, 36:14, 38:20, 40:12, 40:21, 40:24, 41:12, 42:1, 42:5, 42:16, 43:8, 44:14, 44:21, 45:6, 45:9, 49:24, 52:22, 59:12, 63:13, 63:25, 64:6, 64:7, 64:14, 64:25, 69:18, 71:9, 71:11, 77:4, 77:19, 79:23, 79:24, 85:13, 86:17, 92:3, 95:7, 95:21, 96:4, 96:16, 96:17, 97:12, 97:13, 97:16, 98:7, 98:12, 98:18, 99:4, 99:13, 99:15, 100:15, 101:9, 101:23, 102:2, 102:5, 103:1, 103:5, 103:22, 103:23, 104:7, 104:14, 105:5, 105:17, 106:4, 106:8, 106:11, 107:9, 119:9, 119:11, 119:13, 120:12, 120:17, 123:20
**cases** [6] - 61:10, 100:6, 101:25, 111:5, 116:22
**cash** [13] - 76:25, 82:16, 82:17, 82:20, 82:22, 91:17, 93:12, 93:16, 94:25, 108:16, 108:17, 108:19, 109:4
**casually** [1] - 46:21
**catching** [1] - 107:10
**categories** [1] - 67:23
**caught** [1] - 102:19
**caused** [2] - 38:9, 52:23
**cell** [5] - 17:1, 83:8, 83:9, 83:11, 83:12
**center** [1] - 14:9
**certain** [13] - 31:12, 34:5, 34:14, 35:4, 36:16, 36:17, 41:12, 43:22, 44:4, 45:17, 67:23, 80:12, 99:10
**certainly** [5] - 22:5, 74:3, 94:1, 111:15, 121:9
**certificates** [1] - 119:17
**certifies** [1] - 120:10
**certify** [1] - 125:5
**cetera** [1] - 30:5

**chain** [1] - 105:11
**chairs** [2] - 71:19, 115:11
**challenged** [1] - 3:21
**chance** [2] - 7:13, 15:21
**change** [3] - 65:2, 100:17, 100:24
**changed** [2] - 111:4, 112:10
**changes** [3] - 14:12, 68:16, 74:12
**changing** [1] - 106:22
**charge** [14] - 16:1, 42:22, 46:1, 59:11, 60:15, 72:19, 73:12, 96:6, 101:11, 101:16, 103:5, 103:14, 103:15, 121:18
**charged** [43] - 25:4, 26:22, 28:21, 36:17, 42:21, 43:14, 43:15, 44:11, 44:21, 44:22, 44:23, 46:2, 47:18, 54:14, 54:23, 54:25, 55:5, 55:13, 55:17, 55:25, 56:2, 56:5, 59:9, 59:11, 59:16, 59:21, 60:3, 60:4, 60:10, 60:20, 60:23, 61:1, 62:14, 63:5, 69:22, 85:4, 85:9, 85:10, 91:19, 91:23, 103:7, 103:9
**charges** [12] - 29:6, 43:1, 43:2, 43:10, 43:21, 44:14, 44:15, 46:6, 46:14, 53:23, 57:25, 58:6
**charging** [1] - 42:24
**CHARLES** [1] - 1:19
**charming** [1] - 100:21
**chart** [1] - 81:23
**chat** [1] - 27:24
**check** [7] - 74:16, 120:21, 121:9, 121:10, 121:21, 122:14, 124:2
**checked** [1] - 17:11
**checkmark** [1] - 70:15
**chemical** [2] - 35:5, 47:23
**chemist** [1] - 47:23
**chief** [2] - 98:12, 103:22
**choice** [1] - 7:21
**choose** [4] - 2:16, 2:22, 38:3, 40:4
**chosen** [2] - 2:19,

17:8
**Christopher** [3] - 81:18, 110:23, 112:8
**Circuit** [2] - 74:1, 74:4
**circuit** [2] - 4:15, 18:16
**circumstance** [1] - 104:17
**circumstances** [12] - 9:18, 9:23, 10:21, 37:14, 44:5, 45:5, 45:23, 50:24, 57:14, 74:5, 92:11, 94:14
**circumstantial** [13] - 30:2, 30:7, 30:14, 30:20, 31:11, 31:19, 32:2, 47:22, 47:24, 48:4, 51:6, 62:6
**City** [2] - 79:12, 104:17
**civil** [5] - 59:10, 59:23, 60:5, 85:3, 86:13
**claim** [1] - 110:17
**claims** [1] - 36:16
**class** [1] - 68:2
**clean** [3] - 29:11, 69:15, 101:18
**clean-up** [1] - 101:18
**clear** [8] - 8:22, 14:6, 26:24, 37:5, 66:11, 74:4, 80:13, 101:8
**cleared** [1] - 110:25
**clearly** [2] - 45:19, 51:4
**Clerk** [1] - 2:8
**clerk** [4] - 10:12, 20:1, 68:18, 115:18
**CLERK** [26] - 12:7, 14:16, 15:11, 16:12, 16:16, 18:7, 20:12, 68:22, 71:18, 75:12, 75:15, 87:2, 87:5, 106:22, 106:25, 117:5, 117:16, 117:20, 117:22, 118:1, 118:20, 118:23, 119:18, 119:22, 122:3, 123:25
**client** [1] - 25:18
**client's** [1] - 9:19
**clip** [1] - 113:1
**clips** [1] - 112:23
**close** [10] - 19:12, 49:18, 87:9, 88:22, 89:11, 93:5, 93:6, 93:17, 94:21, 108:13
**closed** [3] - 2:4, 4:15, 18:16
**closed-circuit** [2] -

4:15, 18:16
**closer** [1] - 106:20
**closet** [10] - 88:3, 88:11, 88:12, 88:25, 89:10, 89:17, 93:12, 93:13, 93:14, 112:24
**closing** [6] - 11:9, 23:18, 74:21, 95:22, 101:9, 103:2
**cocaine** [57] - 46:10, 46:13, 47:12, 47:16, 47:19, 47:20, 48:5, 56:1, 70:7, 76:25, 78:23, 80:1, 80:5, 80:6, 80:8, 80:9, 80:12, 80:15, 80:22, 81:5, 81:7, 81:16, 82:1, 82:2, 82:3, 83:4, 83:7, 86:8, 95:6, 107:4, 107:15, 108:7, 108:13, 108:14, 108:15, 108:16, 108:23, 109:7, 109:13, 110:24, 113:12, 116:3
**coconspirator** [1] - 44:8
**Code** [4] - 46:14, 54:14, 54:17, 59:1
**coffee** [2] - 99:25, 100:1
**coincidental** [2] - 56:23, 57:22
**cold** [1] - 113:17
**collect** [1] - 104:6
**collection** [1] - 100:8
**colored** [2] - 40:23, 42:15
**combatting** [1] - 67:18
**combination** [2] - 59:16, 85:9
**Comcast** [2] - 79:14, 95:4
**coming** [8] - 7:16, 17:4, 21:8, 99:5, 105:20, 107:23, 109:4, 114:22
**commence** [1] - 120:9
**comments** [1] - 68:6
**commerce** [13] - 58:24, 59:4, 59:17, 62:22, 62:24, 63:3, 63:12, 63:17, 63:18, 67:24, 68:3, 85:11
**commission** [1] - 56:19
**committed** [6] - 55:13, 55:23, 56:5, 57:21, 77:6, 91:19

**common** [10] - 31:21, 32:20, 33:9, 38:24, 42:4, 80:23, 98:6, 114:6, 114:9, 114:10
**commonly** [1] - 56:16
**communicate** [7] - 14:24, 21:21, 28:1, 70:24, 71:4, 71:5, 116:17
**communicated** [1] - 21:14
**community** [2] - 25:3, 104:17
**compare** [1] - 37:22
**compelling** [1] - 106:1
**competency** [1] - 24:17
**complete** [2] - 24:25, 39:23
**completely** [2] - 38:10, 101:1
**complicated** [1] - 111:22
**complicating** [1] - 22:2
**COMPUTER** [1] - 1:25
**computer** [1] - 125:10
**COMPUTER-AIDED** [1] - 1:25
**computer-aided** [1] - 125:10
**concept** [2] - 48:10, 62:9
**concern** [2] - 25:2, 63:22
**concerned** [2] - 23:4, 67:19
**concerning** [4] - 24:17, 42:3, 48:1, 52:9
**conclude** [6] - 30:22, 31:8, 51:9, 55:7, 104:11, 113:18
**concluded** [1] - 124:6
**concludes** [1] - 96:4
**conclusion** [2] - 31:17, 116:6
**conclusively** [1] - 45:19
**concrete** [1] - 53:4
**conduct** [2] - 45:5, 45:16
**conducted** [1] - 82:19
**conference** [7] - 16:1, 20:1, 20:5, 21:15, 25:20, 72:19, 73:12
**conferences** [1] - 25:16
**confidence** [1] - 106:10

**confirm** [1] - 82:4
**confirmed** [2] - 78:17, 80:4
**confirming** [2] - 81:3, 81:15
**conflicts** [1] - 23:11
**Congress** [2] - 67:10, 67:16
**Conley** [86] - 2:11, 2:13, 3:25, 5:17, 7:1, 8:11, 9:5, 10:3, 11:6, 11:13, 14:2, 14:3, 15:9, 18:2, 18:14, 19:3, 19:6, 21:14, 42:21, 46:7, 54:2, 58:7, 75:10, 75:16, 75:17, 76:18, 76:20, 76:23, 77:6, 78:25, 79:5, 79:7, 79:14, 79:16, 82:22, 83:11, 83:16, 84:4, 84:12, 85:14, 86:4, 86:11, 87:9, 87:23, 88:16, 88:22, 89:3, 89:4, 89:21, 89:22, 89:24, 90:1, 90:4, 91:2, 91:7, 92:15, 93:4, 93:18, 94:19, 95:2, 95:9, 96:21, 96:25, 98:8, 98:25, 99:2, 99:4, 99:9, 99:10, 101:22, 102:6, 103:7, 104:1, 104:18, 105:2, 105:17, 107:18, 109:2, 109:5, 109:22, 110:23, 111:20, 111:21
**CONLEY** [1] - 1:8
**Conley's** [18] - 78:12, 79:10, 79:11, 81:2, 82:24, 84:19, 84:21, 86:19, 87:18, 87:19, 88:3, 88:4, 88:11, 89:10, 90:12, 90:25, 96:6, 100:13
**connected** [2] - 17:11, 105:10
**connection** [6] - 3:13, 3:23, 49:23, 60:14, 101:13, 105:18
**conscientious** [2] - 65:6, 65:8
**consciously** [1] - 38:9
**consider** [37] - 2:18, 4:2, 23:3, 30:1, 30:21, 32:19, 34:8, 35:6, 35:25, 38:13, 38:14, 39:13, 39:16, 39:20, 39:21, 39:23,

41:10, 41:21, 43:7, 43:11, 44:10, 44:12, 44:15, 47:15, 55:9, 57:6, 60:17, 60:18, 62:5, 64:6, 64:20, 68:24, 70:14, 77:24, 78:19, 92:2, 114:19
**consideration** [9] - 25:7, 25:9, 29:15, 33:25, 42:11, 50:23, 64:3, 65:1, 73:9
**considerations** [4] - 19:7, 26:6, 52:7, 92:14
**considered** [5] - 33:24, 43:3, 49:23, 55:4, 60:16
**considering** [5] - 31:22, 40:16, 55:3, 65:4, 96:16
**consist** [1] - 97:13
**consisted** [1] - 97:14
**consistent** [2] - 37:23, 72:19
**consists** [3] - 32:6, 44:16, 98:8
**conspiracy** [1] - 103:8
**constantly** [1] - 4:10
**constitute** [1] - 53:3
**Constitution** [1] - 40:25
**constructive** [6] - 52:17, 61:14, 61:16, 61:22, 85:21
**constructively** [3] - 85:25, 86:2, 93:3
**consult** [5] - 46:24, 64:12, 64:21, 69:3, 106:9
**consumption** [2] - 81:13, 82:13
**contact** [2] - 28:8, 124:4
**contained** [2] - 43:16, 90:11
**container** [2] - 80:8, 83:1
**containing** [2] - 46:9, 46:12
**contains** [1] - 43:9
**contaminated** [1] - 101:1
**contaminating** [1] - 100:19
**contends** [1] - 68:1
**Contents** [1] - 13:1
**context** [2] - 98:13, 102:24
**continue** [8] - 5:21, 7:22, 7:25, 29:21,

96:3, 116:23, 123:4, 123:12
**continued** [1] - 10:24
**continuously** [3] - 4:2, 13:7, 51:1
**contract** [1] - 79:9
**contradict** [2] - 4:10, 37:24
**contradicted** [1] - 33:5
**contribute** [1] - 106:7
**contributor** [5] - 89:22, 89:23, 89:25, 90:2, 90:4
**control** [26] - 23:1, 48:13, 48:18, 48:24, 49:4, 49:8, 49:11, 49:12, 49:15, 49:21, 52:1, 57:20, 61:15, 61:16, 61:18, 61:19, 61:24, 67:13, 79:19, 79:20, 79:21, 85:23, 86:3, 86:5, 90:25
**controlled** [39] - 3:15, 6:6, 7:15, 46:4, 46:10, 46:13, 46:17, 47:6, 47:9, 47:10, 47:11, 47:12, 47:17, 48:8, 50:13, 50:20, 51:14, 51:20, 52:16, 52:18, 54:13, 77:6, 77:25, 78:5, 78:18, 78:20, 78:21, 78:22, 78:24, 81:1, 81:4, 81:19, 93:7, 93:23, 94:20, 97:23, 98:14, 103:11, 103:15
**controlling** [3] - 36:12, 77:17, 77:18
**controls** [1] - 111:5
**convene** [3] - 116:21, 120:6, 121:7
**conversations** [3] - 36:3, 41:22, 96:12
**converted** [2] - 55:19, 61:8
**convict** [5] - 32:5, 48:7, 52:5, 109:5, 109:8
**convicted** [18] - 58:2, 58:8, 59:2, 59:7, 59:13, 59:21, 60:1, 60:7, 60:24, 61:2, 64:4, 66:4, 68:3, 73:18, 84:25, 85:6, 86:11, 107:7
**conviction** [11] - 59:10, 59:18, 59:24, 60:2, 60:9, 60:15, 60:18, 65:7, 65:9,

85:4, 86:13
**convictions** [2] - 86:10, 96:7
**convince** [1] - 52:5
**convinced** [2] - 29:13, 29:22
**cooking** [4] - 81:11, 83:18, 83:22, 93:18
**cooled** [1] - 12:2
**cooperating** [1] - 97:23
**copies** [4] - 12:18, 65:20, 76:8, 114:14
**copy** [7] - 10:12, 12:12, 15:22, 46:19, 46:23, 115:6, 115:8
**core** [1] - 26:17
**correct** [6] - 15:17, 32:10, 65:23, 68:6, 71:15, 125:5
**correction** [1] - 72:12
**corrections** [3] - 16:6, 69:7, 71:15
**correctly** [1] - 125:9
**correspond** [1] - 28:1
**counsel** [15] - 20:14, 24:5, 34:16, 35:3, 37:8, 42:14, 69:13, 92:22, 114:14, 115:3, 116:11, 116:21, 117:16, 120:12, 125:12
**Counsel** [9] - 18:20, 20:15, 20:16, 66:6, 68:6, 69:5, 71:13, 121:1, 124:2
**Count** [54] - 46:3, 46:4, 47:8, 53:21, 53:22, 53:24, 54:14, 54:23, 54:25, 55:2, 55:3, 55:4, 55:5, 55:6, 55:8, 55:9, 55:11, 55:13, 55:17, 55:25, 56:3, 56:5, 56:20, 57:23, 57:25, 58:4, 65:23, 65:24, 66:3, 70:5, 70:8, 78:4, 78:5, 78:6, 78:7, 78:8, 78:9, 78:19, 84:12, 84:13, 84:14, 84:15, 91:8, 91:18, 91:19, 91:23, 101:14, 109:5, 115:25
**count** [11] - 42:23, 43:10, 43:11, 50:1, 51:21, 54:15, 67:6, 67:7, 97:2, 116:16
**counter** [11] - 84:1, 84:5, 87:9, 88:21,

89:1, 107:8, 107:22, 108:2, 109:6, 113:9, 113:10
**counters** [1] - 109:10
**country** [5] - 67:13, 85:14, 86:23, 87:1, 87:20
**Counts** [1] - 91:10
**counts** [4] - 43:10, 70:3, 77:23, 114:12
**couple** [4] - 11:5, 69:11, 110:21, 112:12
**course** [14] - 23:25, 24:13, 27:10, 27:21, 28:2, 30:10, 30:24, 31:20, 34:10, 45:24, 74:6, 98:16, 116:18, 119:10
**COURT** [164] - 1:1, 1:23, 2:1, 2:6, 2:13, 4:4, 4:7, 4:22, 5:1, 5:6, 5:11, 5:14, 5:17, 5:21, 6:1, 6:4, 6:7, 6:10, 6:13, 6:17, 6:19, 7:1, 7:7, 7:13, 7:17, 7:21, 7:24, 8:4, 8:9, 8:16, 8:20, 9:10, 9:13, 9:16, 9:18, 9:22, 10:6, 10:8, 10:13, 10:15, 10:20, 11:1, 11:10, 11:16, 11:20, 12:8, 12:13, 12:16, 12:22, 12:25, 13:4, 13:23, 14:8, 14:11, 14:17, 14:24, 15:5, 15:12, 15:19, 15:23, 16:2, 16:13, 16:18, 16:21, 16:24, 17:2, 17:7, 17:12, 17:14, 17:17, 17:21, 17:25, 18:2, 18:6, 18:9, 18:11, 18:23, 19:1, 19:5, 19:9, 20:3, 20:6, 20:11, 20:15, 20:19, 20:21, 20:23, 20:25, 21:2, 21:5, 21:7, 21:10, 21:22, 21:25, 22:8, 22:14, 22:20, 22:22, 32:12, 32:16, 33:23, 34:2, 65:22, 66:11, 66:17, 66:21, 67:2, 67:4, 67:6, 68:10, 68:13, 68:19, 68:23, 69:5, 69:10, 71:21, 72:1, 72:10, 72:12, 72:20, 73:6, 73:11, 74:2, 74:10, 74:13, 74:17, 74:21, 74:24,

75:1, 75:5, 75:9, 75:14, 75:16, 75:18, 75:21, 76:1, 76:4, 76:10, 76:13, 95:14, 106:14, 114:14, 114:17, 117:6, 117:18, 117:24, 118:2, 118:6, 118:15, 118:22, 118:24, 119:6, 119:19, 119:25, 120:4, 120:25, 121:13, 121:17, 122:8, 122:13, 122:17, 122:23, 123:6, 124:2
**court** [26] - 4:10, 5:4, 5:9, 5:20, 10:1, 14:4, 14:5, 18:17, 28:15, 54:11, 54:20, 55:14, 55:24, 59:2, 59:7, 59:13, 70:21, 71:1, 71:6, 71:10, 84:25, 85:6, 91:20, 115:15, 117:21, 121:14
**Court** [41] - 3:8, 3:12, 3:17, 4:8, 8:25, 9:1, 9:4, 9:21, 13:21, 14:22, 21:12, 21:20, 22:19, 25:14, 28:8, 34:20, 34:21, 63:24, 66:14, 66:15, 72:15, 72:25, 74:1, 74:3, 74:7, 77:16, 78:23, 79:11, 82:8, 84:24, 91:24, 92:14, 106:4, 119:8, 121:3, 125:3, 125:4, 125:17
**Court's** [4] - 21:17, 73:1, 73:22, 85:16
**courthouse** [2] - 75:18, 122:20
**courtroom** [25] - 4:14, 4:17, 5:23, 11:12, 11:20, 13:16, 14:2, 18:10, 18:15, 28:17, 28:19, 30:9, 32:23, 71:20, 76:9, 96:12, 115:18, 118:5, 118:11, 118:19, 119:2, 119:5, 120:2, 123:7, 124:1
**covered** [1] - 66:9
**crack** [13] - 107:3, 107:15, 108:3, 108:4, 108:6, 108:7, 108:13, 108:14, 108:15, 109:7, 109:13, 110:24, 116:2

**creates** [1] - 40:13
**credibility** [13] - 23:10, 23:15, 25:24, 33:15, 36:24, 37:3, 38:18, 38:24, 39:14, 40:7, 40:10, 40:18, 42:14
**credible** [1] - 33:6
**Crick** [1] - 100:12
**crick** [1] - 100:14
**crime** [62] - 26:11, 43:11, 44:16, 46:15, 47:2, 47:3, 54:11, 54:19, 54:21, 54:25, 55:13, 55:14, 55:17, 55:23, 56:2, 56:3, 56:5, 56:8, 56:19, 56:21, 56:23, 57:12, 57:21, 57:22, 58:2, 58:8, 59:2, 59:5, 59:7, 59:13, 59:22, 60:1, 60:8, 60:13, 60:24, 61:2, 66:1, 66:4, 67:12, 67:18, 68:3, 70:11, 73:17, 77:5, 77:10, 78:1, 85:1, 85:6, 86:11, 91:10, 91:19, 91:20, 91:23, 92:8, 93:21, 100:7, 104:16, 107:7, 109:24, 112:19, 113:23
**crimes** [7] - 25:4, 26:22, 42:21, 43:15, 44:21, 69:21, 73:18
**CRIMINAL** [1] - 1:5
**criminal** [8] - 13:11, 25:2, 29:3, 44:17, 44:22, 96:16, 96:17
**criminals** [1] - 67:11
**criteria** [1] - 33:14
**critical** [1] - 103:3
**Croatia** [2] - 87:1, 87:7
**cross** [5] - 2:23, 3:1, 13:10, 34:4, 37:23
**cross-examination** [4] - 3:1, 13:10, 34:4, 37:23
**cross-examined** [1] - 2:23
**crossed** [3] - 63:6, 85:13, 86:22
**CRR** [2] - 1:24, 125:16
**crucial** [1] - 26:17
**CSO** [1] - 117:24
**cup** [2] - 99:25, 100:1
**current** [1] - 96:13
**custody** [5] - 48:13, 48:16, 48:19, 48:24, 85:24
**customers** [1] - 99:6

6

**cut** [2] - 111:14, 113:7
**cuts** [2] - 99:12, 110:21
**cutting** [3] - 77:3, 83:6, 84:8

# D

**D.C** [1] - 74:1
**dangerous** [1] - 73:19
**date** [7] - 43:22, 43:23, 43:25, 59:20, 63:5, 69:25, 125:7
**dates** [2] - 43:24, 43:25
**DAY** [1] - 1:10
**days** [6] - 77:12, 77:18, 78:3, 95:9, 98:17, 120:18
**DC** [1] - 1:20
**De** [1] - 82:4
**DEA** [5] - 80:3, 80:7, 81:3, 84:20, 108:5
**deal** [2] - 57:3, 104:2
**dealer** [2] - 98:1, 99:4
**dealers** [2] - 67:13, 101:24
**dealing** [3] - 67:25, 101:10, 104:5
**deals** [1] - 93:25
**dealt** [1] - 66:3
**debate** [1] - 5:15
**debrief** [1] - 98:2
**debt** [1] - 104:6
**decide** [35] - 4:18, 4:19, 4:20, 4:24, 4:25, 5:3, 5:5, 5:7, 5:16, 5:19, 9:7, 12:9, 19:10, 23:13, 23:24, 25:17, 26:21, 27:10, 28:17, 31:14, 33:7, 33:11, 34:20, 34:23, 37:1, 37:9, 37:15, 38:21, 40:22, 45:11, 51:2, 51:23, 64:25, 102:3, 116:16
**decided** [8] - 3:17, 3:18, 5:11, 5:14, 5:17, 5:18, 10:22, 65:9
**deciding** [11] - 5:13, 29:25, 35:7, 36:17, 38:18, 38:23, 39:14, 39:15, 41:23, 60:18, 102:11
**decision** [17] - 2:15, 6:1, 7:8, 7:18, 24:9, 26:12, 31:8, 37:10, 37:17, 41:19, 42:17, 49:24, 50:19, 50:20,

52:9, 53:18, 97:12
**decision-making** [1] - 26:12
**decisions** [1] - 26:3
**declined** [1] - 18:15
**deduction** [1] - 31:17
**deemed** [1] - 62:11
**defend** [1] - 57:1
**defendant** [174] - 2:9, 6:19, 10:24, 15:15, 18:14, 24:10, 25:3, 26:19, 26:22, 27:11, 27:12, 27:15, 28:20, 28:23, 29:1, 29:2, 29:5, 29:7, 29:11, 29:13, 29:17, 29:19, 32:4, 33:16, 35:9, 36:4, 36:15, 38:5, 40:24, 40:25, 41:2, 41:4, 41:5, 41:8, 42:21, 43:2, 43:4, 43:6, 43:10, 43:13, 43:15, 44:3, 44:8, 44:12, 44:15, 44:23, 45:1, 45:4, 46:2, 46:3, 46:7, 47:8, 47:11, 47:16, 47:18, 48:9, 48:14, 49:5, 49:8, 49:10, 49:15, 49:18, 49:19, 49:20, 49:24, 50:2, 50:4, 50:7, 50:10, 50:12, 50:14, 50:16, 50:19, 51:8, 51:10, 51:14, 51:16, 51:19, 51:22, 51:24, 52:1, 52:5, 52:6, 52:8, 52:11, 52:13, 52:14, 53:12, 53:13, 53:18, 53:23, 54:1, 54:23, 55:5, 55:7, 55:13, 55:15, 55:22, 55:25, 56:5, 56:12, 57:4, 57:9, 57:13, 57:16, 57:17, 58:1, 58:7, 59:7, 59:12, 59:14, 59:20, 60:1, 60:7, 60:11, 60:19, 61:1, 61:21, 62:3, 62:4, 62:9, 62:13, 62:20, 63:8, 63:11, 63:21, 64:1, 64:4, 64:15, 68:1, 70:11, 70:15, 70:23, 72:23, 76:18, 76:20, 77:7, 77:9, 78:20, 78:21, 78:22, 79:18, 79:24, 80:2, 80:11, 80:18, 82:10, 84:25, 85:2, 85:5, 85:8, 87:11, 91:18, 91:21,

92:1, 92:5, 92:10, 92:20, 93:1, 93:2, 94:8, 94:9, 94:15, 111:9, 111:10, 111:11, 113:6, 116:5, 119:13, 121:2, 122:23
**Defendant** [1] - 1:9
**DEFENDANT** [38] - 1:18, 4:3, 4:6, 4:16, 4:24, 5:3, 5:10, 5:13, 5:16, 5:19, 5:24, 6:2, 6:5, 6:9, 6:11, 6:15, 6:18, 6:22, 7:4, 7:10, 7:14, 7:19, 7:23, 8:3, 8:8, 8:14, 8:18, 9:9, 9:11, 9:14, 9:17, 10:5, 10:7, 10:10, 10:14, 10:17, 11:14, 11:18
**defendant's** [28] - 26:5, 27:3, 27:7, 29:9, 29:14, 29:23, 36:18, 45:4, 49:12, 49:14, 50:22, 50:25, 51:6, 51:11, 52:3, 53:7, 53:10, 57:19, 57:20, 59:9, 61:19, 63:1, 79:21, 81:19, 82:15, 82:17, 85:3, 113:24
**defendants** [1] - 44:4
**defending** [1] - 57:2
**defense** [6] - 21:23, 22:12, 31:13, 37:8, 42:13, 92:22
**defined** [2] - 52:17, 56:11
**defining** [1] - 73:23
**definition** [4] - 56:22, 100:22, 107:10, 113:3
**degree** [1] - 64:9
**Del** [2] - 54:6, 58:14, 88:1
**Del-Ton** [1] - 54:6, 58:14, 88:1
**deliberate** [7] - 40:2, 64:12, 95:11, 115:9, 116:14, 116:24, 119:9
**deliberating** [4] - 27:21, 115:24, 116:25, 121:15
**deliberation** [11] - 64:19, 75:6, 102:3, 106:8, 114:8, 114:23, 115:4, 117:3, 117:11, 120:9, 123:11

**deliberations** [20] - 24:22, 27:19, 29:8, 29:21, 41:10, 44:7, 63:23, 64:5, 96:3, 96:9, 96:23, 97:4, 114:21, 114:23, 115:5, 115:10, 120:10, 121:6, 122:6, 123:12
**deliver** [5] - 52:13, 52:16, 52:17, 52:19, 100:9
**delivered** [1] - 115:8
**delivering** [1] - 53:3
**demeanor** [1] - 38:19
**denied** [1] - 22:9
**denies** [1] - 34:7
**deny** [1] - 74:7
**deposit** [1] - 48:22
**DEPUTY** [26] - 12:7, 14:16, 15:11, 16:12, 16:16, 18:7, 20:12, 68:22, 71:18, 75:12, 75:15, 87:2, 87:5, 106:22, 106:25, 117:5, 117:16, 117:20, 117:22, 118:1, 118:20, 118:23, 119:18, 119:22, 122:3, 123:25
**Derro** [1] - 21:13
**described** [3] - 58:24, 84:21, 94:18
**describes** [1] - 43:2
**deserve** [1] - 36:22
**deserves** [3] - 41:25, 42:19, 97:6
**deserving** [1] - 42:10
**designed** [4] - 55:19, 61:7, 61:11, 67:16
**detail** [3] - 39:8, 39:17, 96:8
**detailed** [1] - 95:24
**detectable** [2] - 46:9, 46:12
**detective** [1] - 108:21
**Detective** [1] - 110:7
**detention** [1] - 14:9
**determination** [6] - 36:8, 42:5, 43:5, 52:8, 53:9
**determine** [14] - 8:5, 19:23, 23:8, 23:10, 50:4, 51:6, 51:19, 56:4, 63:25, 64:7, 64:15, 70:2, 90:12, 116:21
**determined** [3] - 23:13, 34:22, 55:7

**determining** [6] - 23:16, 24:15, 35:9, 53:6, 57:4, 91:25
**developed** [1] - 26:1
**devised** [1] - 45:12
**dictionaries** [1] - 28:11
**difference** [1] - 105:15
**different** [10] - 10:18, 22:25, 29:24, 31:10, 36:10, 37:8, 39:2, 43:10, 97:21, 112:4
**differently** [1] - 39:5
**differs** [2] - 48:10, 65:6
**difficult** [1] - 15:2
**digestion** [1] - 45:10
**Dillon** [1] - 120:16
**direct** [17] - 30:1, 30:2, 30:5, 30:19, 30:21, 31:11, 31:19, 32:1, 37:21, 45:14, 47:21, 47:22, 48:3, 62:6, 111:16, 112:5, 112:8
**directed** [1] - 24:2
**directing** [1] - 99:8
**direction** [2] - 7:9, 105:4
**directly** [3] - 30:3, 50:22, 120:9
**disagree** [1] - 6:8
**discharged** [1] - 24:21
**discredit** [1] - 39:3
**discrepancies** [1] - 39:1
**discrepancy** [2] - 39:7, 39:9
**discretion** [1] - 44:9
**discuss** [11] - 15:4, 27:19, 28:7, 64:19, 71:11, 78:4, 84:14, 84:23, 88:14, 91:15, 123:20
**discussed** [7] - 14:25, 15:3, 62:8, 73:24, 91:14, 93:2
**discussing** [3] - 27:22, 78:9, 85:19
**discussion** [2] - 22:21, 65:3
**disk** [1] - 36:6
**dismiss** [2] - 16:5, 122:8
**display** [2] - 16:22, 16:25
**displayed** [1] - 57:17
**disputed** [3] - 30:3, 30:7, 31:8
**disregard** [3] - 24:2, 32:17, 32:18

7

**disregarded** [1] - 32:24
**disrupt** [1] - 11:11
**distant** [1] - 45:13
**distinction** [1] - 30:19
**distribute** [37] - 46:4, 46:8, 46:11, 46:16, 47:2, 47:5, 47:11, 48:8, 51:22, 51:24, 52:7, 52:10, 52:12, 52:13, 52:16, 52:19, 53:12, 53:14, 53:18, 53:19, 54:13, 56:2, 77:7, 77:24, 78:22, 81:9, 81:14, 83:13, 84:8, 103:8, 103:10, 103:17, 110:9, 110:10, 110:13, 113:14, 113:20
**distributed** [2] - 52:24, 108:25
**distributing** [2] - 103:8, 108:23
**distribution** [8] - 52:15, 52:25, 53:4, 53:8, 67:14, 82:12, 103:8
**distributors** [2] - 80:25, 83:6
**DISTRICT** [3] - 1:1, 1:2, 1:11
**District** [7] - 46:6, 46:7, 54:1, 58:5, 58:7, 125:4
**district** [1] - 9:12
**diving** [1] - 106:20
**DIVISION** [1] - 1:3
**DNA** [30] - 35:14, 89:18, 89:19, 90:4, 90:6, 90:8, 90:9, 90:11, 90:12, 90:24, 90:25, 98:21, 99:12, 99:15, 99:16, 99:19, 99:20, 100:1, 100:13, 101:2, 101:4, 110:21, 111:13, 111:22, 111:25, 112:6, 112:11, 112:12
**doable** [1] - 16:11
**Docket** [1] - 73:25
**document** [2] - 86:16, 106:22
**dollars** [1] - 109:13
**dominion** [1] - 61:18
**done** [15] - 7:5, 15:1, 15:6, 19:16, 20:6, 20:7, 25:16, 35:6, 35:16, 45:18, 47:23, 57:24, 72:23, 77:4,
116:15
**door** [7] - 8:4, 107:5, 107:21, 115:14, 117:15, 119:23, 121:15
**doubt** [43] - 24:11, 26:20, 27:3, 27:7, 27:12, 29:1, 29:10, 29:14, 29:23, 31:1, 32:5, 41:3, 43:7, 44:22, 47:7, 48:6, 50:3, 51:25, 52:6, 55:3, 55:12, 55:22, 56:5, 56:10, 57:19, 59:6, 59:20, 60:7, 60:22, 61:6, 62:25, 64:1, 73:23, 74:4, 77:20, 77:22, 84:12, 92:15, 95:10, 95:12, 96:10, 96:19, 105:10
**dove** [1] - 107:6
**down** [13] - 7:5, 8:14, 8:15, 9:8, 11:24, 12:2, 13:4, 15:13, 71:17, 75:24, 107:22, 116:8
**downstairs** [2] - 11:21, 75:20
**dozen** [1] - 99:8
**Dr** [2] - 100:14
**Draughon** [5] - 76:1, 76:11, 87:2, 102:10, 102:14
**DRAUGHON** [10] - 1:15, 74:23, 76:3, 76:14, 76:16, 76:18, 83:21, 87:4, 87:6, 91:5
**Draughon's** [1] - 101:9
**draw** [14] - 17:8, 23:12, 23:13, 31:12, 31:13, 31:14, 31:18, 31:23, 32:20, 33:9, 43:19, 44:2, 45:25
**drawer** [12] - 80:18, 80:21, 84:5, 88:24, 92:19, 94:20, 107:2, 112:21, 112:23, 113:1, 113:3, 113:11
**drawers** [3] - 89:2, 89:17, 94:24
**drawing** [2] - 31:15, 31:20
**drawn** [2] - 31:10, 41:9
**drink** [1] - 99:25
**dropped** [1] - 119:9
**drug** [66] - 47:25, 50:17, 53:22, 53:24,
54:10, 54:18, 54:24, 55:13, 55:16, 55:23, 56:3, 56:8, 56:17, 56:20, 56:23, 56:25, 57:2, 57:3, 57:5, 57:7, 57:10, 57:20, 57:22, 66:1, 70:11, 77:1, 77:10, 78:1, 78:16, 78:17, 82:18, 82:23, 82:24, 83:10, 91:9, 91:19, 91:22, 92:1, 92:4, 92:6, 93:8, 93:16, 93:22, 94:2, 97:22, 98:1, 98:3, 99:4, 101:10, 101:13, 101:24, 102:12, 102:22, 102:24, 103:4, 103:9, 104:10, 105:18, 108:22, 110:3, 112:19, 113:9, 113:18, 113:22
**drugs** [88] - 47:14, 48:9, 48:14, 49:4, 49:6, 49:12, 49:13, 49:16, 49:17, 49:18, 49:20, 49:21, 49:25, 50:2, 50:4, 50:5, 50:7, 50:8, 50:11, 50:15, 51:12, 51:13, 51:16, 51:23, 52:1, 52:7, 52:9, 52:12, 52:14, 52:15, 52:23, 52:24, 53:2, 53:3, 53:5, 53:6, 53:10, 53:11, 53:14, 53:16, 53:19, 57:2, 57:10, 70:6, 76:19, 78:14, 79:21, 79:22, 79:23, 79:25, 82:9, 91:14, 91:16, 92:6, 93:8, 93:10, 93:18, 99:6, 100:23, 103:8, 103:9, 103:17, 104:6, 105:3, 105:7, 105:9, 107:8, 107:19, 108:17, 108:19, 109:3, 109:10, 110:6, 110:9, 110:10, 110:13, 110:20, 111:8, 111:10, 111:13, 113:5, 113:20, 113:23, 118:8, 118:12, 118:17
**DTI** [2] - 54:8, 58:16
**DTI-15** [3] - 54:6, 58:14, 88:1
**DTI-S030977** [2] -
54:8, 58:16
**due** [1] - 50:9
**duplicative** [1] - 66:13
**during** [19] - 7:3, 19:14, 21:12, 23:21, 23:22, 24:8, 27:19, 28:3, 28:11, 30:9, 34:18, 35:2, 41:11, 69:13, 70:25, 81:23, 86:25, 115:5, 116:18
**duty** [13] - 19:10, 19:22, 19:23, 24:13, 24:23, 24:25, 25:12, 28:17, 29:3, 63:23, 64:6, 69:3, 80:10
**DWIGHT** [1] - 1:15

# E

**ease** [1] - 67:10
**easily** [1] - 93:1
**eating** [2] - 117:4, 117:5
**education** [1] - 106:6
**effect** [4] - 25:23, 25:25, 39:7, 39:15
**eight** [1] - 58:20
**either** [12] - 14:18, 30:22, 31:19, 32:17, 48:4, 61:13, 61:21, 62:6, 103:13, 103:18, 104:16, 115:21
**elaborate** [1] - 74:4
**electronic** [2] - 27:23, 28:1
**electronically** [1] - 82:21
**element** [25] - 30:25, 47:1, 47:14, 49:6, 50:1, 50:6, 51:21, 51:25, 55:21, 56:7, 56:9, 56:12, 59:14, 59:18, 59:19, 60:6, 60:15, 60:21, 61:4, 62:12, 62:23, 63:4, 73:20, 96:7
**elements** [12] - 43:18, 47:4, 47:7, 55:9, 55:12, 59:5, 64:8, 78:19, 84:24, 91:18, 103:14, 113:7
**elicited** [1] - 112:17
**Ellicott** [1] - 79:12, 104:17
**elsewhere** [1] - 54:1
**email** [2] - 27:23, 122:4
**embarrass** [1] - 11:1
**embrace** [1] - 77:20
**54:8, 58:16**
**emphasize** [1] - 101:12
**emphasized** [1] - 101:11
**employed** [1] - 42:8
**enable** [1] - 50:24
**encourage** [2] - 73:10, 77:14
**End** [1] - 22:21
**end** [9] - 56:24, 63:20, 65:15, 69:15, 77:20, 83:25, 105:20, 114:7, 120:17
**enforced** [1] - 67:21
**enforcement** [27] - 25:2, 42:7, 42:9, 42:14, 42:18, 67:17, 76:22, 78:13, 79:1, 79:13, 80:1, 80:19, 83:18, 84:2, 84:19, 91:3, 91:13, 92:23, 93:19, 97:14, 97:16, 97:21, 97:24, 98:1, 98:5, 100:6, 104:24
**engaging** [1] - 82:22
**ensure** [1] - 93:25
**enter** [7] - 18:10, 19:10, 26:6, 63:22, 64:5, 76:9, 123:7
**entered** [4] - 32:13, 32:14, 84:17, 107:16
**entering** [1] - 84:3
**entertain** [1] - 65:5
**entirely** [3] - 32:24, 97:14, 98:9
**entitled** [9] - 2:17, 3:19, 7:2, 11:11, 22:5, 25:9, 26:7, 40:8, 64:17
**entitles** [1] - 25:6
**envelope** [1] - 90:18
**envelopes** [1] - 90:23
**equally** [2] - 25:3, 26:10
**equals** [1] - 25:10
**erroneous** [1] - 65:3
**error** [1] - 39:9
**escort** [1] - 119:23
**especially** [1] - 96:16
**ESQUIRE** [3] - 1:14, 1:15, 1:19
**essential** [1] - 64:8
**essentially** [1] - 71:7
**establish** [2] - 45:14, 50:6
**established** [8] - 27:18, 30:16, 31:5, 31:6, 31:19, 43:25, 45:22, 61:13
**et** [1] - 30:5

**evaluating** [4] - 33:15, 40:9, 40:17
**evasive** [1] - 37:20
**evening** [1] - 123:20
**event** [6] - 3:4, 3:20, 14:12, 32:19, 57:3, 64:11
**events** [3] - 45:17, 45:24, 96:13
**everyday** [3] - 48:11, 48:21, 51:1
**evidence** [152] - 2:5, 2:9, 2:20, 6:3, 19:18, 23:10, 23:17, 23:20, 23:21, 23:25, 24:1, 25:13, 25:19, 25:22, 25:23, 25:25, 26:1, 26:2, 26:14, 26:16, 26:18, 26:23, 27:15, 28:18, 28:22, 29:4, 29:16, 29:25, 30:1, 30:2, 30:3, 30:6, 30:7, 30:14, 30:20, 30:21, 30:24, 31:11, 31:16, 31:20, 31:22, 32:2, 32:3, 32:6, 32:7, 32:13, 32:15, 32:19, 32:21, 32:23, 33:1, 33:9, 33:10, 33:17, 33:24, 34:3, 34:8, 34:11, 34:12, 34:18, 34:22, 34:24, 35:8, 35:9, 35:14, 35:15, 35:22, 35:24, 35:25, 36:3, 36:15, 36:23, 37:15, 38:17, 38:20, 40:11, 41:1, 41:18, 42:1, 42:17, 43:1, 43:3, 43:7, 43:8, 43:22, 47:22, 47:24, 48:4, 49:11, 49:23, 50:24, 51:6, 51:19, 53:15, 53:17, 53:20, 55:1, 57:6, 62:7, 63:13, 63:25, 64:2, 64:7, 64:14, 64:16, 64:20, 64:23, 65:1, 65:4, 77:11, 79:21, 80:13, 83:15, 84:11, 91:10, 92:3, 94:7, 95:9, 95:24, 96:18, 97:9, 98:2, 98:7, 99:1, 100:8, 101:3, 101:16, 103:21, 104:1, 104:2, 104:4, 104:8, 104:13, 105:1, 105:3, 106:4, 110:25, 111:16, 111:18, 111:19,
111:20, 111:21, 112:1, 112:4
**Ewing** [4] - 1:24, 125:3, 125:15, 125:16
**exact** [1] - 50:14
**exactly** [3] - 100:4, 102:10, 105:11
**examination** [7] - 3:1, 13:10, 34:4, 37:22, 37:23, 78:17, 84:18
**examine** [1] - 36:19
**examined** [3] - 2:23, 81:4, 100:4
**examining** [1] - 33:10
**example** [13] - 3:8, 3:12, 30:4, 30:8, 35:5, 35:12, 35:15, 47:22, 48:14, 48:21, 51:8, 99:22, 119:13
**examples** [2] - 51:18, 100:2
**exceeded** [1] - 80:14
**exceeding** [13] - 58:3, 58:9, 59:3, 59:8, 59:14, 59:22, 60:2, 60:8, 60:25, 66:5, 85:1, 85:7, 86:12
**except** [5] - 27:20, 28:2, 71:6, 71:9, 106:19
**exception** [4] - 71:23, 72:24, 73:1, 74:8
**exceptions** [5] - 16:4, 72:21, 73:3, 98:9, 98:19
**exchange** [1] - 64:18
**exchanges** [1] - 82:21
**exclusive** [3] - 23:9, 24:6, 24:12
**exclusively** [2] - 26:13, 63:24
**exculpatory** [1] - 99:1
**excuse** [2] - 15:24, 120:22
**excused** [2] - 118:25, 119:19
**executed** [4] - 76:22, 98:10, 100:16, 103:24
**exercise** [9] - 31:21, 48:18, 48:24, 49:4, 61:17, 61:24, 85:23, 86:3
**exercised** [1] - 61:23
**exercises** [1] - 61:17
**exercising** [1] - 86:5
**exhaustive** [1] - 51:18
**exhibit** [2] - 35:23, 79:9
**Exhibit** [5] - 79:4, 79:6, 79:10, 89:15, 94:22
**exhibits** [20] - 23:25, 32:7, 32:9, 32:12, 32:14, 33:20, 33:21, 33:23, 35:21, 44:1, 77:17, 78:11, 86:16, 117:12, 122:11, 122:12, 122:13, 122:16, 122:20, 123:13
**existed** [1] - 104:22
**existence** [2] - 30:16, 31:6
**exists** [3] - 31:9, 60:16
**exit** [4] - 71:20, 118:5, 120:2, 124:1
**expect** [3] - 39:18, 99:5, 104:22
**expected** [1] - 104:18
**expecting** [1] - 123:1
**expel** [2] - 55:19, 61:8
**experience** [15] - 30:15, 31:5, 31:25, 32:20, 33:10, 38:25, 39:6, 41:15, 48:21, 51:3, 83:3, 101:24, 106:6, 106:7, 108:20
**experienced** [1] - 41:17
**expert** [5] - 82:4, 89:18, 99:16, 102:24, 111:22
**expertise** [1] - 102:5
**experts** [2] - 97:15, 100:10
**explain** [7] - 39:21, 39:24, 48:11, 82:5, 83:25, 91:2, 96:25
**explained** [8] - 80:18, 82:11, 82:18, 83:5, 83:10, 89:20, 93:24, 96:8
**explaining** [3] - 82:8, 83:2, 94:11
**explains** [1] - 73:14
**explanation** [4] - 39:20, 39:21, 73:18, 73:20
**explanations** [2] - 38:19, 45:20
**explicitly** [1] - 100:18
**explosive** [2] - 55:20, 61:9
**express** [3] - 38:15, 41:13, 41:14
**extends** [1] - 74:6
**extent** [4] - 22:9, 32:17, 40:22, 70:24
**extra** [1] - 74:14
**extremely** [2] - 90:3, 100:3

**F**

**F.2d** [1] - 74:1
**fabric** [1] - 111:23
**face** [3] - 37:7, 105:6, 119:6
**Facebook** [1] - 27:23
**faces** [1] - 44:16
**facilitate** [1] - 56:19
**fact** [44] - 2:19, 12:9, 19:6, 25:5, 30:3, 30:7, 30:17, 30:21, 31:6, 31:8, 31:9, 32:25, 34:8, 34:14, 34:25, 36:20, 39:16, 41:7, 41:19, 42:8, 43:20, 43:22, 44:4, 44:10, 45:9, 45:10, 47:19, 60:7, 60:16, 63:16, 67:20, 73:15, 73:16, 78:25, 96:21, 98:21, 103:23, 104:10, 107:25, 112:3, 116:5
**factor** [3] - 40:17, 67:12, 102:23
**factors** [6] - 49:22, 62:5, 73:10, 102:11, 102:16, 102:24
**facts** [50] - 19:10, 19:23, 23:9, 23:13, 23:16, 24:6, 24:7, 24:12, 24:13, 24:15, 24:23, 30:8, 30:11, 30:16, 31:6, 31:11, 31:15, 31:18, 31:23, 33:2, 33:8, 34:5, 34:15, 35:6, 36:13, 36:17, 38:11, 38:14, 38:16, 39:12, 39:16, 42:5, 45:5, 45:22, 50:23, 57:6, 62:1, 77:15, 77:18, 78:7, 78:10, 84:23, 92:2, 96:18, 97:11, 113:17, 113:18, 113:21, 114:5
**factual** [3] - 23:8, 23:23, 37:6
**failed** [3] - 39:12, 55:2, 64:10
**fails** [1] - 29:16
**failure** [4] - 39:5, 40:1, 73:1, 73:22
**fair** [4] - 4:12, 7:11, 105:6, 106:10
**fairly** [2] - 40:7, 40:8
**fairness** [2] - 24:18, 24:25
**faith** [1] - 24:19
**falsehood** [2] - 39:10, 40:2
**falsely** [3] - 40:4, 40:13, 40:21
**familiar** [1] - 102:25
**far** [8] - 12:8, 13:1, 72:24, 86:4, 88:9, 102:4, 119:11, 123:13
**farewell** [1] - 122:2
**fashion** [4] - 5:22, 9:24, 15:16, 123:20
**fast** [2] - 121:22, 123:16
**favorable** [1] - 44:2
**FBI** [1] - 89:18
**fear** [1] - 26:25
**feature** [1] - 27:25
**federal** [3] - 42:9, 67:13, 67:17
**feelings** [2] - 26:4, 26:10
**fellow** [8] - 27:21, 28:3, 64:18, 64:21, 65:1, 65:3, 65:5, 106:8
**felon** [7] - 60:21, 66:24, 67:7, 70:13, 73:7, 73:14, 73:15
**female** [1] - 83:21
**Fernando** [4] - 80:23, 82:11, 82:18, 93:21
**few** [12] - 25:16, 46:18, 48:7, 63:20, 77:12, 77:18, 78:3, 78:9, 88:21, 95:9, 98:16, 102:15
**fewer** [1] - 33:13
**field** [1] - 41:17
**figure** [1] - 77:5
**fill** [1] - 69:24
**final** [6] - 19:10, 19:19, 19:20, 24:24, 65:8, 95:23
**finale** [1] - 101:18
**finally** [5] - 85:10, 88:9, 90:21, 94:14, 113:25
**findings** [1] - 69:21
**fine** [1] - 76:16
**fingerprint** [1] - 35:15
**fingerprints** [1] - 35:13
**finish** [2] - 19:20, 63:20
**finished** [1] - 24:22

**firearm** [76] - 53:21, 53:23, 54:20, 54:24, 55:16, 55:18, 56:8, 56:13, 56:15, 56:17, 56:18, 56:21, 56:22, 57:1, 57:4, 57:8, 57:9, 57:10, 57:11, 57:19, 59:4, 59:10, 59:15, 59:21, 60:4, 61:5, 61:7, 61:12, 61:18, 61:22, 62:2, 62:4, 62:15, 62:17, 62:19, 62:21, 62:23, 63:2, 63:6, 63:11, 63:16, 65:25, 66:4, 67:7, 77:8, 77:25, 78:2, 84:16, 85:3, 88:11, 91:9, 91:22, 92:1, 92:5, 92:6, 92:7, 92:8, 92:16, 93:9, 93:20, 94:2, 94:18, 94:21, 101:13, 102:12, 103:19, 105:18, 109:3, 109:6, 109:23, 110:14

**firearms** [55] - 54:2, 55:16, 57:10, 57:12, 58:1, 58:10, 58:23, 60:10, 60:20, 62:13, 63:14, 67:11, 67:14, 67:24, 67:25, 68:2, 76:23, 77:9, 84:22, 85:8, 85:12, 86:7, 86:18, 88:9, 88:20, 89:5, 89:7, 89:13, 89:20, 91:1, 91:14, 91:16, 91:22, 92:9, 93:3, 93:4, 93:22, 94:3, 94:5, 94:10, 94:13, 94:25, 100:4, 101:10, 103:13, 109:11, 109:16, 110:16, 110:17, 110:18, 110:19, 112:13, 112:14, 113:4, 114:1

**fired** [1] - 57:17

**firmly** [1] - 97:8

**first** [29] - 12:20, 36:19, 44:16, 46:1, 47:1, 47:8, 47:14, 47:15, 50:1, 55:12, 55:21, 59:7, 59:18, 59:19, 69:10, 70:2, 72:5, 72:14, 76:2, 77:24, 84:25, 86:9, 91:18, 92:16, 102:19, 102:20

**five** [3] - 58:18,

120:22, 121:4

**flight** [1] - 51:12

**folks** [11] - 65:12, 68:23, 69:11, 71:21, 75:9, 76:10, 97:15, 118:3, 121:20, 123:8, 123:24

**follow** [11] - 4:15, 7:8, 22:24, 23:6, 66:19, 70:4, 97:3, 97:5, 117:14, 118:2, 123:19

**following** [8] - 20:13, 47:7, 55:12, 59:10, 59:23, 85:4, 86:13, 98:19

**follows** [3] - 58:5, 67:9, 101:20

**foot** [4] - 87:19, 88:3, 88:4, 92:17

**FOR** [3] - 1:2, 1:13, 1:18

**force** [2] - 8:15, 11:15

**forcing** [1] - 11:17

**foregoing** [1] - 125:5

**foreign** [6] - 59:17, 62:22, 63:3, 63:17, 63:18, 85:11

**forelady** [2] - 69:24, 116:19

**Forelady** [3] - 115:11, 115:22, 116:9

**forelady's** [1] - 116:13

**foreman** [1] - 71:3

**forensic** [1] - 98:21

**foreperson** [2] - 71:1, 115:11

**forever** [1] - 119:15

**forget** [1] - 96:24

**fork** [2] - 77:2, 83:1

**form** [11] - 15:20, 35:23, 36:2, 36:3, 46:22, 69:18, 69:23, 69:24, 69:25, 70:2, 70:17

**Form** [1] - 69:17

**formal** [1] - 46:21

**formally** [3] - 2:2, 22:11, 115:7

**format** [1] - 72:23

**forth** [3] - 73:17, 102:11, 105:14

**forthright** [1] - 37:19

**forum** [1] - 117:9

**forward** [11] - 3:19, 8:25, 12:2, 12:5, 13:25, 18:12, 19:17, 24:3, 56:19, 115:3, 117:18

**four** [9] - 54:8, 58:22,

76:23, 80:17, 81:2, 94:5, 95:5, 98:11, 114:19

**fourth** [3] - 58:16, 59:16, 62:23

**Fourth** [1] - 74:3

**frank** [1] - 37:19

**free** [1] - 119:14

**freedom** [1] - 24:18

**frequently** [1] - 51:3

**friend** [2] - 83:16, 83:17

**front** [10] - 2:3, 6:11, 7:10, 11:1, 17:20, 17:22, 88:3, 89:10, 93:13, 119:23

**fuck** [3] - 6:15, 6:22, 6:23

**fuel** [1] - 42:20

**full** [3] - 39:23, 68:5, 68:16

**function** [3] - 19:14, 63:24, 64:14

**fundamental** [1] - 96:1

**furtherance** [20] - 53:1, 53:22, 53:24, 54:10, 54:18, 54:24, 55:16, 56:8, 56:17, 56:24, 57:5, 65:25, 70:11, 77:9, 78:1, 91:9, 91:22, 92:1, 102:12, 113:22

**furthering** [3] - 57:11, 92:8, 93:21

**furthermore** [1] - 110:13

# G

**gathers** [1] - 98:2

**General** [1] - 69:17

**general** [7] - 15:20, 67:22, 69:18, 70:17, 70:20, 105:6, 120:14

**generally** [4] - 44:16, 44:18, 44:19, 119:11

**generate** [1] - 108:16

**gentlemen** [10] - 4:1, 8:10, 13:23, 18:12, 19:9, 65:16, 67:7, 68:15, 114:18, 115:19

**Georgia** [1] - 88:10

**gesture** [1] - 104:22

**given** [10] - 15:2, 38:20, 66:12, 72:2, 73:4, 73:8, 73:13, 95:25, 99:18, 102:12

**glass** [1] - 113:8

**gloves** [5] - 100:17,

100:24, 111:4, 111:17, 112:10

**GOROKHOV** [1] - 1:19

**gossip** [1] - 96:13

**government** [91] - 2:2, 3:1, 18:21, 25:1, 25:6, 25:8, 25:10, 26:3, 26:8, 26:19, 26:21, 27:6, 27:11, 28:25, 29:9, 29:16, 29:22, 29:25, 30:24, 31:12, 33:16, 34:18, 35:4, 35:7, 35:11, 35:23, 36:2, 36:5, 36:16, 37:8, 38:5, 42:9, 43:6, 44:3, 44:21, 44:25, 46:2, 47:6, 47:17, 47:21, 48:3, 50:2, 50:6, 50:12, 50:13, 50:16, 51:25, 55:2, 55:11, 55:21, 56:4, 56:9, 57:16, 57:18, 59:6, 59:19, 60:22, 61:5, 61:25, 62:19, 62:24, 63:4, 63:8, 63:9, 63:11, 64:8, 64:10, 66:8, 68:1, 70:23, 74:10, 74:22, 75:2, 80:10, 95:8, 96:5, 96:20, 97:7, 97:9, 100:12, 101:11, 102:14, 103:1, 103:7, 104:7, 104:20, 105:5, 105:21, 110:22, 111:14, 119:13

**Government** [2] - 89:15, 94:22

**government's** [14] - 41:2, 77:19, 97:13, 98:8, 98:12, 98:18, 99:3, 99:13, 99:16, 100:3, 101:4, 101:15, 103:22, 105:17

**gram** [2] - 108:6, 108:7

**grams** [21] - 46:8, 70:6, 70:8, 76:24, 76:25, 80:8, 80:9, 81:5, 81:7, 81:16, 82:1, 95:5, 95:6, 104:21, 107:3, 107:15, 108:4, 108:8, 108:14, 108:16

**grand** [1] - 101:18

**Grand** [3] - 44:9, 46:5, 58:5

**grant** [2] - 110:22, 112:8

**great** [2] - 36:19, 40:19

**greater** [3] - 25:7, 42:11, 102:4

**Green** [1] - 79:11

**GREENBELT** [1] - 1:12

**Greenbelt** [1] - 1:16

**grievance** [1] - 4:25

**Grill** [3] - 90:8, 100:3, 100:18

**ground** [5] - 49:18, 106:20, 107:6, 107:21, 107:22

**grounds** [1] - 42:15

**guess** [4] - 22:17, 30:17, 31:7, 121:9

**guesswork** [1] - 31:16

**guide** [2] - 96:3, 96:9

**guided** [1] - 26:16

**guilt** [12] - 26:19, 27:4, 27:7, 27:12, 27:17, 28:25, 29:9, 29:14, 29:23, 32:4, 43:4, 96:6

**guilty** [43] - 3:21, 24:10, 26:22, 27:5, 27:9, 27:14, 28:23, 28:24, 29:18, 35:9, 35:10, 41:2, 43:6, 43:12, 43:13, 47:8, 50:11, 54:20, 55:5, 55:8, 64:1, 64:10, 64:11, 64:15, 65:10, 69:22, 70:3, 70:5, 70:12, 77:22, 84:12, 92:15, 95:10, 95:12, 106:12, 114:11, 121:23

**Gun** [20] - 86:20, 86:24, 87:7, 87:13, 87:15, 87:16, 88:1, 88:2, 89:9, 89:20, 89:23, 89:25, 90:16, 90:22, 92:20, 93:5, 93:17

**gun** [24] - 56:24, 57:13, 57:14, 57:15, 57:21, 67:13, 73:16, 87:19, 87:20, 89:22, 92:9, 92:10, 92:11, 92:21, 94:15, 96:25, 107:21, 107:24, 108:1, 110:8, 110:10, 110:11, 111:9, 111:10

**guns** [30] - 76:19, 91:3, 91:7, 92:23,

93:15, 93:25, 94:7, 94:15, 94:16, 95:5, 99:18, 100:23, 102:17, 104:4, 104:10, 104:18, 104:20, 104:23, 105:2, 105:7, 105:8, 109:2, 109:20, 110:6, 110:20, 111:15, 113:22, 118:8, 118:13, 118:17
**Guns** [1] - 92:19

## H

**habits** [1] - 96:17
**hand** [9] - 20:16, 27:5, 52:20, 52:21, 52:23, 53:13, 68:14, 113:4, 120:18
**handed** [4] - 15:19, 52:20, 52:24, 107:10
**handgun** [3] - 90:11, 90:15, 107:7
**handle** [1] - 13:1
**handled** [1] - 100:22
**handling** [1] - 100:25
**hands** [5] - 8:23, 99:23, 99:24, 99:25
**hard** [1] - 26:17
**hard-core** [1] - 26:17
**headway** [1] - 13:6
**hear** [38] - 3:22, 8:11, 8:21, 11:13, 16:17, 17:25, 18:1, 18:2, 19:19, 19:20, 20:15, 20:16, 20:18, 20:22, 20:25, 21:2, 21:10, 24:4, 31:3, 34:16, 35:3, 39:4, 75:11, 76:16, 78:7, 78:9, 78:14, 78:15, 83:21, 86:4, 91:6, 95:18, 97:1, 99:7, 107:14, 110:15, 110:17, 120:11
**heard** [57] - 11:6, 19:18, 30:5, 32:22, 34:17, 35:2, 36:9, 36:10, 36:12, 39:11, 42:7, 55:25, 58:6, 77:17, 78:10, 78:13, 78:25, 79:1, 80:23, 81:17, 82:4, 83:16, 83:25, 84:20, 86:4, 87:10, 88:4, 89:18, 89:20, 91:2, 91:10, 91:13, 92:22, 93:4, 93:11, 93:21, 94:12,

97:23, 97:25, 98:2, 98:4, 98:7, 99:9, 99:16, 101:16, 107:17, 107:22, 108:1, 108:20, 109:16, 109:17, 110:2, 110:24, 110:25, 111:21, 113:25, 121:10
**hearing** [7] - 9:21, 20:21, 20:23, 21:5, 25:16, 25:20, 97:19
**hearings** [1] - 3:18
**heated** [1] - 15:3
**held** [1] - 14:12
**help** [1] - 37:15
**helped** [1] - 56:18
**helpful** [1] - 67:14
**helps** [1] - 110:12
**hereby** [1] - 125:5
**herself** [2] - 37:24, 38:15
**hesitate** [3] - 27:4, 27:8, 65:2
**hidden** [2] - 88:24, 92:25
**hiding** [1] - 37:20
**high** [1] - 104:15
**highest** [1] - 97:10
**highlight** [2] - 77:15, 91:24
**highlighted** [2] - 87:22, 94:24
**himself** [12] - 37:24, 38:15, 63:8, 76:19, 83:16, 84:6, 84:21, 91:2, 95:3, 100:7, 100:20, 101:20
**history** [1] - 13:11
**hitter** [1] - 101:18
**hold** [5] - 75:12, 96:20, 114:20, 119:6, 123:8
**holding** [4] - 85:18, 86:1, 86:6, 103:16
**home** [1] - 123:19
**Honor** [69] - 2:4, 11:5, 12:7, 12:14, 12:19, 12:24, 13:3, 14:3, 14:16, 15:11, 15:25, 16:12, 16:16, 17:6, 18:7, 18:22, 18:24, 19:3, 19:8, 19:25, 20:12, 20:18, 21:23, 22:11, 22:18, 32:11, 33:19, 34:1, 65:19, 66:9, 66:10, 66:14, 66:20, 66:25, 67:3, 68:8, 68:12, 68:18, 68:20, 69:1, 69:2,

69:9, 71:18, 71:25, 72:8, 72:11, 72:18, 74:11, 74:15, 74:19, 74:20, 75:3, 75:12, 76:3, 76:7, 76:12, 95:15, 96:8, 106:15, 114:16, 118:14, 118:20, 119:18, 119:23, 121:12, 121:16, 122:3, 122:19, 123:25
**Honor's** [1] - 20:1
**HONORABLE** [1] - 1:10
**hooked** [1] - 12:11
**hookup** [1] - 11:22
**hope** [1] - 20:6
**hopefully** [1] - 121:22
**hostility** [1] - 38:9
**hour** [2] - 16:10, 16:13
**house** [4] - 7:16, 7:20, 92:25, 104:23
**human** [1] - 96:23
**husher** [1] - 22:22
**hydrochloride** [3] - 80:5, 82:2, 95:6

## I

**i.e** [1] - 63:17
**I.T** [11] - 11:21, 16:20, 16:22, 16:25, 17:11, 17:13, 17:15, 17:19, 17:22, 18:1, 18:4
**identification** [2] - 33:20, 79:4
**identified** [2] - 33:22, 51:13
**ignorance** [1] - 45:3
**II** [2] - 46:10, 46:13
**III** [1] - 98:4
**illegal** [8] - 44:23, 50:5, 50:7, 50:8, 50:17, 51:23, 97:22, 101:10
**illicit** [1] - 108:17
**illustrative** [1] - 51:17
**imagine** [2] - 75:3, 114:9
**immediately** [4] - 84:2, 87:11, 92:20, 93:15
**impartial** [2] - 29:15, 38:12
**impartiality** [1] - 24:25
**impeach** [1] - 13:11
**impeached** [2] - 2:24, 33:5
**implore** [1] - 95:10
**importance** [3] - 37:3,

37:16, 39:8
**important** [24] - 2:15, 2:21, 13:8, 25:1, 25:3, 28:16, 37:10, 38:21, 39:17, 96:19, 97:11, 99:13, 99:20, 100:3, 100:5, 101:6, 101:18, 102:7, 102:8, 102:20, 102:23, 105:4, 106:7, 114:7
**impose** [1] - 29:2
**imposed** [2] - 64:3, 96:7
**imposing** [1] - 63:23
**impossible** [1] - 50:21
**impressed** [1] - 37:18
**imprisonment** [15] - 58:2, 58:9, 59:3, 59:8, 59:13, 59:22, 60:1, 60:8, 60:12, 60:24, 61:3, 66:5, 85:1, 85:7, 86:12
**improper** [2] - 26:2, 26:10
**IN** [1] - 1:1
**inappropriate** [1] - 74:6
**Inc** [2] - 54:6, 58:14
**incentive** [1] - 38:7
**incident** [1] - 39:4
**inclined** [1] - 104:19
**include** [2] - 24:1, 67:22
**included** [1] - 73:24
**includes** [2] - 56:25, 100:19
**including** [9] - 18:17, 57:6, 67:11, 77:2, 80:1, 92:3, 96:20, 97:5, 100:6
**incomplete** [1] - 28:15
**inconsistencies** [2] - 2:24, 39:1
**inconsistency** [1] - 39:25
**inconsistent** [1] - 39:14
**incorporated** [1] - 54:15
**incorporates** [1] - 78:7
**incorrect** [2] - 28:15, 72:6
**indeed** [6] - 59:25, 78:18, 80:4, 95:12, 96:21, 102:12
**independent** [2] - 23:24, 41:19
**indicate** [12] - 14:17,

24:6, 25:22, 43:22, 51:11, 51:13, 51:16, 66:1, 70:15, 82:9, 115:20, 116:4
**indicated** [6] - 25:21, 78:11, 88:21, 116:1, 116:17, 121:3
**indicates** [4] - 69:21, 79:14, 89:6, 110:12
**indicating** [2] - 81:21, 84:7
**indicating)** [2] - 86:24, 87:16
**indication** [5] - 24:9, 81:12, 83:3, 83:12, 89:12
**indications** [2] - 77:1, 82:24
**indicative** [1] - 82:22
**indicted** [2] - 28:20, 44:8
**indictment** [25] - 28:21, 28:22, 28:23, 36:17, 37:7, 42:25, 43:9, 43:17, 43:21, 43:25, 44:5, 44:11, 46:5, 53:23, 53:25, 54:15, 54:16, 56:6, 57:25, 58:4, 60:4, 60:10, 63:6, 87:25
**individual** [8] - 48:17, 64:21, 64:23, 85:22, 97:24, 107:5, 107:13, 107:16
**individuals** [1] - 25:10
**industry** [1] - 97:22
**ineffective** [1] - 100:11
**infer** [8] - 30:12, 30:15, 31:6, 47:25, 50:24, 63:15, 105:8, 113:5
**inference** [14] - 15:16, 17:9, 30:18, 31:2, 31:3, 31:7, 31:17, 41:8, 44:2, 105:15, 107:12, 109:12, 109:20, 110:2
**inferences** [14] - 23:12, 31:10, 31:12, 31:13, 31:14, 31:15, 31:20, 31:24, 32:2, 32:20, 45:25, 52:4, 52:5, 106:18
**inferred** [2] - 14:21, 45:15
**influence** [2] - 63:23, 64:4
**influenced** [2] - 28:16, 38:4

informal [1] - 73:12
information [3] -
27:20, 28:10, 28:14
informed [1] - 21:13
innocence [5] - 26:7,
29:12, 29:19, 96:5,
99:2
innocent [7] - 29:5,
29:7, 33:18, 39:5,
39:9, 40:1, 41:6
Inositol [1] - 83:5
inquire [2] - 83:21,
92:22
inserted [1] - 66:7
inside [9] - 76:22,
79:3, 80:21, 90:1,
90:3, 93:13, 94:15,
94:20, 95:2
insisting [1] - 10:22
insofar [1] - 98:7
instruct [10] - 15:23,
16:3, 16:4, 16:10,
19:11, 19:21, 29:6,
36:21, 56:2, 60:14
instructed [5] - 16:6,
34:19, 35:10, 55:18,
62:14
Instruction [7] -
66:12, 66:25, 69:17,
73:5, 92:12, 102:8
instruction [23] - 2:18,
15:14, 22:3, 22:13,
23:2, 54:22, 65:13,
66:7, 66:23, 67:8,
69:3, 71:11, 72:9,
72:16, 72:24, 73:1,
73:4, 73:13, 73:23,
73:24, 74:5, 74:8,
85:16
Instructions [1] -
105:13
instructions [46] -
11:9, 11:25, 12:3,
15:13, 15:20, 18:20,
19:20, 19:22, 21:12,
22:4, 22:15, 22:24,
23:1, 23:3, 23:6,
23:22, 27:16, 46:19,
46:22, 68:5, 68:24,
68:25, 69:12, 69:16,
71:15, 71:23, 72:4,
72:15, 72:19, 72:21,
76:6, 76:8, 77:16,
91:25, 95:24, 97:3,
102:21, 105:12,
105:14, 106:4,
114:15, 115:6,
117:12, 122:17,
122:18, 123:14
instrument [2] -

42:24, 45:12
integrity [1] - 101:3
intelligent [1] - 50:23
intend [5] - 86:2,
101:12, 103:2,
110:9, 114:20
intended [13] - 47:11,
51:24, 52:6, 52:11,
52:13, 52:15, 53:12,
53:13, 53:19, 78:22,
83:13, 99:17, 110:14
intending [1] - 110:12
intent [27] - 44:17,
44:18, 44:19, 45:7,
45:18, 45:21, 46:3,
46:8, 46:11, 46:16,
47:2, 47:5, 48:8,
48:18, 49:3, 51:21,
53:16, 54:12, 56:1,
77:7, 77:24, 81:9,
84:7, 85:22, 103:10,
110:16, 113:19
intention [5] - 49:6,
52:10, 61:23,
103:19, 103:20
intentional [1] - 39:10
intentionally [2] -
45:2, 46:16
intentions [1] - 103:17
interactions [1] -
96:11
interest [6] - 9:20,
40:12, 40:16, 40:21,
40:22, 42:16
interested [1] - 125:12
interests [1] - 40:14
interfere [2] - 26:11,
26:25
Internet [3] - 27:24,
28:12, 28:14
interpret [1] - 91:6
interrupting [1] -
21:12
interstate [10] - 59:17,
62:22, 63:3, 63:12,
63:17, 63:18, 67:24,
68:3, 84:17, 85:11
introduce [1] - 44:14
introduced [2] - 33:1,
43:7
investigate [1] - 97:22
investigation [3] -
97:25, 101:4, 104:15
investigations [1] -
110:4
investigative [2] -
35:4, 35:12
involve [2] - 37:10,
45:7
involved [5] - 35:19,

49:20, 81:25, 108:24
involvement [1] - 53:5
involves [1] - 50:20
iPad [1] - 17:23
irregularities [1] -
2:25
irrelevant [1] - 100:15
issue [12] - 3:18, 3:21,
4:1, 5:17, 6:14,
19:11, 20:2, 28:10,
35:20, 40:9, 41:13,
111:14
issues [4] - 15:24,
23:8, 37:6, 65:9
item [8] - 35:6, 47:15,
48:20, 62:13, 85:25,
100:23, 100:25,
120:15
Item [4] - 90:14, 90:16,
90:18, 90:21
items [12] - 48:22,
48:24, 51:10, 54:10,
71:14, 86:5, 86:21,
90:9, 107:2, 110:21,
111:21, 112:3
itself [10] - 43:1,
45:19, 47:3, 66:22,
101:3, 103:6,
104:16, 104:19,
109:5, 110:11
Ivy [1] - 1:15

J

jail [6] - 6:24, 6:25,
7:6, 14:19, 14:21,
68:4
James [1] - 81:18
Jaramillo [10] - 80:23,
82:11, 82:18, 93:21,
101:17, 102:5,
105:7, 108:5,
108:19, 110:7
Jastrzebski [1] - 93:11
jeopardize [1] - 4:9
job [6] - 37:1, 77:11,
97:5, 100:9, 100:10
joint [3] - 49:1, 49:4,
62:9
jointly [2] - 49:7, 62:10
JOSEPH [1] - 1:14
JR [1] - 1:15
JSC [1] - 58:21
judge [5] - 9:1, 10:25,
28:7, 95:25
Judge [1] - 105:12
JUDGE [1] - 1:11
judges [6] - 23:9,
24:6, 24:12, 25:24,
36:13, 37:2

judging [1] - 23:14
judgment [5] - 38:25,
40:6, 42:4, 64:24,
107:25
judgments [2] - 37:11,
37:12
jump [1] - 78:5
jumped [1] - 107:22
juries [1] - 45:8
Juror [1] - 116:12
juror [2] - 64:17, 64:19
jurors [19] - 24:16,
25:20, 26:15, 27:21,
28:3, 29:13, 64:2,
64:19, 64:21, 65:1,
65:3, 65:5, 67:18,
106:3, 106:8,
117:17, 119:4,
120:2, 120:7
jury [70] - 2:3, 2:18,
3:17, 3:22, 4:1, 6:3,
7:22, 7:25, 9:7, 9:24,
10:8, 11:2, 13:2,
15:20, 16:3, 16:5,
16:6, 17:2, 17:4,
17:6, 18:8, 18:10,
22:18, 28:4, 28:5,
29:8, 31:17, 36:13,
41:11, 69:6, 69:23,
71:2, 71:8, 71:16,
71:20, 72:24, 73:14,
75:5, 76:8, 76:9,
76:15, 76:17, 77:16,
83:20, 91:4, 91:25,
95:17, 95:20, 97:18,
102:21, 106:17,
108:9, 114:8,
114:22, 115:4,
115:19, 116:11,
117:2, 117:11,
117:15, 118:5,
120:9, 120:13,
120:22, 121:3,
121:13, 122:24,
123:7, 123:11, 124:1
Jury [8] - 44:9, 46:5,
58:5, 66:12, 66:25,
69:17, 92:12
JURY [2] - 1:10, 1:11
jury's [1] - 73:9
justice [1] - 25:11
justified [1] - 31:24

K

keep [5] - 3:7, 33:15,
77:15, 81:9, 121:4
keeping [1] - 97:5
keeps [1] - 48:22
kidnapped [1] - 7:19

kin [1] - 125:12
kind [4] - 4:7, 17:23,
50:17, 120:13
kinds [2] - 29:24,
97:21
kitchen [24] - 79:2,
80:18, 81:11, 81:20,
83:22, 83:23, 83:24,
84:5, 84:6, 87:9,
87:11, 87:12, 88:21,
88:23, 91:2, 93:18,
94:19, 107:12,
107:20, 109:14,
113:11, 113:21
knock [1] - 115:14
knowing [3] - 56:11,
58:8, 60:19
knowingly [21] -
44:23, 44:24, 45:1,
45:2, 45:4, 46:8,
46:11, 46:16, 51:22,
54:2, 55:15, 56:13,
58:9, 59:15, 62:13,
63:2, 77:6, 77:8,
85:8, 89:13, 91:21
knowledge [9] -
35:20, 38:2, 41:15,
45:7, 45:22, 50:18,
51:11, 75:19, 110:16
knowledgeable [1] -
41:17
knows [2] - 44:19,
124:3
Korea [1] - 88:8

L

lab [1] - 107:3
lack [6] - 26:2, 26:14,
27:15, 35:8, 43:7,
103:20
ladies [7] - 13:23,
18:12, 19:9, 65:16,
67:6, 68:15, 114:18
Ladies [2] - 4:1,
115:19
lady [1] - 100:20
Lane [1] - 1:15
large [9] - 51:15,
53:11, 53:14, 82:9,
82:12, 82:22, 84:7,
89:11, 109:10
last [14] - 9:5, 65:17,
68:16, 69:2, 77:12,
77:18, 78:3, 85:12,
95:9, 100:21,
101:17, 105:23,
105:24, 106:2
late [2] - 71:13, 121:4
latest [1] - 14:1

**laughed** [1] - 83:23
**law** [48] - 6:8, 19:12, 19:21, 22:25, 23:3, 23:5, 25:17, 26:23, 29:2, 29:5, 30:19, 35:17, 35:21, 42:7, 42:9, 42:14, 42:18, 43:23, 62:8, 62:20, 67:20, 73:16, 76:22, 77:15, 77:17, 78:13, 79:1, 79:13, 79:25, 80:19, 83:18, 84:2, 84:19, 91:3, 91:13, 92:23, 93:18, 96:2, 97:5, 97:14, 97:15, 97:21, 97:24, 98:1, 98:5, 100:6, 102:7, 104:24
**lawful** [1] - 35:1
**laws** [5] - 25:2, 67:16, 67:19, 67:22, 77:13
**lawyer** [5] - 34:3, 34:9, 99:1, 106:3
**lawyers** [2] - 23:17, 105:25
**lead** [1] - 113:18
**leading** [1] - 98:14
**learned** [2] - 97:20, 99:14
**lease** [3] - 79:9, 94:6, 114:3
**leased** [3] - 79:16, 89:3, 95:3
**leaseholder** [2] - 76:21, 79:8
**least** [9] - 3:18, 8:11, 14:22, 21:21, 75:5, 94:12, 98:7, 98:23, 104:22
**leave** [2] - 71:18, 123:21
**leaving** [1] - 10:12
**left** [9] - 17:21, 79:5, 82:15, 82:25, 89:8, 90:10, 94:25, 106:20, 109:19
**legal** [8] - 22:25, 34:23, 35:10, 35:16, 48:10, 48:17, 48:20, 48:25
**legality** [1] - 34:21
**legitimate** [1] - 42:13
**legitimately** [3] - 57:13, 92:9, 94:8
**length** [1] - 16:14
**lens** [1] - 96:19
**Leonard** [1] - 88:5
**less** [5] - 25:9, 30:20, 42:11, 70:6, 70:7
**lesser** [1] - 42:11

**letting** [1] - 7:11
**level** [1] - 97:10
**licensed** [1] - 67:25
**lies** [1] - 37:10
**life** [1] - 106:6
**light** [8] - 11:25, 32:19, 36:22, 38:17, 38:19, 38:20, 41:25, 106:6
**likely** [4] - 16:13, 60:19, 96:15, 116:11
**likewise** [2] - 70:13, 75:1
**limited** [4] - 56:25, 57:7, 92:3, 103:23
**limiting** [1] - 54:22
**line** [5] - 63:7, 63:9, 63:10, 63:20, 111:6
**lines** [4] - 28:9, 85:13, 85:14, 86:23
**link** [1] - 14:14
**linked** [1] - 16:19
**LinkedIn** [1] - 27:23
**list** [1] - 70:14
**listen** [9] - 4:5, 7:1, 7:24, 8:12, 19:14, 36:7, 64:20, 83:19, 91:5
**listened** [1] - 37:12
**listening** [4] - 8:22, 10:21, 11:16, 75:13
**litigation** [1] - 25:8
**lived** [1] - 95:3
**lives** [2] - 96:11, 99:6
**loaded** [9] - 57:14, 92:10, 94:13, 102:17, 109:14, 109:16, 109:17, 109:18, 113:4
**local** [2] - 67:15, 67:17
**located** [1] - 88:21
**location** [4] - 78:14, 91:1, 91:15, 105:9
**locked** [2] - 7:6, 92:21
**locker** [1] - 79:23
**logical** [4] - 30:18, 31:8, 32:2, 105:15
**look** [18] - 6:14, 7:21, 15:13, 15:19, 15:21, 17:16, 17:19, 33:8, 35:8, 90:7, 96:18, 97:9, 103:2, 105:14, 106:19, 106:21, 107:1, 109:24
**looking** [4] - 75:23, 80:7, 90:6, 94:22
**looks** [1] - 95:18
**louder** [1] - 51:4
**loyalty** [1] - 38:7
**lunch** [12] - 16:7, 16:9,

16:11, 69:13, 71:13, 116:25, 117:1, 117:2, 117:7, 122:7, 123:14, 123:17

## M

**M-I-C-E-L-I** [1] - 117:25
**MAC** [2] - 90:21, 92:18
**machine** [1] - 125:9
**Madam** [5] - 2:8, 13:7, 115:11, 115:22, 116:9
**madam** [1] - 8:20
**magazine** [6] - 89:1, 89:25, 90:2, 90:19, 90:22, 109:18
**magazines** [5] - 76:24, 89:20, 95:5, 109:16, 112:12
**major** [4] - 89:21, 89:23, 89:25, 90:2
**man** [1] - 95:2
**manner** [1] - 115:12
**manufactured** [6] - 63:14, 86:22, 87:1, 87:7, 88:6, 88:10
**Mark** [1] - 82:4
**marked** [3] - 32:10, 32:12, 33:20
**MARSHAL** [1] - 12:12
**marshal** [4] - 7:7, 11:21, 15:6, 16:17
**marshals** [7] - 6:20, 8:7, 8:24, 9:6, 12:8, 14:6, 15:8
**MARYLAND** [2] - 1:2, 1:12
**Maryland** [10] - 1:16, 46:6, 46:7, 54:1, 58:6, 58:7, 63:15, 85:15, 86:23, 125:4
**Masterpiece** [12] - 54:4, 58:12, 88:9, 88:12, 89:16, 89:22, 90:3, 90:14, 92:18, 93:14, 94:24, 112:22
**match** [1] - 90:8
**matches** [1] - 84:20
**material** [5] - 3:9, 47:24, 47:25, 48:2, 48:4
**material's** [1] - 48:2
**materials** [10] - 47:18, 50:19, 51:14, 71:19, 106:21, 113:4, 118:3, 119:3, 119:20, 123:21
**math** [1] - 108:4

**matter** [12] - 25:2, 30:17, 30:18, 31:16, 37:15, 38:21, 39:8, 40:4, 43:20, 44:8, 105:7, 125:7
**matters** [7] - 3:10, 9:3, 13:14, 23:23, 35:20, 41:13, 41:14
**Matthew** [1] - 88:5
**mattress** [1] - 92:24
**McCollum** [2] - 99:17, 100:10
**McCollum's** [1] - 90:8
**mean** [11] - 12:21, 24:6, 33:1, 42:10, 44:24, 49:15, 52:12, 52:19, 53:12, 111:25, 117:16
**meaning** [3] - 2:24, 99:1, 116:12
**means** [21] - 21:14, 27:22, 27:23, 27:25, 28:1, 28:2, 44:19, 52:16, 56:13, 56:15, 56:18, 61:10, 61:14, 62:15, 62:16, 62:18, 71:5, 73:14, 85:12, 85:17, 101:1
**medical** [1] - 45:12
**meet** [1] - 99:6
**meeting** [2] - 67:15, 115:12
**member** [1] - 98:1
**members** [2] - 71:2, 95:20
**memory** [1] - 111:5
**mention** [5] - 19:3, 19:5, 39:12, 103:1, 118:9
**mentioned** [2] - 35:22, 96:2
**mentioning** [1] - 21:16
**mere** [1] - 56:20
**merely** [7] - 42:2, 42:25, 43:1, 55:7, 56:23, 57:22, 70:5
**messaging** [1] - 27:23
**MESSITTE** [1] - 1:10
**Messitte** [1] - 105:13
**met** [3] - 27:6, 29:25, 35:7
**metaphors** [1] - 74:6
**method** [1] - 50:18
**Miceli** [1] - 117:24
**Michael** [1] - 87:10
**might** [17] - 2:25, 5:24, 22:12, 23:5, 28:15, 30:12, 38:7, 46:18, 48:15, 53:17, 55:23, 64:3, 91:20, 104:18,

104:22, 104:24, 105:3
**Mike** [1] - 80:19
**millimeter** [6] - 54:7, 54:9, 58:15, 58:17, 87:14, 112:25
**mind** [19] - 3:7, 14:12, 33:15, 40:17, 45:8, 45:9, 45:13, 45:14, 45:15, 50:21, 50:22, 50:25, 51:3, 51:7, 52:2, 52:4, 77:15, 81:9, 97:8
**minute** [8] - 5:6, 6:17, 21:13, 65:17, 68:16, 96:24, 123:8
**minutes** [9] - 12:1, 12:20, 16:14, 74:23, 74:25, 75:4, 102:15, 107:16, 108:2
**misled** [2] - 4:17, 7:23
**misrecollection** [1] - 39:5
**missed** [2] - 65:14, 75:13
**missing** [1] - 66:18
**mistake** [4] - 45:3, 50:9, 56:14, 62:16
**mistaken** [3] - 65:24, 118:24, 120:19
**mixture** [2] - 46:9, 46:12
**Model** [11] - 54:3, 54:5, 54:6, 54:8, 58:11, 58:13, 58:14, 58:16, 86:20, 88:1, 88:10
**moment** [13] - 7:2, 20:12, 33:14, 42:20, 44:18, 69:1, 75:12, 92:13, 98:11, 105:21, 106:21, 117:16, 117:17
**momentarily** [2] - 23:14, 26:9
**moments** [1] - 88:22
**Monday** [1] - 95:21
**money** [7] - 82:14, 108:3, 108:24, 108:25, 109:4, 109:15, 113:23
**monitor** [1] - 17:18
**months** [1] - 7:6
**morning** [7] - 13:24, 14:6, 120:6, 121:5, 121:7, 123:2, 123:10
**morning's** [1] - 15:2
**most** [11] - 33:3, 33:11, 48:12, 85:19, 98:21, 101:18,

101:25, 102:20, 105:6, 114:7, 116:22
**motion** [10] - 2:7, 4:17, 4:18, 4:19, 4:21, 4:23, 5:5, 10:11, 22:9, 120:17
**motive** [2] - 38:7, 40:13
**move** [1] - 53:21
**moved** [2] - 21:24, 22:3
**MR** [98] - 2:4, 2:11, 9:21, 11:5, 12:14, 12:19, 12:24, 13:3, 14:3, 14:10, 14:19, 14:25, 15:18, 15:22, 15:25, 17:5, 17:10, 18:22, 18:24, 19:2, 19:8, 19:25, 20:5, 20:9, 20:18, 20:20, 20:22, 20:24, 21:1, 21:3, 21:6, 21:8, 21:11, 21:23, 22:7, 22:10, 22:11, 22:16, 32:11, 32:14, 33:19, 34:1, 65:19, 66:9, 66:14, 66:20, 66:25, 67:3, 67:5, 68:8, 68:12, 68:18, 68:20, 69:1, 69:9, 71:24, 72:8, 72:11, 72:18, 73:3, 73:7, 73:22, 74:9, 74:11, 74:15, 74:19, 74:20, 74:23, 74:25, 75:3, 75:11, 75:17, 75:19, 75:23, 76:3, 76:7, 76:12, 76:14, 76:16, 76:18, 83:21, 87:4, 87:6, 91:5, 95:15, 95:18, 106:15, 106:18, 106:24, 107:1, 114:16, 118:14, 121:12, 121:16, 122:10, 122:15, 122:18, 123:5
**multiple** [2] - 14:7, 83:10
**multiply** [1] - 108:8
**must** [30] - 10:18, 28:21, 29:17, 30:25, 32:23, 43:11, 44:6, 44:21, 47:6, 47:17, 48:5, 48:9, 50:4, 50:6, 50:12, 51:25, 52:11, 52:12, 55:9, 55:22, 56:9, 59:6, 59:19, 62:24, 63:1, 63:9, 64:11, 64:13, 65:8, 65:10

## N

**name** [6] - 25:5, 79:10, 79:11, 79:15, 100:21, 117:22
**named** [2] - 44:4, 44:7
**names** [1] - 48:1
**narcotics** [12] - 49:9, 50:2, 52:22, 79:19, 81:9, 81:13, 81:22, 83:13, 84:2, 84:4, 84:10, 108:21
**national** [1] - 26:5
**naturally** [1] - 99:5
**nature** [9] - 15:2, 26:11, 50:14, 57:7, 92:4, 96:24, 102:21, 102:22, 103:4
**near** [3] - 49:18, 107:3, 109:3
**necessarily** [4] - 33:2, 42:10, 49:15, 53:12
**necessary** [3] - 60:11, 63:7, 63:10
**need** [45] - 2:14, 3:2, 3:7, 4:4, 6:10, 8:11, 8:12, 8:21, 9:7, 10:3, 12:8, 12:10, 12:17, 12:25, 13:6, 15:10, 16:1, 34:2, 45:10, 46:24, 48:16, 56:12, 60:6, 69:3, 69:14, 70:24, 71:15, 72:10, 74:2, 78:19, 80:24, 97:2, 100:19, 110:9, 116:17, 118:10, 118:15, 118:18, 120:6, 120:11, 120:12, 121:6, 121:25, 123:13
**needed** [1] - 110:19
**needs** [2] - 15:6, 120:5
**neglected** [1] - 103:1
**neglecting** [1] - 98:5
**negligence** [1] - 50:9
**negotiating** [1] - 53:2
**neighborhoods** [1] - 104:2
**nervousness** [1] - 51:12
**net** [1] - 82:5
**Nevada** [1] - 88:8
**never** [4] - 29:1, 41:4, 41:5, 105:24
**next** [21] - 80:19, 87:13, 88:1, 89:9, 92:19, 92:20, 93:5, 93:10, 93:15, 100:18, 100:25, 107:8, 109:7, 111:1,

111:9, 111:10, 117:15, 120:15, 121:15
**nexus** [1] - 84:18
**nice** [7] - 97:1, 104:13, 112:16, 112:17, 112:20, 112:24
**night** [1] - 107:18
**nine** [2] - 58:21, 113:1
**NO** [1] - 1:5
**nobody** [1] - 11:16
**Nolan** [2] - 80:19, 87:10
**non** [2] - 30:16, 97:24
**non-existence** [1] - 30:16
**non-law** [1] - 97:24
**none** [2] - 98:6, 99:9
**noon** [1] - 13:24
**normal** [1] - 96:11
**normally** [1] - 39:18
**notable** [1] - 79:18
**notably** [1] - 98:21
**notations** [1] - 46:20
**note** [19] - 18:14, 22:13, 22:18, 30:17, 49:13, 71:2, 71:3, 79:10, 81:8, 87:21, 88:7, 89:10, 89:11, 91:16, 93:11, 116:19, 120:13, 124:3
**noted** [6] - 22:8, 73:20, 73:23, 74:8, 78:23, 110:5
**notes** [5] - 46:18, 66:15, 77:14, 106:9, 115:5
**NOTES** [1] - 1:25
**nothing** [11] - 5:3, 5:4, 8:9, 18:20, 23:21, 23:22, 60:16, 101:22, 102:1, 106:19, 113:23
**noticed** [1] - 74:11
**notion** [2] - 110:12, 111:12
**novels** [1] - 90:7
**number** [8] - 2:16, 42:23, 57:12, 72:24, 73:2, 92:8, 94:3, 102:11
**Number** [8] - 54:4, 54:6, 54:7, 54:9, 58:12, 58:14, 58:15, 58:17
**numbers** [1] - 65:13
**NW** [1] - 1:20

## O

**Oak** [1] - 79:11
**oath** [3] - 26:15, 64:2, 97:3
**oaths** [1] - 106:2
**object** [9] - 25:13, 48:14, 48:16, 48:19, 61:18, 73:5, 73:22, 85:23, 99:21
**objected** [1] - 25:19
**objection** [2] - 72:14, 73:20
**objections** [3] - 23:19, 25:15, 69:7
**objects** [2] - 99:18, 99:19
**obligation** [2] - 25:15, 40:25
**obliged** [1] - 2:20
**observation** [1] - 18:16
**observe** [2] - 36:25, 38:13
**observed** [1] - 37:12
**obtained** [1] - 9:3
**obviously** [4] - 19:15, 50:21, 89:13, 120:12
**occasion** [1] - 39:24
**occasions** [2] - 15:4, 99:10
**occupant** [1] - 51:8
**occupied** [1] - 62:3
**occurred** [5] - 43:21, 45:23, 60:2, 67:20, 98:16
**occurrence** [2] - 45:17, 45:21
**occurs** [1] - 61:16
**OF** [5] - 1:2, 1:5, 1:10, 1:14, 1:25
**offense** [16] - 30:25, 43:13, 43:14, 53:22, 53:24, 56:18, 56:25, 57:5, 59:5, 60:21, 92:2, 92:16, 94:12, 101:13, 102:13, 105:18
**offenses** [2] - 43:16, 43:19
**offer** [2] - 33:17, 106:9
**offered** [6] - 32:10, 36:2, 83:15, 101:23, 102:1, 122:4
**offering** [1] - 33:3
**offers** [1] - 25:13
**OFFICE** [1] - 1:14
**officer** [5] - 70:21, 71:1, 100:18, 115:15, 117:21

**OFFICER** [1] - 117:24
**officers** [6] - 83:2, 97:15, 99:8, 100:13, 100:16, 104:25
**OFFICIAL** [1] - 1:23
**Official** [1] - 125:3
**official** [2] - 42:9, 125:17
**officials** [2] - 42:7, 67:17
**often** [4] - 45:8, 45:18, 53:8, 93:22
**Ohio** [1] - 88:6
**omission** [4] - 39:13, 39:15, 39:21, 39:25
**omitted** [5] - 39:12, 39:16, 66:2, 67:6, 67:8
**once** [15] - 3:5, 9:4, 9:24, 12:11, 20:10, 81:3, 87:6, 89:24, 90:1, 108:15, 114:23, 116:14, 120:10, 121:7, 121:15
**one** [102] - 2:16, 9:5, 11:4, 13:5, 13:19, 15:16, 16:9, 17:9, 23:2, 31:5, 32:25, 39:18, 42:23, 43:13, 46:8, 49:1, 49:3, 54:2, 58:3, 58:9, 59:3, 59:8, 59:22, 60:2, 60:8, 60:12, 60:13, 60:25, 61:3, 62:13, 64:21, 66:5, 66:18, 67:2, 68:4, 69:1, 70:2, 70:3, 70:9, 70:10, 70:16, 71:2, 71:22, 72:1, 72:2, 73:3, 73:4, 73:15, 79:13, 80:8, 83:8, 85:1, 85:7, 86:12, 87:16, 87:22, 88:13, 89:1, 89:16, 94:5, 94:6, 94:12, 94:18, 94:24, 95:1, 95:2, 95:3, 96:12, 96:23, 97:2, 99:21, 99:22, 100:7, 100:17, 100:25, 102:2, 102:4, 102:18, 102:19, 102:20, 103:20, 103:22, 103:23, 104:17, 106:5, 106:21, 107:13, 108:11, 109:6, 109:17, 109:19, 110:22, 111:12,

14

111:13, 111:19, 112:9, 112:17
**One** [24] - 46:3, 46:4, 47:8, 54:14, 54:25, 55:2, 55:5, 55:8, 55:14, 55:17, 55:25, 56:3, 56:6, 56:20, 70:5, 78:4, 78:7, 78:9, 78:19, 84:12, 91:10, 91:19, 91:23, 115:25
**one's** [1] - 45:9
**one-bedroom** [3] - 88:13, 94:5, 95:2
**open** [8] - 17:3, 71:6, 88:24, 88:25, 89:14, 92:17, 93:1, 94:16
**opening** [5] - 23:18, 96:2, 101:8, 101:12, 106:5
**operation** [1] - 50:22
**opinion** [10] - 23:5, 24:7, 25:22, 41:14, 41:20, 41:24, 42:1, 42:3, 64:17, 65:2
**opinions** [2] - 41:13, 41:21
**opportunity** [6] - 9:5, 14:23, 36:25, 38:13, 39:24, 95:22
**opposed** [1] - 82:20
**option** [1] - 9:23
**orally** [2] - 21:13, 71:6
**order** [5] - 11:25, 13:20, 44:25, 47:7, 48:17
**ordered** [2] - 28:7, 122:6
**orderly** [1] - 3:8
**ordinarily** [1] - 41:23
**ordinary** [1] - 42:12
**organized** [1] - 12:1
**origin** [1] - 26:6
**otherwise** [2] - 28:2, 62:22
**outcome** [6] - 40:12, 40:16, 40:21, 42:16, 125:13
**outlined** [3] - 84:25, 87:24, 92:14
**outnumbered** [1] - 65:7
**outside** [10] - 3:24, 11:3, 28:11, 28:17, 30:9, 30:13, 32:23, 63:15, 74:16, 96:12
**overruled** [2] - 73:21, 74:8
**overview** [1] - 78:3
**own** [9] - 23:16, 23:24,

24:7, 36:7, 36:8, 40:14, 42:4, 49:8, 91:6
**owned** [3] - 57:13, 92:9, 94:8
**ownership** [2] - 49:10, 49:14

**P**

**p.m** [14] - 13:22, 18:10, 71:20, 75:8, 76:9, 118:5, 119:5, 120:3, 120:24, 123:7, 124:1, 124:6
**P11** [1] - 82:25
**P12** [2] - 79:4, 94:21
**P17** [2] - 89:8, 89:17
**P18** [1] - 94:22
**P27** [2] - 89:15, 112:22
**P28** [1] - 89:1
**P35** [1] - 82:25
**pace** [1] - 123:16
**package** [1] - 69:15
**packaging** [2] - 53:16, 82:6
**packet** [6] - 15:14, 15:20, 68:11, 68:13, 68:16, 74:14
**packets** [1] - 68:15
**page** [4] - 68:9, 73:25, 74:16, 102:21
**pages** [5] - 66:2, 66:3, 66:7, 66:10, 74:14
**panel** [10] - 18:10, 71:20, 76:9, 76:15, 76:17, 95:17, 106:17, 118:5, 123:7, 124:1
**paper** [1] - 108:9
**papers** [3] - 8:23, 35:22, 86:1
**paralegal** [1] - 74:15
**paraphernalia** [5] - 53:15, 77:1, 78:16, 84:8, 95:6
**pardon** [1] - 19:25
**part** [17] - 7:12, 13:25, 18:25, 19:2, 19:7, 25:22, 37:10, 40:5, 44:6, 51:5, 66:11, 69:12, 75:13, 80:9, 99:17, 103:9, 103:14
**participate** [1] - 18:18
**particular** [7] - 30:25, 47:25, 59:5, 70:6, 70:9, 70:10, 116:3
**particularly** [5] - 73:19, 96:9, 101:6, 103:21

**parties** [8] - 25:9, 34:13, 34:14, 59:25, 60:25, 84:17, 86:11, 125:8
**parts** [1] - 44:17
**party** [8] - 24:14, 24:24, 25:7, 32:25, 33:2, 33:11, 103:18, 125:12
**pass** [4] - 23:9, 46:24, 52:19, 52:21
**passed** [2] - 52:20, 67:16
**past** [6] - 2:25, 21:24, 45:13, 95:21, 98:16, 109:24
**pay** [2] - 19:12, 19:16
**paying** [2] - 4:14, 118:25
**pending** [1] - 13:20
**people** [7] - 8:8, 48:12, 73:18, 85:19, 104:3, 104:5, 104:23
**perfectly** [1] - 105:15
**perform** [3] - 24:13, 24:23, 24:24
**perhaps** [5] - 9:19, 11:7, 11:23, 12:4, 71:10
**period** [1] - 28:3
**permissible** [1] - 105:16
**permit** [3] - 4:9, 13:14, 22:2
**permitted** [5] - 31:18, 31:23, 41:12, 41:14, 63:15
**persists** [1] - 13:16
**person** [37] - 27:13, 27:22, 33:6, 38:19, 38:22, 44:7, 45:1, 45:15, 45:16, 46:15, 48:15, 48:16, 48:23, 49:2, 49:3, 49:7, 49:10, 52:2, 54:18, 54:19, 59:2, 61:17, 67:25, 78:2, 79:2, 79:19, 81:21, 82:17, 84:5, 84:15, 94:6, 107:13, 109:3, 109:22, 111:11, 113:24
**person's** [4] - 45:7, 45:13, 48:22, 61:15
**personal** [6] - 26:4, 33:9, 42:15, 53:7, 82:13, 109:3
**personally** [3] - 14:5, 52:13, 118:18
**persons** [10] - 26:7,

27:17, 35:18, 39:4, 44:4, 44:6, 44:10, 67:10, 67:23, 68:2
**persuaded** [1] - 33:12
**pertains** [1] - 39:8
**PETER** [1] - 1:10
**phase** [2] - 22:3, 22:13
**phone** [2] - 27:22, 83:9
**phones** [3] - 83:8, 83:11, 83:12
**photo** [1] - 94:25
**photos** [2] - 87:18, 88:14
**physical** [10] - 48:13, 48:16, 48:19, 48:23, 53:15, 61:16, 61:24, 85:24, 122:16, 122:19
**physically** [2] - 85:18, 85:25
**pick** [2] - 114:23, 123:11
**picture** [6] - 80:16, 82:15, 82:16, 87:8, 89:9, 112:21
**pictures** [7] - 37:8, 79:14, 94:17, 104:14, 118:12, 118:17
**pile** [4] - 65:15, 71:22, 71:23, 71:25
**pistol** [9] - 54:4, 54:5, 58:11, 58:13, 90:1, 90:13, 103:16, 111:1, 112:23
**pistols** [1] - 94:4
**PJM-16-403** [1] - 1:5
**place** [7] - 20:13, 35:19, 45:24, 49:8, 79:19, 104:12, 114:25
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 1:13
**plan** [2] - 19:21, 53:17
**plastic** [1] - 111:24
**play** [2] - 44:6, 83:19
**played** [2] - 83:20, 91:4
**plea** [1] - 28:24
**pled** [1] - 28:23
**PLLC** [1] - 1:19
**PMC** [2] - 58:18, 58:19
**pocket** [2] - 107:15, 109:4
**point** [24] - 2:7, 2:8, 3:22, 4:13, 6:5, 9:24, 12:23, 15:6, 19:12, 19:18, 21:24, 34:8, 54:23, 66:21, 69:7,

80:9, 81:24, 85:12, 86:7, 96:23, 115:3, 119:15, 121:17, 123:18
**pointed** [1] - 37:7
**pointing** [1] - 22:17
**points** [4] - 10:22, 102:15, 105:4, 120:16
**police** [2] - 107:23, 107:24
**policy** [1] - 67:19
**Polish** [1] - 100:21
**poll** [1] - 116:11
**portion** [1] - 102:9
**posing** [2] - 91:3, 91:7
**position** [1] - 72:20
**positive** [1] - 112:7
**possess** [11] - 46:16, 53:14, 56:17, 59:4, 59:10, 61:14, 61:20, 85:3, 86:2, 93:22, 103:15
**possessed** [49] - 46:8, 46:11, 47:9, 47:10, 47:16, 47:19, 48:9, 49:6, 49:7, 49:25, 50:4, 50:5, 50:7, 50:8, 50:10, 50:13, 50:16, 50:20, 51:20, 51:23, 52:9, 54:2, 54:10, 55:16, 56:12, 56:13, 57:4, 58:1, 58:10, 59:15, 60:3, 62:10, 62:11, 62:13, 62:15, 63:3, 70:11, 70:15, 77:6, 77:8, 78:20, 78:21, 85:8, 89:13, 91:21, 92:1, 103:15, 105:2, 113:22
**possesses** [2] - 49:2, 54:20
**possessing** [10] - 54:24, 56:24, 59:21, 67:23, 68:2, 77:9, 94:10, 102:4, 103:13, 103:14
**possession** [89] - 46:3, 47:2, 47:5, 47:14, 48:7, 48:8, 48:10, 48:12, 48:13, 48:15, 48:17, 48:20, 48:22, 48:25, 49:1, 49:2, 49:5, 49:13, 49:16, 49:17, 50:8, 50:15, 51:15, 51:17, 53:7, 53:10, 53:11, 53:19, 53:21, 54:12, 56:1, 56:7, 56:11,

56:20, 57:19, 57:21, 59:17, 60:9, 60:20, 60:21, 61:4, 61:13, 61:14, 61:15, 61:16, 61:22, 61:23, 61:25, 62:1, 62:6, 62:9, 63:2, 65:25, 66:3, 66:24, 67:7, 70:13, 73:8, 73:14, 77:24, 77:25, 78:2, 78:4, 79:22, 80:12, 81:22, 82:9, 82:10, 84:4, 84:15, 85:10, 85:17, 85:20, 85:21, 85:22, 85:24, 86:8, 87:24, 88:19, 91:9, 101:10, 103:10, 109:6, 110:8, 110:11, 113:19, 114:1, 116:5
**possessor** [1] - 62:10
**possible** [4] - 28:8, 49:3, 53:9, 63:21
**possibly** [1] - 98:4
**potential** [1] - 111:2
**potentially** [1] - 22:1
**powder** [18] - 61:11, 76:25, 77:2, 78:24, 80:6, 80:15, 80:22, 81:7, 82:2, 82:3, 83:5, 83:7, 107:4, 108:14, 108:16, 109:13, 113:8, 113:9
**power** [4] - 49:3, 49:5, 61:17, 61:23
**powerful** [1] - 109:11
**precisely** [1] - 17:10
**prejudice** [6] - 24:14, 24:18, 24:24, 25:18, 26:25, 38:8
**prejudiced** [1] - 4:20
**premises** [1] - 62:3
**preparation** [1] - 81:14
**prepared** [4] - 8:16, 10:3, 10:6
**preparing** [1] - 83:4
**presence** [4] - 51:12, 56:22, 103:19, 105:8
**present** [18] - 6:2, 7:12, 14:2, 18:15, 19:7, 20:14, 35:18, 41:1, 49:19, 64:21, 79:2, 79:16, 79:24, 89:4, 89:7, 95:4, 104:8
**presentation** [1] - 77:21
**presented** [17] - 28:18, 31:22, 35:23, 41:16, 53:20, 77:12,

77:16, 78:11, 79:8, 79:13, 81:23, 84:23, 86:25, 88:2, 90:7, 95:9, 97:9
**presents** [2] - 30:24, 116:19
**preside** [1] - 19:24
**presumed** [2] - 29:7, 33:18
**presumes** [1] - 29:5
**presumption** [4] - 26:7, 29:12, 29:19, 96:4
**pretends** [1] - 98:1
**pretty** [1] - 71:13
**prevalence** [1] - 67:12
**previous** [1] - 81:6
**previously** [9] - 58:8, 59:12, 61:2, 62:14, 63:12, 66:10, 85:6, 107:6, 125:7
**price** [1] - 53:2
**prime** [1] - 25:2
**primers** [1] - 61:11
**principal** [2] - 19:13, 44:17
**principle** [1] - 22:25
**principles** [2] - 96:1, 97:8
**printed** [1] - 28:14
**printout** [1] - 89:8
**privilege** [1] - 105:23
**probabilities** [1] - 96:14
**problem** [2] - 67:15, 72:4
**procedure** [2] - 3:8, 115:3
**proceed** [11] - 4:16, 6:11, 11:8, 18:19, 21:19, 55:3, 97:10, 115:1, 115:12, 116:24, 117:8
**proceeding** [2] - 10:11, 75:13
**PROCEEDINGS** [1] - 1:10
**proceedings** [9] - 4:15, 15:2, 18:13, 18:17, 20:8, 30:10, 116:18, 124:6, 125:6
**proceeds** [4] - 57:10, 92:7, 93:8, 93:16
**process** [3] - 26:12, 31:15, 83:4
**processing** [1] - 53:16
**procured** [1] - 104:4
**produce** [1] - 35:21
**producing** [1] - 29:4
**product** [6] - 81:16,

82:6, 82:7, 107:19, 109:1, 113:15
**professional** [1] - 42:16
**profits** [1] - 57:2
**profuse** [1] - 46:18
**prohibit** [1] - 67:22
**prohibited** [8] - 68:2, 77:8, 78:2, 84:15, 94:10, 94:11, 105:12, 109:22
**projectile** [2] - 55:20, 61:8
**pronounce** [1] - 100:22
**proof** [12] - 26:4, 26:8, 30:1, 30:8, 33:16, 44:25, 45:14, 61:13, 62:5, 64:9, 97:6, 105:23
**propellant** [1] - 61:11
**proper** [4] - 25:14, 66:7, 113:15
**property** [1] - 49:22
**propose** [3] - 2:10, 66:6, 67:4
**proposed** [3] - 73:1, 73:24, 115:8
**prosecuted** [5] - 54:11, 54:19, 55:14, 55:24, 91:20
**prosecution** [6] - 25:5, 28:25, 35:17, 35:21, 41:3, 98:8
**protect** [9] - 93:22, 104:21, 108:18, 108:19, 109:1, 109:20, 110:11, 110:20, 113:23
**protecting** [1] - 110:1
**protection** [1] - 57:2
**prove** [40] - 28:25, 30:7, 30:25, 35:12, 41:2, 41:5, 45:1, 47:6, 47:7, 47:17, 47:21, 48:4, 48:5, 50:3, 50:6, 50:12, 50:14, 50:22, 51:24, 51:25, 55:2, 55:11, 55:22, 56:9, 57:18, 59:6, 59:19, 60:22, 61:5, 62:20, 62:21, 62:24, 63:1, 63:8, 63:9, 63:11, 77:19, 96:5, 99:2, 104:10
**proved** [2] - 31:11, 64:8
**proven** [14] - 24:10, 26:19, 26:22, 27:12, 27:14, 29:9, 29:22,

31:24, 43:6, 45:4, 47:4, 56:4, 61:25, 87:23
**proves** [2] - 30:3, 50:16
**provide** [1] - 27:20
**provided** [2] - 15:22, 100:14
**provides** [2] - 54:18, 59:1
**proving** [4] - 27:7, 34:8, 50:18, 63:5
**provisions** [1] - 67:22
**proximity** [15] - 57:8, 57:10, 62:4, 87:9, 88:23, 92:5, 92:6, 93:2, 93:6, 93:7, 93:8, 93:17, 94:21, 111:12, 113:6
**pull** [1] - 107:24
**pulled** [1] - 11:2
**punishable** [16] - 58:2, 58:8, 59:3, 59:8, 59:13, 59:22, 60:1, 60:8, 60:13, 60:24, 61:2, 66:5, 68:4, 85:1, 85:6, 86:12
**punishment** [2] - 63:21, 64:3
**purport** [1] - 99:18
**purpose** [13] - 44:20, 52:2, 53:8, 60:17, 64:19, 66:23, 67:1, 67:9, 73:7, 73:8, 73:17, 81:13, 104:20
**purposely** [2] - 56:14, 62:15
**purposes** [2] - 81:14, 82:12
**pursuant** [1] - 71:10
**put** [14] - 2:9, 2:20, 4:17, 9:9, 11:3, 16:1, 21:18, 23:20, 35:14, 68:10, 91:15, 96:22, 105:6, 107:21
**putting** [1] - 70:19
**Pyrex** [4] - 77:2, 83:1, 84:9, 113:8

**Q**

**qualifications** [2] - 24:17, 41:21
**quality** [3] - 53:2, 53:9, 116:2
**quantities** [3] - 81:25, 82:12, 84:7
**quantity** [5] - 46:12, 51:15, 53:11, 53:14,

82:9
**questioning** [1] - 101:21
**questions** [14] - 23:19, 24:1, 24:17, 25:17, 34:3, 34:12, 70:4, 71:3, 87:22, 98:13, 98:15, 103:12, 116:1, 116:7
**quick** [1] - 20:1
**quite** [3] - 42:13, 97:20, 116:11
**quote** [4] - 46:15, 56:24, 102:21

**R**

**R1** [1] - 33:21
**R2** [1] - 33:21
**race** [1] - 26:5
**raid** [6] - 104:19
**railroad** [3] - 8:18, 10:7, 10:9
**railroading** [3] - 5:25, 6:24, 7:15
**raining** [2] - 30:12
**raise** [2] - 20:4, 20:16
**raised** [1] - 3:14
**raising** [1] - 20:2
**rarely** [1] - 45:14
**rather** [3] - 11:1, 45:20, 69:7
**re** [2] - 42:20, 121:18
**re-charge** [1] - 121:18
**re-fuel** [1] - 42:20
**reach** [5] - 64:22, 69:23, 70:20, 86:17, 115:14
**reached** [2] - 71:9, 115:16
**reaching** [6] - 23:7, 26:3, 41:18, 43:5, 44:12, 55:6
**read** [12] - 10:17, 10:18, 66:16, 66:18, 66:21, 68:9, 70:1, 70:18, 72:8, 72:9, 91:24, 102:9
**readily** [2] - 55:19, 61:8
**reads** [3] - 46:5, 53:25, 58:4
**ready** [12] - 15:23, 16:15, 18:7, 18:19, 18:21, 76:1, 76:10, 113:4, 114:18, 118:2, 119:8, 123:23
**reality** [1] - 121:21
**realized** [1] - 104:24
**really** [4] - 30:13, 95:1,

97:1, 121:6
**reason** [12] - 7:16, 21:11, 21:12, 27:4, 27:8, 29:2, 30:15, 31:5, 42:4, 78:6, 105:2, 111:13
**reasonable** [55] - 23:12, 24:11, 26:20, 27:3, 27:7, 27:12, 29:1, 29:10, 29:14, 29:23, 31:1, 31:24, 32:2, 32:4, 32:20, 41:3, 43:6, 44:22, 45:24, 47:7, 48:6, 50:3, 51:9, 51:25, 52:6, 55:2, 55:12, 55:22, 56:4, 56:10, 57:18, 59:6, 59:20, 60:7, 60:22, 61:6, 62:25, 64:1, 73:23, 74:4, 77:20, 77:22, 84:12, 92:15, 95:10, 95:12, 96:10, 96:19, 105:9, 107:12, 109:12, 109:20, 110:2, 114:4
**reasonably** [1] - 30:12
**reasoned** [1] - 31:8
**reasoning** [1] - 105:11
**reasons** [2] - 41:22, 105:19
**rebuttal** [3] - 74:24, 75:1, 105:22
**received** [7] - 23:25, 32:7, 33:24, 57:6, 79:14, 92:2, 103:24
**receiving** [2] - 53:2, 67:23
**recess** [6] - 11:8, 11:23, 11:25, 12:4, 13:20, 75:7
**Recess** [3] - 13:22, 75:8, 120:24
**recite** [1] - 66:23
**recognizes** [1] - 62:8
**recollection** [5] - 23:17, 23:24, 38:16, 39:6, 40:1
**recollections** [1] - 38:23
**reconcilable** [1] - 37:9
**reconvene** [2] - 118:18, 122:5
**reconvenes** [1] - 71:16
**record** [10] - 2:14, 6:19, 8:13, 8:21, 13:6, 16:1, 16:5, 21:18, 117:23, 118:13

**recorded** [2] - 116:15, 125:9
**recording** [3] - 36:7, 36:9, 91:6
**recordings** [1] - 36:3
**recovered** [15] - 78:15, 79:23, 79:25, 80:1, 80:4, 81:2, 81:18, 85:14, 86:19, 86:23, 87:12, 87:18, 88:11, 88:12, 89:19
**red** [1] - 107:10
**refer** [5] - 33:21, 42:23, 48:2, 80:5, 102:8
**reference** [3] - 28:12, 28:15, 90:23
**referred** [2] - 94:23, 102:10
**referring** [4] - 5:8, 82:3, 84:1, 86:7
**reflect** [3] - 6:19, 13:6, 65:8
**reflects** [1] - 101:2
**refused** [1] - 73:4
**regard** [2] - 21:19, 27:16, 34:15, 44:22, 47:1, 47:5, 63:13, 69:21, 115:10, 115:25, 116:2, 120:14
**regarded** [1] - 22:16
**regarding** [2] - 34:17, 86:9
**regardless** [1] - 23:5
**regards** [1] - 93:20
**registered** [4] - 57:13, 92:10, 94:8, 102:17
**regret** [1] - 65:12
**reiterate** [1] - 13:18
**reject** [1] - 40:5
**rejected** [1] - 9:4
**related** [2] - 104:10, 105:2
**relation** [1] - 91:16
**relationship** [1] - 38:5
**relevance** [1] - 102:2
**relevant** [1] - 3:9, 3:11, 10:23, 13:14, 58:25, 62:2, 73:9, 73:10, 101:16, 102:11, 104:9
**reliability** [1] - 101:3
**relies** [4] - 48:3, 100:5, 100:6, 100:8
**religion** [1] - 26:5
**rely** [3] - 23:16, 51:5, 106:8
**remain** [3] - 24:20, 24:21, 71:14

**remainder** [1] - 14:4
**remains** [2] - 29:20, 41:3
**remarks** [1] - 105:20
**remember** [12] - 28:21, 38:24, 39:18, 96:8, 97:3, 106:2, 106:3, 108:5, 108:15, 111:3, 112:11, 116:10
**remembering** [1] - 115:2
**remind** [7] - 78:10, 78:12, 78:16, 80:17, 81:17, 82:11, 84:18, 84:24, 85:16, 86:24, 87:7, 87:15, 89:3, 90:6, 91:11, 97:4, 122:10
**reminded** [1] - 24:15
**reminder** [2] - 82:2, 84:13, 84:16
**reminding** [1] - 88:22
**Remington** [1] - 58:23
**remove** [5] - 4:14, 5:22, 7:25, 8:1, 9:25
**removed** [3] - 8:1, 10:1, 13:16
**render** [1] - 27:9
**rendered** [1] - 100:10
**Renee** [4] - 1:24, 125:3, 125:15, 125:16
**repeat** [3] - 2:14, 115:1, 123:10
**repeating** [1] - 105:24
**reply** [4] - 76:15, 76:17, 95:17, 106:17
**report** [5] - 14:1, 28:8, 38:1, 81:15, 90:9
**reported** [2] - 14:6, 125:6
**REPORTER** [1] - 1:23
**Reporter** [2] - 13:8, 125:3, 125:17
**reporter** [1] - 8:20
**reports** [4] - 78:17, 80:3, 80:16, 81:3
**representing** [1] - 11:18
**reprogram** [1] - 96:17
**request** [5] - 21:18, 21:21, 22:8, 25:15, 74:8
**requesting** [1] - 21:20
**require** [3] - 35:17, 35:21, 52:25
**required** [9] - 31:18, 33:17, 41:5, 57:16, 57:18, 62:20, 62:21,

63:19, 64:8
**requirement** [2] - 35:11, 35:16
**requires** [3] - 43:23, 53:4, 67:24
**requisite** [1] - 64:9
**research** [1] - 28:10
**residence** [11] - 34:19, 49:14, 51:9, 51:10, 62:1, 76:20, 76:23, 79:25, 86:5, 94:16, 113:5
**resident** [1] - 114:2
**residing** [1] - 79:17
**residue** [2] - 83:2, 113:9
**resolve** [2] - 23:11, 37:6
**respect** [2] - 40:4, 96:20
**respects** [1] - 48:10
**respond** [3] - 28:6, 74:2, 116:7
**response** [3] - 18:3, 116:22, 116:23
**responsibility** [1] - 34:19
**rest** [2] - 2:2, 102:24
**restate** [1] - 34:2
**rested** [4] - 21:20, 21:24, 22:14, 22:16
**restored** [5] - 59:9, 59:23, 60:5, 85:3, 86:14
**restriction** [1] - 67:14
**rests** [3] - 22:12, 42:6, 105:18
**result** [3] - 28:24, 40:1, 40:2
**results** [5] - 39:9, 84:18, 89:19, 90:24, 90:25
**resume** [1] - 122:5
**retire** [1] - 114:19
**return** [7] - 43:11, 64:9, 69:25, 70:21, 114:4, 114:11
**returned** [1] - 116:15
**returns** [1] - 122:25
**reviewing** [1] - 42:17
**RICO** [1] - 103:9
**rifle** [9] - 54:7, 54:9, 58:15, 58:17, 87:13, 89:24, 90:16, 112:25
**rifles** [6] - 89:11, 92:16, 92:19, 93:13, 94:5, 94:23
**rights** [5] - 59:10, 59:23, 60:5, 85:3, 86:13

**risk** [2] - 3:2, 27:1
**RMR** [2] - 1:24, 125:16
**robbed** [1] - 93:24
**role** [2] - 67:18, 96:3
**roll** [1] - 115:23
**room** [16] - 27:24, 28:4, 41:11, 69:23, 79:23, 87:20, 102:3, 108:9, 114:8, 117:15, 118:4, 119:21, 119:22, 119:24, 123:21, 123:22
**Rothman** [1] - 109:18
**round** [1] - 121:24
**rounds** [17] - 58:18, 58:19, 58:20, 58:21, 58:22, 76:24, 86:21, 87:14, 87:21, 87:24, 88:7, 88:16, 88:17, 88:18, 113:1
**RPR** [2] - 1:24, 125:16
**rule** [12] - 2:21, 4:21, 9:11, 9:14, 9:15, 9:17, 10:14, 10:17, 23:4, 25:15, 119:12
**Rule** [8] - 2:6, 4:22, 4:24, 5:1, 5:6, 9:9, 9:15, 120:17
**ruled** [1] - 9:10
**rulings** [3] - 4:11, 24:8, 25:21
**run** [1] - 3:2
**running** [1] - 71:13

**S**

**S030977** [2] - 54:8, 58:16
**safe** [5] - 48:22, 92:21, 92:23, 92:24, 121:9
**SAKURI** [1] - 1:8
**Sakuri** [4] - 42:21, 46:7, 54:2, 58:7
**sale** [2] - 52:25, 53:1
**samples** [4] - 100:9, 100:14, 101:1, 112:6
**satisfied** [3] - 29:9, 32:4, 80:11
**satisfy** [4] - 56:11, 60:6, 62:12, 63:4
**saw** [14] - 30:4, 78:3, 81:6, 84:1, 84:2, 87:8, 87:11, 92:17, 92:23, 95:4, 102:11, 102:15, 104:14, 104:18
**scales** [11] - 80:22, 80:24, 80:25, 81:2, 84:8, 113:9, 113:10,

113:11, 113:12
**scared** [2] - 104:4, 104:5
**scene** [4] - 49:20, 56:21, 83:16, 100:7
**Schedule** [2] - 46:10, 46:13
**science** [1] - 45:12
**score** [1] - 69:20
**screen** [12] - 16:23, 17:1, 17:14, 17:16, 77:23, 79:5, 80:3, 82:14, 86:15, 86:20, 88:5, 88:20
**screw** [1] - 71:22
**scrutinize** [1] - 37:13
**search** [12] - 3:13, 6:6, 7:3, 7:12, 7:14, 9:3, 34:18, 76:22, 98:10, 100:16, 103:24, 107:20
**searched** [3] - 107:13, 110:23
**searches** [2] - 34:21, 34:22
**searching** [1] - 111:11
**seat** [3] - 2:1, 114:17, 120:25
**seated** [3] - 13:23, 75:9, 117:17
**seats** [3] - 118:3, 123:21, 123:22
**second** [14] - 12:21, 43:19, 47:9, 50:1, 54:4, 55:15, 56:7, 56:9, 58:12, 59:11, 60:21, 77:25, 85:4, 95:23
**Section** [3] - 46:15, 54:14, 54:17
**secure** [1] - 104:6
**security** [4] - 70:21, 71:1, 115:15, 117:21
**SECURITY** [1] - 117:24
**see** [57] - 5:7, 12:6, 12:10, 13:5, 16:14, 17:3, 17:12, 19:24, 30:11, 39:4, 46:18, 52:3, 57:24, 69:22, 70:17, 72:4, 74:13, 75:6, 77:23, 79:3, 79:5, 80:15, 80:21, 81:16, 82:14, 82:25, 86:15, 86:19, 86:21, 87:17, 88:5, 88:16, 88:20, 88:23, 89:17, 90:9, 90:16, 94:20, 94:22, 99:5, 106:20, 106:21, 107:1,

105:14
**sets** [1] - 102:11
**setting** [2] - 6:9, 6:12
**setup** [1] - 17:23
**seven** [2] - 58:19, 102:16
**several** [5] - 3:14, 42:5, 76:23, 76:24, 92:22
**sex** [1] - 26:6
**shade** [1] - 38:8
**shady** [1] - 104:3
**shake** [2] - 99:23, 99:24
**shall** [3] - 54:20, 59:1, 115:20
**sharing** [1] - 103:18
**Sharri** [1] - 93:11
**sheet** [3] - 115:9, 116:2, 123:14
**sheets** [2] - 114:15, 117:12
**shifts** [2] - 29:1, 41:4
**shipped** [1] - 67:24, 68:2
**shit** [1] - 11:15
**shoebox** [1] - 109:15
**shook** [2] - 99:23, 99:25
**short** [4] - 11:23, 53:4, 74:7, 113:7
**shorthand** [1] - 125:9
**shortly** [5] - 16:8, 42:22, 102:3, 120:22, 121:1
**show** [8] - 4:20, 6:6, 25:17, 44:21, 53:16, 57:16, 87:15, 105:1
**showed** [1] - 89:16
**showing** [4] - 79:9, 86:22, 93:25, 94:17
**shown** [3] - 45:19, 50:24, 95:8
**shows** [5] - 80:13, 86:20, 89:9, 110:8, 110:14
**side** [5] - 25:12, 25:13, 33:2, 83:8, 97:1
**sidebar** [2] - 20:13, 22:21
**sift** [1] - 26:18
**sight** [1] - 51:12
**sign** [2] - 69:25, 71:1
**signature** [1] - 116:20
**signed** [1] - 71:5
**significance** [4] - 19:4, 19:6, 34:24, 41:7
**significant** [3] - 49:11, 67:12, 79:20

**silence** [1] - 119:16
**similar** [2] - 9:24, 88:2
**similarity** [1] - 43:24
**simple** [1] - 29:2
**simply** [13] - 9:20, 10:1, 32:10, 34:9, 49:19, 52:18, 56:18, 65:7, 66:13, 70:19, 74:7, 101:9, 103:10
**single** [3] - 23:2, 98:10
**sit** [8] - 8:15, 9:8, 10:3, 10:6, 10:13, 10:16, 121:3
**sitting** [4] - 7:5, 8:14, 109:14, 113:8
**situation** [4] - 77:5, 83:11, 92:21, 93:15
**six** [2] - 58:18, 102:15
**size** [1] - 38:18
**skill** [1] - 41:15
**skip** [2] - 66:14, 102:19
**skipped** [3] - 102:18, 102:19
**SKS** [2] - 87:13, 89:24
**SKS-type** [2] - 87:13, 89:24
**slate** [1] - 29:11
**slide** [2] - 81:6, 102:14
**slip** [1] - 104:9
**slow** [2] - 121:22, 123:16
**small** [1] - 98:9
**smaller** [1] - 108:11
**smelled** [1] - 30:5
**snapshot** [2] - 98:11, 103:24
**sock** [11] - 81:19, 86:8, 107:14, 108:3, 109:3, 109:7, 110:23, 112:21, 112:23, 113:1, 113:3
**socks** [1] - 107:14
**soda** [2] - 77:3, 84:9
**sole** [15] - 23:9, 24:5, 25:23, 37:2, 49:1, 49:2, 49:10, 49:14, 51:8, 62:9, 62:10, 76:21, 79:19, 84:19, 114:2
**solely** [11] - 26:16, 26:23, 27:14, 28:18, 42:6, 44:8, 49:17, 49:20, 64:1, 64:15, 64:22
**someone** [18] - 38:1, 39:18, 41:17, 44:19, 48:8, 49:21, 57:1, 62:10, 73:15, 83:3, 84:9, 85:18, 85:19,

91:3, 106:20, 107:10, 109:12, 112:18
**somewhere** [4] - 79:24, 88:25, 92:25, 117:4
**soon** [1] - 28:8
**sooner** [2] - 124:3, 124:4
**sorry** [16] - 2:8, 16:24, 19:1, 20:3, 20:23, 27:11, 46:2, 47:3, 65:12, 68:19, 69:5, 74:25, 75:11, 75:13, 87:2, 118:22
**sort** [7] - 22:1, 69:20, 76:6, 96:17, 99:6, 101:15, 104:9
**sought** [1] - 44:23
**sour** [1] - 57:3
**source** [5] - 28:11, 89:21, 89:23, 89:24, 90:2
**SOUTHERN** [1] - 1:3
**speaker** [1] - 36:6
**speaking** [4] - 10:25, 46:21, 65:25, 110:24
**Special** [2] - 88:4, 109:17
**special** [2] - 22:6, 41:15
**specific** [7] - 35:4, 35:11, 43:21, 46:20, 97:11, 102:2, 105:1
**specifically** [4] - 14:20, 70:9, 102:8, 105:13
**speculate** [1] - 73:10
**speculation** [7] - 30:17, 31:16, 105:12, 105:16, 105:19, 107:9, 114:5
**spoken** [1] - 51:4
**Springfield** [17] - 54:3, 58:10, 86:20, 86:25, 87:6, 87:8, 87:12, 88:20, 89:21, 90:1, 90:10, 90:12, 90:20, 93:5, 93:6, 94:18, 111:1
**stage** [1] - 20:7
**stand** [7] - 8:17, 25:10, 41:9, 71:9, 77:13, 96:21, 115:22
**standard** [2] - 96:10, 96:19
**standing** [4] - 6:20, 8:23, 9:6, 107:6
**standpoint** [1] - 72:13
**stands** [1] - 38:17

107:11, 109:17, 113:20, 113:21, 114:5, 118:18, 120:14, 121:11, 121:21, 122:1, 122:12, 122:19, 124:4
**seeing** [1] - 114:9
**seem** [1] - 37:19
**sees** [1] - 80:25
**seized** [7] - 34:18, 34:25, 35:6, 82:15, 82:17, 83:14, 89:5
**seizing** [4] - 100:20, 100:22, 111:17, 112:5
**seizure** [2] - 3:13, 35:1
**seizures** [2] - 34:21, 34:22
**sell** [1] - 113:15
**sellers** [1] - 48:1
**selling** [2] - 103:18, 107:19
**semiautomatic** [10] - 54:3, 54:5, 54:7, 54:9, 58:11, 58:13, 58:15, 58:17, 112:23, 112:25
**send** [3] - 6:24, 118:9, 118:17
**sending** [2] - 70:25, 121:17
**sense** [13] - 31:21, 32:20, 33:9, 38:24, 42:4, 63:22, 81:24, 90:8, 95:11, 114:6, 114:9, 114:10, 120:7
**sent** [3] - 33:25, 107:2, 122:15
**sentence** [1] - 63:23
**sentenced** [1] - 60:12
**separate** [1] - 43:12
**separately** [2] - 43:11, 116:16
**SEPTEMBER** [1] - 1:11
**sequence** [7] - 65:11, 65:22, 66:3, 66:8, 66:19, 68:17, 74:14
**Serial** [8] - 54:4, 54:5, 54:7, 54:9, 58:12, 58:13, 58:15, 58:17
**series** [2] - 45:20, 67:16
**serious** [2] - 25:4, 96:16
**service** [2] - 28:6, 106:13
**serving** [1] - 57:2
**set** [3] - 65:20, 73:17,

**start** [10] - 8:5, 19:13, 21:7, 78:4, 78:25, 96:1, 97:10, 103:5, 121:15, 122:9
**started** [8] - 20:10, 22:4, 95:22, 97:17, 114:21, 121:5, 121:19, 122:5
**state** [26] - 22:17, 42:8, 45:7, 45:8, 45:9, 45:14, 45:15, 50:21, 50:25, 51:2, 51:6, 52:1, 59:9, 59:23, 63:7, 63:9, 63:10, 63:15, 67:15, 67:17, 85:13, 85:14, 86:22, 88:6, 88:10, 117:22
**statement** [10] - 34:7, 36:19, 39:25, 43:1, 72:6, 72:7, 84:21, 96:2, 101:8, 106:5
**statements** [7] - 23:19, 36:16, 36:18, 36:22, 39:13, 39:14, 125:8
**STATES** [4] - 1:1, 1:5, 1:11, 1:14
**States** [11] - 25:6, 54:12, 54:14, 54:20, 55:15, 55:24, 73:25, 91:21, 101:22, 102:5, 125:4
**states** [1] - 22:25
**stating** [1] - 23:2
**status** [1] - 122:4
**statute** [6] - 58:25, 65:18, 67:1, 67:9, 73:8, 73:9
**Stavrou** [3] - 81:18, 110:23, 112:8
**stay** [4] - 8:5, 57:24, 72:5, 97:6
**staying** [1] - 40:9
**steal** [1] - 57:1
**steel** [1] - 111:23
**stenographically** [1] - 125:6
**STENOTYPE** [1] - 1:25
**step** [6] - 3:24, 9:20, 71:17, 117:18, 118:24, 119:1
**still** [11] - 11:11, 12:2, 16:16, 30:25, 40:9, 57:23, 62:11, 75:10, 75:16, 75:17, 117:1
**Stip** [1] - 86:15
**stipulated** [3] - 59:25, 60:25, 86:10

**stipulation** [7] - 24:4, 34:13, 34:15, 84:17, 86:9, 94:11, 109:22
**stipulations** [1] - 32:8
**stood** [1] - 88:23
**stop** [6] - 4:4, 5:6, 6:4, 6:7, 6:10, 9:16
**storage** [1] - 79:23
**stored** [1] - 92:24
**story** [1] - 97:2
**stove** [2] - 83:9
**straightforward** [2] - 38:22, 111:3
**Street** [1] - 1:20
**strike** [1] - 38:1
**strong** [2] - 90:3, 103:21
**subject** [6] - 13:10, 26:23, 36:11, 43:18, 58:25, 68:6
**submit** [18] - 81:11, 83:12, 84:1, 84:11, 88:15, 89:5, 89:12, 91:5, 93:16, 94:7, 94:23, 97:11, 101:20, 102:20, 105:11, 106:11, 107:18, 107:25
**submits** [1] - 95:8
**submitted** [2] - 95:24, 123:3
**submitting** [1] - 80:13
**substance** [19] - 46:9, 46:10, 46:12, 46:13, 46:17, 46:22, 47:6, 47:9, 47:10, 47:11, 50:13, 52:17, 52:18, 77:2, 78:20, 78:21, 78:23, 83:1, 108:24
**substances** [26] - 46:4, 47:13, 47:17, 48:9, 50:20, 51:15, 51:20, 54:13, 77:7, 77:25, 78:5, 78:17, 78:18, 78:24, 80:4, 80:17, 81:1, 81:4, 81:20, 93:7, 93:23, 94:20, 98:15, 103:11, 103:15
**substantial** [4] - 43:23, 48:18, 48:24, 85:23
**substitute** [1] - 42:3
**sufficient** [4] - 29:12, 52:14, 56:21, 63:4
**suggest** [2] - 13:4, 40:20
**suggested** [2] - 98:24, 105:3
**Suite** [1] - 1:16

**summarize** [1] - 105:5
**summary** [3] - 35:24, 35:25, 81:23
**sunny** [1] - 30:9
**superseding** [21] - 28:21, 37:6, 42:25, 43:9, 43:16, 43:20, 43:24, 44:5, 44:11, 46:5, 53:23, 53:25, 54:15, 54:16, 56:6, 57:25, 58:4, 60:4, 63:6, 87:25
**supervise** [1] - 100:7
**supervised** [1] - 104:15
**supervision** [1] - 125:10
**supplying** [1] - 53:3
**support** [3] - 67:17, 90:4, 110:12
**supported** [1] - 110:3
**supposed** [6] - 6:2, 26:16, 71:24, 99:23, 107:7, 118:7
**Supreme** [1] - 74:3
**surprised** [1] - 107:20
**surrounding** [3] - 45:5, 45:22, 104:16
**surveillance** [3] - 98:20, 98:23, 98:25
**surveilled** [1] - 99:9
**suspect** [2] - 37:20, 116:25
**suspicion** [1] - 31:7
**sustain** [2] - 29:16, 44:25
**sustained** [1] - 26:4
**swab** [1] - 90:11
**swabs** [3] - 89:19, 90:4, 90:9
**sway** [1] - 40:13
**swayed** [1] - 26:15
**sworn** [4] - 24:16, 28:17, 32:6, 117:21
**sympathy** [3] - 26:16, 26:25, 27:8
**system** [1] - 28:16

## T

**table** [2] - 81:17, 86:1
**Table** [1] - 13:1
**takeaway** [1] - 101:19
**target** [1] - 97:24
**taught** [1] - 51:3
**Taylor** [1] - 73:25
**team** [2] - 99:8, 107:20
**TECHNICIAN** [10] - 16:20, 16:22, 16:25, 17:11, 17:13, 17:15,

17:19, 17:22, 18:1, 18:4
**technician** [1] - 100:4
**technicians** [1] - 97:15
**techniques** [4] - 35:5, 35:12, 97:21, 98:6
**television** [1] - 10:2
**ten** [4] - 58:22, 75:4, 121:14, 123:10
**tend** [5] - 73:19, 83:10, 96:13, 101:24
**tending** [2] - 99:2, 105:1
**tenth** [2] - 108:6, 108:7
**tenths** [1] - 108:8
**term** [17] - 48:11, 58:2, 58:9, 59:3, 59:8, 59:14, 59:22, 60:2, 60:8, 60:24, 66:5, 85:1, 85:7, 86:12, 98:24, 99:1, 112:11
**terms** [2] - 23:6, 96:13
**territory** [1] - 104:6
**testified** [11] - 19:15, 33:5, 37:14, 37:21, 37:22, 38:6, 38:11, 38:14, 40:3, 40:11, 104:15
**testifies** [1] - 13:10
**testify** [33] - 2:11, 2:16, 2:17, 2:19, 2:22, 3:3, 3:6, 3:7, 3:9, 8:5, 8:17, 9:2, 11:6, 11:11, 11:17, 12:23, 13:9, 13:13, 13:17, 21:15, 22:5, 39:11, 40:13, 40:14, 40:21, 40:24, 41:1, 41:8, 42:2, 100:13, 102:25
**testifying** [3] - 15:15, 41:22, 97:17
**testimony** [52] - 8:6, 19:14, 23:12, 25:13, 32:7, 32:17, 33:4, 34:17, 35:2, 36:11, 37:2, 37:4, 37:11, 37:13, 37:16, 37:24, 39:1, 39:2, 39:3, 39:22, 39:25, 40:5, 40:6, 40:15, 40:18, 40:23, 41:16, 41:20, 41:24, 42:2, 42:7, 42:10, 42:12, 42:15, 42:18, 43:25, 47:23, 48:1, 48:2, 77:17, 78:10, 78:13, 81:17,

93:4, 94:12, 97:14, 97:17, 97:20, 99:17, 101:19, 101:23, 125:8
**text** [1] - 27:23
**TFO** [5] - 101:17, 102:5, 105:7, 108:5, 108:19
**THE** [230] - 1:1, 1:2, 1:10, 1:13, 1:14, 1:18, 2:1, 2:6, 2:13, 4:3, 4:4, 4:6, 4:7, 4:16, 4:22, 4:24, 5:1, 5:3, 5:6, 5:10, 5:11, 5:13, 5:14, 5:16, 5:17, 5:19, 5:21, 5:24, 6:1, 6:2, 6:4, 6:5, 6:7, 6:9, 6:10, 6:11, 6:13, 6:15, 6:17, 6:18, 6:19, 6:22, 7:1, 7:4, 7:7, 7:10, 7:13, 7:14, 7:17, 7:19, 7:21, 7:23, 7:24, 8:3, 8:4, 8:8, 8:9, 8:14, 8:16, 8:18, 8:20, 9:9, 9:10, 9:11, 9:13, 9:14, 9:16, 9:17, 9:18, 9:22, 10:5, 10:6, 10:7, 10:8, 10:10, 10:13, 10:14, 10:15, 10:17, 10:20, 11:1, 11:10, 11:14, 11:16, 11:18, 11:20, 12:7, 12:8, 12:13, 12:16, 12:22, 12:25, 13:4, 13:23, 14:8, 14:11, 14:16, 14:17, 14:24, 15:5, 15:11, 15:12, 15:19, 15:23, 16:2, 16:12, 16:13, 16:16, 16:18, 16:21, 16:24, 17:2, 17:7, 17:12, 17:14, 17:17, 17:21, 17:25, 18:2, 18:6, 18:7, 18:9, 18:11, 18:23, 19:1, 19:5, 19:9, 20:3, 20:6, 20:11, 20:12, 20:15, 20:19, 20:21, 20:23, 20:25, 21:2, 21:5, 21:7, 21:10, 21:22, 21:25, 22:8, 22:14, 22:20, 22:22, 32:12, 32:16, 33:23, 34:2, 65:22, 66:11, 66:17, 66:21, 67:2, 67:4, 67:6, 68:10, 68:13, 68:19, 68:22, 68:23, 69:5, 69:10, 71:18, 71:21, 72:1, 72:10,

72:12, 72:20, 73:6,
73:11, 74:2, 74:10,
74:13, 74:17, 74:21,
74:24, 75:1, 75:5,
75:9, 75:12, 75:14,
75:15, 75:16, 75:18,
75:21, 76:1, 76:4,
76:10, 76:13, 87:2,
87:5, 95:14, 106:14,
106:22, 106:25,
114:14, 114:17,
117:5, 117:6,
117:16, 117:18,
117:20, 117:22,
118:1, 118:2, 118:6,
118:15, 118:20,
118:22, 118:23,
118:24, 119:6,
119:18, 119:19,
119:22, 119:25,
120:4, 120:25,
121:13, 121:17,
122:3, 122:8,
122:13, 122:17,
122:23, 123:6,
123:25, 124:2
**themselves** [5] -
49:12, 79:21, 93:23,
100:12, 100:16
**theory** [2] - 41:16,
99:3
**thereafter** [1] - 125:10
**therefore** [4] - 40:15,
51:5, 53:17, 111:18
**thereof** [4] - 59:16,
85:9, 103:20, 125:13
**Theresa** [20] - 12:6,
14:14, 15:8, 16:8,
71:17, 114:24,
115:18, 115:21,
117:14, 118:2,
118:8, 118:16,
120:4, 120:10,
121:7, 122:14,
123:9, 123:19,
123:23, 124:3
**thinking** [1] - 27:1
**third** [9] - 47:10,
51:21, 51:24, 58:14,
59:14, 61:4, 67:6,
78:1, 85:7
**thousands** [1] -
109:13
**threats** [1] - 104:1
**three** [12] - 43:9, 54:6,
70:3, 70:4, 77:23,
83:11, 93:15, 98:23,
99:7, 112:13,
114:11, 119:2
**Three** [12] - 57:23,

57:25, 58:4, 65:24,
66:3, 78:5, 78:8,
84:13, 84:14, 84:15,
91:10, 115:25
**throughout** [3] - 29:7,
39:11, 41:4
**THURSDAY** [1] - 1:11
**Tiba** [14] - 42:21, 46:7,
54:2, 58:7, 76:18,
76:20, 79:9, 79:10,
95:2, 98:8, 101:22,
102:6, 105:17, 109:2
**TIBA** [1] - 1:8
**tied** [2] - 101:15, 110:6
**Tiffany** [1] - 82:4
**tire** [1] - 105:24
**Title** [4] - 46:14, 54:17,
58:25, 98:4
**today** [9] - 3:12, 15:1,
15:4, 30:9, 75:6,
77:21, 114:20,
121:25, 123:12
**Todd** [1] - 117:24
**together** [6] - 74:14,
91:15, 101:17,
105:7, 110:6, 120:5
**token** [2] - 25:8, 33:4
**tomorrow** [9] -
114:22, 116:25,
120:6, 121:5, 122:9,
122:20, 123:2,
123:10, 124:5
**Ton** [3] - 54:6, 58:14,
88:1
**took** [4] - 20:13,
45:24, 99:24, 104:11
**tool** [1] - 114:7
**top** [1] - 107:14
**total** [3] - 43:9, 94:5,
108:13
**totally** [2] - 100:10,
100:15
**touch** [1] - 120:20
**touched** [7] - 99:18,
111:18, 111:20,
111:21, 112:9,
112:12
**touching** [3] - 100:17,
111:23, 112:4
**toward** [1] - 8:4
**towards** [3] - 44:3,
90:10, 104:23
**traffic** [1] - 113:19
**traffickers** [3] - 83:10,
93:22, 112:19
**trafficking** [43] -
53:22, 53:24, 54:11,
54:19, 54:25, 55:13,
55:17, 55:23, 56:3,
56:8, 56:18, 56:20,

56:23, 56:25, 57:5,
57:7, 57:20, 57:22,
66:1, 77:10, 78:1,
82:19, 82:23, 82:25,
84:10, 91:9, 91:19,
91:22, 92:2, 92:4,
93:17, 94:2, 101:13,
102:13, 102:23,
103:4, 104:11,
105:18, 108:22,
110:3, 112:19,
113:19, 113:22
**training** [1] - 41:16
**transaction** [1] - 39:4
**transactions** [1] -
82:19
**transcribed** [1] -
125:10
**TRANSCRIPT** [1] -
1:10
**transcript** [1] - 125:6
**TRANSCRIPTION** [1] -
1:25
**transcription** [1] -
125:11
**transfer** [6] - 4:18, 9:1,
52:2, 52:18, 53:5,
111:12
**transference** [7] -
99:22, 111:2, 111:7,
111:22, 112:1, 112:5
**transferred** [2] -
99:21, 111:18
**transferring** [2] - 5:8,
9:12
**transported** [1] -
63:10
**travel** [1] - 104:2
**travelled** [4] - 62:21,
63:3, 63:12, 63:16
**treated** [1] - 2:23
**treatment** [1] - 22:6
**TRIAL** [1] - 1:10
**trial** [27] - 4:6, 6:2, 6:5,
6:23, 7:10, 14:4,
19:13, 19:24, 22:2,
23:22, 24:8, 26:2,
28:11, 29:11, 29:20,
35:2, 35:20, 39:11,
40:4, 40:16, 41:4,
44:3, 44:6, 44:13,
70:25, 81:24, 87:1
**tried** [1] - 13:18
**tries** [1] - 111:25
**trouble** [2] - 9:21,
109:24
**true** [12] - 19:5, 27:2,
33:8, 34:5, 34:6,
34:9, 34:14, 34:15,
99:4, 103:21, 110:7,

125:5
**truth** [4] - 34:7, 37:10,
37:15, 38:8
**truthful** [1] - 38:22
**try** [7] - 11:25, 13:5,
28:9, 52:21, 100:21,
105:6, 107:23
**trying** [13] - 4:16, 5:4,
6:11, 8:14, 8:24,
13:8, 21:3, 38:1,
38:21, 57:1, 77:5,
81:8, 110:11
**turf** [1] - 57:2
**turn** [7] - 8:12, 18:5,
18:6, 22:22, 46:1,
97:4
**turned** [2] - 99:1,
108:15
**TV** [9] - 12:6, 12:9,
14:14, 15:9, 16:19,
17:14, 17:17, 18:16,
75:22
**twice** [1] - 3:17
**Twitter** [1] - 27:24
**Two** [20] - 53:21,
53:22, 53:25, 54:23,
55:4, 55:6, 55:9,
55:11, 65:24, 70:8,
78:6, 78:8, 84:14,
91:8, 91:18, 101:14,
109:5, 115:25
**two** [29] - 3:18, 7:14,
12:15, 12:17, 33:21,
39:3, 44:16, 46:10,
73:3, 74:17, 81:1,
81:3, 83:8, 92:19,
93:13, 94:4, 94:22,
96:1, 98:9, 98:18,
98:23, 99:7, 103:12,
105:10, 112:23,
113:10, 113:11,
121:24
**type** [5] - 39:18, 87:13,
89:24, 94:3, 105:12
**types** [3] - 57:12, 92:8,
94:4
**typically** [4] - 73:13,
80:25, 82:19, 115:11

**U**

**U.S** [5] - 44:9, 46:14,
54:17, 59:1, 63:7
**ultimate** [1] - 53:1
**umbrella** [2] - 30:11,
30:13
**unanimity** [2] - 69:4,
72:9
**unanimous** [5] -
64:12, 65:10, 69:24,

71:10, 116:10
**unanimously** [2] -
29:13, 70:20
**uncommon** [1] - 39:6
**uncontaminated** [1] -
100:9
**under** [20] - 9:18, 9:22,
10:21, 26:15, 37:6,
37:14, 40:25, 46:14,
49:6, 54:23, 55:5,
56:21, 57:15, 57:19,
64:2, 74:5, 88:24,
92:11, 94:14, 125:10
**undercover** [1] - 97:25
**underlying** [4] - 57:7,
92:4, 102:22
**understandingly** [1] -
36:21
**unfavorable** [1] - 44:3
**unfold** [1] - 100:2
**unimportant** [2] -
39:8, 39:17
**unit** [1] - 117:24
**UNITED** [4] - 1:1, 1:5,
1:11, 1:14
**United** [11] - 25:6,
54:12, 54:13, 54:20,
55:15, 55:24, 73:25,
91:21, 101:22,
102:5, 125:4
**unlawful** [1] - 59:1
**unless** [4] - 15:24,
29:13, 29:21, 52:5
**up** [34] - 2:25, 6:9,
6:12, 6:20, 7:6, 9:6,
12:11, 15:6, 16:19,
17:5, 22:4, 26:21,
34:23, 38:17, 38:19,
51:18, 68:14, 69:6,
71:22, 78:8, 88:15,
90:8, 94:25, 97:3,
98:14, 101:18,
105:22, 106:9,
114:23, 117:2,
119:6, 123:3, 123:4,
123:11
**upper** [1] - 17:21
**usage** [1] - 48:11
**usefulness** [4] -
57:11, 92:7, 93:20,
94:2
**user** [1] - 113:13
**users** [2] - 80:23,
80:24
**utilized** [1] - 35:4
**uttered** [1] - 45:21

**V**

**valid** [1] - 34:23

**validity** [1] - 34:20
**value** [2] - 30:21, 101:2
**Van** [1] - 82:4
**variety** [1] - 94:3
**various** [3] - 37:6, 71:14, 101:16
**vehicle** [5] - 49:9, 49:14, 51:9, 51:10, 62:1
**Venmo** [1] - 82:20
**verdict** [51] - 15:20, 23:7, 24:7, 26:1, 26:13, 27:2, 27:5, 27:9, 27:14, 43:12, 43:14, 44:12, 55:6, 64:4, 64:9, 64:10, 64:11, 65:10, 69:18, 69:24, 70:17, 70:20, 70:22, 70:23, 71:10, 77:22, 86:17, 95:11, 106:11, 114:4, 114:11, 114:15, 114:19, 115:9, 115:14, 115:16, 115:20, 115:24, 116:2, 116:9, 116:13, 116:15, 117:9, 117:12, 120:14, 121:23, 122:25, 123:3, 123:14
**Verdict** [1] - 69:17
**verify** [2] - 18:4, 18:5
**version** [3] - 12:15, 12:20, 12:21
**versions** [2] - 12:15, 12:17
**veteran** [1] - 110:3
**via** [2] - 20:5, 21:15
**video** [5] - 14:20, 14:23, 18:5, 21:15, 22:5
**view** [8] - 3:15, 10:2, 11:2, 65:6, 67:10, 101:19, 118:10, 118:15
**viewpoint** [1] - 97:10
**views** [3] - 24:9, 64:18, 64:21
**violation** [2] - 54:13, 67:20
**violence** [2] - 64:23, 67:18
**violent** [3] - 67:12, 108:22, 110:4
**voice** [1] - 83:21
**voluntarily** [4] - 36:20, 45:2, 56:14, 62:15
**vote** [1] - 65:8

**vouching** [1] - 53:1
**vs** [1] - 102:6

# W

**wait** [4] - 6:17, 16:11, 122:25
**Wait** [1] - 96:24
**waiting** [1] - 16:16
**walk** [3] - 87:3, 106:19, 106:20
**walking** [2] - 8:4, 114:9
**wall** [1] - 112:24
**wallet** [1] - 79:3
**wants** [5] - 14:13, 14:19, 14:23, 122:24, 123:3
**warn** [3] - 3:24, 4:2, 13:15
**warning** [1] - 4:13
**warrant** [11] - 3:13, 3:14, 3:23, 7:12, 7:14, 9:3, 76:22, 98:10, 100:16, 103:24, 107:20
**warranted** [1] - 30:23
**warrants** [2] - 3:16, 6:6
**Washington** [1] - 1:20
**watch** [3] - 14:20, 14:23, 15:10
**watched** [1] - 98:25
**watching** [1] - 12:9
**Watson** [2] - 100:12, 100:14
**wave** [1] - 111:25
**ways** [2] - 13:11, 99:13
**weapon** [4] - 55:18, 56:15, 57:17, 61:7
**weapons** [4] - 70:10, 70:14, 70:16
**web** [1] - 17:24
**website** [1] - 27:24
**week** [1] - 95:21
**weigh** [5] - 63:25, 64:14, 113:12, 113:13, 113:14
**weighed** [1] - 82:7
**weighing** [2] - 39:6, 41:20
**weight** [9] - 23:10, 25:23, 25:24, 30:22, 36:18, 36:22, 41:25, 42:11, 42:19
**weights** [1] - 82:5
**welcome** [1] - 106:25
**wet** [2] - 30:10, 30:13
**white** [3] - 77:2, 83:1,

113:9
**whoever's** [1] - 99:25
**whole** [5] - 11:18, 23:3, 66:22, 101:4, 103:23
**wholly** [2] - 28:18, 64:22
**willfully** [1] - 40:3
**Winchester** [1] - 58:20
**wiretaps** [1] - 98:4
**wisdom** [3] - 23:4, 67:19, 104:11
**wise** [2] - 50:23, 107:23
**wish** [3] - 14:4, 14:17, 20:6
**wished** [1] - 21:14
**wit** [1] - 103:20
**witness** [55] - 2:12, 2:23, 3:1, 8:17, 19:15, 23:20, 30:4, 33:4, 34:6, 36:5, 36:11, 36:24, 37:2, 37:3, 37:13, 37:14, 37:17, 37:18, 37:19, 37:21, 37:22, 37:23, 37:25, 38:1, 38:3, 38:4, 38:6, 38:8, 38:9, 38:12, 38:13, 39:2, 39:15, 39:20, 39:23, 40:3, 40:7, 40:11, 40:13, 40:15, 40:20, 41:9, 41:14, 41:15, 41:24, 42:2, 42:8, 42:12, 42:14, 42:18, 97:17, 101:15, 101:17
**witness'** [11] - 37:4, 37:16, 38:4, 38:15, 38:16, 39:22, 40:5, 40:18, 40:22, 41:21, 101:19
**witnesses** [34] - 23:11, 23:15, 25:24, 29:3, 32:7, 32:25, 33:3, 33:7, 33:11, 33:12, 33:13, 33:17, 35:2, 35:18, 37:1, 37:11, 38:18, 39:2, 39:11, 40:10, 41:12, 78:13, 84:20, 91:13, 96:22, 98:3, 98:24, 107:17, 108:1, 110:22, 111:2, 112:18, 125:8
**witnessing** [1] - 39:4
**Woe** [1] - 72:2
**Wolf** [1] - 58:20
**word** [6] - 31:2, 31:3, 52:16, 56:16, 105:24

**words** [11] - 10:8, 27:25, 38:17, 45:16, 45:20, 48:7, 51:4, 51:5, 52:19, 63:20, 100:5
**worry** [2] - 12:25, 46:20
**worth** [2] - 108:25, 109:13
**wrap** [1] - 78:8
**write** [1] - 116:22
**writing** [6] - 27:22, 46:19, 46:23, 71:5, 71:6, 115:6
**written** [5] - 46:21, 51:4, 72:4, 115:7, 116:19

# X

**XD** [3] - 86:20, 90:10, 111:1
**XD-45ACP** [2] - 54:3, 58:11
**XD676779** [2] - 54:4, 58:12

# Y

**y'all** [1] - 7:16
**year** [17] - 58:3, 58:9, 59:3, 59:8, 59:14, 59:22, 60:2, 60:8, 60:12, 60:13, 60:25, 61:3, 66:5, 68:4, 85:2, 85:7, 86:12
**years** [3] - 98:11, 108:20, 108:21
**yesterday** [4] - 2:5, 2:14, 73:12, 73:24
**yield** [1] - 65:7
**young** [1] - 100:20
**yourself** [5] - 36:7, 39:7, 64:25, 103:12, 108:9
**yourselves** [2] - 26:18, 38:16
**Yugoslav** [1] - 58:16
**Yugoslavia** [2] - 54:8, 87:20