1
                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

2
                   SOUTHERN DIVISION

3

4
UNITED STATES OF AMERICA  :   Criminal Action No.

5
    v.             :   PJM-16-403

6
TIBA SAKURI CONLEY,    :   Greenbelt, Maryland

7
          Defendant.    :   June 15, 2021

8
_____/   11:30 A.M.

9

10
           TRANSCRIPT OF SENTENCING PROCEEDINGS
       BEFORE THE HONORABLE PETER J. MESSITTE

11
           UNITED STATES DISTRICT JUDGE

12
APPEARANCES:

13
FOR THE GOVERNMENT:     JOSEPH RONALD BALDWIN, Esquire
                   Office of the United States Attorney

14
                   6500 Cherrywood Lane, Suite 200
                   Greenbelt, Maryland  20770

15
                   301-344-4238

16

17
FOR THE DEFENDANT:      CHARLES BURNHAM, Esquire
                   Burnham and Gorokhov, PLLC

18
                   1424 K Street, NW
                   Washington, D.C. 20005

19
                   202-386-6920

20

21

22

23
OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229

24
       COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES

25

```
1                       P-R-O-C-E-E-D-I-N-G-S

2               THE DEPUTY CLERK:  The matter now pending before this

3    Court is Criminal Number PJM-16-403, the United States of

4    America versus Tiba Sakuri Conley.  We're here today for

5    purposes of a sentencing.

6               THE COURT:  All right.  Counsel, identify yourselves

7    for the government and defendant.

8               MR. BALDWIN:  Good morning, Your Honor.  Joseph

9    Baldwin for the United States.  With me at counsel table is FBI

10   Special Agent Anthony Farrar, the case agent in the case.

11              MR. BURNHAM:  Good morning, Your Honor.  Charles

12   Burnham for defendant Tiba Conley.

13              THE COURT:  All right.  There's no need to stand under

14   current circumstances.  It's fine when you address the Court.

15              Similarly, with regard to the COVID issue, I have a

16   mask, counsel has a mask, the defendant is wearing a mask.  If

17   you're vaccinated, you're not obliged to wear a mask if you

18   choose not to, particularly when you address the Court, but that

19   much you should understand.

20              Let me go through a couple things first.  I don't

21   think there's anything preliminarily other than the normal

22   procedure that we would follow in a sentencing, unless counsel

23   has something in mind that would not ordinarily be covered for

24   the government.

25              MR. BURNHAM:  No, Your Honor, thank you.
```

```
 1                  MR. BALDWIN:  No, Your Honor.

 2                  THE COURT:  Well, the first order of business is to

 3   look at the Presentence Report.

 4                  Well, let me say this:  I think we still need to sign

 5   a paper regarding the Brady obligation.  I know it's not at play

 6   here, but as far as where we are, is there any issue as far as

 7   Brady information being provided, not being provided by the

 8   government, Mr. Baldwin?

 9                  MR. BALDWIN:  No, Your Honor.

10                  THE COURT:  The defendant, Mr. Burnham?

11                  MR. BURNHAM:  No, Your Honor.

12                  THE COURT:  All right, very well.  There was a Motion

13   to Seal filed by you, Mr. Burnham, and I have signed that.

14                  MR. BURNHAM:  Thank you, Your Honor.

15                  THE COURT:  All right.  First order of business then

16   is to address the Presentence Report and I know there are some

17   contested issues, but let me start with what I have in front of

18   me.

19                  The calculation that I have with regard to the

20   Presentence Report shows a total offense level of 28 and a

21   criminal history category of three.  So we have some issues

22   regarding those calculations and I'd like to hear from counsel

23   as to that.

24                  And first, I think I'll start with you, Mr. Burnham.

25   I know you had an issue with regard to at least one aspect of
```

1    the calculation.

2           MR. BURNHAM:  Thank you, Your Honor.

3           I'll start by saying, I agree with the objection to

4    the guideline calculation lodged by the government.

5           THE COURT:  Well, let me just start with your own

6    first and then we'll come back to, specifically, the

7    government's.

8           MR. BURNHAM:  Thank you, Your Honor.

9           My one objection is that Mr. Conley should be assessed

10   two points for acceptance of responsibility for going to trial

11   primarily to preserve issues for appeal.  My argument, as I set

12   forth in the papers, is that Mr. Conley has stated on many, many

13   occasions both orally in court, in writing through counsel and

14   otherwise that his primary issue in this case is a challenge to

15   the legality of the search warrant that was the primary basis

16   for the government's case in chief.

17          Even during the trial, 90 percent of the questions and

18   close to 100 percent of the argument was not geared toward

19   denying possession of drugs or possession of firearms as such.

20   It was primarily focused on the 924(c) charge and whether the

21   government had proven beyond a reasonable doubt that the drugs

22   at issue were used in furtherance of drug trafficking.

23          That's important because the 924(c) count does not

24   implicate the acceptance of responsibility guideline itself.

25   The guidelines for a 924(c) conviction are just 60 months added

1   to whatever the guidelines for other offenses of conviction

2   happen to be.  The acceptance of responsibility question only

3   pertains to the drug count and the felon in possession count.

4   And the guidelines are clear that when the defendant goes to

5   trial, that the apparent purpose is to preserve appellate

6   issues, acceptance of responsibility may still apply and we

7   maintain it does here.

8           I also think it's relevant to take into account the

9   personal characteristics of Mr. Conley.  We submitted in our

10  sealed filings IQ tests, evaluations done of his intellectual

11  functioning and that's relevant to some of the government's

12  argument that he didn't, didn't demonstrate his acceptance in

13  the best possible way, or that perhaps some of his arguments

14  regarding the search warrant weren't well-taken.  I think his

15  personal characteristics have to be taken into account when it

16  comes to that.

17          So, for all of those reasons, we ask the Court to

18  award him two additional levels off whatever the final guideline

19  calculation turns out to be for acceptance of responsibility.

20          Thank you.

21          THE COURT:  All right.  Just so that we are referring

22  to a specific page in the Presentence Report, let us go to that.

23  It's paragraph 26 where the probation office has indicated that

24  the defendant has not clearly demonstrated acceptance of

25  responsibility for the offense pursuant to Sentencing Guideline

3E1.1.

Mr. Baldwin, I'll hear you in response.

MR. BALDWIN:  Thank you, Your Honor.

Your Honor, the government objects to any reduction given for acceptance of responsibility.  Mr. Burnham is correct that there was a lot of discussion about the preliminary search warrant and it did give rise to the evidence that was presented at trial.  But there was also --

But I think it's not correct to say that because you're going to get five years no matter what on the 924(c) count that acceptance of responsibility has nothing to do with that.

Acceptance of responsibility it someone who is ready and willing to admit that they have committed a crime.  That applies in gross to the 924(c) count as much as it does to anything else.  So it really goes to mental state of the defendant and it's an indicator that there is less need for punishment in the case because the individual is already along the path that, that would suggest less recidivism, less dangerousness to the public, greater acceptance of responsibility, acknowledgment of the law as a, as a limiting force on his choices in society.  That's what acceptance of responsibility is about.

By fighting on the 924(c) count, he was denying that connection between the guns and the drugs that are very

1    important here and they go to a large degree as the government

2    will set forth later in its argument the aggravating aspects of

3    this crime in light of his criminal history and conduct.

4           So, I understand the argument that Mr. Burnham is

5    making that 924(c) really shouldn't be considered in the

6    acceptance of responsibility standpoint because no matter what,

7    924(c) is, is going to be 60 months.  I just don't think that

8    that's correct, Your Honor, on the face of it because the point

9    of acceptance of responsibility and giving someone a lower

10   guideline level is a reflection of your belief that they are

11   along the path towards, towards denial of future criminal

12   conduct by acceptance of what they have done already.  And that

13   is not what we have seen with Mr. Conley.

14          And as I set forth in my papers, I think that

15   Mr. Conley's vociferous objections with respect to the search

16   warrant were a matter of strategic choice for him and a way for

17   them to discuss something that's not the evidence that was found

18   in his, in his apartment and still be heard by the Court, and

19   that's a strategic choice by him and that's not acceptance of

20   responsibility.

21          It's certainly not acceptance of responsibility for

22   the underlying warrant that was issued, that was based on sworn

23   statements by officers which was the subject of a hearing and

24   which the officer who is the affiant on the warrant was

25   questioned.  And the denial of that search warrant is at bottom

```
1    a lack of acceptance of responsibility with respect to the whole
2    crime because it goes back to the beginning.
3              So, the government objects to the assignment of
4    acceptance of responsibility benefit of subtracting two points.
5              Thank you, Your Honor.
6              THE COURT:  Anything further in response, Mr. Burnham?
7              MR. BURNHAM:  Just two points, Your Honor.
8              First is I'm not aware of a case that says when a
9    defendant goes to trial primarily to preserve appellate issues
10   there's any requirement that defense counsel not ask any
11   questions, not make any arguments, basically sit there.
12             So, we had to have a trial and we made the arguments
13   that we made.  And we did only challenge really only one of the
14   counts, but I don't know that that's strictly speaking, even if
15   we challenged all three, we had to have a trial, would that be a
16   bar to acceptance.  I don't know a case saying that it would be.
17             Second, in addition to challenging the search warrant
18   itself from Mr. Conley's perspective and denying the control
19   buys that were alleged he felt very strongly that he should
20   be entitled to discovery surrounding those controlled buys so
21   that he could more effectively challenge the warrant, and that
22   was something the Court ruled against him on.  But that was
23   another issue he felt strongly about, wants the Fourth Circuit
24   to take a look at and that was a driving factor at all.
25             THE COURT:  I don't recall in this proceeding where it
```

1   was ever stated to me that Mr. Conley did not contest his guilt

2   on the proof, that he was only going to trial to preserve his

3   claim with respect to the legality of the search.  I don't

4   remember that ever being made to me at any phase by any prior

5   counsel.

6            I know what you're saying now and maybe that's, sort

7   of, how it turned out, but all along, as far as I was concerned,

8   he was contesting the case.  Most specifically in terms of what

9   he thought was the illegality of the search.

10            By the way, we had two hearings on that, not just one,

11  we had two and the Court came to the same conclusion.  And the

12  Court came to that conclusion because, again, it was the Court's

13  decision that mattered here.  It wasn't a matter to go to the

14  jury and that was stated by the Court more than once that this

15  was not a jury question, that we were not going to trial on that

16  issue, the Court would make the decision which it did twice.

17            So, I don't really see that hearing now that maybe he

18  was only going to trial to contest the search somehow entitles

19  him to acceptance of responsibility.  My perception throughout

20  the trial was, he was putting the government to its proof in

21  every respect.  There was never any suggestion that it didn't

22  happen.  It's true, he didn't testify that it didn't happen, but

23  there was no other evidence contra.

24            I don't think this is case where the defendant has

25  clearly demonstrated acceptance of responsibility and I don't

1   see this as a case where the Court understood or anybody would

2   have understood that he was only going to trial with regard to

3   preserving his issues of the search.  So, your request to modify

4   paragraph 26 of the Presentence Report is denied.  It stays at

5   zero.

6          Now, I understand you're going to agree with the

7   government as to some aspect of this case, but let me have the

8   government go through, specifically, what it is saying with

9   regard to the calculation of the guidelines.

10         Mr. Baldwin.

11         MR. BALDWIN:  Yes, Your Honor, thank you.

12         And my apologies for phrasing this later.  This was

13  actually my initial submission to the probation office and I

14  think the wires were crossed and I submitted this earlier.  But

15  the bottom line is that the probation office came out with the

16  PSR calculation to be 28 and in part of that was due to the

17  specific offense characteristic at 2K2.1B6B which states that he

18  possessed a gun in furtherance of another felony, then you

19  should add a four-level increase.

20         THE COURT:  What do you suggest the number should be,

21  two rather than four?

22         MR. BALDWIN:  No, Your Honor.  I think that there's

23  another guideline that interprets the 924(c) guidelines and that

24  is at U.S. 2K2.4 at Note 4.  And it says, you should not -- you

25  should not apply that guideline in a case where you have 924(c).

```
 1              THE COURT:  Well, let's go to the specific paragraph

 2   of the Presentence Report that you're talking about.  It's

 3   paragraph 20, I assume, of the initial Presentence Report.

 4              MR. BALDWIN:  Your Honor, let me get there.

 5              Yes, Your Honor.

 6              THE COURT:  All right.  What do you say with regard to

 7   that, it should be zero?

 8              MR. BALDWIN:  I'm saying that should be zero, Your

 9   Honor, but as a result -- as a result of that becoming zero, the

10   overall guidelines calculation would become a 24.

11              So, with respect to the offenses here, Counts One or

12   Three group.  So in the circumstance where counts group

13   together, you look to the guidelines calculation for the higher

14   count to determine what the level for the group shall be.

15              So, in this instance, when you lose that four level

16   specific offense characteristic in paragraph 20 and the overall

17   final level comes to 28 -- excuse me, to a 24, you have to go

18   back and look at the drug offense guideline for Count One to see

19   if that -- the level for that actually exceeds 24, and it does.

20              So, what the government is suggesting is that the

21   guideline calculation for that group, the group that includes

22   both Counts One or Three, instead of being based on Count Three,

23   which if properly calculated is a 24, it should be calculated

24   based on Count One.  And those are the calculations that the

25   government provided on page 2 of the Sentencing Memorandum
```

1    beginning at halfway down the page for Count One.

2              And that reflects that the base offense -- so this

3    would -- so, essentially, these calculations would replace the

4    calculations that are shown in paragraphs 18 through 20, Your

5    Honor.

6              The base offense level would be based on the drug

7    count and so the appropriate guideline would be Section 2D1.1A5

8    and 2D1.1C8, which basically is the drug amount guidelines.  And

9    as reflected here, it comes out to converted drug weight that's

10   equivalent to, at least, 100 kilograms -- a converted drug

11   weight of less that 400 kilograms and that leads to the base

12   offense level of 24.  So, with the base offense level of 24,

13   it's already equal to the fully calculated guideline for Count

14   Three.

15             Continuing within the drug offense guideline, there's

16   a two-level increase added pursuant to 2D1.1B12 because the

17   defendant maintained a premises for the purpose of manufacturing

18   or distributing controlled substance.  The government believes

19   that two-level increase should be applied, which would bring the

20   final adjusted offense level to 26 for that count.

21             And because 26 is more than 24, the 26 from Count One

22   is more than the 24 for Count Three, the guideline for Count One

23   would control.  And so the overall adjusted offense level for

24   that group, which combines both the drug offense in Count One

25   and possession offense in Count Three, would be a 26.

1      THE COURT:  And the guideline range for Counts One and

2  Three is 78 to 97 months?

3      MR. BALDWIN:  Yes, Your Honor.

4      THE COURT:  All right, Mr. Burnham.

5      MR. BURNHAM:  I agree with the government's position

6  and I would note that the resulting guideline is the same one I

7  argued for in my position, albeit for a different reason, but I

8  agree with the government's final guideline range.

9      THE COURT:  You agree with the guideline range, you

10  said?

11      MR. BURNHAM:  Yes, Your Honor.

12      THE COURT:  All right.

13      All right.  The government has submitted that the PSR

14  incorrectly calculates the guideline for Count Three of four

15  levels too high.  And if that's removed, then obviously that

16  would control the grouping that follows.

17      The defendant agrees with that analysis, but just so

18  we are clear, the -- as I said in the beginning, the PSR

19  calculates the offense level for Count Three to be 28, but there

20  is under the application note and the guideline for Count Two,

21  the indication that a sentence under the guideline is imposed

22  with a sentence for an underlying offense, the Court should not

23  specify any offense as specific offense characteristic for

24  possession of a firearm when determining the sentence for the

25  underlying offense.  This at Sentencing Guideline 2K2.4,

14

```
 1    Application Note 4.

 2              And, specifically, the note instructs that where

 3    possession of the weapon in the course of an underlying offense

 4    would subject the defendant to enhancement under 2K2.1B6B, the

 5    Court should not apply the enhancement.  So again, that's the

 6    position of the government and the defendant agrees.

 7              Accordingly, the Court will strike the four level

 8    enhancement under paragraph 20 and that would then lead to a

 9    total offense level under paragraph 27 of 24.

10              Now, from that the Court has to move to the way in

11    which the guideline -- the counts interact.  We start with a

12    base of 24, because the quantity involved in the offense was

13    equivalent to crack or cocaine base, was equivalent to, at

14    least, 100 kilograms of converted drug weight and less than 400.

15              And so, it's further indicated and not disputed that

16    the evidence showed that a two-level increase would be

17    appropriate under Sentencing Guideline 2D1.1B2 because the

18    defendant maintained a premises for the purposes of

19    manufacturing or distributing a controlled substance.

20              So, the result of the adjusted offense level would be

21    26 for Count One.  And then pursuant to that the combined

22    offense level for the groups of Counts One and Three is 26.  So

23    the adjusted offense level would be a 26.

24              MR. BALDWIN:  Your Honor, if I might, as you were

25    going through, you referred to the enhancement, the two level
```

1  enhancement at Section 2D1.1B2.  I just want to make clear for

2  the record --

3           THE COURT:  Thank you.  That's correct.

4           MR. BALDWIN:  2D1.1B12.

5           THE COURT:  All right.  In any event, with a grouping

6  for Counts One and Three leading to an offense level of 26, the

7  resulting sentencing range for Counts One and Three would be 78

8  to 97 months.  And then the argument further would be that there

9  would be a 60 month consecutive sentence arising from the

10  conviction under Count Two.

11           So, let me just make a few calculations here.

12      (Pause.)

13           THE COURT:  All right.  I think we are ready to go

14  forward with allocution.

15           Are you ready, Mr. Baldwin, for that?

16           MR. BALDWIN:  I am, Your Honor.  I believe I'd like to

17  go the podium, if that's okay with the Court.  May I go to the

18  podium?

19           THE COURT:  Sure, sure.

20           MR. BALDWIN:  Thank you, Your Honor.

21           I'd like to just review some of the pictures from the

22  trial, Your Honor, because I think they succinctly demonstrate

23  something that I think is a fundamental aspect of this case,

24  which is when you look at the guidelines -- and this is why the

25  government at bottom, Your Honor, is seeking an upward variance,

1   because I just don't believe the guidelines come close in this

2   case to addressing the actual critical details in the conduct

3   here, either just in the facts of what was seized in the search

4   warrant and certainly not in light of the defendant's criminal

5   history, Your Honor.

6           And so, just quickly, I'm going to show some of these

7   pictures.  This is -- what I'm showing on the screen is P12 from

8   the trial.  It shows a -- the .45 caliber firearm that was on

9   this counter.

10          The defendant was standing right in front of this

11  cabinet when the SWAT team entered, if Your Honor recalls.  The

12  first person in the door reported seeing him standing there and

13  going to the floor as he came in, and he was standing right

14  there next to this area.

15          As you can see, the drawer is partially open and the

16  firearm is right on the corner of the counter.  The firearm was

17  loaded.  This is the firearm that was one of the firearms that

18  the FBI found through DNA analysis had the highest level of a

19  surety of a link to the defendant.  And so, that's the first

20  picture and we'll look at the contents of that drawer in a

21  minute.  So that's P12.

22          I just want to put up P44.  It's a galley-type

23  kitchen.  So, to the right would have been that firearm I showed

24  in the previous picture.  And looking down the little isle of

25  the galley kitchen to the left is a sink and another counter.

1    And here you see scales, some with drug residue here.  There's

2    crack cocaine and powder cocaine in this picture.  There's a

3    Pyrex jar in the back for mixing with cocaine residue on it.

4    There's Arm & Hammer Baking Powder that's used for cooking crack

5    cocaine, and that's exactly what was found when the agents

6    entered, agents and officers entered in April of 2016.  That's

7    P44.

8              I'm going back to that drawer that was partially

9    opened that I showed you before.  This is what was in that

10   drawer; two more scales and more cocaine and -- both crack

11   cocaine and powder cocaine in that drawer and the gun was

12   sitting right above.

13             This is what was found on the defendant's person.

14   This is $495 in loose cash.  The search warrant was executed

15   shortly after midnight, I believe, on April 21st, 2016.  The

16   defendant was watched go into his housing as the testimony

17   recorded.  And when he was searched, after he was -- they pulled

18   him up off the kitchen floor and searched his person, they found

19   this crack cocaine in his sock and this cash on his person,

20   which is, of course, indicative of distribution, Your Honor.

21             Back in the bedroom, there was $9000 in cash in a

22   shoebox.  The defendant has really said he has never really held

23   a firm employment that the $9,000 which would be associated

24   with.  And of course, the jury found under the forfeiture

25   analysis in the verdict that it was a nexus of this money and

1   money that came out of the defendant's pocket with his

2   drug-trafficking activities.

3           Also, in the bedroom, that last picture was of a

4   shoebox that was up in this wall unit that was in the closet of

5   the bedroom.  And that wall unit was above these weapons, but

6   these were the two weapons that were sitting out when the

7   officers came in.

8           You can see here, these are military style weapons.

9   This on the left is a 556-type rifle, 556-millimeter or a 223,

10  depending which type of ammunition is put into it.  And on the

11  right-hand side is a 762-millimeter rifle.

12          Both of these have loaded clips, you can see in the

13  picture here, both for the 556 or 223 ammo.  And on the right

14  for the 762-millimeter.

15          I want to urge here, Your Honor, and this is really

16  one of the points that I really want to make is that the

17  guidelines calculations for the number of firearms just refer to

18  the number of firearms.  You can literally have three .22

19  caliber pistols would meet the definition of a firearm.  And if

20  you had those in your house, that would meet the sentencing

21  guidelines.  So you get that enhancement that he also received

22  for having three to seven firearms.

23          These are not .22 pistols.  The right-hand weapon is a

24  7.62-millimeter rifle, the type used in the Eastern Bloc of the

25  Soviet Union.  It's sort of like a -- the same sort of round

1   used by the AK-47 Kalashnikov.  Large bullets, they shoot

2   through walls and can do you a large amount of damage.

3          And on the left is a -- actually used by Western Bloc

4   countries in the NATO alliance.  So you have these serious

5   weapons here.  This are not ideal for personal defense type

6   weapons.  These are serious, serious guns that are meant to be

7   menacing if displayed to someone.

8          But the fact is that they were in his bedroom and he

9   was not authorized to possess any firearms whatsoever, but the

10  type of firearms he had here were extremely powerful firearms

11  and he was loaded.  And every round of ammunition there would be

12  a viable federal offense.  I mean, you have lots of ammunition

13  for these guns.

14         That's wasn't all he had.  He also had this, which was

15  a -- it's a Uzi-style or TEC-9 style.  It's not an automatic

16  weapon.  It's a semi-automatic weapon.  It has two clips for it.

17  We later found out in testing, one of these clips wouldn't go

18  into the firearm whereas the other one would.  This shoots .45

19  caliber bullets, Your Honor.  A .45 caliber bullet, just like

20  that .45 that was on the counter.  It's a large bullet, again,

21  not a .22.  It's double by diameter and it is a very serious and

22  heavy weapon.  And that is also at hand in one of the drawers in

23  the wall unit in his closet.

24         And that wasn't all.  We also find the what's called,

25  banana clip that goes in to a 762-millimeter rifle, a large

1    clip.  And you can see that this clip was loaded.  By the way,

2    this is P28 and the bullets on the right side of this picture

3    are not 762 -- those are the .45 caliber rounds.  So this is a

4    good picture showing he's got a lot of ammunition and additional

5    clip for these firearms that I've just shown.

6         Just for the record, I showed P27, which was the .45

7    caliber TEC-9 type pistol; P39, which is a shot of the long guns

8    resting against the wall unit.  P26, which was the shoebox with

9    money in it.  P42, the crack cocaine and the money pulled off

10   the defendant.  P46, which shows contents of the drawer and the

11   others I already referred to.

12        So, Your Honor, cash and powerful weapons, lots of

13   ammo, crack and powder cocaine in his kitchen, all the

14   instruments needed to cook those; crack cocaine on his person,

15   $495 on his person and $9000 in the bedroom.  There was no

16   apparent employment that would lead to that sort of money.

17   Loaded firearm on the kitchen counter next to him when the team

18   comes in.

19        These details are all extremely legally significant

20   because the guidelines, as they are -- basically go on

21   quantities of things and that's understandable.  They go by

22   quantities of drugs and they go by quantities of firearms.  But

23   you also get various weightings within the drugs, for instance,

24   Your Honor, the drug guidelines.  If you have crack cocaine,

25   it's a heavier weight than powder cocaine because of the effects

1   of it.

2            You have to have a whole truckload of marijuana to get

3   the same effect that you would for a fairly small compact

4   package of crack cocaine or even powder cocaine.  So, within the

5   drug guidelines, there's a lot of variation based on the

6   substance that's being used.  But you'll notice in the firearm

7   guidelines under 2K2.1, there is not a lot of variation.  And in

8   fact, in this case, as we've just been through, we're not even

9   looking at the firearm guideline at all.

10            So, if you look at the grouping of the offense and the

11   guidelines and the way it works in the grouping, so we're

12   counting it based on the drug guidelines but we're not looking

13   at the firearm guideline.  And if we were looking to the firearm

14   guideline, the firearm guideline doesn't really go in that great

15   detail about the nature of the guns.

16            Now, there are some variation in the firearms

17   guideline depending on the type of gun for, like, machine guns

18   and guns that are able to accept a particular type of amount of

19   ammunition on them, et cetera, and these guns certainly apply

20   there.  But the bottom that it doesn't get to is the nature of

21   these guns versus some smaller guns that you can have.  And

22   these are extremely powerful weapons.

23            So, all of this occurs in the following context:  The

24   defendant had been arrested for committing a string of armed

25   robberies out on his 18th birthday.  He received a sentence for

1   two -- actually, three charges.  He had one conviction for armed

2   robbery and two additional robberies at the same time in

3   D.C. Superior Court.  And he was sentenced for that.  He served

4   a few years.

5          From 2007, after that he was out for a year or two, I

6   believe.  And at that point is when he was followed by

7   Montgomery County Police and there was a car stop.  I believe he

8   ran off the road or was driving erratically.  When he pulled off

9   the road, he was chased.  This is all reflected in the

10  sentencing, in the sentencing transcript and the allocution of

11  the prosecuting attorney who found Government's Exhibit Two, 2A.

12  And he was found to have crack cocaine and possession with

13  intent to distribute that crack cocaine.

14         Now, he was on probation for that armed robbery

15  offense.  He was only a couple years out.  And so, D.C. Superior

16  Court after he was arrested for this violated him right away and

17  sent him for some backup time of 30 months.

18         Now, he got out of that and it was one of the odd

19  aspects of this case that when he got out of that sentence and

20  he was serving after that D.C. sentence, by the way, after he

21  did the additional 30 months backup time on the armed robbery as

22  a result of the P.G. County offense, he had additional

23  supervised release to serve on -- at Superior Court.

24         So he goes into P.G. County Circuit Court and he's

25  sentenced there.  He is sentenced to credit for time served,

1    which was the backup time he got in D.C. and ten years suspended

2    sentence.

3              So, it's one of the oddities of this case, A, that he

4    was sentenced in P.G. County after he served the backup time for

5    D.C. and that that was incorporated into the sentence.  But as

6    of the day he walked out of that sentencing, I believe, April

7    4th of 2014 in P.G. County, he was now on supervised release or

8    probation for two courts.

9              And it is in that context, having a prior armed

10   robbery offense for which he went to jail the day he turned 18

11   for the conduct, for which he went to jail, served some time,

12   got out, committed another offense, this time possession with

13   intent to distribute in P.G. County.  He served time for that

14   conduct on his D.C. sentence and then he's -- and now he's got

15   two supervisions by courts over his head, including one of them

16   that was done by Probation Officer Shawn Watson in this

17   courthouse.

18             And both of those were still there at the time that he

19   was arrested in this offense with the search warrant.  They were

20   there at the time of the drug buys outlined in the search

21   warrant application that led to him -- led to his house being

22   searched.

23             So, at the time that he had this arsenal in his

24   apartment where he was the sole occupant and the sole person on

25   the lease, and had all these weapons and ammo and crack, and

1    powder cocaine.  In that context, he was under supervision by

2    two different courts at the time, including a probation officer

3    of this court for a D.C. Superior Court violation.

4           So, it's in that context that this crime occurs.

5    Again, legally significant detail with respect to the

6    guidelines.  The guidelines give you a two-point increase if

7    you're under supervision of the court.  And it gives you two

8    points in the criminal history category calculation if you're

9    under supervision of the court and then you commit a crime, and

10   that's what you, get.

11          But it doesn't really look at the underlying crime too

12   much, that calculation doesn't look at whether you're under

13   supervision of two courts or three courts or whatever.  It

14   doesn't add additional points for that.  But in this case, Your

15   Honor, I would submit that the guidelines do a poor job of

16   reflecting the fact the defendant had not only been on

17   supervision, violated supervision, gone to jail and then was

18   sentenced for another offense, and got out and then committed

19   these offenses.

20          Respectfully, Your Honor, that doesn't track the

21   incredibly serious behavior that's seen by what was discovered

22   as the search warrant was executed in this case in April of

23   2016.

24          And so, Your Honor, because of that, the layering of

25   and the details of the types of guns he had in the house, the

1   way they were together, the fact he had a gun right there while

2   he was -- as he acknowledged by the way on a jail call that was

3   played at trial, acknowledged that he was cooking.  They caught

4   him cooking.

5           And he also complained about the police coming in and

6   seizing his guns on those jail calls.  He was very aware of what

7   he was doing.  He was quite lucid on the jail calls when talking

8   about his conduct and what happened.  He knew exactly what was

9   up.

10           The judges, you know, the second sentencing was fairly

11  direct.  The first sentencing was a little bit more involved.

12  His attorney at that sentencing said, look, he's young, looks

13  like he's going to turn around.  Let's give him a chance.

14           Your Honor, he's had lots of chances here.  And when

15  he's gotten out after his first conviction, he got in trouble

16  and he got serious, serious backup time.  And then he came out

17  and committed this offense now under supervision.

18           So, the government believes that this -- given the

19  details of this case, it is appropriate to vary upwards.  The

20  guidelines as they come out, as the government calculated it,

21  was 78 to 97 months for group of Counts One and Three.

22           Now, Your Honor, could -- with that -- in that

23  respect, the government is recommending to the Court vary upward

24  from here.  I will also note that 924(c) while it does break out

25  in conduct, it does require additional mandatory minimums based

1    on guns being brandished and discharged, et cetera and that's

2    all understandable.

3            Also doesn't get into the details of the conduct, the

4    nature of weapons held, where they were stored, how close they

5    were in proximity to the guns, the significance of the fact that

6    he was on probation.

7            So, all those things, Your Honor, lead the government

8    to request that for Counts One or Three that the Court sentence

9    the defendant to 120 months concurrent on both those counts and

10   then followed by 60 months, which is the mandatory minimum for

11   924(c).

12           I will note just a few additional things, Your Honor.

13   The defense has submitted some of the evaluations were done

14   earlier in the case.  I was there in that process and litigated

15   the competency aspect of the case.  The finding was that the

16   defendant was competent, both to understand the nature and

17   circumstances of the case and to assist in his -- his defense

18   attorney.

19           And one of the things that was pointed out in that

20   process, the defendant displayed a high degree of functional

21   competence, certainly with regard to drug dealing.  And he shows

22   a great deal of functional competence.  And that's one of the

23   factors, one of the chief factors looked at other than

24   intellectual ability.

25           And the defense quite rightly points out that as an

27

1     indicator, you know, individual intellectual capacity.  No fault

2     there, but ignores this notion of functional competence in that

3     the defendant was out for several years, had been operating as

4     an adult and did have high degree of confidence at what he chose

5     to do, which was to deal drugs.

6            I also want to address -- there's this, sort of, flip

7     argument that perhaps the defendant's outburst was the result of

8     ignorance, befuddlement or something like that.  Again, they

9     were the result of someone who is seeking to drum up the worse.

10    Was he really focused on the legal aspect of this?  Yes, he was.

11    The repetitive nature of how he repeated things and inserted

12    himself at various times was credibly meant as a demonstration

13    to, to I think strategically attempt to knock the train off the

14    tracks for the prosecution and the Court didn't allow that, and

15    the case went forward.  But I don't think that that can all be

16    put down to the defendant's intellectual ability or anything

17    that was in the reports that were attached to the sentencing.

18    And the government would ask that the Court clearly addresses

19    the mitigation factors that's been submitted by the defense with

20    respect to mental capacity, essentially, and all the issues that

21    surround that.

22            I would note that there's discussion of a problem with

23    drugs, but the defendant doesn't think there's a problem with

24    drugs.  There's equivocal findings in the PSR that push against

25    that.  And not to say he doesn't have history of using drugs.

1    Clearly he did, but whether he has a drug problem at the time is

2    unclear.

3              I also want to note that, finally, that aside from all

4    those things, I've often heard in the last six years that, you

5    know, there is no marginal utility of an additional few months

6    of punishment.

7              That's now been exploded.  The sentencing commission

8    came out with a report that looked at recidivism and

9    particularly looked at different gates of recidivism; the two

10   year time period, five year time period, ten year time period.

11   And it looked at folks, I believe, from the year 2005.

12             They tracked a large number of federal defendants.

13   And what's clear is that it reduces recidivism for defendants to

14   receive longer sentences.  And certainly around the points of

15   five years and ten years, and particularly even ten years, it

16   makes a difference; 120 month sentence matters.

17             And I think that's clear now.  The dubiousness of

18   marginal utility of additional months of sentencing is really

19   exploded.  And I think part of the reason for that, Your Honor,

20   frankly, and I think the sentencing commission reflects this in

21   some of the reports is that defendants get older and,

22   presumably, wiser when they have longer sentences.

23             And the government ardently hopes that that is what

24   occurs here, but Mr. Conley has not shown any remorse for this

25   activity to this date.  He hasn't really shown acceptance of

1  responsibility.  He wants to just talk about other things.  And

2  this is a serious crime, serious crimes, I should say, that did

3  not respect the law.  I mean, just did not respect the law given

4  he was under supervision from two prior courts.

5  I think to promote respect for the law, a serious

6  sentence is required above the guidelines.  I think that in

7  terms of fairness and justice with another individual who might

8  have the same number of guns, but not the same history and

9  background that Mr. Conley had going into this last offense in

10  April of 2016, I think that it would create disparities if in

11  fact someone was with the same sort of numerical profile, drugs

12  and guns, but the guns were less, the ammunition was less.  All

13  the numbers we're not counting in the guidelines that really

14  show that this was an arsenal aren't being accounted for for

15  someone who is under supervised release, supervised release and

16  probation in another place.  Nor do I believe that --

17  I believe the defense has argued, hey, let's see what

18  they do.  He might get full backup time there.  Well, they may

19  very well -- Mr. Conley may very well receive additional time

20  from P.G. County.  That may happen.  I don't know.  Your Honor

21  does not know.  The defense doesn't know if that's going to

22  happen whatsoever, but what we have to --

23  THE COURT:  What is the backup time he's facing?

24  MR. BALDWIN:  Well, he had -- they said, ten years was

25  the sentence, all but -- basically, everything suspended and

then he had credit for 30 months.  So, presumably, the 30 months credit would be applied to the ten year sentence, so he would be 30 months under ten years.  So, I think 90 months is what he's looking at.

But that still doesn't account -- that would count for him, you know, for him violating that Court's -- what that court was thinking would happen, for sure, but his unique criminal conduct in this case and we're addressing what his intent was on April 21st, 2016, and all of that is baked in here.  And the defendant, the government submits, is an appropriate candidate for an upward variance in this case.  And for no --

In addition to the promoting respect for the law, adequate deterrence, I do not know that this will deter Mr. Conley from a psychic perspective, that he's going to have a change of heart, but I know that this specific deterrence will specifically deter him that he won't be allowed to commit these crimes or repeat them again while he's in prison.

With respect to the greater general deterrence argument, I do think it's important, Your Honor, that a strong signal is sent here to others in the same position, particularly, with these types of weapons and drugs, and being under the supervision of two courts.  There is an important deterrent value to the Court's sentence here, a general deterrence value that is best stated by this Court and not the other courts under whom he's been for supervision.

1           And, finally, Your Honor, for protecting the public, I

2    think that it's obvious the defendant -- it's illegal for him to

3    possess a single round of ammunition or any single firearm.  He

4    had four powerful firearms and a mass of ammunition, and he was

5    dealing drugs, selling drugs, including crack cocaine, and Your

6    Honor, that protecting the public is an important aspect of

7    this, and I also believe that supports an upward variance.

8           If you have no question, Your Honor, thank you.

9           THE COURT:  Thank you.

10          Mr. Burnham.

11          MR. BURNHAM:  Thank you, Your Honor.  I'll go to the

12   podium as well.

13          A couple of points, Your Honor.  I'll start with, I

14   think, addressing the case, sort of, the chaotic nature of this

15   case, switching attorneys and so on.  I think what is really

16   underlying all of this is Mr. Conley has significant challenges

17   that are documented in the reports.

18          Competency is an extremely low bar.  This Court found

19   Mr. Conley competent before I was in the case.  And all that

20   represents is that Mr. Conley was in some way generally aware of

21   the accusations and could, at least, attempt to assist in his

22   defense.  Although, as it turned out, more often he hampered it.

23          And then on top of that, the threshold issue in a case

24   like this is explaining to him the law surrounding suppression

25   and what the task that presented for myself, Mr. Montemarano,

1    Ms. Wicks, Mr. Citaramanis, Ms. Flynn, the private counsel is

2    basically telling Mr. Conley, look, you're here in federal court

3    because some police you never met are claiming that some people

4    whose names I can't tell you bought drugs from you.

5              You're never going to see the evidence.  You're never

6    going to get to confront these accusers.  You're never going to

7    get to see the audio that was made, but just trust me, it's

8    there.  And that's just the shape of this case and there's

9    nothing we can ever do to change any of that.

10             Now, perhaps, the law supports all of those

11   assertions.  But here you have Mr. Conley, his IQ is what it is

12   and that's what -- the first thing he was told by all of his

13   lawyers, including myself.  And with his limitations, he just

14   never got beyond that and that was as far as it went.

15             And that's the underlying facts of why we are where we

16   are today and why we're going to probably hear an extended

17   allocution from Mr. Conley even after I get done speaking.  So

18   that's just is what it was.  It was a difficult case for Your

19   Honor and for everyone involved.

20             Now, I'll proffer a few facts about Mr. Conley's

21   upbringing beyond what I've already said that are highly

22   relevant to the sentence.  Obviously, very few defendants being

23   sentenced for drug and weapons charges come from a position of

24   privilege, certainly not.  But this case, based on what I've

25   submitted is many levels below the unfortunate stories Your

33

1    Honor, I'm sure, has heard before.

2              There's good indications that Mr. Conley may have had

3    chemical dependencies at birth and the Court is aware what

4    effects that could have on brain development.  So he from the

5    beginning was going to be the type of person who would need help

6    growing up living where he was living.  And all the indications

7    are that he didn't get that.  His family circumstances were

8    difficult.

9              Many members of his family have made incredible

10   progress since then, but at that time the family wasn't in a

11   good place.  And Mr. Conley seemingly just left home around age

12   13 and lived on the streets, and no one ever stepped in or was

13   in a position to step in and intervene and try to get him some

14   kind of support.

15             And, of course, the predictable outcome was he was

16   arrested literally for a crime committed on his 18th birthday

17   and he's, sort of, been in the system ever since and hasn't

18   really had an opportunity to get what he needed to get.

19             That's not to deny responsibility for his convictions

20   or for anything else he's done, but that's the type of situation

21   he was in.  Although, I will note that the last conviction for a

22   crime of violence now goes back to literally his 18th birthday.

23   That's 2007.  No convictions of violence since then and here now

24   he's been in the custody of the United States Marshals here in a

25   very difficult case.  He's obviously had a very difficult time,

1    doesn't understand what's happening to him and why Your Honor is

2    making some of the decisions that the Court has made.

3           We haven't gotten reports of him getting in fights in

4    jail or getting caught with weapons or contraband or having

5    phones, or anything like that.  We haven't heard any of that.

6           The facts of the case, obviously, the sentence the

7    Court imposes has to take into account the facts, but our

8    position would be that the mandatory minimums alone, certainly

9    when you add in the guidelines, are more than sufficient to

10    cover that, particularly in light of a number of factors that I

11    think increase the punitive nature of whatever sentence Your

12    Honor chooses to give.

13           The first of those is the fact that a goodly portion

14    of Mr. Conley's pretrial incarceration has been during an

15    unprecedented public health crisis.  He's been lucky enough, to

16    my knowledge, not to have contracted COVID himself, but he did

17    live through the outbreak at the D.C. Jail, which was serious at

18    a certain period in time.

19           In addition, the conditions of confinement that the

20    inmates at D.C. Jail and CTF where he was for a portion of his

21    time was made to endure because of COVID is significantly more

22    punitive than it otherwise would have been.

23           For a significant period of time, Mr. Conley has been

24    in pretrial confinement.  He's been under, basically, punishment

25    conditions; locked down 23 hours a day, limited visitation,

1    limited privileges, highly punitive conditions of incarceration.

2            The backup time is highly relevant and as Your Honor

3    already went through with Mr. Baldwin, there is an additional

4    ten years or seven years, depending how you do that math, that

5    Mr. Conley could receive.  And that's from a judge who would be

6    imposing that time with the benefit, I think, of seeing how

7    Mr. Conley has faired during this BOP time.

8            Mr. Conley will go to BOP with detainers lodged

9    against him, which will prevent him from taking certain programs

10   in the Bureau of Prisons; RDAP being one and there are others.

11   He won't be able to go to a halfway house.  His time will be

12   much more restricted in terms of the benefits he can accrue

13   himself because he'll have the detainers following him.

14           We would ask Your Honor to impose a sentence of 132

15   months.  That's above the mandatory minimum.  That would be

16   sufficient, we submit, to impose sufficient deterrence, respect

17   for the law and just punishment.  We'd ask for a recommendation

18   that Mr. Conley serve his time, if he qualifies, at the prison

19   in Petersburg.

20           I typically try not to have clients that go to trial

21   address the Court themselves in light of the appeal and

22   possibility for a retrial, but Mr. Conley has been adamant that

23   he wishes to speak today.

24           Thank you.

25           THE COURT:  I wonder, Mr. Baldwin, before we hear from

1    Mr. Conley, Mr. Baldwin, did you want to say something?

2              MR. BALDWIN:  Yes, Your Honor.  I'm sorry.  I wanted

3    to make sure we got on the record that both sides had the

4    opportunity to read the PSR and had ability to discuss the

5    factual aspects of it, rather than just the guidelines on the

6    checklist there.  And I will represent to the Court that I have

7    had an opportunity to review and discuss the PSR, and reviewed

8    it with exception of the things we've already discussed, Your

9    Honor.

10             MR. BURNHAM:  That's correct, Your Honor.

11             THE COURT:  Mr. Burnham, let me pose this to you.  You

12   said, Mr. Conley is going to have an extended state -- and I

13   will hear from him.  I will hear from him.  We're not going to

14   spend the whole day, but it's now 12:30 and I need to hear from

15   him and I need to impose sentence.  Would it make sense to break

16   now and pick up after lunch, like, at 1:30?

17             MR. BURNHAM:  I'd be happy to do that, but I have a

18   virtual appearance at 2:00 o'clock with another district, so I

19   have to be able to appear for that.

20             THE COURT:  I don't want to cut Mr. Conley short, but

21   I think that may be realistic.  Do you think you might be able

22   to arrange a postponement or, at least, a later appearance given

23   our circumstances here.

24             MR. BURNHAM:  I can inquire, Your Honor.  This is in

25   the Eastern District.  It's supposed to be a plea in a

1   misdemeanor case.

2           THE COURT:  Well, if you need me to talk to the judge,

3   I'd be happy to.

4           MR. BURNHAM:  I can reach out, Your Honor.  It's Judge

5   Buchanan there.

6           THE COURT:  All right.  Mr. Baldwin, do you have

7   objection?  It's now 12:30, any objection if we recess until

8   1:30?

9           MR. BALDWIN:  No, Your Honor, no problem with that.

10          THE COURT:  Let's then recess until 1:30.  We'll pick

11  up and we'll hear from Mr. Conley, and then the Court will

12  render a sentence.

13          All right.  Thank you, folks.  We'll be in recess.

14      (Recess taken at 12:30 and resuming at 1:30 p.m.)

15          THE COURT:  Good afternoon, ladies and gentlemen.

16  We're at the point where Mr. Conley is able to make remarks to

17  the Court before sentencing.

18          I want to say this specifically to you, Mr. Conley.

19  As far as speaking, you don't have to speak, but you can speak.

20  You need to understand whatever you say is open and it's not

21  confidential in the sense that it might be relevant at some

22  future time what you say here now, but that's your choice.

23          I put to you, Mr. Burnham, whether you're satisfied

24  that you've talked to your client about the extent to which he

25  should speak now or matters that he should raise and so on.  Do

```
1    you want to say anything for the record for that purpose?

2              MR. BURNHAM:  I've advised him on all those points and

3    consistent with my best practice in cases -- consistent with my

4    best practice in cases that go to trial, I prefer not to have

5    the defendant do allocution, but he has a right to do it and I'm

6    not sure -- we discussed it, Your Honor, before the break.

7              THE COURT:  All right, fair enough.

8              All right.  Mr. Conley, I'll hear from you.  Take your

9    mask off if it's easier.

10             THE DEFENDANT:  I actually wanted to talk to the

11   prosecutor, to Mr. Baldwin about, you know, when the trial

12   started, he talking about everything against me.  As far as like

13   saying, I'm guilty, but he didn't show nothing to prove my

14   guilt; no search warrant, the last control buys.  So I'm asking,

15   all y'all showing was the currency that y'all got out of my

16   house.  That's all he showed me.  That's not nothing for a

17   conviction.  And y'all keep talking about, he facing this and

18   that.  What about the wrongdoing that y'all doing?  That's what

19   I thought trial was for, to prove my guilt.

20             And all my paperwork that I got say that I served two

21   undercovers.  You denied all my motions and you say, wait to

22   trial and it will be shown and nothing was shown.  So I'm -- so

23   when y'all keep talking about 120 months, what about the

24   warrantless search and the lies that all y'all made up.

25             THE COURT:  Look, I'm not here to have a discussion
```

1   with you.  This is your chance to talk.  Just say what you want

2   to say.

3          THE DEFENDANT:  Yeah, but y'all saying I'm facing all

4   this time.  That's what I'm supposed to get sentenced for is

5   evidence of a crime.  I ain't commit no crime.

6          THE COURT:  You say no crime.  I'm just not sure I'm

7   hearing you.

8          THE DEFENDANT:  Yeah, I didn't commit no crime.  It

9   was no probable cause to come in my house.  All y'all got was a

10  recovery.  And I'm pretty sure that you know about *Giglio*, the

11  *Brown* case.  That was all.

12         THE COURT:  Is that all you want to say?

13         THE DEFENDANT:  Yeah.  I mean, that was the most

14  important that I had to get out.

15         THE COURT:  Once I start to talk, though, I want you

16  to understand, I don't want you to interrupt me with questions

17  as I begin to impose my sentence.  This is your time to say

18  whatever you want to say.  I don't want you to talk over me or

19  anything once I start to impose your sentence.  So, you have

20  time now to say to me what you want to say beyond what you've

21  said.

22         THE DEFENDANT:  I'm basically waiting on a answer of

23  why am I facing all this time to a warrantless search.  I ain't

24  commit no crime.  That's a First Amendment right.  I can have

25  firearms.  That's a amendment, a Second Amendment right.

1        Your detectives called my mother, said that they gon'

2   kill me.  So, why wouldn't I have firearms in my house.

3        THE COURT:  Okay.  Is there anything else?

4        THE DEFENDANT:  That's it.

5     (Bench conference.)

6        It is the policy of this court that every guilty plea

7   and sentencing proceeding include a bench conference concerning

8   whether the defendant is or is not cooperating.

9     (Open court.)

10       THE COURT:  Okay.  The Court is directed at sentencing

11  to impose a sentence that is sufficient, but not greater than

12  necessary to achieve the goals of sentencing that I will discuss

13  in a moment.  These are not binding, but the Court obviously

14  needs to consider them.

15       The first thing to say to you and anyone who is here

16  on your behalf is that there are sentencing guidelines that are

17  set up by a committee of judges, lawyers and others to evaluate

18  various crimes, to assign points to the seriousness of the

19  crimes, to look at the criminal history of the offender.  Also,

20  give a score to the offender.  And on the basis of those

21  calculations, to recommend what a sentence should be in terms of

22  incarceration, supervised release and fine.

23       And the sentencing guidelines in your case have been

24  discussed already and based on the arguments of counsel and the

25  calculations of the probation office, you were determined to

1  have an offense level of 26 and you have a criminal history

2  category of three, which takes into account your past criminal

3  offenses.

4         And on the basis of that, the guidelines recommend

5  less than the statutory amount, but still recommend a sentence

6  for you that is within a particular range.  And in your case,

7  the recommendation as to Count One, for example, which is

8  possession with intent to distribute controlled substance was a

9  78 to 97 months.  That's the range recommended.

10         As to Count Three, just to jump over Count Two for a

11  minute, felon in possession of a firearm and ammunition, also 78

12  to 97 months is the guideline range.

13         And then as to Count Two, which is possession of a

14  firearm in furtherance of a drug trafficking crime, there's a

15  basic 60 months minimum that is added automatically to any other

16  sentence in the case.

17         That's what I get pretty much before I do anything in

18  the case, although there was actually some argument in this case

19  to reduce the guidelines from what probation found originally

20  and give you a lesser range than I just recited.  So, that's

21  kind of the beginning where the guidelines are set up by the

22  commission to try to treat equally-situated offenders equally so

23  that people in another court, another district and another state

24  with your background and the nature of this particular offense

25  might get a sentence within the range that I just recited.  So,

1    that's where we are.

2            And as far as supervised release is concerned, with

3    regard to Count One, I think it's a four to five year supervised

4    release term.  I think Count Three is a three year term and not

5    a five year term.  I may be mistaken on that, although it won't

6    make any difference if I go to the maximum.  Count Two is a two

7    to five year supervised release term.

8            And then there is the fine range, which I haven't

9    actually -- let me go back to this for a moment.

10           The fine range on count -- Counts One, Two and Three

11   is 25,000 to $5 million.  That's the fine range.  So that's what

12   the Court starts with in this case.  And then given those

13   numbers, the Court is directed, as I said, to look at certain

14   statutory factors that lead the Court to come to one decision or

15   another.

16           And the first factor -- this is under 18 United States

17   Code Section 3553(a)2(A).  And the first proposition that the

18   Court considers is the seriousness of the offense, the need to

19   promote respect for the law and provide just punishment for the

20   offense.

21           Now, what is the offense that we have here?  We have

22   in this case and I sat through the trial and a number of

23   pretrial proceedings, but we have a situation where there was

24   clearly strong, compelling evidence beyond a reasonable doubt,

25   which the jury had no trouble concluding that there was

1   possession with intent to distribute a controlled substance and

2   that there was a firearm, and there was ammunition in

3   connection -- as a felony in this case.

4           I mean, I saw the evidence that the government has put

5   on now, but I remember it quite well.  There were ample weapons,

6   not simply a handgun to protect you against people who may have

7   been threatening you.  Not drugs for personal use, but you were

8   basically involved in clearly an intension to distribute.  Not

9   to show that people were actually buying from you, but the fact

10  you had such a sufficient quantity that you were involved in

11  drug possession and distribution, and intent to distribute.  And

12  you had more than one firearm, multiple firearms.

13          And is that a serious offense?  Are those serious

14  offenses?  Of course they are.

15          THE DEFENDANT:  What about the search warrant?

16          THE COURT:  I need you to listen now and not talk.

17          These are serious offenses, very serious offenses and

18  not ones that the Court takes lightly.  The Court needs to

19  promote respect for law for other people who would go out and

20  possess with intent to distribute drugs, who would possess not

21  just one, but multiple weapons in furtherance of these crimes

22  and also having been a felon.

23          So, the Court starts with the proposition that this is

24  a serious offense.  And then, of course, the Court very quickly

25  comes to the issue of your background.  Not only the nature and

circumstances of the offense, but who the offender is.  And you

just got a history of drug and weapons offenses, sometimes

violent robberies and just continuously on and off since most --

for most of your adult life.  In fact, you spent a lot of your

time in your adult life in prison because of this.

These are serious things.  I mean, the community is

seriously at risk with someone like you with your kind of

background.  It's just not somebody who on one occasion acted

kind of off-centered.  This is somebody who has acted in an

antisocial way on a continuous basis for a long time.

And I need to take that into account.  You've been on

supervised release or probation, and you violated those

conditions to go out and commit crimes again and again.  So,

what's the prospect that I have that you won't do this again at

such time as you emerge?

So, I need to not only promote respect for law, but I

need to deter you from doing things.  Now, maybe you won't do

something like this again.  I don't know.  You'll have time to

think about it while you're in custody, but for the time being,

your history has shown that you do commit these offenses when

you're out.  And it doesn't seem to count for much that you're

on supervised release or probation in connection with these

offenses.  You do it anyway.  So there is that.

And there's a punishment component as well.  It's not

the most important factor, but it certainly is one, but I

1    certainly need to deter others from doing what you do.  I need

2    to protect the public from further crimes by you.

3           And to the extent that we can provide appropriate

4    training for you in terms of education, vocation, mental health

5    treatment and the like, I will provide that.  I will order that

6    that happen.  But whether that works, hope it will, don't know.

7    Trouble is when you have a history as an adult that goes on and

8    on with these criminal offenses, it's no assurance that suddenly

9    you're going to see the light or even over time see the light

10   and not get into these situations again.

11          So, these are all the kinds of considerations that the

12   Court takes into account when I try impose the least

13   restrictive, but nonetheless the most sufficient sentence

14   necessary to promote the goals of sentencing.

15          Now, your counsel very ably during the trial and now

16   has submitted a Sentencing Memorandum, which I have reviewed.

17   And I know there are arguments that you have made or he has made

18   on your behalf that the Court certainly has considered.

19          The suggestion that your father was not involved in

20   your upbringing, that there was violence, that your mother had

21   drug issues, I've considered all of that.  I consider as well

22   some of the other issues that have been raised.  Not just the

23   drug use, but the lack of parental guidance.  You say there was

24   some violence in your background as well.  Those are things that

25   I consider.

1              The government, of course, goes back to the factors

2    that I just recited about the need to protect the community from

3    what you might do and so on.  And I need to say this, while one

4    can have sympathy for a difficult upbringing, it doesn't

5    translate to you committing crimes on the community.  It doesn't

6    translate to you distributing drugs.  It doesn't just translate

7    to you owning multiple weapons which you might use to hurt

8    somebody, to kill somebody.  That's why being a felon in

9    possession of a weapon is an automatic sentence in these cases.

10   So that's the first proposition.

11             I think the government has fairly articulated and I

12   independently come to my view that this is a situation where you

13   do need to be firmly treated and there's no really diminishing

14   that.

15             Now, I don't agree that the government has convinced

16   me that you should get an upward variance.  I'm content to stay

17   within the guidelines in this case, which means that with regard

18   to Count One, which is possession with intent to distribute a

19   controlled substance, I'm going to sentence you to 97 months.

20             And then with regard to Count Three, jumping down for

21   a moment, which is the felon in possession of firearms and

22   ammunition, I'm going to sentence you to 97 months concurrent,

23   meaning it's the same 97 months.

24             But with regard to Count Two, which is possession of a

25   firearm in furtherance of a drug-trafficking crime, you are

1     sentenced to 60 months consecutive to those sentences.  So

2     that's a total of 90 months plus 60 -- 97 months rather, plus 60

3     months is 157 months.  And you will, of course, get credit for

4     time served.

5          And I don't know exactly what the date is on that,

6     Mr. Burnham, but that would be calculated by the Department of

7     Prison.  It's already a matter of a few years, I know, but

8     you'll get credit for time served.

9          And then with regard to Count One, which again is the

10    possession with intent to distribute controlled substance, I'm

11    going to sentence you to five years supervised release.  As to

12    Count Two, I will sentence you to five years -- let me see if

13    I've got that correct.

14         Five years concurrent to Count One.  And then Count

15    Three, three years concurrent to the other two counts.  So it's

16    still a total of five years.

17         And during the supervised release, there are certain

18    mandatory conditions that you must observe or you will be

19    brought back to the court for further consideration.  You must

20    not commit any crime, federal, state or local.  You must not

21    unlawfully possess a controlled substance.  You must refrain

22    from any unlawful use of controlled substance and submit to

23    appropriate drug testing.  You must cooperate with the

24    collection of DNA and so on and to forth.

25         Now, there are standard conditions in addition to the

1  mandatory conditions.  You have to report to your probation

2  office in this district when you're authorized -- or where you

3  are otherwise authorized to reside within 72 hours of your

4  release from custody unless you're given a different place to

5  report.

6          After initially reporting, you will receive

7  instructions from your probation officer about how and when you

8  should report.  You must not knowingly leave the jurisdiction

9  without first getting permission from the Court or from

10 probation.

11         You must answer truthfully questions that are put to

12 you by probation.  You must live in a place approved by

13 probation.  And if you plan to change where you live or anything

14 about your living arrangements, you have to notify probation in

15 advance, at least ten days before.  And if that's not possible,

16 certainly within 72 hours of becoming aware of the change or

17 expected change.

18         You must as well allow probation to visit your home or

19 elsewhere and permit probation to take any items that are

20 prohibited by the conditions of your supervision that are

21 observed in plain view.

22         To the extent that you can work full time, you should

23 try to do so.  I'll say more than that in a moment.  You must

24 not communicate or interact with someone you know who is engaged

25 in criminal activity.  If you know someone who has been

1    convicted of a felony, you must not knowingly communicate or

2    interact with that person without first getting permission of

3    probation.

4         If you are arrested or questioned by a law enforcement

5    officer, you have to notify probation within 72 hours.  And, of

6    course, you must not own, possess or use or have access to a

7    firearm, ammunition, destructive device or dangerous weapon.

8    That is, anything designed or modified for the specific purpose

9    of causing bodily injury or death to another, such as a nunchaku

10   or tasers.

11        You must not act or make any agreement with law

12   enforcement to act as a confidential human source or informant

13   without first getting permission of the Court.  And if probation

14   determines that you pose a risk to another, including an

15   organization, probation officer may require you to notify that

16   person of the risk and you must comply with that instruction.

17   And probation may contact that person and confirm that you have

18   notified the person about the risk.

19        At all times you have to follow the instructions of

20   the probation officer related to the terms of supervision.

21        Now, there's some specific terms that I want to

22   emphasize.  You must participate in a substance abuse treatment

23   program and follow the rules and regulations of that program.

24   Your probation officer will supervise your participation in the

25   program in terms of who or what provides it where and so on.

1          You must also -- I don't know whether you have your

2    GED or not.  There's some indication that you do, but if you do

3    not, you should participate in an educational services program

4    and follow the regulations of that program.

5          Further, you must even while on not only -- in

6    custody, you -- while on supervised release, you must

7    participate in a mental health programs.  And again, probation

8    in consultation with your treatment provider will supervise your

9    participation in terms of who provides where and so on and so

10   forth.

11         There are further -- let me see.

12         There is a special assessment of $300 due and payable

13   at the time of sentencing, which is now.  There also will be

14   substance abuse testing during supervised release to determine

15   if you have used a prohibited substance and the cost may be

16   determined by the probation officer, unless you cannot pay.  You

17   must not attempt to obstruct or tamper with the testing methods.

18         Insofar as there's an opportunity for vocational

19   services training, you should also participate in that.  And I

20   think those are the more special conditions that the Court

21   imposes in this case.

22         So, summing up, the sentence that I'm giving to you is

23   essentially 97 months on Counts One and Three and 60 months

24   consecutive on Count Two.  And then, essentially, five years of

25   supervised release with those terms and conditions.

```
 1                  The Court imposes no fine in the case.  There is no --
 2      there is a special assessment that is made, $300 in this case.
 3      There also was submitted to the Court a forfeiture order
 4      relative to the weapons.
 5                  Mr. Burnham, I assume you have seen that, the Amended
 6      Preliminary Order of Forfeiture?
 7                  MR. BURNHAM:  Yes, Your Honor.
 8                  THE COURT:  All right.  Well, that also -- is there a
 9      permanent order of forfeiture that comes out as well,
10      Mr. Baldwin?
11                  MR. BALDWIN:  Your Honor, should be -- you just orally
12      pronounced it.  It should be just referenced in a written
13      judgment as well as a final order.
14                  THE COURT:  That's fine.
15                  All right.  There will be then -- and that consist of
16      a number of the weapons that are all set forth in the Court's
17      Order signed on December 3rd, 2020, including currency and
18      various other rifles and rounds of ammunition set forth in that
19      order.
20                  Now, there was a request that the Court recommend
21      Petersburg for incarceration.
22                  MR. BURNHAM:  Your Honor, I'm sorry to interrupt.
23      Upon further discussion with Mr. Conley, he'd like to change
24      that request from Petersburg to FCI Loredo in Pennsylvania,
25      please.
```

```
1              THE COURT:  What is it, Loredo?

2              MR. BURNHAM:  FCI Loredo please for the

3    recommendation.

4              THE COURT:  I'm not sure.  Are you saying, Loredo?

5              MR. BURNHAM:  Loredo, L-O-R-E-T -- I'm not sure if

6    it's one or two T's.

7              THE COURT:  I will do that.

8              MR. BURNHAM:  Thank you, Your Honor.

9              And one housekeeping point while I've got the floor.

10             THE COURT:  Well, let me just say about the right of

11   appeal.

12             You do have the right to appeal any aspect of this

13   case, including the conviction, the sentence and so on.  You

14   must do so within 14 days.  Mr. Burnham can tell you more about

15   that.  And, of course, you're entitled to counsel on appeal.

16             Go ahead, Mr. Burnham.

17             MR. BURNHAM:  To the extent it wasn't clear before,

18   Mr. Conley and I did receive a copy of the Presentence Report

19   and had an opportunity to review it.  Thank you.

20             THE COURT:  All right.  Anything else from the

21   government?

22             MR. BALDWIN:  No, Your Honor.  Thank you.

23             THE COURT:  From the defendant, Mr. Burnham.

24             MR. BURNHAM:  Nothing further, Your Honor.

25             THE COURT:  All right.  Thank you, everyone.
```

1       (Recess at 2:05 p.m.)

2                          *     *     *

3

4

5                    CERTIFICATE OF COURT REPORTER

6       I, Linda C. Marshall, certify that the foregoing is a

7  correct transcript from the record of proceedings in the

8  above-entitled matter.

9

10

11           /s/
            _____
12           Linda C. Marshall, RPR
            Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$300 **[2]**  50/12 51/2
$495 **[2]**  17/14 20/15
$5 **[1]**  42/11
$5 million **[1]**  42/11
$9,000 **[1]**  17/23
$9000 **[2]**  17/21 20/15
$9000 in **[1]**  20/15

**.**

.22 **[3]**  18/18 18/23 19/21
.45 **[6]**  16/8 19/18 19/19 19/20 20/3 20/6

**/**

/s **[1]**  53/11

**1**

100 kilograms **[2]**  12/10 14/14
100 percent **[1]**  4/18
11:30 **[1]**  1/8
120 **[3]**  26/9 28/16 38/23
12:30 **[1]**  36/14 37/7 37/14
13 **[1]**  33/12
132 **[1]**  35/14
14 **[1]**  52/14
1424 **[1]**  1/18
15 **[1]**  1/7
157 **[1]**  47/3
18 **[3]**  12/4 23/10 42/16
18th **[3]**  21/25 33/16 33/22
1:30 **[4]**  36/16 37/8 37/10 37/14

**2**

20 **[4]**  11/3 11/16 12/4 14/8
200 **[1]**  1/14
20005 **[1]**  1/18
2005 **[1]**  28/11
2007 **[2]**  22/5 33/23
2014 **[1]**  23/7
2016 **[5]**  17/6 17/15 24/23 29/10 30/9
202-386-6920 **[1]**  1/19
2020 **[1]**  51/17
2021 **[1]**  1/7
20770 **[1]**  1/14
21st **[2]**  17/15 30/9
223 **[2]**  18/9 18/13
23 **[1]**  34/25
24 **[10]**  21/10 11/17 11/19 11/23 12/12
  12/12 12/21 12/22 14/9 14/12
25,000 to **[1]**  42/11
26 **[11]**  5/23 10/4 12/20 12/21 12/21
  12/25 14/21 14/22 14/23 15/6 41/1
27 **[1]**  14/9
28 **[4]**  3/20 10/16 11/17 13/19
2:00 **[1]**  36/18
2:05 **[1]**  53/1
2A **[1]**  22/11
2D1.1A5 **[1]**  12/7
2D1.1B12 **[2]**  12/16 15/4
2D1.1B2 **[2]**  14/17 15/1
2D1.1C8 **[1]**  12/8
2K2.1 **[1]**  21/7
2K2.1B6B **[2]**  10/17 14/4
2K2.4 **[2]**  10/24 13/25

**3**

30 **[5]**  22/17 22/21 30/1 30/1 30/3
301 **[1]**  1/23
301-344-4238 **[1]**  1/15
3229 **[1]**  1/23
344-3229 **[1]**  1/23
3553 **[1]**  42/17
3E1.1 **[1]**  6/1
3rd **[1]**  51/17

**4**

400 **[1]**  14/14
400 kilograms **[1]**  12/11
403 **[2]**  1/5 2/3
4238 **[1]**  1/15
47 **[1]**  19/1
4th **[1]**  23/7

**5**

556 **[1]**  18/13
556-millimeter **[1]**  18/9
556-type **[1]**  18/9

**6**

60 **[9]**  4/25 7/7 15/9 26/10 41/15 47/1
  47/2 47/2 50/23
6500 **[1]**  1/14
6920 **[1]**  1/19

**7**

7.62-millimeter **[1]**  18/24
72 **[3]**  48/3 48/16 49/5
762 **[1]**  20/3
762-millimeter **[3]**  18/11 18/14 19/25
78 **[5]**  13/2 15/7 25/21 41/9 41/11

**9**

90 **[2]**  30/3 47/2
90 percent **[1]**  4/17
924 **[12]**  4/20 4/23 4/25 6/10 6/15 6/24
  7/5 7/7 10/23 10/25 25/24 26/11
97 **[10]**  13/2 15/8 25/21 41/9 41/12
  46/19 46/22 46/23 47/2 50/23

**A**

A.M **[1]**  1/8
ability **[3]**  26/24 27/16 36/4
able **[5]**  21/18 35/11 36/19 36/21 37/16
ably **[1]**  45/15
about **[25]**  6/6 6/23 8/23 11/2 21/15 25/5
  25/8 29/1 32/20 37/24 38/11 38/12
  38/17 38/18 38/23 38/23 39/10 43/15
  44/19 46/2 48/7 48/14 49/18 52/10
  52/14
above **[5]**  17/12 18/5 29/6 35/15 53/8
above-entitled **[1]**  53/8
abuse **[2]**  49/22 50/14
accept **[1]**  21/18
acceptance **[23]**  4/10 4/24 5/2 5/6 5/12
  5/19 5/24 6/5 6/11 6/13 6/20 6/22 7/6
  7/9 7/12 7/19 7/21 8/1 8/4 8/16 9/19
  9/25 28/25
access **[1]**  49/6
Accordingly **[1]**  14/7
account **[7]**  5/8 5/15 30/5 34/7 41/2

44/11 45/12
accounted **[1]**  29/14
accrue **[1]**  35/12
accusations **[1]**  31/21
accusers **[1]**  32/6
achieve **[1]**  40/12
acknowledged **[2]**  25/2 25/3
acknowledgment **[1]**  6/21
act **[2]**  49/11 49/12
acted **[2]**  44/8 44/9
Action **[1]**  1/4
activities **[1]**  18/2
activity **[2]**  28/25 48/25
actual **[1]**  16/2
actually **[8]**  10/13 11/19 19/3 22/1 38/10
  41/18 42/9 43/9
adamant **[1]**  35/22
add **[3]**  10/19 24/14 34/9
added **[3]**  4/25 12/16 41/15
addition **[4]**  8/17 30/12 34/19 47/25
additional **[12]**  5/18 20/4 22/2 22/21
  22/22 24/14 25/25 26/12 28/5 28/18
  29/19 35/3
address **[5]**  2/14 2/18 3/16 27/6 35/21
addresses **[1]**  27/18
addressing **[3]**  16/2 30/8 31/14
adequate **[1]**  30/13
adjusted **[4]**  12/20 12/23 14/20 14/23
admit **[1]**  6/14
adult **[4]**  27/4 44/4 44/5 45/7
advance **[1]**  48/15
advised **[1]**  38/2
affiant **[1]**  7/24
after **[11]**  17/15 17/17 22/5 22/16 22/20
  22/20 23/4 25/15 32/17 36/16 48/6
afternoon **[1]**  37/15
again **[13]**  9/12 14/5 19/20 24/5 27/8
  30/17 44/13 44/13 44/14 44/18 45/10
  47/9 50/7
against **[6]**  8/22 20/8 27/24 35/9 38/12
  43/6
age **[1]**  33/11
agent **[2]**  2/10 2/10
agents **[2]**  17/5 17/6
aggravating **[1]**  7/2
agree **[6]**  4/3 10/6 13/5 13/8 13/9 46/15
agreement **[1]**  49/11
agrees **[2]**  13/17 14/6
ahead **[1]**  52/16
AIDED **[1]**  1/24
ain't **[2]**  39/5 39/23
AK **[1]**  19/1
AK-47 **[1]**  19/1
albeit **[1]**  13/7
all **[59]**
alleged **[1]**  8/19
alliance **[1]**  19/4
allocution **[4]**  15/14 22/10 32/17 38/5
allow **[2]**  27/14 48/18
allowed **[1]**  30/16
alone **[1]**  34/8
along **[3]**  6/18 7/11 9/7
already **[9]**  6/18 7/12 12/13 20/11 32/21
  35/3 36/8 40/24 47/7
also **[22]**  5/8 6/8 18/3 18/21 19/14 19/22
  19/24 20/23 25/5 25/24 26/3 27/6 28/3

## A

also... [9]  31/7 40/19 41/11 43/22 50/1
50/13 50/19 51/3 51/8
although [4]  31/22 33/21 41/18 42/5
am [2]  15/16 39/23
Amended [1]  51/5
amendment [3]  39/24 39/25 39/25
AMERICA [2]  1/4 2/4
ammo [3]  18/13 20/13 23/25
ammunition [13]  18/10 19/11 19/12 20/4
21/19 29/12 31/3 31/4 41/11 43/2 46/22
49/7 51/18
amount [4]  12/8 19/2 21/18 41/5
ample [1]  43/5
analysis [3]  13/17 16/18 17/25
another [15]  8/23 10/18 10/23 16/25
23/12 24/18 29/7 29/16 36/18 41/23
41/23 41/23 42/15 49/9 49/14
answer [3]  39/22 48/11
Anthony [1]  2/10
antisocial [1]  44/10
any [23]  3/6 6/4 8/10 8/10 8/11 9/4 9/4
9/21 13/23 15/5 19/9 28/24 31/3 32/9
34/5 37/7 41/15 42/6 47/20 47/22 48/19
49/11 52/12
anybody [1]  10/1
anyone [1]  40/15
anything [13]  2/21 6/16 8/6 27/16 33/20
34/5 38/1 39/19 40/3 41/17 48/13 49/8
52/20
anyway [1]  44/23
apartment [2]  7/18 23/24
apologies [1]  10/12
apparent [2]  5/5 20/16
appeal [5]  4/11 35/21 52/11 52/12 52/15
appear [1]  36/19
appearance [2]  36/18 36/22
APPEARANCES [1]  1/12
appellate [2]  5/5 8/9
application [3]  13/20 14/1 23/21
applied [2]  12/19 30/2
applies [1]  6/15
apply [4]  5/6 10/25 14/5 21/19
appropriate [6]  12/7 14/17 25/19 30/10
45/3 47/23
approved [1]  48/12
April [6]  17/6 17/15 23/6 24/22 29/10
30/9
April 21st [2]  17/15 30/9
ardently [1]  28/23
are [56]
area [1]  16/14
aren't [1]  29/14
argued [2]  13/7 29/17
argument [9]  4/11 4/18 5/12 7/2 7/4 15/8
27/7 30/19 41/18
arguments [5]  5/13 8/11 8/12 40/24
45/17
arising [1]  15/9
Arm [1]  17/4
armed [5]  21/24 22/1 22/14 22/21 23/9
around [3]  25/13 28/14 33/11
arrange [1]  36/22
arrangements [1]  48/14
arrested [5]  21/24 22/16 23/19 33/16

49/4
arsenal [2]  23/23 29/14
articulated [1]  46/11
as [67]
aside [1]  28/3
ask [5]  5/17 8/10 27/18 35/14 35/17
asking [1]  38/14
aspect [7]  3/25 10/7 15/23 26/15 27/10
31/6 52/12
aspects [3]  7/2 22/19 36/5
assertions [1]  32/11
assessed [1]  4/9
assessment [2]  50/12 51/2
assign [1]  40/18
assignment [1]  8/3
assist [2]  26/17 31/21
associated [1]  17/23
assume [2]  11/3 51/5
assurance [1]  45/8
at [70]
attached [1]  27/17
attempt [3]  27/13 31/21 50/17
attorney [4]  1/13 22/11 25/12 26/18
attorneys [1]  31/15
audio [1]  32/7
authorized [3]  19/9 48/2 48/3
automatic [2]  19/15 19/16 46/9
automatically [1]  41/15
award [1]  5/18
aware [5]  8/8 25/6 31/20 33/3 48/16
away [1]  22/16

## B

back [10]  4/6 8/2 11/18 17/3 17/8 17/21
33/22 42/9 46/1 47/19
background [5]  29/9 41/24 43/25 44/8
45/24
backup [8]  22/17 22/21 23/1 23/4 25/16
29/18 29/23 35/2
baked [1]  30/9
Baking [1]  17/4
BALDWIN [12]  1/13 2/9 3/8 6/2 10/10
15/15 35/3 35/25 36/1 37/6 38/11 51/10
banana [1]  19/25
bar [2]  8/16 31/18
base [6]  12/2 12/6 12/11 12/12 14/12
14/13
based [9]  7/22 11/22 11/24 12/6 21/5
21/12 25/25 32/24 40/24
basic [1]  41/15
basically [8]  8/11 12/8 20/20 29/25 32/2
34/24 39/22 43/8
basis [4]  4/15 40/20 41/4 44/10
be [60]
be entitled [1]  8/20
because [20]  4/23 6/9 6/18 7/6 7/8 8/2
9/12 12/16 12/21 14/12 14/17 15/22
16/1 20/20 20/25 24/24 32/3 34/21
35/13 44/5
become [1]  11/10
becoming [2]  11/9 48/16
been [22]  16/23 21/8 21/24 24/16 27/3
27/19 28/7 30/25 33/17 33/24 34/14
34/15 34/22 34/23 34/24 35/22 40/23
43/7 43/22 44/11 45/22 48/25

before [11]  1/10 2/2 17/9 31/19 33/1
35/25 37/17 38/6 41/17 48/15 52/17
befuddlement [1]  27/8
begin [1]  39/17
beginning [5]  8/2 12/1 13/18 33/5 41/21
behalf [2]  40/16 45/18
behavior [1]  24/21
being [13]  3/7 3/7 9/4 11/22 21/6 23/21
26/1 29/14 30/21 32/22 35/10 44/19
46/8
belief [1]  7/10
believe [10]  15/16 16/1 17/15 22/6 22/7
23/6 28/11 29/16 29/17 31/7
believes [2]  12/18 25/18
below [1]  32/25
bench [2]  40/5 40/7
benefit [2]  8/4 35/6
benefits [1]  35/12
best [4]  5/13 30/24 38/3 38/4
between [1]  6/25
beyond [5]  4/21 32/14 32/21 39/20
42/24
binding [1]  40/13
birth [1]  33/3
birthday [3]  21/25 33/16 33/22
bit [1]  25/11
Bloc [2]  18/24 19/3
bodily [1]  49/9
BOP [2]  35/7 35/8
both [10]  4/13 11/22 12/24 17/10 18/12
18/13 23/18 26/9 26/16 36/3
bottom [4]  7/25 10/15 15/25 21/20
bought [1]  32/4
Brady [2]  3/5 3/7
brain [1]  33/4
brandished [1]  26/1
break [3]  25/24 36/15 38/6
bring [1]  12/19
brought [1]  47/19
Brown [1]  30/11
Buchanan [1]  37/5
bullet [2]  19/19 19/20
bullets [3]  19/1 19/19 20/2
Bureau [1]  35/10
BURNHAM [18]  1/17 1/17 2/12 3/10 3/13
3/24 6/5 7/4 8/6 13/4 31/10 36/11 37/23
47/6 51/5 52/14 52/16 52/23
business [2]  3/2 3/15
but [73]
buying [1]  43/9
buys [4]  8/19 8/20 23/20 38/14

## C

cabinet [1]  16/11
calculated [5]  11/23 11/23 12/13 25/20
47/6
calculates [2]  13/14 13/19
calculation [11]  3/19 4/1 4/4 5/19 10/9
10/16 11/10 11/13 11/21 24/8 24/12
calculations [8]  3/22 11/24 12/3 12/4
15/11 18/17 40/21 40/25
caliber [6]  16/8 18/19 19/19 19/19 20/3
20/7
call [1]  25/2
called [2]  19/24 40/1
calls [2]  25/6 25/7

# C

**came [8]** 9/11 9/12 10/15 16/13 18/1 18/7 25/16 28/8
**can [18]** 16/15 18/8 18/12 18/18 19/2 20/1 21/21 27/15 32/9 35/12 36/24 37/4 37/19 39/24 45/3 46/4 48/22 52/14
**can't [1]** 32/4
**candidate [1]** 30/10
**cannot [1]** 50/16
**capacity [2]** 27/1 27/20
**car [1]** 22/7
**case [50]** 2/10 2/10 4/14 4/16 6/18 8/8 8/16 9/8 9/24 10/1 10/7 10/25 15/23 16/2 21/8 22/9 23/3 24/14 24/22 25/19 26/14 26/15 26/17 27/15 30/8 30/11 31/14 31/15 31/19 31/23 32/8 32/18 32/24 33/25 34/6 37/1 39/11 40/23 41/6 41/16 41/18 41/18 42/12 42/22 43/3 46/17 50/21 51/1 51/2 52/13
**cases [3]** 38/3 38/4 46/9
**cash [4]** 17/14 17/19 17/21 20/12
**category [3]** 3/21 24/8 41/2
**caught [2]** 25/3 34/4
**cause [1]** 39/9
**causing [1]** 49/9
**centered [1]** 44/9
**certain [4]** 34/18 35/9 42/13 47/17
**certainly [11]** 7/21 16/4 21/19 26/21 28/14 32/24 34/8 44/25 45/1 45/18 48/16
**CERTIFICATE [1]** 53/5
**certify [1]** 53/6
**cetera [2]** 21/19 26/1
**challenge [3]** 4/14 8/13 8/21
**challenged [1]** 8/15
**challenges [1]** 31/16
**challenging [1]** 8/17
**chance [2]** 25/13 39/1
**chances [1]** 25/14
**change [6]** 30/15 32/9 48/13 48/16 48/17 51/23
**chaotic [1]** 31/14
**characteristic [3]** 10/17 11/16 13/23
**characteristics [2]** 5/9 5/15
**charge [1]** 4/20
**charges [2]** 22/1 32/23
**CHARLES [2]** 1/17 2/11
**chased [1]** 22/9
**checklist [1]** 36/6
**chemical [1]** 33/3
**Cherrywood [1]** 1/14
**chief [2]** 4/16 26/23
**choice [3]** 7/16 7/19 37/22
**choices [1]** 6/22
**choose [1]** 2/18
**chooses [1]** 34/12
**chose [1]** 27/4
**Circuit [2]** 8/23 22/24
**circumstance [1]** 11/12
**circumstances [5]** 2/14 26/17 33/7 36/23 44/1
**Citaramanis [1]** 32/1
**claim [1]** 9/3
**claiming [1]** 32/3
**clear [6]** 5/4 13/18 15/1 28/13 28/17

52/17
**clearly [6]** 5/24 9/25 27/18 28/1 42/24 43/8
**client [1]** 37/24
**clients [1]** 35/20
**clip [4]** 19/25 20/1 20/1 20/5
**clips [3]** 18/12 19/16 19/17
**close [3]** 4/18 16/1 26/4
**closet [2]** 18/4 19/23
**cocaine [20]** 14/13 17/2 17/2 17/3 17/5 17/10 17/11 17/11 17/19 20/9 20/13 20/14 20/24 20/25 21/4 21/4 22/12 22/13 24/1 31/5
**Code [1]** 42/17
**collection [1]** 47/24
**combined [1]** 14/21
**combines [1]** 12/24
**come [7]** 4/6 16/1 25/20 32/23 39/9 42/14 46/12
**comes [6]** 5/16 11/17 12/9 20/18 43/25 51/9
**coming [1]** 25/5
**commission [3]** 28/7 28/20 41/22
**commit [8]** 24/9 30/16 39/5 39/8 39/24 44/13 44/20 47/20
**committed [5]** 6/14 23/12 24/18 25/17 33/16
**committee [1]** 40/17
**committing [2]** 21/24 46/5
**communicate [2]** 48/24 49/1
**community [3]** 44/6 46/2 46/5
**compact [1]** 21/3
**compelling [1]** 42/24
**competence [3]** 26/21 26/22 27/2
**competency [2]** 26/15 31/18
**competent [2]** 26/16 31/19
**complained [1]** 25/5
**comply [1]** 49/16
**component [1]** 44/24
**COMPUTER [1]** 1/24
**COMPUTER-AIDED [1]** 1/24
**concerned [2]** 9/7 42/2
**concerning [1]** 40/7
**concluding [1]** 42/25
**conclusion [2]** 9/11 9/12
**concurrent [4]** 26/9 46/22 47/14 47/15
**conditions [10]** 34/19 34/25 35/1 44/13 47/18 47/25 48/1 48/20 50/20 50/25
**conduct [9]** 7/3 7/12 16/2 23/11 23/14 25/8 25/25 26/3 30/8
**conference [2]** 40/5 40/7
**confidence [1]** 27/4
**confidential [2]** 37/21 49/12
**confinement [2]** 34/19 34/24
**confirm [1]** 49/17
**confront [1]** 32/6
**CONLEY [35]** 1/6 2/4 2/12 4/9 4/12 5/9 7/13 9/1 28/24 29/9 29/19 30/14 31/16 31/19 31/20 32/2 32/11 32/17 33/2 33/11 34/23 35/5 35/7 35/18 35/22 36/1 36/12 36/20 37/11 37/16 37/18 38/8 51/23 52/18
**Conley's [7]** 7/15 8/18 32/20 34/14
**connection [3]** 6/25 43/3 44/22
**consecutive [3]** 15/9 47/1 50/24
**consider [3]** 40/14 45/21 45/25

**consideration [1]** 47/19
**considerations [1]** 45/11
**considered [3]** 7/5 45/18 45/21
**considers [1]** 42/18
**consist [1]** 51/15
**consistent [2]** 38/3 38/3
**consultation [1]** 50/8
**contact [1]** 49/17
**content [1]** 46/16
**contents [2]** 16/20 20/10
**contest [2]** 9/1 9/18
**contested [1]** 3/17
**contesting [1]** 9/8
**context [4]** 21/23 23/9 24/1 24/4
**Continuing [1]** 12/15
**continuous [1]** 44/10
**continuously [1]** 44/3
**contra [1]** 9/23
**contraband [1]** 34/4
**contracted [1]** 34/16
**control [4]** 8/18 12/23 13/16 38/14
**controlled [9]** 8/20 12/18 14/19 41/8 43/1 46/19 47/10 47/21 47/22
**converted [3]** 12/9 12/10 14/14
**convicted [1]** 49/1
**conviction [8]** 4/25 5/1 15/10 22/1 25/15 33/21 38/17 52/13
**convictions [2]** 33/19 33/23
**convinced [1]** 46/15
**cook [1]** 20/14
**cooking [3]** 17/4 25/3 25/4
**cooperate [1]** 47/23
**cooperating [1]** 40/8
**copy [1]** 52/18
**corner [1]** 16/16
**correct [7]** 6/5 6/9 7/8 15/3 36/10 47/13 53/7
**cost [1]** 50/15
**could [5]** 8/21 25/22 31/21 33/4 35/5
**counsel [12]** 2/6 2/9 2/16 2/22 3/22 4/13 8/10 9/5 32/1 40/24 45/15 52/15
**count [42]** 4/23 5/3 5/3 6/11 6/15 6/24 11/14 11/18 11/22 11/24 12/1 12/7 12/13 12/20 12/21 12/22 12/22 12/24 12/25 13/14 13/19 13/20 14/21 15/10 30/5 41/7 41/10 41/10 41/13 42/3 42/4 42/6 42/10 44/21 46/18 46/20 46/24 47/9 47/12 47/14 47/14 50/24
**counter [5]** 16/9 16/16 16/25 19/20 20/17
**counting [2]** 21/12 29/13
**countries [1]** 19/4
**counts [15]** 8/14 11/11 11/12 11/22 13/1 14/11 14/22 15/6 15/7 25/21 26/8 26/9 42/10 47/15 50/23
**County [7]** 22/7 22/22 22/24 23/4 23/7 23/13 29/20
**couple [3]** 2/20 22/15 31/13
**course [10]** 14/3 17/20 17/24 33/15 43/14 43/24 46/17 47/3 49/6 52/15
**court [66]**
**Court's [4]** 9/12 30/6 30/23 51/16
**courthouse [1]** 23/17
**courts [8]** 23/8 23/15 24/2 24/13 24/13 29/4 30/22 30/25
**cover [1]** 34/10

# C

**covered [1]** 2/23
**COVID [3]** 2/15 34/16 34/21
**crack [14]** 14/13 17/2 17/4 17/10 17/19
  20/9 20/13 20/14 20/24 21/4 22/12
  22/13 23/25 31/5
**create [1]** 29/10
**credibly [1]** 27/12
**credit [5]** 22/25 30/1 30/2 47/3 47/8
**crime [17]** 6/14 7/3 8/2 24/4 24/9 24/11
  29/2 33/16 33/22 39/5 39/5 39/6 39/8
  39/24 41/14 46/25 47/20
**crimes [8]** 29/2 30/17 40/18 40/19 43/21
  44/13 45/2 46/5
**criminal [13]** 1/4 2/3 3/21 7/3 7/11 16/4
  24/8 30/7 40/19 41/1 41/2 45/8 48/25
**crisis [1]** 34/15
**critical [1]** 16/2
**crossed [1]** 10/14
**CTF [1]** 34/20
**currency [2]** 38/15 51/17
**current [1]** 2/14
**custody [4]** 33/24 44/19 48/4 50/6
**cut [1]** 36/20

# D

**D.C [10]** 1/18 22/3 22/15 22/20 23/1
  23/5 23/14 24/3 34/17 34/20
**damage [1]** 19/2
**dangerous [1]** 49/7
**dangerousness [1]** 6/20
**date [2]** 28/25 47/5
**day [4]** 23/6 23/10 34/25 36/14
**days [2]** 48/15 52/14
**deal [2]** 26/22 27/5
**dealing [2]** 26/21 31/5
**death [1]** 49/9
**December [1]** 51/17
**December 3rd [1]** 51/17
**decision [3]** 9/13 9/16 42/14
**decisions [1]** 34/2
**defendant [33]** 1/7 1/17 2/7 2/12 2/16
  3/10 5/4 5/24 6/17 8/9 9/24 12/17 13/17
  14/4 14/6 14/18 16/10 16/19 17/16
  17/22 20/10 21/24 24/16 26/9 26/16
  26/20 27/3 27/23 30/10 31/2 38/5 40/8
  52/23
**defendant's [5]** 16/4 17/13 18/1 27/7
  27/16
**defendants [4]** 28/12 28/13 28/21 32/22
**defense [9]** 8/10 19/5 26/13 26/17 26/25
  27/19 29/17 29/21 31/22
**definition [1]** 18/19
**degree [3]** 7/1 26/20 27/4
**demonstrate [2]** 5/12 15/22
**demonstrated [2]** 5/24 9/25
**demonstration [1]** 27/12
**denial [2]** 7/11 7/25
**denied [2]** 10/4 38/21
**deny [1]** 33/19
**denying [3]** 4/19 6/24 8/18
**Department [1]** 47/6
**dependencies [1]** 33/3
**depending [3]** 18/10 21/17 35/4
**designed [1]** 49/8

**destructive [1]** 49/7
**detail [2]** 21/15 24/5
**details [5]** 16/2 20/19 24/25 25/19 26/3
**detainers [2]** 35/8 35/13
**detectives [1]** 40/1
**deter [4]** 30/13 30/16 44/17 45/1
**determine [2]** 11/14 50/14
**determined [2]** 40/25 50/16
**determines [1]** 49/14
**determining [1]** 13/24
**deterrence [5]** 30/13 30/15 30/18 30/24
  35/16
**deterrent [1]** 30/23
**development [1]** 33/4
**device [1]** 49/7
**diameter [1]** 19/21
**did [12]** 6/7 8/13 9/1 9/16 22/21 27/4
  28/1 29/2 29/3 34/16 36/1 52/18
**didn't [9]** 5/12 5/12 9/21 9/22 22/24 27/14
  33/7 38/13 39/8
**difference [2]** 28/16 42/6
**different [4]** 13/7 24/2 28/9 48/4
**difficult [5]** 32/18 33/8 33/25 33/25 46/4
**diminishing [1]** 46/13
**direct [1]** 25/11
**directed [2]** 40/10 42/13
**discharged [1]** 26/1
**discovered [1]** 24/21
**discovery [1]** 8/20
**discuss [4]** 7/17 36/4 36/7 40/12
**discussed [2]** 36/8 38/6 40/24
**discussion [4]** 6/6 27/22 38/25 51/23
**disparities [1]** 29/10
**displayed [2]** 19/7 26/20
**disputed [1]** 14/15
**distribute [9]** 22/13 23/13 41/8 43/1 43/8
  43/11 43/20 46/18 47/10
**distributing [3]** 12/18 14/19 46/6
**distribution [2]** 17/20 43/11
**district [7]** 1/1 1/1 1/11 36/18 36/25
  41/23 48/2
**DIVISION [1]** 1/2
**DNA [2]** 16/18 47/24
**do [32]** 6/11 10/20 11/6 19/2 24/15 27/5
  29/16 29/18 30/13 30/19 32/9 35/4
  36/17 36/21 37/6 37/25 38/5 38/5 41/17
  44/14 44/17 44/20 44/23 45/1 46/3
  46/13 48/23 50/2 50/2 52/7 52/12 52/14
**documented [1]** 31/17
**does [7]** 4/23 5/7 6/15 11/19 25/24
  25/25 29/21
**doesn't [16]** 21/14 21/20 24/11 24/12
  24/14 24/20 26/3 27/23 27/25 29/21
  30/5 34/1 44/21 46/4 46/5 46/6
**doing [4]** 25/7 38/18 44/17 45/1
**don't [21]** 2/20 7/7 8/14 8/16 8/25 9/3
  9/17 9/24 9/25 16/1 27/15 29/20 36/20
  37/19 39/16 39/18 44/18 45/6 46/15
  47/5 50/1
**done [6]** 5/10 7/12 23/16 26/13 32/17
  33/20
**door [1]** 16/12
**double [1]** 19/21
**doubt [2]** 4/21 42/24
**down [5]** 12/1 16/24 27/16 34/25 46/20
**drawer [6]** 16/15 16/20 17/8 17/10 17/11

  20/10
**drawers [1]** 19/22
**driving [2]** 8/24 22/8
**drug [26]** 4/22 5/3 11/18 12/6 12/8 12/9
  12/10 12/15 12/24 14/14 17/1 18/2
  20/24 21/5 21/12 23/20 26/21 28/1
  32/23 41/14 43/11 44/2 45/21 45/23
  46/25 47/23
**drug-trafficking [2]** 18/2 46/25
**drugs [17]** 4/19 4/21 6/25 20/22 20/23
  27/5 27/23 27/24 27/25 29/11 30/21
  31/5 31/5 32/4 43/7 43/20 46/6
**drum [1]** 27/9
**dubiousness [1]** 28/17
**due [2]** 10/16 50/12
**during [6]** 4/17 34/14 35/7 45/15 47/17
  50/14

# E

**earlier [2]** 10/14 26/14
**easier [1]** 38/9
**Eastern [2]** 18/24 36/25
**education [1]** 45/4
**educational [1]** 50/3
**effect [1]** 21/3
**effectively [1]** 8/21
**effects [2]** 20/25 33/4
**either [1]** 16/3
**else [4]** 6/16 33/20 40/3 52/20
**elsewhere [1]** 48/19
**emerge [1]** 44/15
**emphasize [1]** 49/22
**employment [2]** 17/23 20/16
**endure [1]** 34/21
**enforcement [2]** 49/4 49/12
**engaged [1]** 48/24
**enhancement [6]** 14/4 14/5 14/8 14/25
  15/1 18/21
**enough [2]** 34/15 38/7
**entered [3]** 16/11 17/6 17/6
**entitled [3]** 8/20 52/15 53/8
**entitles [1]** 9/18
**equal [1]** 12/13
**equally [2]** 41/22 41/22
**equally-situated [1]** 41/22
**equivalent [3]** 12/10 14/13 14/13
**equivocal [1]** 27/24
**erratically [1]** 22/8
**Esquire [2]** 1/13 1/17
**essentially [4]** 12/3 27/20 50/23 50/24
**et [2]** 21/19 26/1
**evaluate [1]** 40/17
**evaluations [2]** 5/10 26/13
**even [8]** 4/17 8/14 21/4 21/8 28/15
  32/17 45/9 50/5
**event [1]** 15/5
**ever [5]** 9/1 9/4 32/9 33/12 33/17
**every [3]** 9/21 19/11 40/6
**everyone [2]** 32/19 52/25
**everything [2]** 29/25 38/12
**evidence [8]** 6/7 7/17 9/23 14/16 32/5
  39/5 42/24 43/4
**exactly [3]** 17/5 25/8 47/5
**example [1]** 41/7
**exceeds [1]** 11/19
**exception [1]** 36/8

**E**

**excuse [1]** 11/17
**executed [2]** 17/14 24/22
**Exhibit [1]** 22/11
**expected [1]** 48/17
**explaining [1]** 31/24
**exploded [2]** 28/7 28/19
**extended [2]** 32/16 36/12
**extent [4]** 37/24 45/3 48/22 52/17
**extremely [4]** 19/10 20/19 21/22 31/18

**F**

**face [1]** 7/8
**facing [4]** 29/23 38/17 39/3 39/23
**fact [9]** 19/8 21/8 24/16 25/1 26/5 29/11
34/13 43/9 44/4
**factor [3]** 8/24 42/16 44/25
**factors [6]** 26/23 26/23 27/19 34/10
42/14 46/1
**facts [5]** 16/3 32/15 32/20 34/6 34/7
**factual [1]** 36/5
**fair [1]** 38/7
**fairly [3]** 21/3 25/10 46/11
**fairness [1]** 29/7
**family [3]** 33/7 33/9 33/10
**far [7]** 3/6 3/6 9/7 32/14 37/19 38/12
42/2
**Farrar [2]** 2/10
**father [1]** 45/19
**fault [1]** 27/1
**FBI [2]** 2/9 16/18
**FCI [2]** 51/24 52/2
**federal [4]** 19/12 28/12 32/2 47/20
**felon [5]** 5/3 41/11 43/22 46/8 46/21
**felony [3]** 10/18 43/3 49/1
**felt [2]** 8/19 8/23
**few [7]** 15/11 22/4 26/12 28/5 32/20
32/22 47/7
**fighting [1]** 6/24
**fights [1]** 34/3
**filed [1]** 3/13
**filings [1]** 5/10
**final [5]** 5/18 11/17 12/20 13/8 51/13
**finally [2]** 28/3 31/1
**find [1]** 19/24
**finding [1]** 26/15
**findings [1]** 27/24
**fine [7]** 2/14 40/22 42/8 42/10 42/11
51/1 51/14
**firearm [21]** 13/24 16/8 16/16 16/16
16/17 16/23 18/19 19/18 20/17 21/6
21/9 21/13 21/13 21/14 31/3 41/11
41/14 43/2 43/12 46/25 49/7
**firearms [16]** 4/19 16/17 18/17 18/18
18/22 19/9 19/10 19/10 20/5 20/22
21/16 31/4 39/25 40/2 43/12 46/21
**firm [1]** 17/23
**firmly [1]** 46/13
**first [20]** 2/20 3/2 3/15 3/24 4/6 8/8
16/12 16/19 25/11 25/15 32/12 34/13
39/24 40/15 42/16 42/17 46/10 48/9
49/2 49/13
**five [11]** 6/10 28/10 28/15 42/3 42/5
42/7 47/11 47/12 47/14 47/16 50/24

**flip [1]** 27/6
**floor [3]** 16/13 17/18 52/9
**Flynn [1]** 32/1
**focused [2]** 4/20 27/10
**folks [2]** 28/11 37/13
**follow [4]** 2/22 49/19 49/23 50/4
**followed [2]** 22/6 26/10
**following [2]** 21/23 35/13
**follows [1]** 13/16
**force [1]** 6/22
**foregoing [1]** 53/6
**forfeiture [4]** 17/24 51/3 51/6 51/9
51/16 51/18
**forth [7]** 4/12 7/2 7/14 47/24 50/10
51/16 51/18
**forward [2]** 15/14 27/15
**found [11]** 7/17 16/18 17/5 17/13 17/18
17/24 19/17 22/11 22/12 31/18 41/19
**four [7]** 10/19 10/21 11/15 13/14 14/7
31/4 42/3
**four-level [1]** 10/19
**Fourth [1]** 8/23
**frankly [1]** 28/20
**front [3]** 3/17 16/10
**full [2]** 29/18 48/22
**fully [1]** 12/13
**functional [3]** 26/20 26/22 27/2
**functioning [1]** 5/11
**fundamental [1]** 15/23
**further [9]** 8/6 14/15 15/8 45/2 47/19
50/5 50/11 51/23 52/24
**furtherance [5]** 4/22 10/18 41/14 43/21
46/25
**future [2]** 7/11 37/22

**G**

**galley [2]** 16/22 16/25
**galley-type [1]** 16/22
**gates [1]** 28/9
**geared [1]** 4/18
**GED [1]** 50/2
**general [2]** 30/18 30/23
**generally [1]** 31/20
**gentlemen [1]** 37/15
**get [25]** 6/10 11/4 18/21 20/23 21/2
21/20 24/10 26/3 28/21 29/18 32/6 32/7
32/17 33/7 33/13 33/18 33/18 39/4
39/14 41/17 41/25 45/10 46/16 47/3
47/8
**getting [5]** 34/3 34/4 48/9 49/2 49/13
**Giglio [1]** 39/10
**give [6]** 6/7 24/6 25/13 34/12 40/20
41/20
**given [6]** 6/5 25/18 29/3 36/22 42/12
48/4
**gives [1]** 24/7
**giving [2]** 7/9 50/22
**go [26]** 2/20 5/22 7/1 9/13 10/8 11/1
11/17 15/13 15/17 15/17 17/16 19/17
20/20 20/21 20/22 21/14 31/11 35/8
35/11 35/20 38/4 42/6 42/9 43/19 44/13
52/16
**goals [2]** 40/12 45/14
**goes [9]** 5/4 6/16 8/2 8/9 19/25 22/24
33/22 45/7 46/1
**going [27]** 4/10 6/10 7/7 9/2 9/15 9/18
10/2 10/6 14/25 16/6 16/13 17/8 25/13

29/9 29/21 30/14 32/5 32/6 32/6 32/16
33/5 36/12 36/13 45/9 46/19 46/22
47/11
**gon' [1]** 40/1
**gone [1]** 24/17
**good [6]** 2/8 2/11 20/4 33/2 33/11 37/15
**goodly [1]** 34/13
**Gorokhov [1]** 1/17
**got [17]** 20/4 22/18 22/19 23/1 23/12
23/14 24/18 25/15 25/16 32/14 36/3
38/15 38/20 39/9 44/2 47/13 52/9
**gotten [2]** 25/15 34/3
**government [30]** 1/13 2/7 2/24 3/8 4/4
4/21 6/4 7/1 8/3 9/20 10/7 10/8 11/20
11/25 12/18 13/13 14/6 15/25 25/18
25/20 25/23 26/7 27/18 28/23 30/10
43/4 46/1 46/11 46/15 52/21
**government's [6]** 4/7 4/16 5/11 13/5
13/8 22/11
**great [2]** 21/14 26/22
**greater [3]** 6/20 30/18 40/11
**Greenbelt [2]** 1/6 1/14
**gross [1]** 6/15
**group [7]** 11/12 11/12 11/14 11/21
11/21 12/24 25/21
**grouping [4]** 13/16 15/5 21/10 21/11
**groups [1]** 14/22
**growing [1]** 33/6
**guidance [1]** 45/23
**guideline [29]** 4/4 4/24 5/18 5/25 7/10
10/23 10/25 11/18 11/21 12/7 12/13
12/15 12/22 13/1 13/6 13/8 13/9 13/14
13/20 13/21 13/25 14/11 14/17 21/9
21/13 21/14 21/14 21/17 41/12
**guidelines [32]** 4/25 5/1 5/4 10/9 10/23
11/10 11/13 12/8 15/24 16/1 16/8 18/17
18/21 20/20 20/24 21/5 21/7 21/11
21/12 24/6 24/6 24/15 25/20 29/6 29/13
34/9 36/5 40/16 40/23 41/4 41/19 41/21
46/17
**guilt [3]** 9/1 38/14 38/19
**guilty [2]** 38/13 40/6
**gun [4]** 10/18 17/11 21/17 25/1
**guns [17]** 6/25 19/6 19/13 20/7 21/15
21/17 21/18 21/19 21/21 21/21 24/25
25/6 26/1 26/5 29/8 29/12 29/12

**H**

**had [37]** 3/25 4/21 8/12 8/15 9/10 9/11
16/18 18/20 19/10 19/14 19/14 21/24
22/1 22/22 23/23 23/25 24/16 24/25
25/1 25/14 27/3 29/9 29/24 30/1 31/4
33/2 33/18 33/25 36/3 36/4 36/7 39/14
42/25 43/10 43/12 45/20 52/19
**halfway [2]** 12/1 35/11
**Hammer [1]** 17/4
**hampered [1]** 31/22
**hand [3]** 18/11 18/23 19/22
**handgun [1]** 43/6
**happen [7]** 5/2 9/22 9/22 29/20 29/22
30/7 45/6
**happened [1]** 25/8
**happening [1]** 34/1
**happy [2]** 36/17 37/3
**has [34]** 2/16 2/23 4/12 5/23 5/24 6/11
9/24 13/13 14/10 17/22 17/22 19/16

## H

**has...** [22]  26/13 28/1 28/24 29/17 31/16
33/1 34/2 34/7 34/14 34/23 35/7 35/22
38/5 43/4 44/9 44/20 45/16 45/17 45/18
46/11 46/15 48/25
**hasn't** [2]  28/25 33/17
**have** [75]
**haven't** [3]  34/3 34/5 42/8
**having** [4]  18/22 23/9 34/4 43/22
**he** [113]
**he'd** [1]  51/23
**he'll** [1]  35/13
**he's** [19]  20/4 22/24 23/14 23/14 25/12
25/13 25/14 25/15 29/23 30/3 30/14
30/17 30/25 33/17 33/20 33/24 33/25
34/15 34/24
**head** [1]  23/15
**health** [3]  34/15 45/4 50/7
**hear** [9]  3/22 6/2 32/16 35/25 36/13
36/13 36/14 37/11 38/8
**heard** [4]  7/18 28/4 33/1 34/5
**hearing** [3]  7/23 9/17 39/7
**hearings** [1]  9/10
**heart** [1]  30/15
**heavier** [1]  20/25
**heavy** [1]  19/22
**held** [2]  17/22 26/4
**help** [1]  33/5
**here** [31]  2/4 3/6 5/7 7/1 9/13 11/11 12/9
15/11 16/3 17/1 17/1 18/8 18/13 18/15
19/5 19/10 25/14 25/24 28/24 30/9
30/20 30/23 32/2 32/11 33/23 33/24
36/23 37/22 38/25 40/15 42/21
**hey** [1]  29/17
**high** [3]  13/15 26/20 27/4
**higher** [1]  11/13
**highest** [1]  16/18
**highly** [3]  32/21 35/1 35/2
**him** [28]  5/18 7/16 7/19 8/22 9/19 16/12
17/18 20/17 22/16 22/17 23/21 25/4
25/13 30/6 30/6 30/16 31/2 31/24 33/13
34/1 34/3 35/9 35/9 35/13 36/13 36/13
36/15 38/2
**himself** [3]  27/12 34/16 35/13
**his** [47]  4/14 5/10 5/12 5/13 5/14 6/22
7/3 7/18 7/18 9/1 9/2 10/3 17/16 17/18
17/19 17/19 18/1 19/8 19/23 20/13
20/14 20/15 21/25 23/14 23/15 23/21
23/23 25/6 25/8 25/12 25/15 26/17
26/17 30/7 30/8 31/21 32/11 32/12
32/13 33/7 33/9 33/16 33/19 33/22
34/20 35/11 35/18
**history** [11]  3/21 7/3 16/5 24/8 27/25
29/8 40/19 41/1 44/2 44/20 45/7
**home** [2]  33/11 48/18
**Honor** [68]
**HONORABLE** [1]  1/10
**hope** [1]  45/6
**hopes** [1]  28/23
**hours** [4]  34/25 48/3 48/16 49/5
**house** [7]  18/20 23/21 24/25 35/11
38/16 39/9 40/2
**housekeeping** [1]  52/9
**housing** [1]  17/16
**how** [6]  9/7 26/4 27/11 35/4 35/6 48/7

**human** [1]  49/12
**hurt** [1]  46/7

## I

**I'd** [5]  3/22 15/16 15/21 36/17 37/3
**I'll** [8]  3/24 4/3 6/2 31/11 31/13 32/20
38/8 48/23
**I'm** [26]  8/8 11/8 16/6 16/7 17/8 33/1
36/2 38/5 38/13 38/14 38/22 38/25 39/3
39/4 39/6 39/6 39/10 39/22 46/16 46/19
46/22 47/10 50/22 51/22 52/4 52/5
**I've** [8]  20/5 28/4 32/21 32/24 38/2
45/21 47/13 52/9
**ideal** [1]  19/5
**identify** [1]  2/6
**if** [33]  2/16 2/17 8/14 11/19 11/23 13/15
14/24 15/17 16/11 18/19 19/7 20/24
21/10 21/13 24/6 24/8 29/10 29/21 31/8
35/18 37/2 37/7 38/9 42/6 47/12 48/13
48/15 48/25 49/4 49/13 50/2 50/15 52/5
**ignorance** [1]  27/8
**ignores** [1]  27/2
**illegal** [1]  31/2
**illegality** [1]  9/9
**implicate** [1]  4/24
**important** [7]  4/23 7/1 30/19 30/22 31/6
39/14 44/25
**impose** [7]  35/14 35/16 36/15 39/17
39/19 40/11 45/12
**imposed** [1]  13/21
**imposes** [3]  34/7 50/21 51/1
**imposing** [1]  35/6
**in** [222]
**incarceration** [4]  34/14 35/1 40/22 51/21
**include** [1]  40/7
**includes** [1]  11/21
**including** [7]  23/15 24/2 31/5 32/13
49/14 51/17 52/13
**incorporated** [1]  23/5
**incorrectly** [1]  13/14
**increase** [6]  10/19 12/16 12/19 14/16
24/6 34/11
**incredible** [1]  33/9
**incredibly** [1]  24/21
**independently** [1]  46/12
**indicated** [2]  5/23 14/15
**indication** [2]  13/21 50/2
**indications** [2]  33/2 33/6
**indicative** [1]  17/20
**indicator** [2]  6/17 27/1
**individual** [3]  6/18 27/1 29/7
**informant** [1]  49/12
**information** [1]  3/7
**initial** [2]  10/13 11/3
**initially** [1]  48/6
**injury** [1]  49/9
**inmates** [1]  34/20
**inquire** [1]  36/24
**inserted** [1]  27/11
**insofar** [1]  50/18
**instance** [2]  11/15 20/23
**instead** [1]  11/22
**instruction** [1]  49/16
**instructions** [2]  48/7 49/19
**instructs** [1]  14/2
**instruments** [1]  20/14

**intellectual** [4]  5/10 26/24 27/1 27/16
**intension** [1]  43/8
**intent** [9]  22/13 23/13 30/8 41/8 43/1
43/11 43/20 46/18 47/10
**interact** [3]  14/11 48/24 49/2
**interprets** [1]  10/23
**interrupt** [2]  39/16 51/22
**intervene** [1]  33/13
**into** [14]  5/8 5/15 17/16 18/10 19/18
22/24 23/5 26/3 29/9 34/7 41/2 44/11
45/10 45/12
**involved** [4]  14/12 25/11 32/19 43/8
43/10 45/19
**IQ** [2]  5/10 32/11
**is** [166]
**isle** [1]  16/24
**issue** [9]  2/15 3/6 3/25 4/14 4/22 8/23
9/16 31/23 43/25
**issued** [1]  7/22
**issues** [9]  3/17 3/21 4/11 5/6 8/9 10/3
27/20 45/21 45/22
**it** [82]
**it's** [39]  2/14 3/5 5/8 5/23 6/9 6/17 7/21
9/22 11/2 12/13 14/15 16/22 18/25
19/15 19/15 19/16 19/20 19/21 20/25
23/3 24/4 30/19 31/2 31/2 32/7 36/14
36/25 37/4 37/7 37/20 38/9 42/3 44/8
44/24 45/8 46/23 47/7 47/15 52/6
**items** [1]  48/19
**its** [2]  7/2 9/20
**itself** [2]  4/24 8/18

## J

**jail** [9]  23/10 23/11 24/17 25/2 25/6 25/7
34/4 34/17 34/20
**jar** [1]  17/3
**job** [1]  24/15
**JOSEPH** [2]  1/13 2/8
**judge** [4]  1/11 35/5 37/2 37/4
**judges** [2]  25/10 40/17
**judgment** [1]  51/13
**jump** [1]  41/10
**jumping** [1]  46/20
**June** [1]  1/7
**jurisdiction** [1]  48/8
**jury** [4]  9/14 9/15 17/24 42/25
**just** [45]  4/5 4/25 5/21 7/7 8/7 9/10
13/17 15/1 15/11 15/21 16/1 16/3 16/6
16/22 18/17 19/19 20/5 20/6 21/8 26/12
29/1 29/3 32/7 32/8 32/13 32/18 33/11
35/17 36/5 39/1 39/6 41/10 41/20 41/25
42/19 43/21 44/2 44/3 44/8 45/22 46/2
46/6 51/11 51/12 52/10
**justice** [1]  29/7

## K

**Kalashnikov** [1]  19/1
**keep** [2]  38/17 38/23
**kill** [2]  40/2 46/8
**kilograms** [3]  12/10 12/11 14/14
**kind** [4]  33/14 41/21 44/7 44/9
**kinds** [1]  45/11
**kitchen** [5]  16/23 16/25 17/18 20/13
20/17
**knew** [1]  25/8
**knock** [1]  27/13

## K

**know [25]**  3/5 3/16 3/25 8/14 8/16 9/6 25/10 27/1 28/5 29/20 29/21 29/21 30/6 30/13 30/15 38/11 39/10 44/18 45/6 45/17 47/5 47/7 48/24 48/25 50/1
**knowingly [2]**  48/8 49/1
**knowledge [1]**  34/16

## L

**L-O-R-E-T [1]**  52/5
**lack [2]**  8/1 45/23
**ladies [1]**  37/15
**Lane [1]**  1/14
**large [6]**  7/1 19/1 19/2 19/20 19/25 28/12
**last [5]**  18/3 28/4 29/9 33/21 38/14
**later [4]**  7/2 10/12 19/17 36/22
**law [13]**  6/21 29/3 29/3 29/5 30/12 31/24 32/10 35/17 42/9 43/19 44/16 49/4 49/11
**lawyers [2]**  32/13 40/17
**layering [1]**  24/24
**lead [4]**  14/8 20/16 26/7 42/14
**leading [1]**  15/6
**leads [1]**  12/11
**lease [1]**  23/25
**least [7]**  3/25 12/10 14/14 31/21 36/22 45/12 48/15
**leave [1]**  48/8
**led [2]**  23/21 23/21
**left [4]**  16/25 18/9 19/3 33/11
**legal [1]**  27/10
**legality [2]**  4/15 9/3
**legally [2]**  20/19 24/5
**less [8]**  6/17 6/19 6/19 12/11 14/14 29/12 29/12 41/5
**lesser [1]**  41/20
**let [13]**  2/20 3/4 3/17 4/5 5/22 10/7 11/4 15/11 36/11 42/9 47/12 50/11 52/10
**let's [4]**  11/1 25/13 29/17 37/10
**level [25]**  3/20 7/10 10/19 11/14 11/15 11/17 11/19 12/6 12/12 12/12 12/16 12/19 12/20 12/23 13/19 14/7 14/9 14/16 14/20 14/22 14/23 14/25 15/6 16/18 41/1
**levels [3]**  5/18 13/15 32/25
**lies [1]**  38/24
**life [2]**  44/4 44/5
**light [6]**  7/3 16/4 34/10 35/21 45/9 45/9
**lightly [1]**  43/18
**like [16]**  3/22 15/16 15/21 18/25 19/19 21/17 25/13 27/8 31/24 34/5 36/16 38/12 44/7 44/18 45/5 51/23
**limitations [1]**  32/13
**limited [1]**  34/25 35/1
**limiting [1]**  6/21
**LINDA [3]**  1/23 53/6 53/12
**line [1]**  10/15
**link [1]**  16/19
**listen [1]**  43/16
**literally [3]**  18/18 33/16 33/22
**litigated [1]**  26/14
**little [2]**  16/24 25/11
**live [3]**  34/17 48/12 48/13
**lived [1]**  33/12

**living [3]**  33/6 33/6 48/14
**loaded [5]**  16/17 18/12 19/11 20/1 20/17
**local [1]**  47/20
**locked [1]**  34/25
**lodged [2]**  4/4 35/8
**long [2]**  20/7 44/10
**longer [2]**  28/14 28/22
**look [14]**  3/3 8/24 11/13 11/18 15/24 16/20 21/10 24/11 24/12 25/12 32/2 38/25 40/19 42/13
**looked [4]**  26/23 28/8 28/9 28/11
**looking [5]**  16/24 21/9 21/12 21/13 30/4
**looks [1]**  25/12
**loose [1]**  17/14
**Loredo [5]**  51/24 52/1 52/2 52/4 52/5
**lose [1]**  11/15
**lot [5]**  6/6 20/4 21/5 21/7 44/4
**lots [3]**  19/12 20/12 25/14
**low [1]**  31/18
**lower [1]**  34/4
**lucid [1]**  25/7
**lucky [1]**  34/15
**lunch [1]**  36/16

## M

**machine [1]**  21/17
**made [11]**  8/12 8/13 9/4 32/7 33/9 34/2 34/21 38/24 45/17 45/17 51/2
**maintain [1]**  5/7
**maintained [2]**  12/17 14/18
**make [10]**  8/11 9/16 15/11 15/11 18/16 36/3 36/15 37/16 42/6 49/11
**makes [1]**  28/16
**making [1]**  7/5 34/2
**mandatory [6]**  25/25 26/10 34/8 35/15 47/18 48/1
**manufacturing [2]**  12/17 14/19
**many [4]**  4/10 12/22 25/25 33/9
**marginal [2]**  28/5 28/18
**marijuana [1]**  21/2
**MARSHALL [3]**  1/23 53/6 53/12
**Marshals [1]**  33/24
**MARYLAND [3]**  1/1 1/6 1/14
**mask [5]**  2/16 2/16 2/16 2/17 38/9
**mass [1]**  31/4
**math [1]**  35/4
**matter [7]**  2/2 6/10 7/6 7/16 9/13 47/7 53/8
**mattered [1]**  9/13
**matters [2]**  28/16 37/25
**maximum [1]**  42/6
**may [12]**  5/6 15/17 29/18 29/19 29/20 33/2 36/21 42/5 43/6 49/15 49/17 50/15
**maybe [3]**  9/6 9/17 44/17
**me [26]**  2/9 2/20 3/4 3/17 3/18 4/5 9/1 9/4 10/7 11/4 11/17 15/11 32/7 36/11 37/2 38/12 38/16 39/16 39/18 39/20 40/2 42/9 46/16 47/12 50/11 52/10
**mean [5]**  19/12 29/3 39/13 43/4 44/6
**meaning [1]**  46/23
**means [1]**  46/17
**meant [2]**  19/6 27/12
**meet [2]**  18/19 18/20
**members [1]**  33/9
**Memorandum [2]**  11/25 45/16
**menacing [1]**  19/7

**mental [4]**  6/16 27/20 45/4 50/7
**MESSITTE [1]**  1/10
**met [1]**  32/3
**methods [1]**  50/17
**midnight [1]**  17/15
**might [8]**  14/24 29/7 29/18 36/21 37/21 41/25 46/3 46/7
**military [1]**  18/8
**millimeter [5]**  18/9 18/11 18/14 18/24 19/25
**million [1]**  42/11
**mind [1]**  2/23
**minimum [3]**  26/10 35/15 41/15
**minimums [2]**  25/25 34/8
**minute [2]**  16/21 41/11
**misdemeanor [1]**  37/1
**mistaken [1]**  42/5
**mitigation [1]**  27/19
**mixing [1]**  17/3
**modified [1]**  49/8
**modify [1]**  10/3
**moment [4]**  40/13 42/9 46/21 48/23
**money [5]**  17/25 18/1 20/9 20/9 20/16
**Montemarano [1]**  31/25
**Montgomery [1]**  22/7
**month [2]**  15/9 28/16
**months [30]**  4/25 7/7 13/2 15/8 22/17 22/21 25/21 26/9 26/10 28/5 28/18 30/1 30/1 30/3 30/3 35/15 38/23 41/9 41/12 41/15 46/19 46/22 46/23 47/1 47/2 47/2 47/3 47/3 50/23 50/23
**more [15]**  8/21 9/14 12/21 12/22 17/10 17/10 25/11 31/22 34/9 34/21 35/12 43/12 48/23 50/20 52/14
**morning [2]**  2/8 2/11
**most [6]**  9/8 39/13 44/3 44/4 44/25 45/13
**mother [2]**  40/1 45/20
**Motion [1]**  3/12
**motions [1]**  38/21
**move [1]**  14/10
**Mr [42]**  3/8 3/10 3/13 3/24 4/12 5/9 6/5 7/4 7/13 7/15 8/18 9/1 28/24 29/9 29/19 31/16 31/19 31/20 32/2 32/11 32/17 32/20 33/2 33/11 34/14 34/23 35/3 35/7 35/8 35/18 35/22 36/1 36/1 36/20 37/6 37/11 37/16 37/18 38/8 51/23 52/16 52/18
**Mr. [21]**  4/9 6/2 8/6 10/10 13/4 15/15 30/14 31/10 31/25 32/1 35/5 35/25 36/11 36/12 37/23 38/11 47/6 51/5 51/10 52/14 52/23
**Mr. Baldwin [6]**  6/2 10/10 15/15 35/25 38/11 51/10
**Mr. Burnham [9]**  8/6 13/4 31/10 36/11 37/23 47/6 51/5 52/14 52/23
**Mr. Citaramanis [1]**  32/1
**Mr. Conley [4]**  4/9 30/14 35/5 36/12
**Mr. Montemarano [1]**  31/25
**Ms [2]**  32/1 32/1
**much [6]**  2/19 6/15 24/12 35/12 41/17 44/21
**multiple [3]**  43/12 43/21 46/7
**must [20]**  47/18 47/19 47/20 47/21 47/23 48/8 48/11 48/12 48/18 48/23 49/1 49/6 49/11 49/16 49/22 50/1 50/5

**M**

must... **[3]**  50/6 50/17 52/14
my **[20]**  4/9 4/11 7/14 9/19 10/12 10/13
13/7 34/16 38/3 38/3 38/13 38/15 38/19
38/20 38/21 39/9 39/17 40/1 40/2 46/12
myself **[2]**  31/25 32/13

**N**

names **[1]**  32/4
NATO **[1]**  19/4
nature **[9]**  21/15 21/20 26/4 26/16 27/11
31/14 34/11 41/24 43/25
necessary **[2]**  40/12 45/14
need **[18]**  2/13 3/4 6/17 33/5 36/14
36/15 37/2 37/20 42/18 43/16 44/11
44/16 44/17 45/1 45/1 46/2 46/3 46/13
needed **[2]**  20/14 33/18
needs **[2]**  40/14 43/18
never **[7]**  9/21 17/22 32/3 32/5 32/5 32/6
32/14
next **[2]**  16/14 20/17
nexus **[1]**  17/25
no **[31]**  1/4 2/13 2/25 3/1 3/9 3/11 6/10
7/6 9/23 10/22 20/15 27/1 28/5 30/11
31/8 33/12 33/23 37/9 37/9 38/14 39/5
39/6 39/8 39/9 39/24 42/25 45/8 46/13
51/1 51/1 52/22
nonetheless **[1]**  45/13
Nor **[1]**  29/16
normal **[1]**  2/21
not **[87]**
note **[10]**  10/24 13/6 13/20 14/1 14/2
25/24 26/12 27/22 28/3 33/21
NOTES **[1]**  1/24
nothing **[6]**  6/11 32/9 38/13 38/16 38/22
52/24
notice **[1]**  21/6
notified **[1]**  49/18
notify **[3]**  48/14 49/5 49/15
notion **[1]**  27/2
now **[35]**  2/2 9/6 9/17 10/6 14/10 21/16
22/14 22/18 23/7 23/14 25/17 25/22
28/7 28/17 32/10 32/20 33/22 33/23
36/14 36/16 37/7 37/22 37/25 39/20
42/21 43/5 43/16 44/17 45/15 45/15
46/15 47/25 49/21 50/13 51/20
number **[9]**  2/3 10/20 18/17 18/18 28/12
29/8 34/10 42/22 51/16
numbers **[2]**  29/13 42/13
numerical **[1]**  29/11
nunchaku **[1]**  49/9
NW **[1]**  1/18

**O**

o'clock **[1]**  36/18
objection **[4]**  4/3 4/9 37/7 37/7
objections **[1]**  7/15
objects **[2]**  6/4 8/3
obligation **[1]**  3/5
obliged **[1]**  2/17
observe **[1]**  47/18
observed **[1]**  48/21
obstruct **[1]**  50/7
obvious **[1]**  31/2
obviously **[5]**  13/15 33/22 33/25 34/6

40/13
occasion **[1]**  44/8
occasions **[1]**  4/13
occupant **[1]**  23/24
occurs **[3]**  21/23 24/4 28/24
odd **[1]**  22/18
oddities **[1]**  23/3
off **[9]**  5/18 17/18 20/9 22/8 22/8 27/13
38/9 44/3 44/9
off-centered **[1]**  44/9
offender **[3]**  40/19 40/20 44/1
offenders **[1]**  41/22
offense **[44]**  3/20 5/25 10/17 11/16
11/18 12/2 12/6 12/12 12/12 12/15
12/20 12/23 12/24 12/25 13/19 13/22
13/23 13/23 13/25 14/3 14/9 14/12
14/20 14/22 14/23 15/6 19/12 21/10
22/15 22/22 23/10 23/12 23/19 24/18
25/17 29/9 41/1 41/24 42/18 42/20
42/21 43/13 43/24 44/1
offenses **[11]**  5/1 11/11 24/19 41/3
43/14 43/17 43/17 44/2 44/20 44/23
45/8
office **[6]**  1/13 5/23 10/13 10/15 40/25
48/2
officer **[9]**  7/24 23/16 24/2 48/7 49/5
49/15 49/8 49/24 50/16
officers **[3]**  7/23 17/6 18/7
OFFICIAL **[1]**  1/23 53/12
often **[2]**  28/4 31/22
okay **[3]**  15/17 40/3 40/10
older **[1]**  28/21
on **[92]**
on not **[1]**  50/5
once **[3]**  9/14 39/15 39/19
one **[49]**  3/25 4/9 10/9 10/11 11/11 11/18
11/22 11/24 12/1 12/21 12/22 12/24
13/1 13/6 14/21 14/22 15/6 15/7 16/17
18/16 19/17 19/18 19/22 22/1 22/18
23/3 23/15 25/21 26/8 26/19 26/22
26/23 33/12 35/10 41/7 42/3 42/10
42/14 43/12 43/21 44/8 44/25 46/3
46/18 47/9 47/14 50/23 52/6 52/9
ones **[1]**  43/18
only **[11]**  5/2 8/13 8/13 9/2 9/18 10/2
22/15 24/16 43/25 44/16 50/5
open **[3]**  16/15 37/20 40/9
opened **[1]**  17/9
operating **[1]**  27/3
opportunity **[5]**  33/18 36/4 36/7 50/18
52/19
or **[60]**
orally **[2]**  4/13 51/11
order **[9]**  3/2 3/15 45/5 51/3 51/6 51/9
51/13 51/17 51/19
ordinarily **[1]**  2/23
organization **[1]**  49/15
originally **[1]**  41/19
other **[12]**  2/21 5/1 9/23 19/18 26/23
29/1 30/25 41/15 43/19 45/22 47/15
51/18
others **[5]**  20/11 30/20 35/10 40/17 45/1
otherwise **[3]**  4/14 34/22 48/3
our **[3]**  5/9 34/7 36/23
out **[31]**  5/19 9/7 10/15 12/9 18/1 18/6
19/17 21/25 22/5 22/15 22/18 22/19

23/6 23/12 24/18 25/15 25/16 25/20
25/24 26/19 26/25 27/3 28/8 31/22 37/4
38/15 39/14 43/19 44/13 44/21 51/9
outbreak **[1]**  34/17
outburst **[1]**  27/7
outcome **[1]**  33/15
outlined **[1]**  23/20
over **[4]**  23/15 39/18 41/10 45/9
overall **[3]**  11/10 11/16 12/23
own **[2]**  4/5 49/6
owning **[1]**  46/7

**P**

P-R-O-C-E-E-D-I-N-G-S **[1]**  2/1
P.G **[6]**  22/22 22/24 23/4 23/7 23/13
29/20
p.m **[2]**  37/14 53/1
P12 **[2]**  16/7 16/21
P26 **[1]**  20/8
P27 **[1]**  20/6
P28 **[1]**  20/2
P39 **[1]**  20/7
P42 **[1]**  20/9
P44 **[2]**  16/22 17/7
P46 **[1]**  20/10
package **[1]**  21/4
page **[5]**  5/22 11/25 12/1
paper **[1]**  3/5
papers **[2]**  4/12 7/14
paperwork **[1]**  38/20
paragraph **[7]**  5/23 10/4 11/1 11/3 11/16
14/8 14/9
paragraphs **[1]**  12/4
parental **[1]**  45/23
part **[2]**  10/16 28/19
partially **[2]**  16/15 17/8
participate **[4]**  49/22 50/3 50/7 50/19
participation **[2]**  49/24 50/9
particular **[3]**  21/18 41/6 41/24
particularly **[5]**  2/18 28/9 28/15 30/21
34/10
past **[1]**  41/2
path **[2]**  6/19 7/11
Pause **[1]**  15/12
pay **[1]**  50/16
payable **[1]**  50/12
pending **[1]**  2/2
Pennsylvania **[1]**  51/24
people **[5]**  32/3 41/23 43/6 43/9 43/19
percent **[2]**  4/17 4/18
perception **[1]**  9/19
perhaps **[3]**  5/13 27/7 32/10
period **[5]**  28/10 28/10 28/10 34/18
34/23
permanent **[1]**  51/9
permission **[3]**  48/9 49/2 49/13
permit **[1]**  48/19
person **[12]**  16/12 17/13 17/18 17/19
20/14 20/15 23/24 33/5 49/2 49/16
49/17 49/18
personal **[4]**  5/9 5/15 19/5 43/7
perspective **[2]**  8/18 30/14
pertains **[1]**  5/3
PETER **[1]**  1/10
Petersburg **[3]**  35/19 51/21 51/24
phase **[1]**  9/4

**P**

**phones [1]** 34/5
**phrasing [1]** 10/12
**pick [2]** 36/16 37/10
**picture [7]** 16/20 16/24 17/2 18/3 18/13
  20/2 20/4
**pictures [2]** 15/21 16/7
**pistol [1]** 20/7
**pistols [2]** 18/19 18/23
**PJM [2]** 1/5 2/3
**PJM-16-403 [2]** 1/5 2/3
**place [4]** 29/16 33/11 48/4 48/12
**plain [1]** 48/21
**plan [1]** 48/13
**play [1]** 3/5
**played [1]** 25/3
**plea [2]** 36/25 40/6
**please [2]** 51/25 52/2
**PLLC [1]** 1/17
**plus [2]** 47/2 47/2
**pocket [1]** 18/1
**podium [3]** 15/17 15/18 31/12
**point [5]** 7/8 22/6 24/6 37/16 52/9
**pointed [1]** 26/19
**points [11]** 4/10 8/4 8/7 18/16 24/8
  24/14 26/25 28/14 31/13 38/2 40/18
**police [3]** 22/7 25/5 32/3
**policy [1]** 40/6
**poor [1]** 24/15
**portion [2]** 34/13 34/20
**pose [2]** 36/11 49/14
**position [7]** 13/5 13/7 14/6 30/2 32/23
  33/13 34/8
**possess [6]** 19/9 31/3 43/20 43/20 47/21
  49/6
**possessed [1]** 10/18
**possession [18]** 4/9 4/19 5/3 12/25
  13/24 14/3 22/12 23/12 41/8 41/11
  41/13 43/1 43/11 46/9 46/18 46/21
  46/24 47/10
**possibility [1]** 35/22
**possible [2]** 5/13 48/15
**postponement [1]** 36/22
**powder [7]** 17/2 17/4 17/11 20/13 20/25
  21/4 24/1
**powerful [4]** 19/10 20/12 21/22 31/4
**practice [2]** 38/3 38/4
**predictable [1]** 33/15
**prefer [1]** 38/4
**preliminarily [1]** 2/21
**preliminary [2]** 6/6 51/6
**premises [2]** 12/17 14/18
**presented [2]** 6/7 31/25
**Presentence [8]** 3/3 3/16 3/20 5/22 10/4
  11/2 11/3 52/18
**preserve [4]** 4/11 5/5 8/9 9/2
**preserving [1]** 10/3
**presumably [2]** 28/22 30/1
**pretrial [3]** 34/14 34/24 42/23
**pretty [2]** 39/10 41/17
**prevent [1]** 35/9
**previous [1]** 16/24
**primarily [3]** 4/11 4/20 8/9
**primary [2]** 4/14 4/15
**prior [3]** 9/4 23/9 29/4

**prison [4]** 30/17 35/18 44/5 47/7
**Prisons [1]** 35/10
**private [1]** 32/1
**privilege [1]** 32/24
**privileges [1]** 35/1
**probable [1]** 39/9
**probably [1]** 32/16
**probation [30]** 5/23 10/13 10/15 22/14
  23/8 23/16 24/2 26/6 29/16 40/25 41/19
  44/12 44/22 48/1 48/7 48/10 48/12
  48/13 48/14 48/18 48/19 49/3 49/5
  49/13 49/15 49/17 49/20 49/24 50/7
  50/16
**problem [4]** 27/22 27/23 28/1 37/9
**procedure [1]** 2/22
**proceeding [2]** 8/25 40/7
**proceedings [3]** 1/10 42/23 53/7
**process [2]** 26/14 26/20
**proffer [1]** 32/20
**profile [1]** 29/11
**program [5]** 49/23 49/23 49/25 50/3
  50/4
**programs [2]** 35/9 50/7
**progress [1]** 33/10
**prohibited [2]** 48/20 50/15
**promote [5]** 29/5 42/19 43/19 44/16
  45/14
**promoting [1]** 30/12
**pronounced [1]** 51/12
**proof [2]** 9/2 9/20
**properly [1]** 11/23
**proposition [3]** 42/17 43/23 46/10
**prosecuting [1]** 22/11
**prosecution [1]** 27/14
**prosecutor [1]** 38/11
**prospect [1]** 44/14
**protect [3]** 43/6 45/2 46/2
**protecting [2]** 31/1 31/6
**prove [2]** 38/13 38/19
**proven [1]** 42/1
**provide [3]** 42/19 45/3 45/5
**provided [3]** 3/7 3/7 11/25
**provider [1]** 50/8
**provides [2]** 42/25 50/9
**proximity [1]** 26/5
**PSR [6]** 10/16 13/13 13/18 27/24 36/4
  36/7
**psychic [1]** 30/14
**public [6]** 6/20 31/1 31/6 34/15 45/2
**pulled [3]** 17/17 20/9 22/8
**punishment [6]** 6/18 28/6 34/24 35/17
  42/19 44/24
**punitive [3]** 34/11 34/22 35/1
**purpose [4]** 5/5 12/17 38/1 49/8
**purposes [2]** 2/5 14/18
**pursuant [3]** 5/25 12/16 14/21
**push [1]** 27/24
**put [6]** 16/22 18/10 27/16 37/23 43/4
  48/11
**putting [1]** 9/20
**Pyrex [1]** 17/3

**Q**

**qualifies [1]** 35/18
**quantities [3]** 20/21 20/22 20/22
**quantity [2]** 14/12 43/10

**question [3]** 5/2 9/15 31/8
**questioned [2]** 7/25 49/4
**questions [4]** 4/17 8/11 39/16 48/11
**quickly [2]** 16/6 43/24
**quite [3]** 25/7 26/25 43/5

**R**

**raise [1]** 37/25
**raised [1]** 45/22
**ran [1]** 22/8
**range [12]** 13/1 13/8 13/9 15/7 41/6 41/9
  41/12 41/20 41/25 42/8 42/10 42/11
**rather [3]** 10/21 36/5 47/2
**RDAP [1]** 35/10
**reach [1]** 37/4
**read [1]** 36/4
**ready [3]** 6/13 15/13 15/15
**realistic [1]** 36/21
**really [17]** 6/16 7/5 8/13 9/17 17/22
  17/22 18/15 18/16 21/14 24/11 27/10
  28/18 28/25 29/13 31/15 33/18 46/13
**reason [2]** 13/7 28/19
**reasonable [2]** 4/21 42/24
**reasons [1]** 5/17
**recall [1]** 8/25
**recalls [1]** 16/11
**receive [5]** 28/14 29/19 35/5 48/6 52/18
**received [2]** 18/21 21/25
**recess [5]** 37/7 37/10 37/13 37/14 53/1
**recidivism [4]** 6/19 28/8 28/9 28/13
**recited [3]** 41/20 41/25 46/2
**recommend [4]** 40/21 41/4 41/5 51/20
**recommendation [3]** 35/17 41/7 52/3
**recommended [1]** 41/9
**recommending [1]** 25/23
**record [5]** 15/2 20/6 36/3 38/1 53/7
**recorded [1]** 17/17
**recovery [1]** 39/10
**reduce [1]** 41/19
**reduces [1]** 28/13
**reduction [1]** 6/4
**refer [1]** 18/17
**referenced [1]** 51/12
**referred [2]** 14/25 20/11
**referring [1]** 5/21
**reflected [2]** 12/9 22/9
**reflecting [1]** 24/16
**reflection [1]** 7/10
**reflects [2]** 12/2 28/20
**refrain [1]** 47/21
**regard [12]** 2/15 3/19 3/25 10/2 10/9
  11/6 26/21 42/3 46/17 46/20 46/24 47/9
**regarding [3]** 3/5 3/22 5/14
**regulations [2]** 49/23 50/4
**related [1]** 49/20
**relative [1]** 51/4
**release [16]** 22/23 23/7 29/15 29/15
  40/22 42/2 42/4 42/7 44/12 44/22 47/11
  47/17 48/4 50/6 50/14 50/25
**relevant [5]** 5/8 5/11 32/22 35/2 37/21
**remarks [1]** 37/16
**remember [2]** 9/4 43/5
**remorse [1]** 28/24
**removed [1]** 13/15
**render [1]** 37/12
**repeat [1]** 30/17

**R**

repeated [1]  27/11
repetitive [1]  27/11
replace [1]  12/3
report [12]  3/3 3/16 3/20 5/22 10/4 11/2
 11/3 28/8 48/1 48/5 48/8 52/18
reported [1]  16/12
REPORTER [3]  1/23 53/5 53/12
reporting [1]  48/6
reports [4]  27/17 28/21 31/17 34/3
represent [1]  36/6
represents [1]  31/20
request [4]  10/3 26/8 51/20 51/24
require [2]  25/25 49/15
required [1]  29/6
requirement [1]  8/10
reside [1]  48/3
residue [2]  17/1 17/3
respect [17]  7/15 8/1 9/3 9/21 11/11
 24/5 25/23 27/20 29/3 29/3 29/5 30/12
 30/18 35/16 42/19 43/19 44/16
Respectfully [1]  24/20
response [2]  6/2 8/6
responsibility [21]  4/10 4/24 5/2 5/6
 5/19 5/25 6/5 6/5 6/11 6/13 6/21 6/23 7/6
 7/9 7/20 7/21 8/1 8/4 9/19 9/25 29/1
 33/19
resting [1]  20/8
restricted [1]  35/12
restrictive [1]  45/13
result [6]  11/9 11/9 14/20 22/22 27/7
 27/9
resulting [2]  13/6 15/7
resuming [1]  37/14
retrial [1]  35/22
review [3]  15/21 36/7 52/19
reviewed [2]  36/7 45/16
rifle [4]  18/9 18/11 18/24 19/25
rifles [1]  51/18
right [35]  2/6 2/13 3/12 3/15 5/21 11/6
 13/4 13/12 13/13 15/5 15/13 16/10
 16/13 16/16 16/23 17/12 18/11 18/13
 18/23 20/2 22/16 25/1 37/6 37/13 38/5
 38/7 38/8 39/24 39/25 51/8 51/15 52/10
 52/12 52/20 52/25
right-hand [2]  18/11 18/23
rightly [1]  26/25
rise [1]  6/7
risk [4]  44/7 49/14 49/16 49/19
road [2]  22/8 22/9
robberies [3]  21/25 22/2 44/3
robbery [4]  22/2 22/14 22/21 23/10
RONALD [1]  1/13
round [3]  18/25 19/11 31/3
rounds [2]  20/3 51/18
RPR [1]  53/12
ruled [1]  8/22
rules [1]  49/23

**S**

said [10]  13/10 13/18 17/22 25/12 29/24
 32/21 36/12 39/21 40/1 42/13
SAKURI [2]  1/6 2/4
same [10]  9/11 13/6 18/25 21/3 22/2
 29/8 29/8 29/11 30/20 46/23

sat [1]  42/22
satisfied [1]  37/23
saw [1]  43/4
say [25]  3/4 6/9 11/6 27/25 29/2 36/1
 37/18 37/20 37/22 38/1 38/20 38/21
 39/1 39/2 39/6 39/12 39/17 39/18 39/20
 39/20 40/15 45/23 46/3 48/23 52/10
saying [8]  4/3 8/16 9/6 10/8 11/8 38/13
 39/3 52/4
says [2]  8/8 10/24
scales [2]  17/1 17/10
score [1]  40/20
screen [1]  16/7
Seal [1]  3/13
sealed [1]  5/10
search [19]  4/15 5/14 6/6 7/15 7/25 8/17
 9/3 9/9 9/18 10/3 16/3 17/14 23/19
 23/20 24/22 38/14 38/24 39/23 43/15
searched [3]  17/17 17/18 23/22
second [3]  8/17 25/10 39/25
Section [3]  12/7 15/1 42/17
see [15]  9/17 10/1 11/18 16/15 17/1 18/8
 18/12 20/1 29/17 32/5 32/7 45/9 45/9
 47/12 50/11
seeing [2]  16/12 35/6
seeking [2]  15/25 27/9
seem [1]  44/21
seemingly [1]  33/11
seen [3]  7/13 24/21 51/5
seized [1]  16/3
seizing [1]  25/6
selling [1]  31/5
semi [1]  19/16
semi-automatic [1]  19/16
sense [2]  36/15 37/21
sent [2]  22/17 30/20
sentence [37]  13/21 13/22 13/24 15/9
 21/25 22/19 22/20 23/2 23/5 23/14 26/8
 28/16 29/6 29/25 30/2 30/23 32/22 34/6
 34/11 35/14 36/15 37/12 39/17 39/19
 40/11 40/21 41/5 41/16 41/25 45/13
 46/9 46/19 46/22 47/11 47/12 50/22
 52/13
sentenced [8]  22/3 22/25 22/25 23/4
 24/18 32/23 39/4 47/1
sentences [3]  28/14 28/22 47/1
sentencing [28]  1/10 2/5 2/22 5/25
 11/25 13/25 14/17 15/7 18/20 22/10
 22/10 23/6 25/10 25/11 25/12 27/17
 28/7 28/18 28/20 37/17 40/7 40/10
 40/12 40/16 40/23 45/14 45/16 50/13
serious [17]  19/4 19/6 19/6 19/21 24/21
 25/16 25/16 29/2 29/2 29/5 34/17 43/13
 43/13 43/17 43/17 43/24 44/6
seriously [1]  44/7
seriousness [2]  40/18 42/18
serve [2]  22/23 35/18
served [8]  22/3 22/25 23/4 23/11 23/13
 38/20 47/4 47/8
services [2]  50/3 50/19
serving [1]  22/20
set [7]  4/11 7/2 7/14 40/17 41/21 51/16
 51/18
seven [2]  16/22 35/4
several [1]  27/3
shall [1]  11/14

shape [1]  32/8
Shawn [1]  23/16
shoebox [3]  17/22 18/4 20/8
shoot [1]  19/1
shoots [1]  19/18
short [1]  36/20
shortly [1]  17/15
shot [1]  20/7
should [24]  2/19 4/9 8/19 10/19 10/20
 10/24 10/25 11/7 11/8 11/23 12/19
 13/22 14/5 29/2 37/25 37/25 40/21
 46/16 48/8 48/22 50/3 50/19 51/11
 51/12
shouldn't [1]  7/5
show [4]  16/6 29/14 38/13 43/9
showed [5]  14/16 16/23 17/9 20/6 38/16
showing [3]  16/7 20/4 38/15
shown [7]  12/4 20/5 28/24 28/25 38/22
 38/22 44/20
shows [4]  3/20 16/8 20/10 26/21
side [2]  18/11 20/2
sides [1]  36/3
sign [1]  3/4
signal [1]  30/20
signed [2]  3/13 51/17
significance [1]  26/5
significant [4]  20/19 24/5 31/16 34/23
significantly [1]  34/21
Similarly [1]  2/15
simply [1]  43/6
since [2]  33/10 33/17 33/23 44/3
single [2]  31/3 31/3
sink [1]  16/25
sit [1]  8/11
sitting [2]  17/12 18/6
situated [1]  41/22
situation [3]  33/20 42/23 46/12
situations [1]  45/10
six [1]  28/4
small [1]  21/3
smaller [1]  21/21
so [79]
society [1]  6/22
sock [1]  17/19
sole [2]  23/24 23/24
some [25]  3/16 3/21 5/11 5/13 10/7
 15/21 16/6 17/1 21/16 21/21 22/17
 23/11 26/13 28/21 31/20 32/3 32/3
 33/13 34/2 37/21 41/18 45/22 45/24
 49/21 50/2
somebody [4]  44/8 44/9 46/8 46/8
somehow [1]  9/18
someone [6]  6/13 7/19 17/7 27/9 29/11
 29/15 44/7 48/24 48/25
something [7]  2/23 7/17 8/22 15/23 27/8
 36/1 44/18
sometimes [1]  44/2
sorry [2]  36/2 51/22
sort [8]  9/6 18/25 18/25 20/16 27/6
 29/11 31/14 33/17
source [1]  49/12
SOUTHERN [1]  1/2
Soviet [1]  18/25
speak [4]  35/23 37/19 37/19 37/25
speaking [3]  8/14 32/17 37/19
special [4]  2/10 50/12 50/20 51/2

**S**

**specific [8]** 5/22 10/17 11/1 11/16 13/23 30/15 49/8 49/21
**specifically [6]** 4/6 9/8 10/8 14/2 30/16 37/18
**specify [1]** 13/23
**spend [1]** 36/14
**spent [1]** 44/4
**stand [1]** 2/13
**standard [1]** 47/25
**standing [3]** 16/10 16/12 16/13
**standpoint [1]** 7/6
**start [8]** 3/17 3/24 4/3 4/5 14/11 31/13 39/15 39/19
**started [1]** 38/12
**starts [2]** 42/12 43/23
**state [4]** 6/16 36/12 41/23 47/20
**stated [4]** 4/12 9/1 9/14 30/24
**statements [1]** 7/23
**states [9]** 1/1 1/4 1/11 1/13 2/3 2/9 10/17 33/24 42/16
**statutory [2]** 41/5 42/14
**stay [1]** 46/16
**stays [1]** 10/4
**STENOTYPE [1]** 1/24
**step [1]** 33/13
**stepped [1]** 33/12
**still [7]** 3/4 5/6 7/18 23/18 30/5 41/5 47/16
**stop [1]** 22/7
**stored [1]** 26/4
**stories [1]** 32/25
**strategic [2]** 7/16 7/19
**strategically [1]** 27/13
**Street [1]** 1/18
**streets [1]** 33/12
**strictly [1]** 8/14
**strike [1]** 14/7
**string [1]** 21/24
**strong [2]** 30/19 42/24
**strongly [2]** 8/19 8/23
**style [3]** 18/8 19/15 19/15
**subject [2]** 7/23 14/4
**submission [1]** 10/13
**submit [3]** 24/15 35/16 47/22
**submits [1]** 30/10
**submitted [8]** 5/9 10/14 13/13 26/13 27/19 32/25 45/16 51/3
**substance [12]** 12/18 14/19 21/6 41/8 43/1 46/19 47/10 47/21 47/22 49/22 50/14 50/15
**subtracting [1]** 8/4
**succinctly [1]** 15/22
**such [4]** 4/19 43/10 44/15 49/9
**suddenly [1]** 45/8
**sufficient [6]** 34/9 35/16 35/16 40/11 43/10 45/13
**suggest [2]** 6/19 10/20
**suggesting [1]** 11/20
**suggestion [2]** 9/21 45/19
**Suite [1]** 1/17
**summing [1]** 50/22
**Superior [4]** 22/3 22/15 22/23 24/3
**supervise [2]** 49/24 50/8
**supervised [15]** 22/23 23/7 29/15 29/15

40/22 42/2 42/3 42/7 44/12 44/22 47/11 47/17 50/6 50/14 50/25
**supervision [5]** 24/1 24/7 24/9 24/13 24/17 24/17 25/17 29/4 30/22 30/25 48/20 49/20
**supervisions [1]** 23/15
**support [1]** 33/14
**supports [2]** 31/7 32/10
**supposed [2]** 36/25 39/4
**suppression [1]** 31/24
**sure [10]** 15/19 15/19 30/7 33/1 36/3 38/6 39/6 39/10 52/4 52/5
**surety [1]** 16/19
**surround [1]** 27/21
**surrounding [2]** 8/20 31/24
**suspended [2]** 23/1 29/25
**SWAT [1]** 16/11
**switching [1]** 31/15
**sworn [1]** 7/22
**sympathy [1]** 46/4
**system [1]** 33/17

**T**

**T's [1]** 52/6
**table [1]** 2/9
**take [6]** 5/8 8/24 34/7 38/8 44/11 48/19
**taken [3]** 5/14 5/15 37/14
**takes [3]** 41/2 43/18 45/12
**taking [1]** 35/9
**talk [7]** 29/1 37/2 38/10 39/1 39/15 39/18 43/16
**talked [1]** 37/24
**talking [5]** 11/2 25/7 38/12 38/17 38/23
**tamper [1]** 50/17
**tasers [1]** 49/10
**task [1]** 31/25
**team [2]** 16/11 20/17
**TEC [2]** 19/15 20/7
**TEC-9 [2]** 19/15 20/7
**tell [2]** 32/4 52/14
**telling [1]** 32/2
**ten [9]** 23/1 28/10 28/15 28/15 29/24 30/2 30/3 35/4 48/15
**term [4]** 42/4 42/4 42/5 42/7
**terms [10]** 9/8 29/7 35/12 40/21 45/4 49/20 49/21 49/25 50/9 50/25
**testify [1]** 9/22
**testimony [1]** 17/16
**testing [4]** 19/17 47/23 50/14 50/17
**tests [1]** 5/10
**than [16]** 2/21 9/14 10/21 12/21 12/22 14/14 20/25 26/23 34/9 34/22 36/5 40/11 41/5 41/20 43/12 48/23
**thank [19]** 2/25 3/14 4/2 4/8 5/20 6/3 8/5 10/11 15/5 15/20 31/8 31/9 31/11 35/24 37/13 52/8 52/19 52/22 52/25
**that [375]**
**that's [59]**
**the combined [1]** 14/21
**them [5]** 7/17 21/19 23/15 30/17 40/14
**themselves [1]** 35/21
**then [28]** 3/15 4/6 10/18 13/15 14/8 14/21 15/8 23/14 24/9 24/17 24/18 25/16 26/10 30/1 31/23 33/10 33/23 37/10 37/11 41/13 42/8 42/12 43/4 46/20 47/9 47/14 50/24 51/15

**there [59]**
**there's [21]** 2/13 2/21 8/10 10/22 12/15 17/1 17/2 17/4 21/5 27/6 27/22 27/23 27/24 32/8 33/2 41/14 44/24 46/13 49/21 50/2 50/18
**these [31]** 12/3 16/6 18/5 18/6 18/8 18/12 18/23 19/4 19/6 19/13 19/17 20/5 20/19 21/19 21/21 21/22 23/25 24/19 30/16 30/21 32/6 40/13 43/17 43/21 44/6 44/20 44/22 45/8 45/10 45/11 46/9
**they [26]** 6/14 7/1 7/10 7/12 15/22 17/17 17/18 19/1 19/8 20/20 20/21 20/22 23/19 25/1 25/3 25/20 26/4 26/4 27/8 28/12 28/22 29/18 29/18 29/24 40/1 43/14
**thing [2]** 32/12 40/15
**things [12]** 2/20 20/21 26/7 26/12 26/19 27/11 28/4 29/1 36/8 44/6 44/17 45/24
**think [37]** 2/21 3/4 3/24 5/8 5/14 6/9 7/7 7/14 9/24 10/14 10/22 15/13 15/22 15/23 27/13 27/15 27/23 28/17 28/19 28/20 29/5 29/6 29/10 30/3 30/19 31/2 31/14 31/15 34/11 35/6 36/21 36/21 42/3 42/4 44/19 46/11 50/20
**thinking [1]** 30/7
**this [107]**
**those [23]** 3/22 5/17 8/20 11/24 18/20 20/3 20/14 23/18 25/6 26/7 26/9 28/4 32/10 34/13 38/2 40/20 42/12 43/13 44/12 45/24 47/1 50/20 50/25
**though [1]** 39/15
**thought [2]** 9/9 38/19
**threatening [1]** 43/7
**three [29]** 3/21 8/15 11/12 11/22 11/22 12/14 12/22 12/25 13/2 13/14 13/19 14/22 15/6 15/7 18/18 18/22 22/1 24/13 25/21 26/8 41/2 41/10 42/4 42/4 42/10 46/20 47/15 47/15 50/23
**threshold [1]** 31/23
**through [11]** 2/20 4/13 10/8 12/4 14/25 16/18 19/2 21/8 34/17 35/3 42/22
**throughout [1]** 9/19
**TIBA [3]** 1/6 2/4 2/12
**time [64]** 22/2 22/17 22/21 22/25 23/1 23/4 23/11 23/12 23/13 23/18 23/20 23/23 24/2 25/16 28/1 28/10 28/10 28/10 29/18 29/19 29/23 33/10 33/25 34/18 34/21 34/23 35/2 35/6 35/7 35/11 35/18 37/22 39/4 39/17 39/20 39/23 44/5 44/10 44/15 44/18 44/19 45/9 47/4 47/8 48/22 50/13
**times [2]** 27/12 49/19
**today [3]** 2/4 32/16 35/23
**together [2]** 11/13 25/1
**told [1]** 32/12
**too [2]** 13/15 24/11
**top [1]** 31/23
**total [4]** 3/20 14/9 47/2 47/16
**toward [1]** 4/18
**towards [2]** 7/11 7/11
**track [1]** 24/20
**tracked [2]** 28/12
**tracks [1]** 27/14
**trafficking [4]** 4/22 18/2 41/14 46/25
**train [1]** 27/13
**training [2]** 45/4 50/19

**T**

transcript [3]  1/10 22/10 53/7
TRANSCRIPTION [1]  1/24
translate [3]  46/5 46/6 46/6
treat [1]  41/22
treated [1]  46/13
treatment [3]  45/5 49/22 50/8
trial [22]  4/10 4/17 5/5 6/8 8/9 8/12 8/15
9/2 9/15 9/18 9/20 10/2 15/22 16/8 25/3
35/20 38/4 38/11 38/19 38/22 42/22
45/15
trouble [3]  25/15 42/25 45/7
truckload [1]  21/2
true [1]  9/22
trust [1]  32/7
truthfully [1]  48/11
try [5]  33/13 35/20 41/22 45/12 48/23
turn [1]  25/13
turned [3]  9/7 23/10 31/22
turns [1]  5/19
twice [1]  9/16
two [40]  4/5 5/18 8/4 8/7 9/10 9/11
10/21 12/16 12/19 13/20 14/16 14/25
15/10 17/10 18/6 19/16 22/1 22/2 22/5
22/11 23/8 23/15 24/2 24/6 24/7 24/13
28/9 29/4 30/22 38/20 41/10 41/13 42/6
42/6 42/10 46/24 47/12 47/15 50/24
52/6
two-level [3]  12/16 12/19 14/16
two-point [1]  24/6
type [11]  16/22 18/9 18/10 18/24 19/5
19/10 20/7 21/17 21/18 33/5 33/20
types [2]  24/25 30/21
typically [1]  35/20

**U**

U.S [1]  10/24
unclear [1]  28/2
under [22]  2/13 13/20 13/21 14/4 14/8
14/9 14/17 15/10 17/24 21/7 24/1 24/7
24/9 24/12 25/17 29/4 29/15 30/3 30/22
30/25 34/24 42/16
undercovers [1]  38/21
underlying [7]  7/22 13/22 13/25 14/3
24/11 31/16 32/15
understand [7]  2/19 7/4 10/6 26/16 34/1
37/20 39/16
understandable [2]  20/21 26/2
understood [2]  10/1 10/2
unfortunate [1]  32/25
Union [1]  18/25
unique [1]  30/7
unit [4]  18/4 18/5 19/23 20/8
UNITED [8]  1/1 1/4 1/11 1/13 2/3 2/9
33/24 42/16
United States [2]  2/3 33/24
unlawful [1]  47/22
unlawfully [1]  47/21
unless [3]  2/22 48/4 50/16
unprecedented [1]  34/15
until [2]  37/7 37/10
up [12]  16/22 17/18 18/4 25/9 27/9 33/6
36/16 37/11 38/24 40/17 41/21 50/22
upbringing [3]  32/21 45/20 46/4
Upon [1]  51/23

upward [5]  15/25 25/23 30/11 31/7
46/16
upwards [1]  25/19
urge [1]  18/15
us [1]  5/22
use [5]  43/7 45/23 46/7 47/22 49/6
used [7]  4/22 17/4 18/24 19/1 19/3 21/6
50/15
using [1]  27/25
utility [1]  28/5 28/18
Uzi [1]  19/15
Uzi-style [1]  19/15

**V**

vaccinated [1]  2/17
value [2]  30/23 30/24
variance [4]  15/25 30/11 31/7 46/16
variation [3]  21/5 21/7 21/16
various [4]  20/23 27/12 40/18 51/18
vary [2]  25/19 25/23
verdict [1]  17/25
versus [2]  2/4 21/21
very [13]  3/12 6/25 8/19 19/21 25/6
29/19 29/19 32/22 33/25 33/25 43/17
43/24 45/15
viable [1]  19/12
view [2]  46/12 48/21
violated [3]  22/16 24/17 44/12
violating [1]  30/6
violation [1]  24/3
violence [4]  33/22 33/23 45/20 45/24
violent [1]  44/3
virtual [1]  36/18
visit [1]  48/18
visitation [1]  34/25
vocation [1]  45/4
vocational [1]  50/18
vociferous [1]  7/15

**W**

wait [1]  38/21
waiting [1]  39/22
walked [1]  23/6
wall [4]  18/4 18/5 19/23 20/8
walls [1]  19/2
want [18]  15/1 16/22 18/15 18/16 27/6
28/3 36/1 36/20 37/18 38/1 39/1 39/12
39/15 39/16 39/18 39/18 39/20 49/21
wanted [2]  36/2 38/10
wants [2]  8/23 29/1
warrant [16]  4/15 5/14 6/7 7/16 7/22
7/24 7/25 8/17 8/21 16/4 17/14 23/19
23/21 24/22 38/14 43/15
warrantless [2]  38/24 39/23
was [150]
Washington [1]  1/18
wasn't [5]  9/13 19/14 19/24 33/10 52/17
watched [1]  17/16
Watson [1]  23/16
way [11]  5/13 7/16 9/10 14/10 20/1
21/11 22/20 25/1 25/2 31/20 44/10
we [41]  4/15 4/16 5/24 6/3 21/5 6/5
5/21 7/13 8/12 8/12 8/13 8/13 8/15 8/15
9/10 9/11 9/15 13/18 14/11 15/13 19/17
19/24 21/13 29/22 32/9 32/15 32/15
34/3 34/5 35/14 35/16 35/25 36/3 37/7

38/6 42/1 42/21 42/21 42/23 45/3
We'd [1]  35/17
we'll [5]  4/6 16/20 37/10 37/11 37/13
we're [9]  2/4 21/8 21/11 21/12 29/13
30/8 32/16 36/13 37/16
we've [2]  21/8 36/8
weapon [7]  14/3 18/23 19/16 19/16
19/22 46/9 49/7
weapons [18]  18/5 18/6 18/8 19/5 19/6
20/12 21/22 23/25 26/4 30/21 32/23
34/4 43/5 43/21 44/2 46/7 51/4 51/16
wear [1]  2/17
wearing [1]  2/16
weight [4]  12/9 12/11 14/14 20/25
weightings [1]  20/23
well [21]  3/2 3/4 3/12 4/5 5/14 11/1
29/18 29/19 29/19 29/24 31/12 37/2
43/5 44/24 45/21 45/24 48/18 51/8 51/9
51/13 52/10
well-taken [1]  5/14
went [26]  23/10 23/11 27/15 32/14 35/3
14/24 18/6 18/6 19/8 19/10 21/13 23/18
23/19 25/1 26/4 26/5 26/13 27/9 27/17
29/12 33/7 40/25 43/5 43/7 43/9 43/10
weren't [1]  5/14
Western [1]  19/3
what [59]
what's [4]  19/24 28/13 34/1 44/14
whatever [6]  5/1 5/18 24/13 34/11 37/20
39/18
whatsoever [2]  19/9 29/22
when [27]  2/14 2/18 5/4 5/15 8/8 11/15
13/24 15/24 16/11 17/5 17/17 18/6
20/17 22/6 22/8 22/19 25/7 25/14 28/22
34/9 38/11 38/23 44/20 45/7 45/12 48/2
48/7
where [22]  3/6 5/23 8/25 9/24 10/1
10/25 11/12 14/2 23/24 26/4 32/15 33/6
34/20 37/16 41/21 42/1 42/23 46/12
48/2 48/13 49/25 50/9
whereas [1]  19/18
whether [7]  4/20 24/12 28/1 37/23 40/8
45/6 50/1
which [39]  7/23 7/24 9/16 10/17 11/23
12/8 12/19 12/24 14/11 15/24 17/20
17/23 18/10 19/14 20/6 20/7 20/8 20/10
23/1 23/10 23/11 26/10 27/5 34/17 35/9
37/24 41/2 41/7 41/13 42/8 42/25 45/16
46/7 46/17 46/18 46/21 46/24 47/9
50/13
while [8]  25/1 25/24 30/17 44/19 46/3
50/5 50/6 52/9
who [19]  6/13 7/24 22/11 27/9 29/7
29/15 33/5 35/5 40/15 43/6 43/19 43/20
44/1 44/8 44/9 48/24 48/25 49/25 50/9
whole [3]  8/1 21/2 36/14
whom [1]  30/25
whose [1]  32/4
why [7]  15/24 32/15 32/16 34/1 39/23
40/2 46/8
Wicks [1]  32/1
will [28]  7/2 14/7 25/24 26/12 30/13
30/15 33/21 35/8 35/9 35/11 36/6 36/13
36/13 37/11 38/22 40/12 45/5 45/5 45/6
47/3 47/12 47/18 48/6 49/24 50/8 50/13

| W |
|---|
| **will... [2]**  51/15 52/7 |
| **willing [1]**  6/14 |
| **wires [1]**  10/14 |
| **wiser [1]**  28/22 |
| **wishes [1]**  35/23 |
| **within [10]**  12/15 20/23 21/4 41/6 41/25 46/17 48/3 48/16 49/5 52/14 |
| **without [3]**  48/9 49/2 49/13 |
| **won't [5]**  30/16 35/11 42/5 44/14 44/17 |
| **wonder [1]**  35/25 |
| **work [1]**  48/22 |
| **works [2]**  21/11 45/6 |
| **worse [1]**  27/9 |
| **would [51]**  2/22 2/23 6/19 8/15 8/16 9/16 10/1 11/10 12/3 12/3 12/6 12/7 12/19 12/23 12/25 13/6 13/16 14/4 14/8 14/16 14/20 14/23 15/7 15/8 15/9 16/23 17/23 18/19 18/20 19/11 19/18 20/16 21/3 24/15 27/18 27/22 29/10 30/2 30/2 30/5 30/7 33/5 34/8 34/22 35/5 35/14 35/15 36/15 43/19 43/20 47/6 |
| **wouldn't [2]**  19/17 40/2 |
| **writing [1]**  4/13 |
| **written [1]**  51/12 |
| **wrongdoing [1]**  38/18 |

| Y |
|---|
| **y'all [8]**  38/15 38/15 38/17 38/18 38/23 38/24 39/3 39/9 |
| **Yeah [3]**  39/3 39/8 39/13 |
| **year [10]**  22/5 28/10 28/10 28/10 28/11 30/2 42/3 42/4 42/5 42/7 |
| **years [20]**  6/10 22/4 22/15 23/1 27/3 28/4 28/15 28/15 28/15 29/24 30/3 35/4 35/4 47/7 47/11 47/12 47/14 47/15 47/16 50/24 |
| **Yes [7]**  10/11 11/5 13/3 13/11 27/10 36/2 51/7 |
| **you [201]** |
| **you'll [3]**  21/6 44/18 47/8 |
| **you're [21]**  2/17 2/17 6/10 9/6 10/6 11/2 24/7 24/8 24/12 32/2 32/5 32/5 32/6 37/23 44/19 44/21 44/21 45/9 48/2 48/4 52/15 |
| **you've [3]**  37/24 39/20 44/11 |
| **young [1]**  25/12 |
| **your [107]** |
| **yourselves [1]**  2/6 |

| Z |
|---|
| **zero [4]**  10/5 11/7 11/8 11/9 |